LAW OFFICES OF
# Thomas L. Crowe
1622 THE WORLD TRADE CENTER

401 EAST PRATT STREET

BALTIMORE, MARYLAND 21202

(410) 685-9428

(FAX) (410) 685-3453

email: tom.crowe@verizon.net

October 13, 2008

The Honorable Andre M. Davis
United States District Judge
United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201

          Re:    United States v. Martin
                   Crim. No. AMD-04-029 (D. Md.)
                   Our File No. 2078.000

Dear Judge Davis:

      Mr. Harding has informed us that during Detective Niedermeier's testimony tomorrow, he intends to play for the jury a recorded statement he and Detective Hastings took from Mr. Martin on April 17, 2002, deleting the material on the tape and accompanying transcript *between* "Martin: I was not there" *and* "Hastings: "Do you know what Bo's real name is?", which apparently appear on page 6 of the transcript. A copy of the string e-mail discussing, *inter alia*, redactions of the tape and transcript is attached. Also attached is a copy of the transcript with what I understand to be the described deleted materials crossed through.

      As Mr. Martin's counsel, Mr. Pyne and I object to playing of the redacted tape and use of a redacted transcript for two fundamental reasons.

      First, with or without the redactions, Mr. Martin's statement does not really contain admissions, and therefore, playing the redacted statement would only inject hearsay and "street rumor" into the case. Even were the tape to be played, those materials should be eliminated.

      Secondly, admission of the redacted statement would likely cause the jury to conclude that Mr. Martin had denied that he was present at the homicide, but leave it with the false impression that he had not given a detailed statement of where he was that night. In fact, he had done just that in the "pre-interview" noted on page noted on page 4 of the transcript. (It is further confirmed in Detective Neidermeier's handwritten notes of the "pre-interview.") The e-mail referenced above inquired whether the Government intended to elicit evidence of Mr. Martin's alibi, but the Government did not respond to

The Hon. Andre M. Davis
October 13, 2008
Page 2

the inquiry. We believe that the "doctrine of completeness" requires that Mr. Martin's statement of where he was that night be presented to the jury. *See* Fed. R. Evid. 106 and Advisory Committee note. *See also Beech Aircraft v. Rainey,* 488 U.S. 153, 170 (1988); *United States v. Paladino,* 401 F.3d 471, 477 (7th Cir. 2005); *United States v. Sutton,* 801 F.2d 1346, 1367-71 (D.C. Cir. 1986); *United States v. Walker,* 652 F.2d 708, 710-11 (7th Cir. 1981).

                                      Very truly yours,

                                              /s/
                                      Thomas L. Crowe

Enclosures

cc:    All counsel by electronic filing

Good afternoon. Today's the 17th of April, the year 2002. The time is 12:04 P.M. I'm Detective Kirk Hastings from the Baltimore City Homicide Unit. I'm conducting an interview of Shelley Wayne Martin in concert with Detective Gary Niedermeier. This interview is in reference to a double murder that occurred in the 4400 block of E. Wabash Avenue on the 25th of March, the year 2002. For the record sir, state your name.

Martin: Shelley Wayne Martin.

Hastings: Your home address?

Martin: 2 Cree Court.

Hastings: Your....your age and date of birth?

Martin: 23, 7/18/78.

Hastings: And what's your home phone number?

Martin: 410-496-4289.

Hastings: You're usually called Wayne not Shelley, is that correct?

Martin: Right.

Hastings: In reference to this case Wayne, you ah you understand that you've been charged, is that correct?

Martin: Yes sir.

Hastings: And there was a warrant for you for this murder, is that correct?

PAGE TWO
STATEMENT OF:    Shelley Wayne Martin

Martin:     Yes.

Hastings:   And before I spoke to you there was a time when ah you were given your Right's, is that correct?

Martin:     Yes.

Hastings:   I advised you of your Right's, is that correct?

Martin:     Yes.

Hastings:   And you signed the sheet waving your Right's and you spoke to me in reference to this incident, is that correct?

Martin:     Yeah.

Hastings:   Just for the record I'm going to go over your Right's again, okay?

Martin:     Okay.

Hastings:   You were advised that "You have the absolute Right to remain silent," is that correct?

Martin:     Yes.

Hastings:   And did you put "yes" next to that and put your initials?

Martin:     Yes.

PAGE THREE
STATEMENT OF:   Shelley Wayne Martin

Hastings:  And number two was, "Anything you say and write may be used against you in a Court of Law," again did you write "yes" and put your initials?

Martin:  Yes.

Hastings:  And number three was, "You have the Right to talk with a lawyer at anytime, before any questioning, before answering any questions, or during any questioning," again did you put "yes" and your initials?

Martin:  Yes.

Hastings:  And number four was, "If you want a lawyer and cannot afford to hire one, you will not be asked any questions and the Court will be requested to appoint a lawyer for you," again did you put "yes" and your initials?

Martin:  Yes.

Hastings:  Number five was, "If you agree to answer questions, you may stop at anytime and request a lawyer and no further questions will be asked of you," again did you put "yes" and your initials?

Martin:  Yes.

Hastings:  And underneath that it says, "I have read the above Explanation of my Right's and I fully understand it," Did you sign your name underneath that?

PAGE FOUR
STATEMENT OF:   Shelley Wayne Martin

Martin:    Yes.

Hastings:  Then after that there's a disclaimer saying, "I am willing to answer questions and do not want any attorney at this time. My decision to answer questions without having an attorney present is free and voluntary on my part." Did you sign that?

Martin:    Yes.

Hastings:  Did you fully understand your Right's?

Martin:    Yes.

Hastings:  Okay. In this pre-interview we talked before or after... after I had read you your Right's in the presence of Detective Niedermeier, we spoke about this incident, is that correct?

Martin:    Yes.

Hastings:  Just tell me what you know about what happened that night.

Martin:    Um, I really, I didn't know from what I heard that um Anthony Wyche and Darryl Wyche got killed.

Hastings:  And what did you hear about how it happened?

Martin:    I don't know what you mean.

PAGE FIVE
STATEMENT OF:    Shelley Wayne Martin

Hastings:   Did people implicate certain people?

Martin:   Oh yeah, yeah, implicated me, Shaun and Bo. First it was Bo then a couple days come along then it was me and Goo and it was a lot of us.

Hastings:   Just all the rumors on the street?

Martin:   Yeah.

Hastings:   Do you know anything about this incident?

Martin:   No.

Hastings:   Now there was a tape that I played in reference to this incident, is that correct?

Martin:   Yes.

Hastings:   Or a C.D., that was taken during this incident, is that correct?

Martin:   Yes.

Hastings:   Did you listen to these voices?

Martin:   Yes.

Hastings:   Were....was any of those voices yours?

Martin:   No.

PAGE SIX
STATEMENT OF:    Shelley Wayne Martin

Hastings:   You were not there at that time?

Martin:     I was not there.

Hastings:   ~~Did any of the voices on that tape sound familiar to you?~~

Martin:     ~~Yeah, maybe one.~~

Hastings:   ~~Which one?~~

Martin:     ~~The first one.~~

Hastings:   ~~What would that name be?~~

Martin:     ~~Bo.~~

Hastings:   Do you know what Bo's real name is?

Martin:     Willie Mitchell.

Hastings:   Do you know where he resides?

Martin:     No.

Hastings:   So you're saying that what you heard on the street, you heard that you were implicated, Goo and Bo. Did you have any reason why anyone would implicate you in this?

Martin:     No. I mean, I mean, no. I don't have no idea. I

379

4824

PAGE SEVEN
STATEMENT OF:   Shelley Wayne Martin

| | |
|---|---|
| | don't know why, what they would say my name for something like that, no. |
| Hastings: | Detective Niedermeier? |
| Neidermeier: | No questions. |
| Hastings: | Wayne, is there anything else you can tell me about this case that you know that would help me in this investigation? |
| Martin: | I mean, I mean I wasn't there so I could hardly, I mean hardly help you out, help you all get somebody, no 'cause I wasn't there. I mean all I know is he said, she said from off the streets. That's all I know. |
| Hastings: | And all that he said, she said stuff is...is that all you heard was with your name implicated? |
| Martin: | Yeah. But I mean they like, first they was like, I, it was like when I asked somebody that was really close to the family I'm like "Yo, how my name come up in that shit?" He like, "they ain't....they ain't saying you did it yo, they saying you had something to do with it like you know who did it." I'm like "how you come up with that?" He's like "well I don't know." |
| Hastings: | And who was that? |

380

4825

PAGE EIGHT
STATEMENT OF:   Shelley Wayne Martin

Martin:   That was Cloris.

Hastings:   What's Cloris last name?

Martin:   I don't...I don't....I don't know his last name. I don't know his last name. He in the obituary, his should be in the obituary.

Hastings:   Okay, again Detective Neidermeier, any questions?

Neidermeier:   No.

Hastings:   Okay. This taped statement is concluded at 12:09 P.M. Thank you.


This taped statement was transcribed by:

OAIII Dolly Dobrzycki
CID - Drug Enforcement Section