**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | Criminal No. AMD-04-029 |
| : | |
| **SHAWN GARDNER, et al.,** : | |
| : | |
| **Defendants** : | |

...oooOooo...

**GOVERNMENT'S MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANT SHAWN GARDNER'S**
**MOTION TO EXCLUDE NARCOTICS EXPERT**

The United States of America, by and through its undersigned counsel, respectfully submits its memorandum of law in opposition to the motion by defendant Shawn Gardner ("Gardner") to preclude the testimony of Drug Enforcement Administration Special Agent Doug Ellington, whom the government expects to call as an expert on the narcotics business. For the reasons discussed below, the motion should be denied.

**INTRODUCTION**

Shawn Gardner ("Gardner") has moved to exclude testimony that has become routine in many drug cases: the testimony of an experienced DEA agent who will testify about the production, shipment, distribution and purchase of narcotics; the methods by which narcotics are distributed; and the structure of narcotics organizations. As discussed below, the testimony is certainly relevant to important issues in this case, and Special Agent Ellington's testimony would be helpful to the jury in considering those issues.

**ARGUMENT**

Rule 702 of the Federal Rules of Evidence permits the admission of opinion testimony by expert witnesses, provided that the expert has "specialized knowledge that will assist the trier of

fact"; that the expert be qualified to testify based on "knowledge, skill, experience, training or education"; that the witness base his testimony on "sufficient facts or data"; and that the witness has used "reliable principles and methods" and has "applied the principles reliably to the facts of the case." *See United States v. Hopkins*, 310 F.3d 145, 150-51 (4th Cir. 2002). The Fourth Circuit has approved the admission of testimony by experts in narcotics trafficking methods, "for most laymen are not familiar with the quantity, qualify, purity and dosage units" of narcotics or with the distribution methods used by drug-traffickers. *See United States v. Safari*, 849 F.2d 891, 895 (4th Cir. 1988). Fourth Circuit case law also approves the admissibility of expert testimony on the methods and techniques used by drug dealers. *See, e.g., United States v. Hopkins*, 310 F.3d at 151.

As the Fourth Circuit has noted in the above cases, the touchstone of admissibility of drug expert testimony is whether such testimony is helpful to the jury, i.e. whether it illuminates an area not within the knowledge and experience of the average juror. Applying that standard, numerous courts have admitted expert testimony on the structure and operation of drug organizations and conspiracies. *See, e.g., United States v. Sanchez-Hernandez*, 507 F.3d 826, 831 (5th Cir. 2007) (law enforcement expert testimony about the "methods of operation unique to the drug business" was admissible because it was helpful to the jury); *United States v. Escalante*, 221 Fed. Appx. 946, 949 (11th Cir. 2007) (no abuse of discretion for district court to admit expert testimony concerning structure and operations of Mexican drug-trafficking organizations); *United States v. Garcia-Morales*, 382 F.3d 12, 19 (1st Cir. 2004) ("The district court therefore did not commit plain error by determining that [expert's] testimony about the structure and operation of a typical drug conspiracy was relevant and helpful to the jury in understanding the case."); *United States v. Cruz-Velasco*, 224 F.3d 654, 660 (7th Cir. 2000) (allowing DEA agent to testify about nature, structure, and

2

characteristics of drug-trafficking operations); *United States v. Jackson*, No. 98-31091, 1999 WL 706084 at * 3 (5th Cir. 1999) ("The rule is well-established that an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution business, as such testimony is often helpful in assisting the trier of fact understand the evidence."); *United States v. Garcia*, 86 F.3d 394, 399 (5th Cir. 1996) (no abuse of discretion to allow expert testimony that narcotics shipment was of the type controlled by a large drug-trafficking organization); *United States v. Anderson*, 61 F.3d 1290, 1297-98 (7th Cir. 1995) (proper to allow DEA agent to testify as expert about use of clandestine PCP labs and methods of PCP distribution organization); *United States v. Pungitore*, 910 F.2d 1084, 1140 (3d Cir. 1990) (allowing expert testimony concerning background information on structure of *La Cosa Nostra* families and interplay on a national level).

In this case, the proposed testimony of Special Agent Ellington would be relevant and helpful to the jury in its deliberations. As the Court is well aware, a principal question for the jury will be whether the defendants were members of a common drug conspiracy (as well as RICO enterprise). Substantial testimony has already been presented during the trial about the relationships of the various defendants and whether their association can be considered a conspiracy. The defendants in particular have placed the existence of a conspiracy in this case front and center during opening statements and during countless instances on cross examination.

In particular, the defendants repeatedly have noted the following:

- That the defendants never had a common name, label, uniform or color;
- That the defendants engaged in criminal activity from time to time with different people, including people outside their own circle;

3

- That the defendants operated, sometimes apart from one another, in different areas of Baltimore City and its environs;

- That none of the witnesses in this case have ever heard of the "Randallstown/Park Heights" organization;

- That some witnesses have had encounters with one, or two or three of the defendants, but not *all* of the defendants.

In short, the common defense theory is that the defendants are so separate, so independent, and have operated in such varying ways that they cannot possibly be a conspiracy. The defense repeatedly has suggested to the jury that no drug conspiracy or enterprise can exist among these defendants given their independence.

The defendants have also made it clear (as has the Court) that a multiple conspiracies jury instruction will be requested. Indeed, on many levels the disposition of this case may well turn on whether the defendants were joined in a single conspiracy, or multiple conspiracies.

Special Agent Ellington's testimony will be helpful to the jury by providing essential background relevant to those questions. In sum, the jury deserves to know that, contrary to what is seen on television and what has been suggested by the defense in this case, drug operations often have flexible, varying, informal compositions. Drug organizations sometimes do not have a specific appointed leader, do not always have a name, and do not always have uniforms (colors). In particular, Special Agent Ellington knows from observation, experience and investigation of drug conspiracies over many years that the members of drug organizations often protect one another through the use of violence and threatened violence, including through the use of firearms.

Moreover, none of this is within the common experience of the average juror. The cases

cited above recognize that jurors do not typically walk into court with a common sense understanding of how drug cartels and groups operate, or about the specific use that drug organizations make of violence. Indeed, one would hope that most jurors do not have an independent understanding of the inner workings of drug-trafficking organizations.[1]

As such, Special Agent Ellington's testimony is relevant and would be helpful to the jury. It is therefore admissible under Rule 702 of the Federal Rules of Evidence.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny the Defendant Gardner's Motion.

---

[1] Gardner's motion weakly suggests that the proposed testimony in this case can be compared with the defendants' request to present a "rap" expert who will testify about, among other things, the techniques of small business. Such a comparison is baseless. It would be a sad commentary on our society if the inner workings of drug-traffickers were as commonly understood by the average citizen as the inner workings of small business in general. Most small businesses, after all, do not routinely use violence, threats and deadly force to advance their business interests.

        Respectfully submitted,

        Rod J. Rosenstein
        United States Attorney


By:    /s/
        Robert R. Harding


      /s/
        Michael C. Hanlon

        Assistant United States Attorneys
        36 South Charles Street
        Fourth Floor
        Baltimore, Maryland 21201
        (410) 209-4800
        Fax: (410) 962-3124

CERTIFICATE OF SERVICE

This is to certify that on this 3rd day of November 2008, a copy of the foregoing GOVERNMENT'S MEMORANDUM OF LAW was sent by ECF and by email to the following:

      Michael Lawlor, Esquire

      Laura Kelsey Rhodes, Esquire

      Gerard P. Martin, Esquire

      Paul Flannery, Esquire

      Thomas Crowe, Esquire

      James Pyne, Esquire

      Barry Coburn, Esquire

      Adam Kurland, Esquire

      _____
      Michael C. Hanlon
      Assistant United States Attorney