1

1                    IN THE UNITED STATES DISTRICT COURT
2                      FOR THE DISTRICT OF MARYLAND
                              NORTHERN DIVISION
3

4

5        UNITED STATES OF AMERICA

6             v.                           CRIMINAL CASE NO.
                                            AMD-04-029
7        WILLIE MITCHELL,
         SHELTON HARRIS,
8        SHELLY WAYNE MARTIN,
         SHAWN GARDNER,
9
               Defendants
10       _____/

11                   VOLUME XXX OF XXXVII
                     Friday, November 21, 2008
12                   Baltimore, Maryland

13

14     Before:  Honorable Andre M. Davis, Judge
                      And a Jury

15     Appearances:
              On Behalf of the Government:
16             Robert Harding, Esquire
               Michael Hanlon, Esquire
17            On Behalf of Defendant Mitchell:
               Laura Kelsey Rhodes, Esquire
18             Michael E. Lawlor, Esquire
              On Behalf of Defendant Harris:
19             Gerard P. Martin, Esquire
               Paul Flannery, Esquire
20            On Behalf of Defendant Martin:
               Thomas L. Crowe, Esquire
21             James G. Pyne, Esquire
              On Behalf of Defendant Gardner:
22             Adam H. Kurland, Esquire
               Barry Coburn, Esquire
23
       Reported by:
24     Mary M. Zajac, RPR
       Room 5515, U.S. Courthouse
25     101 West Lombard Street
       Baltimore, Maryland 21201

2

1          (Proceedings at 10:08 a.m.  Defendant Harris not

2     present.  Jury not present.)

3          THE COURT:  I trust we're ready to proceed.

4          MR. HARDING:  Yes, Your Honor.  Mr. Hanlon is just

5     taking care of a few exhibits.  But we're fine with going ahead

6     without him.  He'll be down here in a few minutes, anyway.

7          THE COURT:  All right.

8          MR. HARDING:  Your Honor, if I could put on the record,

9     I think defense counsel and the government are in agreement that

10    everything on the trial cart is in evidence.  Except I see

11    there's some volumes of the Federal Code on the bottom shelf

12    there.

13         THE COURT:  We don't want to send those in.  Do they

14    belong to you?

15         MR. HARDING:  No.

16         THE COURT:  What are they?  The Westlaw?

17         THE CLERK:  Loaned them the cart, so after the exhibits

18    are put on another cart, then we'll put them all back on one

19    cart.

20         THE COURT:  No.  No.  I think you misunderstand.  Mr.

21    Harding is simply pointing out that there are law books on the

22    cart.

23         MS. RHODES:  They're not consolidated on to the proper

24    cart yet.  That's all.  It's just Belinda's cart.  It will be,

25    when they go in, it will be all on one cart without books.

3

1          THE COURT:  Well, let's do that now.

2          MS. RHODES:  Your Honor, there were about four photos

3   that were missing.  That's what Mr. Hanlon is looking for now.

4          THE COURT:  Would that be the missing photo arrays or

5   just --

6          MS. RHODES:  No.  I think one was a photo array.  The

7   other were just, they're all from the Spence.

8          THE COURT:  I see.  Mr. Kurland, good morning.  Are you

9   satisfied that the state exhibit tags have been sufficiently

10  obscured?

11         MR. KURLAND:  Yes, Your Honor.  Mr. Hanlon did a very

12  good job with respect to that.  I appreciate that.  And we also

13  were able to find that other letter, and the government, and it

14  was sufficiently redacted to the point where we're satisfied that

15  it's --

16         THE COURT:  Great.  Thank you.

17         MR. KURLAND:  Appreciate that, Judge.

18         MR. HARDING:  Mr. Flannery is reviewing it.

19         THE COURT:  What's the hold-up?

20         MR. FLANNERY:  I'm sorry, Your Honor.  This is the

21  Rodney Hayes redactions.  And I don't think we have the right

22  copy yet.  Sorry.  Just take a moment.

23         MR. HARDING:  Judge, I think we can proceed.  But I'm

24  going to have to get somebody to make some additional redactions

25  on a couple of pages on the Rodney Hayes's transcripts.

1          THE COURT:  What needs to come off?

2          MR. HARDING:  The part about, you remember, there were

3     some discussions on the transcript about how Bo used Mr. Shelton

4     to beat up inmates at Hickey School.

5          THE COURT:  Right.

6          MR. HARDING:  Mr. Lawlor flagged a number of things to

7     be deleted but he didn't flag this.  And I apparently --

8          THE COURT:  So where do we stand, Mr. Harding, on the

9     Hayes transcript?

10          MR. HARDING:  I just have to get two more pages

11     redacted.

12          THE COURT:  How have you done the redactions?

13          MR. HARDING:  By --

14          THE COURT:  White Out or what?

15          MR. HARDING:  By holding a piece of paper over the

16     redacted section when photocopying, yes.

17          THE COURT:  When it's photocopied?  All right.  Do you

18     have some tape and scissors?  My law clerk can go make copies

19     pretty quickly.

20          MR. HARDING:  Those sections that are marked.  Thank

21     you very much.

22          THE COURT:  Have we given Ms. Martinez have all of the

23     page that need to be re-photocopied?

24          MR. HARDING:  I'm sorry, Your Honor.

25          THE COURT:  Does Ms. Martinez have all of the pages

1    that need to be re-photocopied?

2             MR. HARDING:  Yes.

3             THE COURT:  Okay.  Mr. Flannery, still reviewing the

4    other Hayes's transcript?

5             MR. FLANNERY:  Just take a minute, Your Honor.

6             THE COURT:  All right.  Let the record reflect that,

7    once again, Deputy Marshal Akers has confirmed for me that

8    yesterday and this morning the remote transmission to Mr. Harris

9    in the cell block is working just fine.  And Mr. Harris is

10   enjoying his solitude, apparently.

11            MR. MARTIN:  Your Honor, my silence should not mean

12   that I don't still object to this.

13            THE COURT:  Absolutely, Mr. Martin.

14            Okay.  What about the placards?  You're going to send

15   them in, also, correct?  The poster boards?

16            MR. HARDING:  Yes.

17            THE COURT:  All of them are marked.  Okay.  They're

18   fine over there.  We'll just remember to send those in.  And

19   we'll send in the easel.  How do we do, or what's the situation

20   with the digitized evidence or the tape, the cassette tape?

21            MR. HARDING:  My IT guy or woman and Louis are working

22   on that.  They got a copy of a blank laptop from the court.

23            THE COURT:  Right.

24            MR. HARDING:  Didn't have the right password and the

25   right software.  But my IT person is here, working with him.  And

1    she has a list of the files to be included.  And I made a list of

2    the files to be included.  I should add that it's not a complete

3    solution to the problem, Your Honor.

4            THE COURT:  Tell me about that.  First tell me what

5    you're going to be able to put on the disk.

6            MR. HARDING:  Okay.  W-33, the Magginson voice mail.

7            THE COURT:  Okay.

8            MR. HARDING:  W-38, the Mitchell statement.

9            THE COURT:  Okay.

10           MR. HARDING:  W-65, the Martin statement.

11           THE COURT:  Okay.

12           MR. HARDING:  The clip from the Stop Snitching video.

13           THE COURT:  Okay.

14           MR. HARDING:  MB-42, which is one of those very

15    difficult to understand undercover meetings of Dobropolski and

16    Harris in 2003.

17           THE COURT:  Great.

18           MR. HARDING:  MB-43, same thing.

19           THE COURT:  Great.

20           MR. HARDING:  MB-45 is a phone call from Dobropolski to

21    Harris.

22           THE COURT:  Okay.

23           MR. HARDING:  So is MB-46.

24           THE COURT:  Okay.

25           MR. HARDING:  And N-29 -- hmm.  Maybe that got

7

1    renumbered.  I don't think we have an N-29 in our exhibit list.

2                 THE COURT:  M as in man or --

3                 MR. HARDING:  N as in Nancy.

4                 THE COURT:  Nancy 29?

5                 MR. FLANNERY:  N-29 might have been the DEA number,

6    original.  But it's renumbered by the exhibits.  They're all

7    MB's.

8                 MR. HARDING:  Yeah.  I'm going to have to get the right

9    MB number.

10                THE COURT:  What is it?

11                MR. HARDING:  I'm going to get it.  It's a CD of an

12   undercover meeting between Dobropolski and Mr. Harris.

13                THE COURT:  Okay.

14                MR. HARDING:  And then we have track 11, one of the rap

15   songs from the Pure Shit CD.

16                THE COURT:  Okay.  And what's --

17                MR. HARDING:  Two rap songs.

18                THE COURT:  And what's that number?

19                MR. HARDING:  It's just called track 11 on here.  It's

20   part of SD-1.

21                THE COURT:  SD-1?

22                MR. HARDING:  Yeah.  Which is the, that's supposed to

23   stand for Shakedown and contained that particular CD.  Remember

24   that Your Honor admitted only excerpts of certain other songs.

25                THE COURT:  Right.

1          MR. HARDING:  And the way I played them in court was to

2     cue them up on my laptop.

3          THE COURT:  Okay.

4          MR. HARDING:  But they aren't excerpted.

5          THE COURT:  Okay.  So I'll tell the jury about that.

6          MR. HARDING:  We're going to have to play it in court.

7          THE COURT:  If they want to hear it.  Okay.  What else

8     is excluded, Mr. Harding, to your --

9          MR. HARDING:  Well, the only other thing is the

10    videotape of the assault on Rodney Hayes, which required a

11    special piece of software, which my IT person is trying to load

12    on to your laptop.

13         THE COURT:  Okay.  And then, of course, we have the

14    cassette, correct, Ms. Rhodes, which is not being put on the CD?

15         MS. RHODES:  Correct.

16         THE COURT:  And what's on the cassette?  Remind me.

17         MS. RHODES:  It's the Damita Green redacted statement.

18    Yes.  And Ms. Arrington, is the tape recorder up there that we

19    can put on the cart, too?

20         THE COURT:  It's in the folder.

21         MS. RHODES:  Oh, okay.  Not just the cassette?

22         MR. KURLAND:  You get the recorder back.  Not evidence.

23         MR. HARDING:  Your Honor, N-29 is MB-40F.

24         THE COURT:  That's a separate CD or is that also going

25    to show up on this consolidated CD?

9

1              MR. HARDING:  It's going to be on the laptop and should

2       be numbered as MB 40F.

3              THE COURT:  Are they putting it on the hard drive?

4              MR. HARDING:  Yes.

5              THE COURT:  Oh, excellent.  Okay.

6              MR. HARDING:  That's my understanding.

7              THE COURT:  Okay.

8              MS. RHODES:  Mr. Harding, what's MB-40F?

9              MR. HARDING:  N-29.

10             THE COURT:  So what's not on the hard drive are the

11      Damita Green statement, which is available separately on the

12      cassette, and the tape recorder is being sent in, and the various

13      excerpts, short excerpts of different tracks from Pure Shit.

14             MR. HARDING:  And the jury does, they will get track 11

15      because I think they're going to be able to copy that whole

16      thing.

17             THE COURT:  Okay.

18             MR. HARDING:  That whole track.  And that whole track

19      was admitted.

20             THE COURT:  All right.  Track 11 should be on the hard

21      drive.

22             MR. HARDING:  We have a CD of the courtroom

23      disturbances.  I don't think -- that was never loaded on to the

24      laptop.

25             THE COURT:  Okay.  So is that on the cart?

1              MR. HARDING:  It should be.

2              THE COURT:  And I won't refer to them as courtroom

3     disturbances.  Refer to them as the --

4              MR. HARDING:  Obstruction of justice.

5              THE COURT:  I'll refer to them as courtroom statements.

6     Okay.

7              MR. FLANNERY:  Your Honor, if I could just confirm.

8              THE COURT:  Mr. Flannery?

9              MR. FLANNERY:  If I could just confirm, because I

10    thought there were more.  Confirming with Mr. Harding that all of

11    the Dobropolski/Harris audio, are they going to have the ability

12    to listen to all of that, then?  Is it going on the CD?

13             MR. HARDING:  All the CD's are in evidence, actually.

14             MR. FLANNERY:  So they'll be able to play all those,

15    then?

16             MR. HARDING:  Yeah, they can.  They're the MB.  There's

17    a whole stack of them in here.

18             THE COURT:  Okay.  So are fewer than all of them going

19    to be on the hard drive, Mr. Harding, your understanding?

20             MR. HARDING:  Only a few are on the hard drive.

21             THE COURT:  Okay.  All right.  So CD's of Dobropolski

22    are in evidence and several are going to be on the hard drive.

23    Okay.  So Mr. Flannery, you want to doublecheck the final Hayes

24    transcript?  My law clerks brought it down, brought down the

25    pages.

1          MR. KURLAND:  Your Honor, could I make one comment with

2     respect to the instructions?

3          THE COURT:  Sure.

4          MR. KURLAND:  If the Court would consider publishing an

5     opinion with respect to the giving of the dual sovereignty

6     instruction.  I mean that in all seriousness.  There's very

7     little case law on it.  And it would be a shame if that is, like,

8     lost.  The Court's published opinions in this case have been

9     widely cited.  In fact, when I'm down in the federal court in the

10    district, lawyers were always coming up to me asking me to

11    explain the decision with respect to those earlier counts.  And I

12    get e-mails all the time about lawyers all over the country

13    dealing with those type of counts.

14          I think that it would be consistent with whatever the

15    general kind of standard is on published opinions and F. Supp.

16    I think it would greatly enhance the development of the

17    understanding of the law in the area.

18          THE COURT:  All right.  I think it may be useful, Mr.

19    Kurland.

20          MR. KURLAND:  Thank you, Your Honor.

21          MR. HARDING:  Judge, we found the CD of the courtroom

22    disturbances, marked as CT-13.  I'm sorry.  C-13.  It's in the

23    same redwell with all the other pro se motions, which are

24    numbered C-1 through C-12.

25          THE COURT:  All right.  Thank you.

1          MR. HARDING:  It is also a CD that should be playable

2     on the laptop.  It played on my laptop.

3          THE COURT:  Well, I take it they don't really have it

4     with them now, right?  It's here.

5          MR. HARDING:  It's in the redwell.

6          THE COURT:  Yeah.  But I mean, the CD is not with your

7     IT person.

8          MR. HARDING:  No.  It's not going to be copied.

9          THE COURT:  It's not going to be copied.  Okay.

10     Belinda, do we know if the laptop has a CD -- I assume it does.

11     Can you call, please?

12          What do we all think of the exhibit lists?  Are they in

13     good shape?

14          MS. RHODES:  Subject to the photos that Mr. Hanlon is

15     finding, I think they are.

16          THE COURT:  Okay.  And we've deleted all of those that

17     were marked only for identification?

18          MS. RHODES:  Yes.

19          THE COURT:  Excellent.

20          MR. HARDING:  Ms. Arrington says the CD's will be

21     playable on the laptop.

22          THE COURT:  Great.  And do we have, Mr. Harding, I

23     think you and I encountered this before perhaps.  Sometimes

24     jurors actually want a copy of the indictment that has

25     signatures.  And as sometimes happens in this instance, because

1   the special findings are not going in what will need to happen,

2   in fact, it looks actually pretty easy because what we can do --

3   perhaps I should have had Ms. Martinez do this when she went up.

4   What we need to do is to cut and paste the last page of the

5   indictment which, in fact, contains only the signatures of the

6   U.S. Attorney and the foreperson, but with one carry-over line

7   from the special findings.

8           So I'm going to have my law clerk go up and, if you

9   will, please, Melissa.  So what we need to do is you need to

10  photocopy, first of all, cut off that line, that carry-over line,

11  and then see if you can just position the signatures of Mr.

12  Rosenstein and the foreperson and make a photocopy of Count 19

13  like that's the last page of the indictment.  And if you can do

14  that while leaving the page.

15          Never knew you'd be doing this kind of heavy duty legal

16  lifting?  Is that transcript fine, Mr. Flannery?

17          MR. FLANNERY:  Yes, sir.

18          THE COURT:  And is it on the cart?  What's the problem,

19  gentlemen?

20          MR. HARDING:  We're revisiting the redaction of the --

21          THE COURT:  What's the problem?

22          MR. HARDING:  Well --

23          MR. FLANNERY:  Your Honor --

24          MR. HARDING:  There are two versions of the redaction

25  of this transcript and one version redacted the part that left

1   out how Mr. Mitchell used Shelton Harris to beat up people at the

2   Hickey School.

3           THE COURT:  Right.

4           MR. HARDING:  The other left that out but also a bunch

5   of other stuff that's admissible.  And I'm trying to get Mr.

6   Flannery to agree to use the less redacted version because it

7   leaves out any reference to anything that involves his client and

8   the use of his client to beat people up.

9           THE COURT:  Okay.  Let me hear from Mr. Flannery.

10          MR. FLANNERY:  I would say at a minimum, Your Honor,

11  that there's a particular reference to Rodney Hayes hearing about

12  Willie Mitchell losing his job and hearing about it also in the

13  news.  So I would, at a minimum, I think we could probably agree

14  that if that reference, the hearing about that in the news was

15  taken out, then -- originally, we wanted to take an entire

16  section out where it discusses Willie Mitchell losing his job and

17  it starts into the next topic after that.

18          The last part of that topic is about hearing it both

19  from them, but also seeing that this episode or that him losing

20  his job was in the news.  And I think that that should be taken

21  out because if anyone's familiar with the Hickey School or knows

22  at some point it was on the news, I think they could infer that

23  Willie Mitchell, and some of the other things they've already

24  heard here, and maybe Shelton Harris, were involved in something

25  that put them in the news, in some Hickey incident.

1        THE COURT:  May I see the transcript, please?

2        MR. HARDING:  The originally redacted version.  This is

3   the more extensively redacted version.  There's two redacted

4   versions.

5        THE COURT:  All right.  Mr. Harding, let's just, you

6   know, life is too short.  You don't need that.  You don't need

7   that.  Let's go with the more heavily redacted.

8        MR. FLANNERY:  Thank you, Your Honor.

9        THE COURT:  Nina, you can return that to Mr. Harding.

10       Back on the record.  I'm glad you came back, Mr.

11  Hanlon, because I wanted to say something.  As I mentioned to Ms.

12  Rhodes, I was obsessing over the rap music expert, and I continue

13  to obsess over the rap music expert.  And I just wanted to note

14  that, cleaning up my file, I noticed, I took another look at the

15  government's opposition and, in fact, Mr. Hanlon, who I assume

16  was the author of that memo --

17       MR. HANLON:  I was not, actually.

18       THE COURT:  Mr. Harding.  Mr. Harding.  Okay.  Then I

19  shouldn't have waited for you.  Mr. Harding actually makes the

20  very point that came to me at lunch, which is that what you were

21  really trying to do with the rap expert was very analogous to the

22  expert on confession.  That was the last part of the government's

23  memorandum in opposition.  And I think the government's

24  absolutely right.  So whether it was Mr. Hanlon or Mr. Harding,

25  you get credit for that.

1            MR. HANLON:  Mr. Harding, Your Honor.

2            THE COURT:  And I absolutely agree with the government.

3    That's really what it amounted to.  So I'll stop obsessing over

4    that now.  Were you able to find the photos, Mr. Hanlon?

5            MR. HANLON:  All except one, Your Honor.  I can

6    reproduce that one.  It's a photograph of a gun inside Darius

7    Spence's apartment.  And if it's acceptable to counsel --

8            THE COURT:  They don't need that.  The gun on the floor

9    behind the bed?

10           MR. HANLON:  That's --

11           THE COURT:  We all remember that.

12           MR. HANLON:  That's the item.  Everything else is

13   fixed, Your Honor.  I want to take a quick look at some of the

14   lyric exhibits to make sure.  There were a couple of --

15           THE COURT:  Go ahead and do that now.

16           MR. HANLON:  Other than that, we're in good shape.

17           THE COURT:  Did you bring the photographs of the ones

18   you found?  Are they on the cart now?

19           MR. HANLON:  Got them right over there.

20           THE COURT:  Would you put them on the cart, please?

21           MR. HARDING:  Your Honor, there's one other exhibit

22   that isn't in the exhibit file.  That doesn't mean we can't

23   easily reproduce it as soon as we identify what it was.  It's

24   B-8.  The exhibits were printouts and satellite maps that I was

25   using with Agent Benson.  B stands for Benson.  And B-8 is

1    missing from the exhibit file.  The agent has gone up to look for

2    it.  And we can easily reproduce it but we don't know what it is.

3    So if defense counsel have their copies of the exhibits or --

4              THE COURT:  I'm sorry.  Melissa, you copied the wrong

5    one.  You have Rod's signature but you don't have the

6    foreperson's signature.  We need both.

7              I'm sorry.  I think I cut you off, Mr. Harding.  The

8    satellite photos relating to the GPS or the cell tower or what?

9              MR. HARDING:  The locations of cell towers were some of

10   the satellite photos.  And there were also toll, telephone toll

11   summaries that were used as B exhibits.  B-8 is the missing

12   exhibit.  We can easily recreate it if we can't find it but we

13   don't know exactly what it was.  Because it's listed on our

14   exhibit list as a --

15             THE COURT:  What's the problem, Mr. Hanlon?

16             MR. HANLON:  These are the lyric exhibits, Your Honor.

17             THE COURT:  What are you going to do with them?

18             MR. HANLON:  There were a couple of items referenced as

19   exhibit numbers on the list that counsel weren't able to find and

20   I wasn't able to eyeball.  I just wanted to check through the

21   file and check upstairs.  I think they're probably here.

22             THE COURT:  All right.  Let's assume they're here.

23             MR. HANLON:  That's fine.

24             THE COURT:  I think we've worked as long as we can on

25   exhibits.

1          MR. HANLON:  That's perfectly fine, Your Honor.

2          THE COURT:  While you're standing there, if you'll put

3    that in.  This is the Rodney Hayes' redacted transcript, in

4    whatever redwell that should go into.  Mr. Flannery would know.

5          I'm going to say to the jury the cart is coming in

6    immediately.  I'll remind them to treat the exhibits with care,

7    particularly since they'll be having lunch at the same time.  And

8    particularly some of the original documents are rather fragile,

9    so they want to be very careful.  I will tell them that they have

10   been placed in rough alphabetical order and that it would

11   probably be very helpful to them to maintain the order of the

12   exhibits.

13         Where are the exhibit lists that will be going in with

14   the cart?

15         MS. RHODES:  The main list, Your Honor, I think is

16   awaiting these last things so that she knows what to take off.

17   In other words, she hasn't done the final list yet because of --

18   but the defense exhibits are all listed in the list.

19         THE COURT:  No.  I don't need to see it.  I thought

20   there would be two lists, government exhibits and defense

21   exhibits.  Each stapled separately.  With Mitchell exhibits,

22   Harris exhibits, Martin exhibits, and Gardner exhibits.

23         MR. HARDING:  Judge, this is the one for the government

24   that Ms. Arrington has on her system.  So she can just print it

25   out.  I think she has one for each defendant as well.  If she

1    wants to print them out, we can have copies made.

2             THE COURT:  We don't need copies.  We just need one.  I

3    mean, we only need one exhibit list.  I don't want each juror to

4    have a separate exhibit list.

5             MS. RHODES:  No, I think he meant copies, we could use

6    a copy, a final copy.

7             THE COURT:  Ms. Arrington can do that later, sure.

8             So I guess what I'm not understanding is, are there

9    final exhibit lists?

10            MR. KURLAND:  There's five, Your Honor.  There's a

11   government one and then one for each defendant, which is my

12   understanding.  Ms. Arrington has placed in the front of each

13   packet a separate, or each defendant has its own separate binder.

14            THE COURT:  A single binder for each defendant?

15            MR. KURLAND:  Yes.  And their exhibits are in separate

16   binders.  And in each binder -- redwells.  I'm sorry.  In the

17   front of each redwell there's a single page that lists Mitchell

18   exhibits and then a separate redwell Gardner exhibits.  And then

19   the government's, I think there's just obviously one master

20   exhibit list that is broken down by, you know, SSW, whatever.

21            THE COURT:  Okay.  So what I would, the only other

22   thing I think is necessary, Ms. Arrington, let's print out one

23   full copy of the defense list and one copy of the government list

24   and just put it on top.  So in effect they would have two lists

25   for the government and then two lists for each defendant.  One in

1   each redwell and then one on top.  Okay.  Thank you.

2          MR. HANLON:  Your Honor, we're holding on to firearms

3   and ammunition exhibits and things like that.

4          THE COURT:  Of course.

5          MR. HANLON:  Your Honor, how about knives?  I think

6   we've taken back knives.

7          THE COURT:  No.  No knives going in.

8          MR. HANLON:  We've taken them back.

9          THE COURT:  Okay.

10          MR. KURLAND:  Your Honor, one other thing.  Is there a

11   necessity to renew all the jury instruction objections?

12          THE COURT:  No.  Thanks for reminding me.  They are

13   incorporated into the record.

14          MR. KURLAND:  So we've complied --

15          THE COURT:  After I have instructed the jury.  All

16   prior exceptions, requests, noted on the record are preserved for

17   all purposes.

18          MR. KURLAND:  Your Honor, thank you very much.

19          THE COURT:  Okay.  All right.  I think we're ready,

20   with the exception of the cell phone.

21          MR. HARDING:  Yeah.  I've got it here, Judge.

22          THE COURT:  You've got it?  Excellent.  Thank you.

23          MR. HARDING:  You may recall, Your Honor, when I, when

24   Agent Benson was on the stand, I used this summary that he

25   prepared that had been turned over in discovery, of the names and

1    numbers in one of the cell phones recovered from Valdavia Court

2    when Mr. Mitchell was arrested.  And I just called his attention

3    to several names on here, including the number for Goo and the

4    number for Mr. Martin, Goo, and also Weaze.  Weaze's number.

5    That's what it is.

6            THE COURT:  Okay.  You want to insert that into the

7    redwell?

8            MR. HARDING:  Yes.

9            THE COURT:  Welcome, Mr. Lawlor.

10           MR. LAWLOR:  Thank you, Your Honor.

11           THE COURT:  We've been doing nothing but housekeeping.

12           MR. LAWLOR:  I didn't miss the instructions?

13           THE COURT:  I know you're sad about that.  But we're

14    just getting started.  Anything else?  Okay.  We'll have the

15    jury, please.

16           (Jury enters the courtroom.)

17           THE COURT:  Ladies and gentlemen, good morning.  Thank

18    you for your patience.  In addition to your note tablets, you'll

19    find on your chairs a copy of the jury instructions which I'm

20    about to give.  You'll notice there's a very short table of

21    contents that hopefully will be useful to you in the jury room

22    should you need to refer to the jury instructions.

23           You should feel free to make whatever notes on the copy

24    of the jury instructions that I've provided to you in those

25    looseleafs as you listen to my instructions.

1          And, of course, you're free to read along with me or

2    simply to just listen to me read the instructions.  From time to

3    time as I read the instructions I will alert you to what page I'm

4    on, so if you want to listen for a while and read along for a

5    while, you'll be able to catch up.

6          Members of the jury, at the outset I want to thank you

7    for your patience and attention throughout this case, your care

8    and the consideration of the testimonial and documentary

9    evidence, your patience in the matter of recesses and delays when

10   it has been necessary for me to hear counsel out of your

11   presence, and your promptness in making it possible to start each

12   session on time and to resume sessions after recesses without

13   delay.

14         As you already know, the functions of the judge and of

15   the jury in a case of this sort are quite different.  It is my

16   duty as judge to instruct you as to the law which applies to this

17   case.  It is your duty to decide the facts and, in deciding these

18   facts, to comply with the rules of law and apply them as I state

19   them to you, without regard to what you think the law is or

20   should be.

21         In my instructions to you on the law of this case,

22   copies of which, of course, have been provided to you for your

23   use during deliberations, if I state any rule, direction or idea

24   in varying ways, no emphasis is intended by me and none must be

25   inferred by you.  You are not to single out any particular

sentence or individual point or instruction and ignore the others.  Rather, you are to consider all of my instructions as a whole and you are to regard each instruction in the light of all others.

Counsel have quite properly referred to some of the governing rules of law in their arguments.  If, however, any difference appears to you between the law as stated by counsel and that stated by the Court in these instructions, you are of course to be governed by the Court's instructions.

Now, there are four defendants before you in this case.  The fourth superseding indictment, which I will refer to simply as the indictment, contains a total of 19 counts.  You must, as a matter of law, consider each of the 19 counts of the indictment that are before you and each defendant's involvement in each count in which he is named separately.  And you must return a separate verdict as to each defendant for each of the counts in which he is charged.

In reaching your verdict, bear in mind that guilt is personal and individual.  Your verdict of guilty or not guilty must be based solely upon the evidence about each defendant.  The case against each defendant on each count stands or falls upon the proof or lack of proof against that defendant alone.  And your verdict as to any defendant on any count, with a narrow exception which I will explain, should not control your decision as to any other defendant or any other count.  No other

1    considerations are proper.

2         From time to time in these instructions, for ease of

3    reference, I will use the singular term "defendant" or the plural

4    form, "defendants."  You will understand that all of these

5    instructions apply individually to each defendant except when the

6    context makes explicit that only one defendant is being referred

7    to or that two or more particular defendants, but not all

8    defendants, are being referred to.

9         This case is important to the government for the

10   enforcement of criminal laws as a matter of prime concern for the

11   community.  Equally, it is important to the defendants who are

12   charged with serious crimes.

13        The fact that the prosecution is brought in the name of

14   the United States of America entitles the government to no

15   greater or lesser consideration than that accorded to the

16   defendants.

17        You and only you are the judges of the facts.  If any

18   expression of mine or anything I may or may not have done or said

19   would seem to indicate any opinion relating to any factual

20   matters, I instruct you to disregard it.

21        You are to draw no inference from the fact that upon

22   occasion I may have asked questions of certain witnesses.  These

23   questions were only intended for clarification or to expedite

24   matters, and certainly were not intended to suggest any opinion

25   on my part as to the verdict you should render or whether any of

1  the witnesses may have been more credible than any other witness.

2  You are expressly to understand that the Court has no opinion as

3  to the verdict you should render in this case.

4        In deciding the facts, you may consider not only any

5  evidence to which I may refer and the evidence to which you may

6  have been referred by counsel in their arguments, but you may

7  also consider any testimony or exhibits in the case whether or

8  not referred to by me or by counsel which you believe to be

9  important to your decision.

10       Your verdict must be based solely upon the evidence

11  developed at trial or the lack of evidence.  It would be improper

12  for you to consider, in reaching your decision as to whether the

13  government sustained its burden of proof, any personal feelings

14  you may have about any defendant's race, religion, national

15  origin, sex, or age.  All persons are entitled to the presumption

16  of innocence and the government has the burden of proof, as I

17  will discuss in a moment.

18       You must disregard any and all reports which you have

19  read, seen, or heard through the news media, and any statements

20  or inferences contained therein.  Such matters are not facts in

21  evidence in this case.  You must not permit such matters to

22  influence your judgment in arriving at a true verdict in this

23  case.

24       It would be equally improper for you to allow any

25  feelings you might have about the nature of the crimes charged to

1    interfere with your decisionmaking process.  To repeat, your

2    verdict must be based exclusively upon the evidence or the lack

3    of evidence.

4           As jurors, you are not to be swayed by sympathy.  You

5    are to be guided solely by the evidence in the case.  And the

6    question you must ask yourselves as you sift through the evidence

7    is, Has the government proven the guilt of the defendants beyond

8    a reasonable doubt?  It is for you alone to decide whether the

9    government has proven that a defendant is guilty of any of the

10   crimes charged solely on the basis of the evidence and subject to

11   the law as I instruct you.

12          It must be clear to you that once you let fear or

13   prejudice or bias or sympathy interfere with your thinking, there

14   is a risk that you will not arrive at a true and just verdict.

15          If you have a reasonable doubt as to a defendant's

16   guilt, you should not hesitate for any reason to find a verdict

17   of not guilty.  But on the other hand, if you should find that

18   the government has met its burden of proving a defendant's guilt

19   beyond a reasonable doubt, you should not hesitate because of

20   sympathy or for any other reason to render a verdict of guilty.

21          Generally speaking, there are two types of evidence

22   from which a jury may properly find the truth as to the facts of

23   a case.  One is direct evidence, such as the testimony of an

24   eyewitness.  The other type of evidence is indirect or

25   circumstantial evidence, the proof of a chain of circumstances

1    pointing to the existence or non-existence of certain facts.

2            There is a simple example of circumstantial evidence

3    which is often used.  Assume that when you entered the jury

4    deliberation room this morning the sun was shining.  As you were

5    sitting there, someone walked in with an umbrella that was

6    dripping wet.  Someone else then walked in with a rain coat that

7    was also dripping wet.  You cannot look outside of the jury room.

8    Consequently, you have no direct evidence of whether or not it is

9    raining.  But on the combination of facts, it would be reasonable

10    and logical for you to conclude that it had been raining.

11            That is all there is to circumstantial evidence.  You

12    infer on the basis of reason and experience from an established

13    fact the existence or the non-existence of some other fact.

14            An inference is not a suspicion or a guess.  It is a

15    reasoned, logical decision to conclude that a disputed fact

16    exists on the basis of another fact which you find exists.

17            In this connection, there are times when different

18    inferences may be drawn from facts, whether proved by direct or

19    circumstantial evidence.  The government may ask you to draw one

20    set of inferences, while the defense may ask you to draw another.

21    It is for you and you alone to decide what inferences you will

22    draw.

23            The process of drawing inferences from facts in

24    evidence is not a matter of guesswork or speculation.  An

25    inference is a deduction or conclusion which you, the jury, are

1    permitted to draw, but not required to draw, from the facts which

2    have been established by either direct or circumstantial

3    evidence.   In drawing inferences, you should exercise your common

4    sense.

5          So while you are considering the evidence presented to

6    you, you are permitted to draw from the facts which you find to

7    be proven such reasonable inferences as would be justified in

8    light of your experience.

9          Here again, let me remind you that, whether based upon

10   direct or circumstantial evidence or upon the logical, reasonable

11   inferences drawn from such evidence, you must be satisfied of the

12   guilt of the defendant beyond a reasonable doubt before you may

13   convict.

14         Circumstantial evidence is of no less value than direct

15   evidence.   As a general rule, the law makes no distinction

16   between direct and circumstantial evidence, but simply requires

17   that the jury find the facts in accordance with all the evidence

18   in the case that you find persuasive, both direct and

19   circumstantial.

20         The statements, objections, and arguments of counsel

21   are not evidence and should not be considered as evidence.   The

22   evidence does not include questions.   Only the answers are

23   evidence.   But you may not consider any answer that I've directed

24   you to disregard or that I directed struck from the record.

25         The evidence in the case which you may consider with

1    respect to all charges consists of the sworn testimony of the

2    witnesses, all exhibits received in evidence, and all facts which

3    may have been stipulated.  A stipulation is an agreement among

4    the parties that a certain fact is true.  You should regard such

5    agreed facts as true.

6         Any evidence as to which an objection was sustained by

7    the Court and any evidence ordered stricken by the Court must be

8    entirely disregarded.  Anything you may have seen or heard

9    outside the courtroom is not evidence and must be entirely

10   disregarded.

11        A number of exhibits have been admitted into evidence

12   in this case and will be available for your review.  Other than

13   to help keep track of the exhibits, the numbers on the exhibits

14   have no particular significance as counsel premarked them to help

15   the court clerk.  At trial, certain exhibits that were premarked

16   may not have been used and so there may be gaps in the numbering

17   of certain items.

18        You may consider any exhibit for any purpose consistent

19   with these instructions that will assist you in evaluating the

20   merits of this case and you should give them the weight and

21   credibility that you deem appropriate.  The weight and probative

22   value of any exhibit is for you and only you to determine.

23        Regarding the tape of the Irene Magginson voice mail,

24   you have seen two separate documents, one containing the

25   government's interpretation of what appears on the tape

1   recording, the other containing defendant Harris's

2   interpretation.  Both of these versions of the transcripts have

3   been given to you as a guide to assist you in listening to the

4   tapes.  Neither transcript has been received in evidence.

5   Rather, it is the tape recording which is the evidence and the

6   transcripts are only guides.  The transcripts were only provided

7   to you as an aid and you should make your own determination as to

8   what was actually said or not said on the tape.

9           You alone should make your own interpretation of what

10  appears on the tapes from what you hear.  You may use both the

11  government version and defendant Harris's versions of the

12  transcripts to assist you in this task.  If you think you hear

13  something differently from the manner in which the government or

14  defendant Harris has interpreted on their version of the

15  transcripts, then you are to follow your own interpretation.

16          You may agree partially with each and you may accept

17  those portions you agree with and reject those portions you

18  disagree with.  You need not select between the two versions.

19  And you must come up with your own findings of what appears on

20  the tape.  You, the jury, are the sole judges of the facts.

21          During trial, the Court admitted a letter allegedly

22  seized during a search of Mr. Martin's residence, Two Cree Court,

23  on April 17, 2002.  The Court provisionally admitted the letter,

24  which was addressed to Nephew, subject to the government's

25  establishing that it was related to the charges in this case.

1    The government has now withdrawn the letter and, accordingly, the

2    letter and any testimony concerning the letter are no longer

3    before you to be considered by you, and are not to be considered

4    by you for any purpose in this case.

5         I have admitted certain pro se papers which the

6    defendants allegedly filed with the Clerk of the Court.  A pro se

7    pleading is one which a party to a civil or criminal case files

8    on his or her own behalf without going through a lawyer.

9    Ordinarily, there is nothing peculiar or inappropriate about a

10   criminal defendant filing a pro se pleading.  Defendants in

11   criminal cases do so frequently.

12        The government has argued that the pro se pleadings of

13   various defendants are similar and employ identical language and

14   that the defendants' alleged use of the pro se pleading

15   constitutes evidence of a continuation of the alleged

16   racketeering conspiracy charged in Count One of the indictment

17   insofar as, according to the government, they represented

18   attempts to obstruct justice in this case.

19        The defense vigorously disputes the government's

20   assertion in these regards, contending that the pro se papers

21   represent nothing more than a lay person's untutored effort to

22   assert legally immaterial defenses to serious criminal charges.

23        In their pro se pleadings, the defendants have raised

24   so-called jurisdictional defenses.  In those pleadings, they're

25   asserting that the Court lacks jurisdiction to consider the

1    offenses that the indictment charges they have committed.  I have

2    denied those motions and you are not to consider the so-called

3    jurisdictional defenses raised in those pro se pleadings.

4         I would caution you, however, that the fact that the

5    Court has denied these pro se motions and determined that you,

6    the jury, should not consider the assertions in those pro se

7    papers as defenses in this case means simply that it is for you

8    and you alone to make a determination as to the interpretation,

9    evaluation, and weight, if any, you should give to those exhibits

10   in determining whether the government has proven the charges

11   against the defendants beyond a reasonable doubt.

12        Certain summaries were drawn for you or shown to you in

13   order to make other evidence more meaningful and to aid you in

14   considering the evidence.  The summaries are no better or worse

15   than the testimony or documents upon which they are based and are

16   not themselves independent evidence.  Therefore, you are to give

17   no greater consideration to those summaries than you would give

18   to the evidence upon which they are based.

19        At times throughout the trial the Court has been called

20   upon to pass on the admissibility of certain offered evidence.

21   You should not be concerned with the Court's rulings or the

22   reasons for them.  Whether evidence which has been offered is

23   admissible or is not admissible is purely a question of law and

24   from a ruling on such question you are not to draw any inference.

25        In admitting evidence to which an objection has been

1   made, the Court does not determine what weight should be given

2   such evidence.  You must not guess what the answer might have

3   been to any question to which an objection was sustained and you

4   must not speculate as to the reason the question was asked or the

5   reason for the objection.

6           You as jurors are the sole judges of the credibility of

7   the witnesses and the weight their testimony deserves.  You are

8   not bound to believe any witness even though his or her testimony

9   is uncontradicted.  In determining whether or not to believe a

10  witness, you should carefully scrutinize the testimony given, the

11  circumstances under which each witness has testified, and every

12  matter in evidence which tends to indicate whether the witness is

13  worthy of belief.

14          Consider each witness' intelligence, motive, and state

15  of mind, and his or her demeanor and manner while on the stand.

16  Consider the witness' ability to observe the matters as to which

17  he or she has testified and whether the witness impresses you as

18  having an accurate recollection of these matters.

19          Consider, also, any relation each witness may bear to

20  either side of the case and the manner in which each witness

21  might be affected by the verdict.  Ask yourself whether the

22  witness has some incentive or loyalty that might cause him or her

23  to shade the truth.  Or does the witness have some bias,

24  prejudice, or hostility that may have caused the witness to give

25  you something other than a completely accurate account of the

1    facts.

2          Consider the extent to which, if at all, the testimony

3    of each witness is either supported or contradicted by other

4    evidence.

5          You have heard evidence that certain witnesses made

6    statements on earlier occasions which counsel may have argued, or

7    you may conclude, are inconsistent with the witness' trial

8    testimony.  Except as I further instruct you later in these

9    instructions, evidence of a prior inconsistent statement is not

10   to be considered by you as affirmative evidence bearing on the

11   defendant's guilt.  Evidence of the prior inconsistent statement

12   was placed before you for the more limited purpose of helping you

13   decide whether to believe the trial testimony of the witness who

14   contradicted himself or herself.

15         If you find that a witness made an earlier statement

16   that conflicts with the witness' trial testimony, you may

17   consider that fact in deciding how much of the trial testimony,

18   if any, to believe.  In making this determination, you may

19   consider whether the witness purposefully made a false statement

20   or whether it was an innocent mistake, whether the inconsistency

21   concerns an important fact or whether it had to do with a small

22   detail, whether the witness had an explanation for the

23   inconsistency, and whether that explanation appealed to your

24   common sense.

25         It is exclusively your duty, based upon all the

evidence and your own good judgment, to determine whether the

prior statement was inconsistent and, if so, how much, if any,

weight to be given to the inconsistent statement in determining

whether to believe all or part of the witness' testimony.

Inconsistencies or discrepancies in the testimony of a

witness or between the testimony of different witnesses may or

may not cause the jury to discredit such testimony.  Two or more

persons witnessing an incident may see or hear it differently.

An innocent misrecollection, like failure of recollection, is not

an uncommon experience.

Inconsistencies or discrepancies in the testimony of a

witness or between the testimony of differing witnesses should be

considered by you, but in weighing their effect you should

consider whether the inconsistencies or discrepancies pertain to

a matter of importance or to an unimportant detail and whether

the discrepancy or inconsistency results from innocent error or

willful falsehood.

The exception to the above instruction applies to the

testimony of the following witnesses:  Rodney Hayes, Damita

Green, and Ernest Reynolds.  You may consider the grand jury

testimony of Hayes and Green and one excerpt from the grand jury

testimony of Reynolds as if the testimony or the excerpt of

testimony given before the grand jury was actually given during

the trial.  The transcripts of the grand jury testimony of Hayes

and Green and the excerpt for Reynolds have been admitted as

1    exhibits in this case and will be available to you during your

2    deliberations, together with other exhibits.

3           Now, let me depart from the text for just a moment,

4    ladies and gentlemen, because it occurs to me that something's

5    been left out here and I want to tell you now what that is.  You

6    will recall that the police interview of Ms. Damita Green was

7    also agreed to by counsel and admitted into evidence and may be

8    considered by you for all purposes in this case.  The transcript

9    of the Damita Green interview was not admitted into evidence,

10   although it was provided to you for your use, as were other

11   transcripts, while you listened to the tape of Ms. Damita Green's

12   interview by the police.

13          The tape of Ms. Damita Green's interview with the

14   police is admitted into evidence and will be available to you.

15   But again, the transcript is not available.  The transcript of

16   her grand jury testimony will be available to you for your

17   consideration as an exhibit in this case.

18          Okay.  To return to the text.

19          You have heard from a number of types of witnesses.

20   Specifically, there has been testimony from government witnesses

21   who have pled guilty after entering into an agreement with the

22   federal government or with the state government to testify.

23   There's been testimony from witnesses who were admitted or

24   alleged accomplices in some of the crimes charged in the

25   indictment.  There have been witnesses who testified under a

1   grant of immunity from the federal government and/or the state

2   government, whereby their testimony will not be used against them

3   in any criminal case.  I instruct you that there is nothing

4   improper in the government's use of these types of witnesses and

5   the government is permitted to enter into the type of plea or

6   immunity agreements you have seen in this case.

7          The government may argue, as it is permitted to do,

8   that it must take the witnesses as it finds them.  It may argue

9   that people who themselves take part in criminal activity have

10  the knowledge required to show criminal behavior by others.  The

11  defense may dispute these contentions.  You, in turn, may accept

12  the testimony of these witnesses and convict a defendant on the

13  basis of the witness' testimony alone if it convinces you of the

14  defendant's guilt beyond a reasonable doubt.  However, it is also

15  the case that testimony from witnesses of the type I have

16  described here must be examined with caution and weighed with

17  great care.  I have given you some general considerations on

18  credibility and I will not repeat them here.  However, let me say

19  a few things that you should consider during your deliberations

20  with respect to these witnesses.

21         You should ask yourselves whether these witnesses would

22  benefit more by lying or by telling the truth.  Was their

23  testimony made up in any way because they believed or hoped that

24  they would somehow receive favorable treatment by testifying

25  falsely?  Or did they believe that their interests would be best

1    served by testifying truthfully?

2            If you believe that the witness was motivated by hopes

3    of personal gain, was the motivation one which would cause him or

4    her to lie or was it one which would cause him or her to tell the

5    truth?  Did this motivation color his or her testimony?

6            In sum, you should look at all of the evidence in

7    deciding what credence and what weight, if any, you will want to

8    give to these witnesses.

9            There may have been evidence introduced at the trial

10   that the government called as witnesses persons who were using or

11   addicted to drugs when the events he or she observed took place

12   or who may now be or was recently using drugs.  I instruct you

13   that there is nothing improper about calling such a witness to

14   testify about events within his or her personal knowledge.  On

15   the other hand, his or her testimony must be examined with

16   greater scrutiny than the testimony of any other witness.

17           The testimony of a witness who was using drugs at the

18   time of the events he or she is testifying about or who was using

19   drugs or is an addict at the time of his or her testimony may be

20   less believable because of the effect the drugs may have on his

21   or her ability to perceive or relate the events in question.  If

22   you decide to accept his or her testimony after considering it in

23   light of all the evidence in this case, then you may give it

24   whatever weight, if any, you find it deserves.

25           You have heard the testimony of witnesses who were

1    previously convicted of a crime punishable by more than one year

2    in jail or involving dishonesty or false statement.  These prior

3    convictions were put into evidence for you to consider in

4    evaluating the witness' credibility.  You may consider the fact

5    that some of the witnesses who testified are convicted felons in

6    deciding how much of their testimony to accept and what weight,

7    if any, it should be given.

8         You have heard the testimony of law enforcement

9    officials.  The fact that a witness may be employed by the

10   federal government or the state government as a law enforcement

11   official does not mean that his or her testimony is necessarily

12   deserving of more or less consideration or greater or lesser

13   weight than that of an ordinary witness.  At the same time, it is

14   quite legitimate for defense counsel to try to attack the

15   credibility of a law enforcement witness, and you are to give

16   that testimony whatever weight, if any, you find it deserves.

17        You should also keep in mind that the burden of proof

18   is always on the government and the defendants are not required

19   to call any witnesses or offer any evidence since they are

20   presumed to be innocent.

21        You have heard testimony from several experts.  An

22   expert is allowed to express his or her opinion on those matters

23   about which he or she has special knowledge and training.  Expert

24   testimony is presented to you on the theory that someone who is

25   experienced in the field can assist you in understanding the

1    evidence or in reaching an independent decision on the facts.

2          In weighing an expert's testimony, you may consider the

3    expert's qualifications, his or her opinions, his or her reasons

4    for testifying, as well as all of the other considerations that

5    ordinarily apply when you are deciding whether or not to believe

6    a witness' testimony.  You may give the expert testimony whatever

7    weight, if any, you find it deserves in light of all the evidence

8    in this case.  You should not, however, accept this witness'

9    testimony merely because he or she is an expert, nor should you

10   substitute it for your own reason, judgment, and common sense.

11   The determination of the facts in this case rests solely with

12   you.

13          After you have considered all of the factors bearing

14   upon the credibility of a witness which I have mentioned to you,

15   you may decide to accept all of the testimony of a particular

16   witness, none of the testimony of a particular witness, or part

17   of the testimony of a particular witness.  In other words, you

18   may give the testimony of any witness such credibility and

19   weight, if any, as you may think it deserves.

20          The law does not require the prosecution to call as

21   witnesses all persons who may have been present at any time or

22   place involved in the case or who may appear to have some

23   knowledge of the matters at issue in this trial.  Nor does the

24   law require the prosecution to produce as exhibits all papers and

25   things mentioned in the evidence in the case.

1          You may have heard arguments by counsel that the

2     government did not utilize specific investigative techniques in

3     some respect.  You may consider these facts in deciding whether

4     the government has met its burden of proof because, as I told

5     you, you should look to all of the evidence or lack of evidence

6     in deciding whether the defendants are guilty.

7          However, you also are instructed that there is no legal

8     requirement that the government use any of these specific

9     investigative techniques to prove its case.  The use or non-use

10    of a particular law enforcement or investigative technique is not

11    your concern.  Rather, your concern, as I have said, is to

12    determine whether or not on the evidence or lack of evidence the

13    defendant's guilt has been proved beyond a reasonable doubt.

14         You have heard testimony and seen documents regarding

15    the use of telephones and mobile communication devices.  The fact

16    that a telephone or similar communications device may be

17    subscribed to by a particular person, without more, is not proof

18    that a particular call that originated from or was received by

19    that phone or device was made or received by the person who is

20    the subscriber or who customarily employed that phone or device.

21    This is a matter as to which you may, but are not required, to

22    draw reasonable inferences, as I have previously instructed you.

23         The fact that one party called more witnesses and

24    produced more evidence than another party does not mean that you

25    should necessarily find the facts in favor of the side offering

1    the most witnesses.  In other words, it is the quality, not the

2    quantity, of evidence that is important.

3         You are about to be asked to decide whether or not the

4    government has proven beyond a reasonable doubt the guilt of

5    these defendants.  You are not being asked whether any other

6    person has been proven guilty.  Your verdict should be based

7    solely upon the evidence or lack of evidence as to these

8    defendants in accordance with my instructions and without regard

9    to whether the guilt of other people has or has not been proven.

10        You may not draw any inference, favorable or

11   unfavorable, towards the government or the defendants on trial

12   from the fact that certain other persons were not named as

13   defendants in the indictment.  Whether a person should be

14   indicted as a defendant is a matter within the sole discretion of

15   the United States Attorney and the grand jury.  Therefore, you

16   may not consider it in any way in reaching your verdict as to the

17   defendant on trial.

18        The burden is on the prosecution, that is the

19   government, to prove the defendant's guilt beyond a reasonable

20   doubt.  As a result, the defendants begin the trial here with a

21   clean slate.  This presumption of innocence alone is sufficient

22   to acquit the defendants unless you, after a careful and

23   impartial consideration of all the evidence, are unanimously

24   convinced beyond a reasonable doubt of each defendant's guilt.

25        Note that the government's burden is not to prove guilt

1    beyond all possible doubt, but beyond reasonable doubt.  If the

2    government fails to sustain its burden, you must find the

3    defendant not guilty.  This burden never shifts to the defendant

4    for the simple reason that the law never imposes upon a defendant

5    in a criminal case the reason or duty of calling any witness or

6    producing any evidence.

7         The defendants did not testify in this case.  Under our

8    Constitution, they have no obligation to testify or to present

9    any other evidence because it is the prosecution's burden to

10   prove a defendant guilty beyond a reasonable doubt.  That burden

11   remains with the prosecution throughout the entire trial and

12   never shifts to the defendant.  A defendant is never required to

13   prove that he is innocent.

14        You may not attach any significance to the fact that a

15   defendant did not testify.  No adverse inference against him may

16   be drawn by you because he did not take the witness stand.  You

17   may not consider this against a defendant in any way during your

18   deliberations in the jury room.

19        As you know, the defendants have been detained pending

20   trial in this case.  As I instructed you before, the fact that a

21   defendant is detained pending trial does not diminish the

22   presumption of innocence that protects the defendant.

23        There's been evidence that one or more of the

24   defendants made certain statements to law enforcement officers in

25   which the government argues the defendant admitted certain facts,

44

which the government further argues support the charges in the
indictment.  In addition, you have heard evidence that one or
more of the defendants made exculpatory statements, which you may
find are contradicted by evidence at trial.

In deciding what weight to give a defendant's
statements, you should first examine with great care whether each
statement was made and whether, in fact, it was voluntarily and
understandingly made.  I instruct you that you are to give the
statements such weight as you feel they deserve in light of all
the evidence.

An exculpatory statement by a defendant which is
contradicted by trial evidence may be considered by you as
evidence of the defendant's consciousness of guilt.

You have heard testimony that one or more defendants
may have attempted to persuade one or more government witnesses
not to cooperate or testify.  You may not consider such evidence
as a substitute for proof of guilt in this case.  However, if you
find that a defendant knowingly attempted to persuade a
government witness not to cooperate with the government or that
he threatened to harm someone he believed may be a witness for
the government, you may, but are not required, to infer that the
defendant believed that he was guilty of the crimes for which he
is here charged.

Whether or not evidence of a defendant's attempt to
persuade a witness not to cooperate shows that the defendant

1    believed that he was guilty of the crimes for which he is now

2    charged and the significance, if any, to be given to such

3    evidence is for you, the jury, to decide.

4              Knowledge, willfulness, and intent involve the state of

5    a person's mind.  It has often been said to juries that the state

6    of one's mind is a fact as much as the state of his digestion.

7    Accordingly, this is fact you are called upon to decide.

8              Medical science has not yet devised an instrument which

9    can record what was in one's mind in the distant past.  Rarely is

10   direct proof available to establish the state of one's mind.

11   This may be inferred from what he says or does, his words, his

12   acts, and his conduct, as of the time of the occurrence of

13   certain events.

14             Ladies and gentlemen of the jury, it's been my

15   experience after many years as a judge that when I'm chilly in a

16   courtroom, everybody else is chilly, too.  I'm chilly.  So I'll

17   ask Ms. Arrington if she can check the thermostat and see if we

18   can't bring some heat into this courtroom.

19             Thank you, Ms. Arrington.

20             The intent with which an act is done is often more

21   clearly and conclusively shown by the act itself or by a series

22   of acts than by words or explanations of the act uttered long

23   after its occurrence.  Accordingly, intent, willfulness, and

24   knowledge are usually established by surrounding facts and

25   circumstances as of the time the acts in question occurred or the

1    events took place and the reasonable inferences to be drawn from

2    them.

3           Proof of motive is not a necessary element of the crime

4    with which the defendants are charged.  Proof of motive does not

5    establish guilt nor does want of proof of motive establish that a

6    defendant is innocent.  If the guilt of a defendant is shown

7    beyond a reasonable doubt, it is immaterial what the motive for

8    the crime may be or whether any motive be shown.  But the

9    presence or absence of motive is a circumstance which you may

10   consider as bearing on the intent of a defendant.

11          Two of the distinct charges in the indictment which

12   name all of the defendants, Count One and Count Eight, charge the

13   crime of conspiracy.  The first, a racketeering conspiracy; and

14   the second, a narcotics conspiracy.  In addition, Count One of

15   the indictment contains allegations of so-called racketeering

16   acts, as I will define that term in a moment, some of which are

17   themselves conspiracies.  There are particular evidentiary

18   considerations which I must explain to you in connection with

19   proof of a conspiracy offense.

20          You will recall that I have admitted into evidence

21   against the defendants the acts and statements of others because

22   these acts and statements were committed by persons who, the

23   government charges, were also confederates or coconspirators of

24   the defendants on trial.  The reason for allowing this evidence

25   to be received against the defendants has to do with the nature

1    of the crime of conspiracy.

2              A conspiracy is often referred to as a partnership in

3    crime.  Thus, as in other types of partnerships, when people

4    enter into a conspiracy to accomplish an unlawful end, each and

5    every member becomes an agent for the other conspirators in

6    carrying out the conspiracy.  Accordingly, the reasonably

7    foreseeable acts, declarations, statements, and omissions of any

8    member of the conspiracy and in furtherance of the common purpose

9    of the conspiracy are deemed under law to be the acts of all of

10   the members, and all of the members are responsible for such

11   acts, declarations, statements, and omissions.

12             If you find beyond a reasonable doubt that the

13   defendant whose guilt you are considering was a member of the

14   particular conspiracy charged in the indictment which you are

15   considering, then any acts done or statements made in furtherance

16   of that conspiracy by persons also found by you to have been

17   members of that conspiracy may be considered against that

18   defendant.  This is so even if such acts were done and statements

19   were made in the defendant's absence and without his knowledge.

20             However, before you may consider the statements or acts

21   of a coconspirator in deciding the issue of a defendant's guilt,

22   you must first determine that the acts and statements were made

23   during the existence and in furtherance of the conspiracy.  If

24   the acts were done or the statements were made by someone whom

25   you do not find to have been a member of the conspiracy, or if

1    they were not done or said in furtherance of the conspiracy, they

2    may be considered by you as evidence only against the member who

3    did or said them.

4           In a few instances, the Court admitted statements made

5    by a defendant which were not in furtherance of any conspiracy

6    and which discussed one or more codefendants.  The Court allowed

7    Maryland State Police Sergeant George Wooden to testify about a

8    statement he testified that Shawn Gardner made in May, 1999 after

9    Gardner was stopped on Interstate 95, that mentioned Mr. Martin.

10   That statement is admitted only against Mr. Gardner.  And I

11   instruct you that it cannot be considered in any way or for any

12   purpose in your consideration of any of the charges against any

13   other defendant, including Mr. Martin, or in answering questions

14   about any defendant other than Mr. Gardner, in completing the

15   special verdict form.

16          Similarly, Christopher Dobropolski testified about a

17   statement Mr. Mitchell made to him about an unnamed individual

18   who was facing state charges with Mr. Mitchell.  That statement

19   can only be used against Mr. Mitchell and not against any other

20   defendant.

21          Again, as I have instructed you concerning statements

22   which may have been made in furtherance of a conspiracy, those

23   statements can only be used against the defendant other than the

24   one who made the statement if you first determine that the

25   statement was made during the existence of a conspiracy, in

1    furtherance of the existing conspiracy, and the defendant against

2    whom the statement is to be used was a member of the existing

3    conspiracy at the time the statement was made.

4         There are several other considerations bearing on the

5    issue of conspiracy law which you should bear in mind.  One or

6    more of the defendants have raised the defense that he was not a

7    member of a particular conspiracy alleged in the indictment

8    because he withdrew from the conspiracy.  Also, one or more of

9    the defendants have raised the issue of whether the proof shows

10   that there existed only multiple conspiracies, rather than the

11   two distinct, overarching conspiracies which are charged in

12   Counts One and Eight of indictment, as I shall instruct you in a

13   moment.

14        Once a person joins a conspiracy, that person remains a

15   member until he withdraws from it.  Any withdrawal must be

16   complete and it must be done in good faith.  A person can

17   withdraw from a conspiracy by taking some affirmative steps to

18   terminate or abandon his participation in and efforts to promote

19   the conspiracy.  In other words, the defendant must have

20   demonstrated some type of positive action which disavowed or

21   defeated the purpose of the conspiracy.

22        By way of example, a defendant may withdraw from a

23   conspiracy by giving a timely warning to proper law enforcement

24   officials or wholly depriving his prior efforts of effectiveness

25   in the commission of a crime, or making appropriate efforts to

1    prevent the commission of a crime, or by doing acts which are

2    inconsistent with the objects of the conspiracy and making

3    reasonable efforts to communicate those acts to his

4    coconspirators.

5         Although you may consider whether any defendant's

6    participation in a conspiracy ended when he was arrested, the

7    mere arrest of a conspirator does not inevitably terminate a

8    conspiracy or establish the arrested person's withdrawal from the

9    conspiracy.  In the absence of definite proof, withdrawal from or

10   abandonment of the conspiracy should not be presumed merely

11   because a defendant has been arrested or becomes incarcerated.  A

12   defendant's membership in a conspiracy is presumed to continue

13   until he withdraws from the conspiracy by affirmative action.

14        In this regard, you are reminded that the burden

15   remains with the government to prove beyond a reasonable doubt

16   that the defendant was a member of the conspiracy charged in the

17   indictment.

18        In addition, a mentioned above, the defendants contend

19   that the government's proof fails to show the existence of only

20   one overarching racketeering conspiracy or one overarching

21   narcotics conspiracy.  Rather, they claim that at most there were

22   actually several separate and independent conspiracies with

23   various groups of members.

24        Whether there existed a single unlawful agreement or

25   many such agreements or, indeed, no agreement at all, is a

1    question of fact for you, the jury, to determine in accordance

2    with the instructions I am about to give you.

3         When two or more people join together to further one

4    common, unlawful purpose, a single conspiracy exists.  By way of

5    contrast, separate conspiracies exist when there are separate

6    unlawful agreements to achieve distinct purposes.

7         Proof of several separate and independent conspiracies

8    is not proof of the single overall conspiracies charged in Counts

9    One and Eight of the indictment unless one of the conspiracies

10   proved happens to be the single conspiracy described in those

11   counts of the indictment.

12        You may find that there was a single overarching

13   conspiracy despite changes in personnel, by the termination,

14   withdrawal or additions of new members, or activities or both, so

15   long as you find that some of the coconspirators continued to act

16   for the entire duration of the conspiracy for the purposes

17   charged in the indictment.  The fact that the members of the

18   conspiracy are not always identical does not necessarily imply

19   that separate conspiracies exist.

20        On the other hand, if you find that the conspiracy

21   charged in Counts One or Count Eight of the indictment did not

22   exist, you cannot find any defendant guilty of the single

23   conspiracy charged in that count or of offenses in any other

24   count or counts which are dependent on establishment of that

25   conspiracy.  This is so even if you find that some conspiracy

1   other than the one charged in this indictment existed, even

2   though the purposes of both conspiracies may have been the same

3   and even though there may have been some overlap in the

4   membership.

5        Similarly, if you find that a particular defendant was

6   a member of another conspiracy and not of a conspiracy charged in

7   the indictment, then you must acquit the defendant of that

8   conspiracy charge and of any charge dependent upon it.

9        Therefore, what you must do is determine, as I shall

10  instruct you in a moment, whether the conspiracies charged in

11  Counts One and Eight of the indictment existed.  If it did, you

12  must determine the nature of that conspiracy and who were its

13  members.

14       With these preliminary instructions in mind, let us

15  turn to the charges against the defendants as contained in the

16  indictment.  I remind you that the indictment itself is not

17  evidence.  It merely describes the charges made against the

18  defendants.  It is an accusation.  It may not be considered by

19  you as any evidence of the guilt of the defendants.

20       Obviously, the defendants are not charged with

21  committing any crime other than the offenses contained in the

22  indictment and you are only to consider and return a verdict as

23  to the charges contained in the indictment.

24       Count One of the indictment charges all of the

25  defendants with conspiracy to violate the Racketeer Influenced

1    and Corrupt Organizations statute.  This means that each

2    defendant has been charged with conspiracy to conduct or to

3    participate in the affairs of an enterprise through a pattern of

4    racketeering activity.

5          Count One of the indictment reads as follows:

6          The grand jury for the District of Maryland charges

7    that at various times relevant to this fourth superseding

8    indictment, Willie Mitchell, AKA Bo, Shelton Harris, AKA Rock,

9    Little Rock, Hard Rock, Shelly Wayne Martin, AKA Wayne, Weaze,

10   Weazy, and Shawn Gardner, AKA Goo, along with others known and

11   unknown to the grand jury, were members of a group referred to

12   herein as the Randallstown/Park Heights organization, a criminal

13   organization which operated in Baltimore, Baltimore County,

14   Pennsylvania, and elsewhere, whose members engaged in the

15   distribution of controlled substances and committed acts of

16   violence, including conspiracy to commit murder, murder, armed

17   robbery, and home invasion robbery.

18         On or about December 12, 2000, Shakedown Entertainment

19   Limited was incorporated in Maryland.  The resident agent was

20   Willie Mitchell.  The business produced and promoted rap music

21   recordings and performances.

22         The Randallstown/Park Heights organization, including

23   its leadership, members, and associates constituted an enterprise

24   as defined by Sections 1961(4) and 1959(b)(2) of Title 18 United

25   States Code, that is, a group of individuals and an entity

associated in fact which engaged in, and the activities of which

affected, interstate and foreign commerce.  The enterprise

constituted an ongoing organization whose members functioned as a

continuing unit for a common purpose of achieving the objectives

of the enterprise.

Purposes of the enterprise.  Among the purposes of the

enterprise were the following:  Enriching the members and

associates of the enterprise through, among other things, murder,

armed robbery, home invasion robbery, and distribution of

controlled substances, including cocaine base, commonly known as

crack, cocaine, marijuana, and heroin; preserving and protecting

the power, territory, and profits of the enterprise, and

retaliating again other individuals and organizations through the

use of intimidation, violence, threats of violence, murder, and

murder for profit; promoting and enhancing the enterprise and its

members' and associates' activities; maintaining and promoting

the rap music business in which members and associates were

involved, including Shakedown Entertainment Limited; preventing

and obstructing the arrest and prosecution of members and

associates through witness intimidation and disruption of court

proceedings.

Methods and means of the enterprise.  Among the means

and methods by which the defendants and their associates

conducted and participated in the affairs of the enterprise were

the following.  Members of the enterprise and their associates

1    committed, attempted to commit, and threatened to commit acts of

2    violence, including armed robbery, home invasion robbery, murder,

3    murder for profit, and witness intimidation, to protect and

4    expand the enterprise's criminal operations, retaliate against

5    other individuals and organizations, and to obstruct justice and

6    law enforcement.

7           Members of the enterprise and their associates promoted

8    a climate of fear in Baltimore area neighborhoods through

9    violence and threats of violence.

10          Members of the enterprise and their associates

11   trafficked in cocaine base, commonly known as crack, cocaine,

12   marijuana, and heroin, to obtain money.

13          Members of the enterprise made decisions, both by

14   mutual consent and by direction from its leaders.

15          The racketeering violation.  From in or about 1994

16   through on or about August 18, 2006, in the State and District of

17   Maryland, the Commonwealth of Pennsylvania, the State of New

18   York, and elsewhere, Willie Mitchell, Shelton Harris, Shelly

19   Wayne Martin, and Shawn Gardner, defendants herein, together with

20   persons known and unknown to the grand jury, being persons

21   employed by and associated with the Randallstown/Park Heights

22   organization, an enterprise which engaged in and the activities

23   of which affected interstate and foreign commerce, did knowingly,

24   intentionally, and unlawfully combine, conspire, confederate, and

25   agree to violate Section 1962(c) of Title 18, United States Code,

1     that is, to conduct and participate directly and indirectly in

2     the conduct of the enterprise's affairs through a pattern of

3     racketeering activity, as that term is defined in Sections

4     1961(1) and (5) of Title 18, United States Code, and through the

5     commission of the acts set forth in Paragraph Seven below.  It

6     was a part of the conspiracy that each defendant agreed that a

7     conspirator would commit at least two acts of racketeering

8     activity as listed below in Paragraph Seven in the conduct of the

9     affairs of the enterprise.

10          The pattern of racketeering activity.  The pattern of

11    racketeering activity as defined in Sections 1961(1) and 1961(5)

12    of Title 18, United States Code, consisted of the following acts:

13          Racketeering act one:  Murder and conspiracy to murder

14    Oliver McCaffity.  The defendants named below committed the

15    following acts, either one of which alone constitutes

16    racketeering act one.

17          On or about February 27/28, 2002 in the State and

18    District of Maryland, Willie Mitchell, AKA Bo, and Shelton

19    Harris, AKA Rock, Little Rock, Hard Rock, defendants herein, did

20    feloniously, willfully and of deliberately premeditated malice

21    aforethought kill and murder Oliver McCaffity against the peace,

22    government and dignity of the State, thereby violating Maryland

23    common law and those sections of the Maryland Annotated Code.

24          On or about February 27/28, 2002, in the State and

25    District of Maryland, Willie Mitchell and Shelton Harris,

1     defendants, did knowingly, willfully and unlawfully combine,

2     conspire, confederate, and agree with each other and with others

3     known and unknown to feloniously, willfully and of deliberately

4     premeditated malice aforethought kill and murder Oliver McCaffity

5     against the peace, government and dignity of the State of

6     Maryland, thereby violating Maryland law.

7           Racketeering act two -- murder of Lisa Brown.  On or

8     about the same dates listed above in the State and District of

9     Maryland, Willie Mitchell, Shelton Harris, did feloniously,

10    willfully, and of deliberately premeditated malice aforethought

11    kill and murder Lisa Brown against the peace, government and

12    dignity of the State of Maryland and in furtherance of the

13    defendants' conspiracy to murder Oliver McCaffity, thereby

14    violating Maryland common and statutory law.

15          Racketeering act three.  Murder and conspiracy to

16    murder Darryl Wyche.  The defendants named below committed the

17    following acts, either one of which alone constitutes

18    racketeering act three.  On or about March 24th/25th, 2002, in

19    the State and District of Maryland, Willie Mitchell, Shelly Wayne

20    Martin, Shelton Harris, and Shawn Gardner, defendants herein, did

21    feloniously, willfully, and of deliberately premeditated malice

22    aforethought kill and murder Darryl Wyche and did murder Darryl

23    Wyche during the perpetration of robbery against the peace,

24    government and dignity of the State of Maryland, thereby

25    violating Maryland common and statutory law.

1          On or about March 24/25, 2002, in the State and

2     District of Maryland, those same defendants did knowingly,

3     willfully, and unlawfully combine, conspire, confederate and

4     agree with each other, and with other persons known and unknown,

5     to feloniously, willfully, and of deliberately premeditated

6     malice aforethought kill and murder Darryl Wyche and to murder

7     Darryl Wyche in the perpetration of robbery again the peace,

8     government and dignity of the State of Maryland, thereby

9     violating Maryland common law and statutory law.

10          Racketeering act four -- murder and conspiracy to

11    murder Anthony Wyche.  The defendants named below committed the

12    following acts, either one of which alone constitutes

13    racketeering act four.  On or about March 24/25, 2002, all four

14    of the defendants named did feloniously, willfully, and of

15    deliberately premeditated malice aforethought kill and murder

16    Anthony Wyche and did murder Anthony Wyche during the

17    perpetration of robbery, against the peace, government and

18    dignity of the State of Maryland, thereby violating Maryland

19    common law and statutory law.

20          On or about those same dates, March 24/25, 2002, those

21    same four defendants did knowingly, willfully, and unlawfully

22    combine, conspire, confederate and agree with each other, and

23    with others known and unknown, to feloniously, willfully and of

24    deliberately premeditated malice aforethought kill and murder

25    Anthony Wyche and to murder Anthony Wyche in the perpetration of

1    robbery again the peace, government, and dignity of Maryland,

2    thereby violating Maryland common law and statutory law.

3         Racketeering act five -- armed robbery of Darryl and

4    Anthony Wyche.  On or about the same dates mentioned above, those

5    same four defendants did feloniously rob Darryl Wyche and Anthony

6    Wyche of property with a dangerous or deadly weapon, contrary to

7    the form of the act of assembly in such case made and provided

8    and against the peace, government and dignity of the State of

9    Maryland, thereby in violation of Maryland common and statutory

10   law.

11        Racketeering act six -- murder of Tonya Jones Spence.

12   On or about June 7, 2002, in the State and District of Maryland,

13   Shawn Gardner, AKA Goo, defendant herein, did feloniously,

14   willfully and of deliberately premeditated malice aforethought

15   kill and murder Tonya Jones Spence and did murder Tonya Jones

16   Spence during the perpetration of robbery, against the peace,

17   government and dignity of the State of Maryland, thereby

18   violating Maryland common and statutory law.

19        Racketeering act seven -- armed robbery of Tonya Jones

20   Spence.  On or about June 7, 2002 in the State and District of

21   Maryland, the same defendant, Mr. Gardner, did feloniously rob

22   and attempt to rob Tonya Jones Spence of property with a

23   dangerous or deadly weapon, contrary to the form of the act of

24   assembly in such case made and provided and against the peace,

25   government and dignity of the State of Maryland, thereby

1    violating Maryland common law and statutory law.

2            Racketeering act eight -- conspiracy to murder Darius

3    Spence.  From in or about May, 2002 to on or about June 7, 2002,

4    in the State and District of Maryland, Shawn Gardner, a

5    defendant, did knowingly, willfully and unlawfully combine,

6    conspire, confederate and agree with others known and unknown to

7    feloniously, willfully, and of deliberately premeditated malice

8    aforethought kill and murder Darius Spence and to murder Darius

9    Spence in the perpetration of robbery against the peace,

10   government and dignity of the State of Maryland, thereby in

11   violation of Maryland common and statutory law.

12           Racketeering act nine -- drug trafficking.  From in or

13   about 1994 through in or about February, 2004, in the State and

14   District of Maryland and elsewhere, Willie Mitchell, Shelton

15   Harris, Shelly Wayne Martin and Shawn Gardner, defendants, did

16   knowingly, willfully, and unlawfully conspire with each other and

17   with others known and unknown to the grand jury to knowingly,

18   intentionally and unlawfully distribute 50 grams or more of a

19   mixture or substance containing cocaine base, commonly known as

20   crack, a Schedule II controlled substance, five kilograms or more

21   of a mixture or substance containing cocaine hydrochloride, a

22   Schedule II controlled substance, a quantity of a mixture or

23   substance containing heroin, a Schedule I controlled substance,

24   and a quantity of a mixture or substance containing marijuana, a

25   Schedule I controlled substance, in violation of Title 21, United

1    States Code Section 841(a).

2            The defendants are charged here with violating Section

3    1962(d), that is in Count One of the indictment, of Title 18 of

4    the United States Code.  That section of the law reads as

5    follows:  It shall be unlawful for any person to conspire to

6    violate any of the provisions of Subsections A, B or C of this

7    section.

8            The word "racketeering" has certain implications in our

9    society.  Use of that term in this statute and in this courtroom

10   should not be regarded as having anything to do with your

11   determination of whether the guilt of this defendant has been

12   proven.  The word is only a term used by Congress to describe the

13   statute.

14           In order to prove the defendants, to prove the

15   defendants violated the RICO conspiracy statute, the government

16   must establish beyond a reasonable doubt each of the following

17   elements:  First, that an enterprise existed as alleged in the

18   indictment; second, that the enterprise affected interstate or

19   foreign commerce; third, that the defendant was associated with

20   or employed by the enterprise; and fourth, that the defendant

21   knowingly and wilfully became a member of the conspiracy.

22           The first element the government must prove beyond a

23   reasonable doubt is that an enterprise existed as alleged in the

24   indictment.  Under the statute, an enterprise which is described

25   here as the Randallstown/Park Heights organization, may consist

1    of a group of individuals who are associated together for a

2    common purpose of engaging in a course of conduct over a period

3    of time.

4            In addition to having a common purpose, this group of

5    individuals must have an ongoing organizational structure, either

6    formal or informal, and it must have personnel who function as a

7    continuing unit.

8            This group of individuals does not have to be a legally

9    recognized entity, such as a formal partnership or a legally

10   formed corporation.  The group may be organized for a legitimate

11   and lawful purpose or it may be organized for an unlawful

12   purpose.  Shakedown Entertainment Limited was a Maryland

13   corporation and thus a formal legal organization.  However,

14   Shakedown Entertainment Limited is charged to be affiliated with

15   the enterprise, namely, the alleged Randallstown/Park Heights

16   organization.  It is not the enterprise that is charged in this

17   indictment, in other words.

18           Again, and specifically, the indictment charges the

19   following enterprise existed:  At various times relevant to this

20   fourth superseding indictment, Willie Mitchell, Shelton Harris,

21   Shelly Wayne Martin, and Shawn Gardner, along with others known

22   and unknown to the grand jury, were members of a group referred

23   to herein as the Randallstown/Park Heights organization, a

24   criminal organization which operated in Baltimore, Baltimore

25   County, Pennsylvania, and elsewhere, whose members engaged in the

1   distribution of controlled substances and committed acts of

2   violence, including conspiracy to commit murder, murder, armed

3   robbery, and home invasion robbery.

4          On or about December 12, 2000, Shakedown Entertainment

5   Limited was incorporated in Maryland.  The resident agent was

6   Willie Mitchell.  The business produced and promoted rap music

7   recordings and performances.  The Randallstown/Park Heights

8   organization, including its leadership, members and associates

9   constituted an enterprise as defined by federal law, that is a

10  group of individuals and an entity associated in fact which

11  engaged in and the activities of which affected interstate and

12  foreign commerce.  The enterprise constituted an ongoing

13  organization whose members functioned as a continuing unit for a

14  common purpose of achieving the objectives of the enterprise.

15         Among the purposes of the enterprise were enriching the

16  members and associates of the enterprise through, among other

17  things, murder, armed robbery, home invasion robbery, and

18  distribution of controlled substances, including those listed in

19  Paragraph 4-A; preserving and protecting the power, territory,

20  and profits of the enterprise, and retaliating against other

21  individuals and organizations through the use of intimidation,

22  violence, threats of violence, murder, and murder for profit;

23  promoting and enhancing the enterprise and its members and

24  associates' activities; maintaining and promoting the rap music

25  business in which members and associates were involved, including

1    Shakedown Entertainment, its members and associates; preventing

2    and obstructing the arrest and prosecution of members and

3    associates through witness intimidation and disruption of court

4    proceedings.

5           Among the means and methods by which the defendants and

6    their associates conducted and participated in the affairs of the

7    enterprise were members of the enterprise and their associates

8    committed, attempted to commit, and threatened to commit acts of

9    violence, including armed robbery, murder, murder for profit,

10   witness intimidation, to protect and expand the enterprise's

11   criminal activities, criminal operations, retaliate against other

12   individuals and organizations, and to obstruct justice and law

13   enforcement; members of the enterprise and their associates

14   promoted a climate of fear in Baltimore; members of the

15   enterprise and their associates trafficked in narcotics; and

16   members of the enterprise made decisions, both by mutual consent

17   and by direction from its leaders.

18          If you find that there was a group of individuals and

19   that that group was characterized by a common purpose, an ongoing

20   formal or informal organization, and by personnel who functioned

21   as a continuing unit, then you may find that an enterprise

22   existed.

23          If you find that the enterprise existed, then you must

24   also determine whether this enterprise continued in an

25   essentially unchanged form during substantially the entire period

1    charged in Count One of the indictment.  This does not mean that

2    everyone involved has to be the same, but the core group of

3    individuals comprising the enterprise has to be the same

4    throughout.

5         Now, the second element the government must prove

6    beyond a reasonable doubt is that the enterprise engaged in or

7    had an effect on interstate or foreign commerce.  Interstate

8    commerce includes the movement of goods, services, money, and

9    individuals between the states or between the United States and a

10   foreign state or nation.

11        The government must prove that the enterprise engaged

12   in or affected interstate commerce in any way, no matter how

13   minimal.  It does not have to prove that racketeering activity

14   affected interstate commerce, although proof that racketeering

15   acts did affect interstate commerce is sufficient to satisfy this

16   element.

17        It is not necessary to prove that the acts of any

18   particular defendant affected interstate commerce, as long as the

19   acts of the enterprise had such an effect.

20        Finally, the government is not required to prove that

21   any defendant knew he was affecting interstate or foreign

22   commerce.

23        The third element that the government must prove beyond

24   a reasonable doubt is that the defendant was associated with or

25   was employed by the enterprise.  It is not required that the

defendant have been associated with or employed by the enterprise for the entire time that the enterprise existed.  It is required, however, that the government prove beyond a reasonable doubt that at some time during the period charged in the indictment the defendant in question was associated with or was employed by the enterprise.

A person cannot be associated with or employed by an enterprise if he does not know of the enterprise's existence or the nature of its activities.  Thus, in order to prove this element, the government must prove beyond a reasonable doubt that the defendant was connected to the enterprise in some meaningful way and that the defendant knew of the existence of the enterprise and of the general nature of its activities.

Now on Page 42, ladies and gentlemen.

The fourth element of the government must prove beyond a reasonable doubt is that the defendant knowingly and willfully became a member of the conspiracy.  This means that in order to meet its burden of proof, the government must show that the defendant agreed to participate directly or indirectly in the affairs of the enterprise through a pattern of racketeering activity.

The focus of this element is on the defendant's agreement to participate in the achievement of the objectives of the enterprise to engage in a pattern of racketeering activity and not on the defendant's agreement to commit the individual

criminal acts.  The government must prove that the defendant participated in some manner in the achievement of the overall objectives of the conspiracy and that the conspiracy involved or would have involved the commission of two racketeering acts.  The government is not required to prove either that the defendant agreed to commit two racketeering acts or that he actually committed two racketeering acts, although you may conclude that he agreed to participate in the conduct of the enterprise through proof that he agreed to commit or actually committed racketeering acts.

For the purposes of Count One, the government must prove that at least two of the nine racketeering acts alleged in Count One were or were intended to be committed as part of the conspiracy, although it need not prove that any defendant committed or agreed to commit any of these acts so long as the government proves that the defendant participated in some manner in the achievement of the overall objectives of the conspiracy.

As I previously instructed you, this is a federal prosecution.  Nevertheless, many of the federal charges in this indictment refer to and incorporate to some degree, violations of the criminal law of the State of Maryland.  You have heard some evidence concerning the outcomes of prior state prosecutions.  In some instances a witness remembered the particular outcome and in some circumstances they did not recall the particular outcome. In some instances, you heard references to testimony given at a

1     prior proceeding or trial, but there was no inquiry concerning

2     the outcome.

3           You are not to speculate about the purpose or outcome

4     of any prior proceedings and must reach your decision in this

5     case by evaluating the evidence in this case to determine whether

6     the government has proven each and every element of each offense

7     beyond a reasonable doubt.

8           Under our system of government, both the federal

9     government and the state government may undertake a criminal

10    prosecution for the same general underlying conduct if the

11    underlying conduct constitutes a crime under both state and

12    federal law.

13          Under this dual sovereignty doctrine, the federal

14    government can bring federal criminal charges even if state

15    prosecutors may have previously prosecuted the same general

16    underlying conduct under state law.  Moreover, the federal

17    government's decision to go forward with a federal prosecution is

18    based on a variety of factors and it is not dependent on a

19    particular result, if any, of a prior prosecution.  Indeed,

20    federal prosecutions often are authorized even after a state

21    prosecution has resulted in a conviction.

22          Even though the charges may sound similar and there may

23    be significant overlap of elements, the federal charges often

24    require proof of several elements that are not a part of any

25    state prosecution.

1          In addition, whether or not the State of Maryland has

2    previously prosecuted some of the alleged criminal acts that you

3    have heard about during this case, your verdict in this case will

4    have no legal effect on whether the State of Maryland determines

5    to bring a state prosecution after this case.

6          Most of the racketeering acts charged in Count One

7    allege violations of federal law and are also charged as separate

8    counts in the indictment.  I will explain the elements of these

9    federal offenses later when I cover the separate counts.

10         Several of the charged racketeering acts are violations

11   of state law -- conspiracy, murder, assault, and armed robbery.

12   In order for a state offense to be considered a racketeering act,

13   the government must prove beyond a reasonable doubt that the

14   state offense was committed as defined by Maryland law.

15         The elements of the state offenses as defined in

16   Maryland law are as follows:  Racketeering act one.  Racketeering

17   Act One of Count One of the indictment charges the defendants

18   Willie Mitchell and Shelton Harris with the murder of and

19   conspiracy to murder Oliver McCaffity.  That racketeering act

20   reads as follows:

21         On or about February 27/28, 2002 in the State and

22   District of Maryland, Willie Mitchell and Shelton Harris,

23   defendants, did feloniously, willfully and of deliberately

24   premeditated malice aforethought kill and murder Oliver McCaffity

25   against the peace, government, and dignity of the state.  That is

1    Racketeering Act 1(a).

2           Under the law of Maryland, first degree murder is

3    defined as the intentional killing of another individual, of

4    another person with willfulness, deliberation and premeditation.

5    Second degree murder is the killing of another person with either

6    the intent to kill or the intent to inflict such serious bodily

7    harm that death would be the likely result.  Second degree murder

8    does not require premeditation or deliberation.

9           The government must prove that the conduct of the named

10   defendants caused the death of Oliver McCaffity and that the

11   defendant engaged in the deadly conduct either with the intent to

12   kill or the intent to inflict such serious bodily harm that death

13   would be the likely result.

14          You may find that Racketeering Act 1(a) was committed

15   if you find beyond a reasonable doubt that either first degree

16   murder or second degree murder was committed by one or both of

17   the defendants named in Racketeering Act One.

18          Willful means that a defendant actually intended to

19   kill the victim.  Deliberate means that the defendant was

20   conscious of the intent to kill.  Premeditated means that the

21   defendant thought about the killing and that there was time,

22   though it need only have been brief, for the defendant to form

23   the intent to kill.

24          Now, Racketeering Act One also charges the same two

25   defendants with the additional crime of conspiring with each

1    other to murder Oliver McCaffity.  If the defendants committed

2    this offense or the offense charged in Racketeering Act 1(a), you

3    may find that Racketeering Act 1(a) was committed.

4            Racketeering Act 1(b) reads:  On or about those same

5    dates, February 27/28, 2002, those defendants, Mr. Mitchell and

6    Mr. Harris, did knowingly, willfully and unlawfully conspire,

7    confederate and agree with each other, and with others known and

8    unknown, to feloniously, willfully and of deliberately

9    premeditated malice aforethought kill and murder Oliver McCaffity

10   against the peace, government and dignity of the state, in

11   violation of state law.

12           Under the laws of Maryland, conspiracy is an agreement

13   between two or more persons to commit a crime.  In order to

14   convict the defendant of conspiracy to commit murder, the

15   government must prove, one, that the defendant entered into an

16   agreement with at least one other person to commit the crime of

17   murder; and two, that the defendant that the defendant entered

18   into the agreement with the intent that the murder be committed.

19           I previously instructed you on the definitions of first

20   and second degree murder under the laws of Maryland.  Note that

21   conspiracy is a distinct crime.  Conspiracy focuses on the

22   existence of an illegal agreement and the defendant's entry into

23   that agreement.  Conspiracy does not require proof that any

24   defendant murdered the victim or even that he took a substantial

25   step to murder the victim.

1          Return now to Racketeering Act Two.  Racketeering Act

2    Two charges the defendants Willie Mitchell and Shelton Harris

3    with the murder of Lisa Brown.  That racketeering act reads:  On

4    or about the same date previously mentioned, February 27/28,

5    2002, in this State and District, those defendants, Mr. Mitchell,

6    Mr. Harris, did feloniously, willfully and of deliberately

7    premeditated malice aforethought kill and murder Lisa Brown

8    against the law of Maryland and in furtherance of the defendants'

9    conspiracy to murder Oliver McCaffity.

10          I previously instructed you on the definitions of first

11    and second degree murder under the laws of Maryland and I

12    previously instructed you as to the definition of the law of

13    conspiracy as well.

14          Racketeering Act Three reads as follows.  Excuse me.

15    Racketeering Act 3(a) of Count One of the indictment charges all

16    four of the defendants with the murder of Darryl Wyche, and

17    Racketeering Act 3(b) charges the same defendants with conspiracy

18    to murder Darryl Wyche.

19          If you find beyond a reasonable doubt that one of these

20    defendants committed this murder or that one of these defendants

21    conspired with at least one other person to commit this murder,

22    that is the murder of Darryl Wyche, then Racketeering Act Three

23    was committed.

24          Racketeering Act Three reads as follows:  The

25    defendants named below committed the following acts, either one

73

1  of which alone constitutes Racketeering Act Three:  On or about

2  March 24/25, 2002, in the State and District of Maryland, all

3  four defendants, Mr. Mitchell, Mr. Harris, Mr. Martin, and Mr.

4  Gardner, did feloniously, willfully, and of deliberately

5  premeditated malice aforethought kill and murder Darryl Wyche and

6  did murder Darryl Wyche during the perpetration of robbery,

7  against the laws of Maryland.  And then(b), on or about March

8  24/25, 2002, in this State and District, those same four

9  defendants did knowingly, wilfully, and unlawfully combine,

10 conspire, confederate and agree with each other, and with others

11 known and unknown, to feloniously, willfully and of deliberately

12 premeditated malice aforethought kill and murder Darryl Wyche and

13 to murder Darryl Wyche in the perpetration of robbery, against

14 the peace, government and dignity of the State of Maryland,

15 thereby violating Maryland common and statutory law.

16        I previously instructed you on the definitions of first

17 and second degree murder and conspiracy to commit murder under

18 the laws of Maryland in connection with Racketeering Act One.

19        Racketeering Act Four concerns the murder of Anthony

20 Wyche.  Racketeering Act Four of Count One of the indictment

21 charges all four defendants with the murder of Anthony Wyche, and

22 Racketeering Act 4(b) charges the same defendants with conspiracy

23 to murder Anthony Wyche.

24        Again, if you find beyond a reasonable doubt that one

25 of these defendants committed this murder or that one of these

1    defendants conspired with at least one other person to commit

2    this murder, then Racketeering Act Three was committed.

3           And as you can see, ladies and gentlemen, there's a

4    typo there on Page 49.  That should read Racketeering Act Four,

5    is what we're discussing here.

6           The defendants named below committed the following

7    acts, either one of which alone constitutes Racketeering Act

8    Four:

9           On or about March 24/25, 2002, in the State and

10   District of Maryland, all four defendants did feloniously,

11   willfully, and of deliberately premeditated malice aforethought

12   kill and murder Anthony Wyche and did murder Anthony Wyche during

13   the perpetration of robbery, against the law of Maryland.

14          And then Racketeering Act 4(b) reads, on or about March

15   24/25, 2002, in the State and District of Maryland, all four

16   named defendants did knowingly, willfully and unlawfully combine,

17   conspire, confederate and agree with each other, and with others

18   known and unknown, to feloniously, willfully, and of deliberately

19   premeditated malice aforethought kill and murder Anthony Wyche

20   and to murder Anthony Wyche in the perpetration of robbery,

21   against the law of Maryland.

22          I previously instructed you on the definitions, of

23   course, of first and second degree murder and conspiracy to

24   commit murder, and those same definitions apply here.

25          Racketeering Act Five charges all four defendants with

1    violating the state law against armed robbery.  Racketeering Act

2    Five reads:  On or about March 24/25, 2002, all four defendants

3    did feloniously rob Darryl Wyche and Anthony Wyche of property

4    with a dangerous or deadly weapon, contrary to the form of the

5    act of assembly, in such case made and provided, and against the

6    peace, government and dignity of the state, thereby violating

7    Maryland common law and statutory law.

8         Robbery is the taking and carrying away of property

9    from someone else's presence and control by force, with the

10   intent to deprive the victim of the property.  In order to

11   convict the defendant of armed robbery, the government must prove

12   the following elements beyond a reasonable doubt:  One, that the

13   defendant took the property from the victim's presence and

14   control; two, that the defendant took the property by force or

15   threat of force; three, that the defendant intended to deprive

16   the victim of the property; and four, that the defendant

17   committed the robbery by using a dangerous weapon.

18        Property means anything of value.

19        A dangerous weapon is an object that is capable of

20   causing death or serious bodily harm.

21        To deprive means to withhold property of another

22   permanently for such period as to appropriate a portion of its

23   value, with the purpose of restoring it only upon payment of a

24   reward or other compensation or to dispose of the property and

25   use or deal with the property so as to make it unlikely that the

1    owner will recover it.

2         Racketeering Act Six charges the defendant Shawn

3    Gardner alone with the murder of Tonya Jones Spence.  It reads:

4    On or about June 7, 2002, in the State and District of Maryland,

5    Shawn Gardner, AKA Goo, defendant, did feloniously, willfully,

6    and of deliberately premeditated malice aforethought kill and

7    murder Tonya Jones Spence and did murder Tonya Jones Spence

8    during the perpetration of robbery, against the peace,

9    government, and dignity of the state, thereby violating Maryland

10   common law and statutory law.

11        I previously instructed you on the definitions of first

12   and second degree murder under the laws of Maryland.

13        Racketeering Act Seven charges the defendant, Shawn

14   Gardner, with violating the state law against armed robbery.  It

15   reads:  On or about the same date, June 7, 2002, defendant did

16   feloniously rob and attempt to rob Tonya Jones Spence of property

17   with a dangerous or deadly weapon, contrary to the form of the

18   act of assembly, in such case made and provided, and against the

19   peace, government and dignity of the state, thereby violating

20   Maryland common law and statutory law.

21        I previously instructed you on the law of armed robbery

22   in the State of Maryland.

23        Racketeering Act Eight charges the defendant, Mr.

24   Gardner, with conspiracy to murder Darius Spence.  If Shawn

25   Gardner conspired with at least one other person to commit this

1    murder, you may find that Racketeering Act Eight was committed.

2           The allegations of that racketeering act read as

3    follows:  From in or about May, 2002 to on or about June 7th,

4    2002, in the State and District of Maryland, Shawn Gardner, AKA

5    Goo, defendant, did knowingly, willfully and unlawfully combine,

6    conspire, confederate and agree with others known and unknown to

7    feloniously, willfully, and of deliberately premeditated malice

8    aforethought kill and murder Darius Spence and to murder Darius

9    Spence in the perpetration of robbery, against the peace,

10   government and dignity of the state, thereby violating Maryland

11   common and statutory law.

12          And I have previously instructed you on the law of

13   conspiracy.

14          Now, we move both to Racketeering Act Nine and Count

15   Eight of the indictment.

16          Racketeering Act Nine of Count One of the indictment

17   and Count Eight of the indictment are identical.  They both

18   charge all four defendants with conspiracy to distribute crack,

19   cocaine, heroin and marijuana.  I will now therefore charge you

20   on both.

21          Racketeering Act Nine and Count Eight read as follows:

22   From in or about 1994 through in or about February, 2004, in the

23   State and District of Maryland and elsewhere -- I believe that

24   that's a typo.  I believe it should read February, 2006.

25          MR. HARDING:  No.

1          THE COURT:  No.  I'm sorry.  It's not a typo.  I

2     apologize.  The racketeering conspiracy is alleged to have lasted

3     from 1994 to 2006.  The narcotics conspiracy alleged in Count

4     Eight and in Racketeering Count Nine uses the dates 1994 through

5     February, 2004.

6          From in or about 1994 through in or about February,

7     2004, in the State and District of Maryland and elsewhere, Willie

8     Mitchell, Shelton Harris, Shelly Wayne Martin, and Shawn Gardner,

9     defendants, did knowingly and willfully and unlawfully conspire

10    with each other and with others known and unknown to the grand

11    jury to knowingly, intentionally and unlawfully distribute 50

12    grams or more of a mixture or substance containing cocaine base,

13    commonly known as crack, a Schedule II controlled substance, five

14    kilograms or more of a mixture or substance containing cocaine

15    hydrochloride, a Schedule II controlled substance, a quantity of

16    a mixture or substance containing heroin, a Schedule I controlled

17    substance, and a quantity of a mixture or substance containing

18    marijuana, a Schedule I controlled substance, in violation of

19    Title 21, United States Code, Section 841.

20         Count Eight and Racketeering Act Nine are brought under

21    Section 846 of Title 21, which provides in pertinent part that

22    any person who conspires to commit any offense defined in this

23    subchapter has violated the criminal laws of the State of

24    Maryland.

25         Excuse me one moment, ladies and gentlemen.  Ms.

1        Arrington, are we going to be alerted when lunch arrives?  Okay.

2        You'll get a signal?  Okay.  Good.

3             You are instructed, ladies and gentlemen, that a

4        violation of Section 841(a)(1) of Title 21 is an offense defined

5        under this subchapter and that Section 841(a)(1) provides in

6        pertinent part that it shall be unlawful for any person knowingly

7        or intentionally to distribute, dispense, or possess with intent

8        to distribute or dispense a controlled substance.

9             You are instructed as a matter of law that crack

10       cocaine, cocaine, heroin and marijuana are controlled substances,

11       specifically Schedule I and Schedule II narcotics controlled

12       substances, as those terms are used in these instructions, the

13       indictment, and the statutes just read to you.

14            You must, of course, determine whether or not the

15       material in question was, in fact, crack cocaine, cocaine, heroin

16       or marijuana.  In so doing, you may consider all evidence in the

17       case which may aid you in the determination of that issue,

18       including the testimony of any witnesses who may testify either

19       to support or to dispute the allegations that the material in

20       question was crack cocaine, cocaine, heroin or marijuana, or any

21       stipulation between the parties regarding the nature of the

22       substances.

23            The government may prove the material was crack

24       cocaine, cocaine, heroin or marijuana through either direct or

25       circumstantial evidence.

1          An example of direct evidence is the testimony of a

2    chemist who has done a chemical analysis of the material.

3    Circumstantial evidence would be evidence from which you could

4    infer that the material was cocaine or heroin, such as testimony

5    concerning the names used by the defendants to refer to the

6    material or testimony about the material's appearance.  Whether

7    the government relies on direct or circumstantial evidence to

8    prove the material was cocaine or heroin, it must prove so beyond

9    a reasonable doubt.

10          In this case, the defendants are accused of conspiracy

11    to distribute or possess with the intent to distribute cocaine

12    and heroin, and we've left out there marijuana and crack cocaine.

13          A conspiracy is a kind of criminal partnership, a

14    combination or agreement of two or more persons to join together

15    to accomplish some unlawful purpose.  The crime of conspiracy to

16    violate a federal law is an independent offense.  It is separate

17    and distinct from the actual violation of any specific federal

18    laws which the law refers to as substantive crimes.  Indeed, you

19    may find a defendant's guilty of the crime of conspiracy to

20    commit an offense against the United States even though the

21    substantive crime which was the object of the conspiracy was not

22    actually committed.  Moreover, you may find a defendant guilty of

23    conspiracy despite the fact that he himself was incapable of

24    committing the substantive crime.

25          In order to satisfy its burden of proof on Count Eight

1    and Racketeering Act Nine, the government must establish each of

2    the following two essential elements beyond a reasonable doubt:

3    First, that two or more persons entered into the unlawful

4    agreement charged; and second, that the defendant knowingly

5    became a member of the conspiracy.  As Count Eight and

6    Racketeering Act Nine charge a conspiracy involving the

7    distribution or possession with intent to distribute crack

8    cocaine, cocaine, heroin, and marijuana, definitions of

9    "distribute" and "possession" are in order.

10            The word "distribute" means to deliver a narcotic.

11   Deliver is defined as the actual, constructive or attempted

12   transfer of a narcotic.  Simply stated, the words "distribute"

13   and "deliver" mean to pass on or to hand over to another or to

14   cause to be passed on or handed over to another, or to try to

15   pass on or hand over to another narcotics.

16            Distribution does not require a sale.  Activities in

17   furtherance of the ultimate sale, such as vouching for the

18   quality of the drugs, negotiating for or receiving the price, and

19   supplying or delivering the drugs may constitute distribution.

20            In short, distribution requires a concrete involvement

21   in the transfer of the drugs.

22            The legal concept of possession may differ from the

23   everyday usage of the term so I will explain that term in some

24   detail.

25            Actual possession is what most of us think of as

1  possession.  That is, having physical custody and control of an

2  object.  For example, if you find that the defendant had the

3  drugs on his person, you may find that he had possession of the

4  drugs.  However, a person need not have actual, physical custody

5  of an object in order to be in legal possession of it.  If an

6  individual has the ability to exercise substantial control over

7  an object that he does not have in his physical custody, then he

8  is in possession of that item.

9       An example of this from everyday experience would be a

10  person's possession of items he keeps in a safe deposit box of

11  his bank.  Although the person does not have physical custody of

12  those items, he exercises substantial control over them and so he

13  has what is known as constructive possession of them.

14       Possession of the drugs cannot be found solely on the

15  ground that a defendant was near or close to the drugs, nor can

16  it be found simply because a defendant was present at a scene

17  where drugs were involved or solely because a defendant

18  associated with a person who does control the drugs or the

19  property where the drugs were found.  However, these factors may

20  be considered by you in connection with all other evidence in

21  making your decision whether a defendant conspired to possess

22  drugs.

23       The first element which the government must prove

24  beyond a reasonable doubt to establish the offense of conspiracy

25  is that two or more persons entered the unlawful agreement

1    charged in the indictment.  In order for the government to

2    satisfy this element, you need not find that the alleged members

3    of the conspiracy met together and entered into any express or

4    formal agreement.

5         Similarly, you are not required, you need not find that

6    the alleged conspirators stated in words or writing what the

7    scheme was, its object or purpose, or every precise detail of the

8    scheme or the means by which its object or purpose was to be

9    accomplished.  Indeed, it is sufficient for the government to

10   show that the conspirators tacitly came to a mutual understanding

11   to accomplish an unlawful act by means of a joint plan or common

12   design.

13        You may, of course, find that the existence of an

14   agreement to disobey or disregard the law has been established by

15   direct proof.  However, since conspiracy is by its very nature

16   characterized by secrecy, you may also infer its existence from

17   the circumstances of this case and the conduct of the parties

18   involved.

19        In a very real sense, then, in the context of

20   conspiracy cases, actions often speak louder than words.  In this

21   regard, you may, in determining whether an agreement existed

22   here, consider the actions and statements of all those you find

23   to be participants as proof that a common design existed on the

24   part of the person charged and his coconspirators to act together

25   for the accomplishment of an unlawful purpose.

1          Now, the second element which the government must prove

2     beyond a reasonable doubt to establish the offense of narcotics

3     conspiracy is that the defendants knowingly, willfully, and

4     voluntarily became members of the conspiracy.  If you are

5     satisfied that the narcotics conspiracy charged in the indictment

6     existed, you must next ask yourselves who the members of the

7     conspiracy were.

8          In deciding whether the defendant whom you are

9     considering was in fact a member of the conspiracy, you should

10    consider whether the defendant knowingly and willfully joined the

11    conspiracy.  Did he participate in it with knowledge of its

12    unlawful purpose and with the specific intention of furthering

13    its business or objective as an associate or worker?

14         In that regard, it has been said that in order for a

15    defendant to be deemed a participant in a conspiracy, he must

16    have had a stake in the venture or its outcome.  You are

17    instructed that while proof of a financial interest in the

18    outcome of a scheme is not essential, if you find that the

19    defendant had such an interest, that is a factor which you may

20    properly consider in determining whether or not the defendant was

21    a member of the conspiracy charged in the indictment.

22         As I mentioned a moment ago, before the defendant can

23    be found to have been a conspirator, you must first find that he

24    knowingly joined in the unlawful agreement or plan.  The key

25    question, therefore, is whether the defendant joined the

1    conspiracy with an awareness of at least some of the basic aims

2    and purposes of the unlawful agreement.

3          It is important for you to note that the defendant's

4    participation in the conspiracy must be established by

5    independent evidence of his own acts or statements and the

6    reasonable inferences which may be drawn from them.

7          A defendant's knowledge is a matter of inference from

8    the facts proved.  In that connection, I instruct you that to

9    become a member of the conspiracy, a defendant need not have

10   known the identities of each and every member, nor need he have

11   been apprised of all of their activities.  Moreover, a defendant

12   need not have been fully informed as to all of the details or the

13   scope of the conspiracy in order to justify an inference of

14   knowledge on his part.  Furthermore, a defendant need not have

15   joined in all the conspiracy's unlawful objectives.

16         The extent of a defendant's participation has no

17   bearing on the issue of a defendant's guilt.  A conspirator's

18   liability is not measured by the extent or duration of his

19   participation.  Indeed, each member may perform separate and

20   distinct acts and may perform them at different times.  Some

21   conspirators play major roles while others play minor parts in

22   the scheme.  An equal role is not what the law requires.  In

23   fact, even a single act may be sufficient to draw the defendant

24   within the ambit of the conspiracy.

25         I want to caution you, however, that a defendant's mere

1    presence at the scene of the alleged crime does not by itself

2    make him a member of the conspiracy.  Similarly, mere association

3    with one or more members of the conspiracy does not automatically

4    make a defendant a member.  A person may know or be friendly with

5    a criminal without being a criminal himself.  Mere similarity of

6    conduct or the fact that they may have assembled together and

7    discussed common aims and interests does not necessarily

8    establish proof of the existence of a conspiracy.

9            I think I'm getting the sign that lunch is here.

10   That's the sign we were waiting for.  Let me finish this part of

11   it, ladies and gentlemen.  At the bottom of Page 60.

12           I also want to caution you that mere knowledge or

13   acquiescence, without participation, in the unlawful plan is not

14   sufficient.  Moreover, the fact that the acts of a defendant,

15   without knowledge, merely happened to further the purposes or

16   objectives of the conspiracy does not make a defendant a member.

17   More is required under the law.

18           Excuse me.  Belinda, I think you may be needed.

19           What is necessary is that the defendant must have

20   participated with knowledge of at least some of the purposes or

21   objectives of the conspiracy and with the intention of aiding in

22   the accomplishment of those objectives, of those unlawful ends.

23           In sum, the defendant, with an understanding of the

24   unlawful character of the conspiracy, must have intentionally

25   engaged, advised or assisted in it for the purpose of furthering

1    the illegal undertaking.  He thereby becomes a knowing and

2    willing participant in the unlawful agreement; that is to say, a

3    conspirator.

4         If you'll indulge me, ladies and gentlemen, let me

5    complete the instruction relating to Racketeering Act Nine and

6    the narcotics conspiracy, approximately another page and a half,

7    and then I'll excuse you to have your lunch.  I'm in the middle

8    of Page 61.

9         The conspiracy alleged in Count Eight and Racketeering

10   Act Nine of the indictment is alleged to have lasted from in or

11   about 1994 to on or about February, 2004.  In this connection, I

12   instruct you that the government need only prove that the

13   particular conspiracy took place during a period of time

14   reasonably related to that alleged in the indictment, which may

15   include a period of time outside or less than the dates charged.

16         Furthermore, with respect to the charge that the

17   offense took place in the State and District of Maryland, you are

18   instructed that the government need only prove that an act

19   committed by any member of the conspiracy in furtherance of the

20   conspiracy charged in the indictment occurred in Maryland for the

21   defendants to be charged in Maryland.

22         If you find that the government has proven each of the

23   elements of the charged narcotics conspiracy beyond a reasonable

24   doubt, then you must determine beyond a reasonable doubt what

25   types and quantities of narcotics were distributed and/or

1    possessed with the intent to distribute as part of the

2    conspiracy.  To assist you in this, I will provide you with a

3    verdict sheet that will ask you to answer certain questions about

4    the types and quantities of narcotics in the conspiracy in Count

5    Eight and Racketeering Act Nine.

6           If you find that the controlled substance involved in

7    this case is cocaine base or crack cocaine and/or powder cocaine,

8    you must next determine the amount of crack cocaine and/or powder

9    cocaine that was involved in the conspiracy.  Furthermore, if you

10   find that the government has proven any defendant guilty of the

11   conspiracy charged in Count Eight, that is that the alleged

12   conspiracy existed and that the defendant knowingly and

13   intentionally became a member of the conspiracy, then you must

14   determine what type and quantity of controlled substances are

15   attributable to that particular defendant.

16          In determining what type and quantity of controlled

17   substance is attributable to a particular defendant, you should

18   consider the following factors.  First, a defendant is

19   accountable for any type and quantity of drugs which he

20   personally distributed or possessed with intent to distribute.

21          Second, a defendant is also accountable for any type

22   and quantity of drugs which he attempted to or planned to

23   distribute or possess with intent to distribute.  Specifically, a

24   defendant is accountable for those drugs even if those drugs were

25   never actually obtained or distributed, so long as an objective

1    of the conspiracy was for the defendant to distribute or possess

2    with intent to distribute such a type and quantity of drugs.

3         Third, a defendant is also accountable for any type and

4    quantity of drugs which another member of the conspiracy

5    distributed or possessed with intent to distribute as part of the

6    conspiracy so long as it was reasonably foreseeable to the

7    defendant that such a type and quantity of drugs would be

8    involved in the conspiracy which he joined.

9         Fourth, a defendant is also accountable for any type

10   and quantity of drugs which another member of the conspiracy

11   attempted to or planned to distribute or possess with intent to

12   distribute so long as it was reasonably foreseeable to the

13   defendant that such a type and quantity of drugs would be

14   involved in the conspiracy which he joined.  A defendant is

15   accountable for those drugs even if those drugs were never

16   actually obtained or distributed by other members of the

17   conspiracy so long as an objective of the conspiracy was for the

18   other members of the conspiracy to distribute or possess with

19   intent to distribute such a type and quantity of drugs.

20        The last two rules apply even if the defendant did not

21   personally participate in the acts or plans of his coconspirators

22   or even if the defendant did not have actual knowledge of those

23   acts or plans so long as those acts or plans were reasonably

24   foreseeable to the defendant.  The reason for this, as I have

25   instructed you, is simply that a coconspirator is deemed to be

1    the agent of all other members of a conspiracy.  Therefore, all

2    of the coconspirators bear criminal responsibility for acts or

3    plans that are undertaken to further the goals of the conspiracy.

4         Recall that the government must prove that at least two

5    of the nine racketeering acts alleged in Count One were or were

6    intended to be committed as part of the RICO conspiracy, although

7    it need not prove that any defendant committed or agreed to

8    commit any of these acts so long as the government proves that

9    the defendant participated in some manner in the overall

10   objective of the conspiracy.

11        Members of the jury, we will now take a luncheon

12   recess, I will say an abbreviated luncheon recess, with your

13   indulgence.  Lunch should be waiting for you in the jury room.  I

14   thought Ms. Arrington would be back by now but she's not.  But

15   I'm sure she'll be rejoining us.  Once again, she manages to come

16   and go without my noticing.

17        All the lunches are in the jury room, Ms. Arrington?

18   The jury is pleased to hear that.

19        I'm going to limit lunch, with your indulgence, to 45

20   minutes.  And during lunch, for those of you who wish to get some

21   fresh air, please feel free to step outside.  But I hope you

22   don't have an errand, such as going to the bank or something that

23   will require you to stand in line, because I'd like you to be

24   back in the jury room in 45 minutes, ready to continue.

25        It is now, by the clock of the courtroom, three minutes

1    of one.  So I'm going to ask you to be back in the jury room by

2    1:45.  I will complete my instructions.  And I do believe that

3    you will have some time today to begin your deliberations.  But

4    we'll see whether that's so and, if so, how many time.  But I

5    think you will have some time to begin your deliberations.

6          But we aren't at that point yet.  You haven't heard all

7    of my instructions.  So my interim instruction remains as it has

8    always been.  Please leave your note pads and your copies of the

9    instructions on your chairs.  Have no discussion whatsoever about

10   the case or about the evidence or my instructions during your

11   lunch.  I know the temptation's going to be very strong to begin

12   your deliberations because I've instructed you on some counts,

13   but it's important for you to hear all of my instructions before

14   you begin your deliberations.

15         And I will also say, you have the pleasure of the

16   company of our alternate jurors for lunch.  They will not be

17   permitted to be in the jury room once you begin your

18   deliberations.  So it would be improper for you to begin your

19   deliberations while they're in there.  Not that -- that's the

20   law.  I'm not ordering that.  It's the law.  So it's important

21   that you not begin your deliberations and that you have no

22   discussion about the case during your deliberations.

23         So the jury's excused for lunch and for a brief step

24   outside if you want.  But please be back in the jury room 45

25   minutes from now, at 1:45.

1    (Jury exits the courtroom.)

2    THE COURT:  The reason I'm laughing, counsel, one of

3    the jurors, who shall remain unidentified, on his menu selection

4    included Amstel Light.  I want to assure counsel and the parties

5    that that particular menu item was not delivered and that there's

6    no alcoholic beverages in the jury room.

7    MR. KURLAND:  Where's the food from?

8    THE COURT:  Across the street, up the street.  Sorry to

9    limit your choices.  I should have warned you, counsel, to bring

10   your lunch.  But we're in recess for 45 minutes, until 1:45.

11   (Luncheon recess at 1 p.m.)

12   MR. HARDING:  Judge, I'm sorry.  The laptop that the

13   court provided is not, in fact, a blank laptop.  It's got other

14   stuff on it, including, got internet access on it.  It's got

15   music on it.  It's got various things.  I asked Belinda to see if

16   the IT guy could come down because all we want, I assume, are the

17   files in this case.

18   THE COURT:  Well, first of all, it's not going to have

19   internet access.  There's not wireless access in this courtroom.

20   MR. HARDING:  It's got internet explorer.

21   THE COURT:  Oh, yeah, it's got the software but they're

22   not going to be able to connect to the Internet.  And I'll

23   instruct them, of course, that they are not to use the laptop for

24   any purpose other than reviewing the evidence.

25   MR. HARDING:  There are eight --

1          THE COURT:  When I use the term "clean laptop", I

2     meant, you know, it shouldn't be a government laptop with

3     unredacted exhibits and that kind of thing.  But, you know, I

4     don't mind that there are, there's the standard software that the

5     court puts on laptops.  I think it will be okay.

6          MR. HARDING:  Good some music on it.

7          THE COURT:  They may need some.  Is it Beethoven or

8     Brahms?

9          MR. HARDING:  Actually, it had Beethoven's Ninth

10    Symphony.  I just played it a moment ago.

11         THE COURT:  There you go.  There you go.  I think

12    that's fine.  But I'll instruct them that they are not to play

13    with the laptop.

14         MR. HARDING:  Also, Your Honor, just for the Court's

15    information, this CD, this DVD of the, of the assault upstairs

16    could not be loaded on to the computer.  My office is willing to

17    donate this DVD player, which will play this.

18         THE COURT:  Okay.  Great.  Thank you, Mr. Harding.  All

19    right.  We're ready, I think.

20         (Jury enters the courtroom.)

21         THE COURT:  Good afternoon, ladies and gentlemen of the

22    jury.  We'll resume my instructions on Page 64.

23         I want to assure you that, despite appearances, that is

24    being only on Page 64 with 124 total pages in your looseleaf, we

25    are well beyond 50% finished.  So I don't want you to think we're

1    only halfway through.  We're much better than halfway through.

2            And I will avoid repetition.  As you probably noticed,

3    in some of my earlier instructions, I simply summarized certain

4    aspects so as not to have to repeat myself, although they are

5    repeated in the written instructions.

6            So we move on, then, to Counts 2, 4, 5, 6 and 7.  Count

7    2, 4, 5, 6 and 7 of the indictment charge the defendants with

8    violent crimes in aid of racketeering.  The statute is Section

9    1959 of Title 18, reads as follows:  Whoever, as consideration

10   for receipt of, or as consideration for a promise or agreement to

11   pay, anything of pecuniary value from an enterprise engaged in

12   racketeering activity or for the purpose of gaining entrance to

13   or maintaining or increasing position in an enterprise engaged in

14   racketeering activity, murders any individual in violation of the

15   laws of any state or the United States or attempts or conspires

16   to do so shall be guilty of a crime.

17           Section 1959, which is often referred to as the VICAR

18   statute, standing for Violent Crimes in Aid of Racketeering, was

19   first enacted in 1984.  There's a close relationship between

20   Section 1959 and the RICO provisions I mentioned earlier, and

21   many of the concepts involved in VICAR cases, such as the

22   definitions of enterprise and racketeering activity have the same

23   meaning as in RICO cases.

24           Defendants Mitchell and Harris are charged in Count Two

25   of the indictment with the murder of Oliver McCaffity in aid of a

1    racketeering enterprise.

2         Count Two reads as follows:  The grand jury for the

3    District of Maryland charges, Paragraphs One Through Five as set

4    forth in Count One are incorporated herein by reference.  From in

5    or about 1994 through on or about August 18th, 2006, the

6    Randallstown/Park Heights organization, an enterprise, through

7    its members and associates, engaged in racketeering activity as

8    defined under federal law, namely, conspiracy to distribute

9    controlled substances in violation of federal law, witness

10   retaliation in violation of federal law, armed robbery, and

11   murder.

12        On or about February 27/28, 2002, in the State and

13   District of Maryland, for the purpose of gaining entrance to and

14   maintaining and increasing their positions in the

15   Randallstown/Park Heights organization, and as consideration for

16   the receipt of and for a promise or agreement to pay a thing of

17   pecuniary value from the Randallstown/Park Heights organization,

18   an enterprise engaged in racketeering activity, Willie Mitchell,

19   AKA Bo, and Shelton Harris, AKA Rock, Little Rock, Hard Rock,

20   defendants herein, feloniously, willfully, and of deliberately

21   premeditated malice aforethought did kill and murder Oliver

22   McCaffity against the peace, government and dignity of the State

23   of Maryland, of the state, in violation of Maryland common law

24   and Article 27, Section 407 and 411 of the Annotated Code of

25   Maryland.

1          Defendants Mitchell and Harris are charged in Count

2     Four with the murder of Lisa Brown, in aid of racketeering.

3     Count Four reads as follows in pertinent part.  Again, Paragraphs

4     One Through Five are incorporated, that is Paragraphs One Through

5     Five from Count One are incorporated by reference into Count

6     Five.

7          On or about February 27, 2000 -- February 27/28, 2002,

8     in this state and district, for the purpose of gaining entrance

9     to and maintaining and increasing their positions in the

10    Randallstown/Park Heights organization, and as consideration for

11    the receipt of, and for a promise or agreement to pay, a thing of

12    pecuniary value, from the Randallstown/Park Heights organization,

13    an enterprise engaged in racketeering activity, Mr. Mitchell, Mr.

14    Harris, defendants, feloniously, willfully, and of deliberately

15    premeditated malice aforethought, did kill and murder Lisa Brown,

16    and so on.

17         Next is Count Five.  All four defendants are charged in

18    Count Five with the murder of Darryl Wyche in aid of

19    racketeering.  Count Five reads in pertinent part, after

20    incorporating the same first five paragraphs -- we're now over to

21    Page 67 -- on or about March 24/25, 2002, in the State and

22    District of Maryland, for the purpose of gaining entrance to and

23    maintaining and increasing their positions in the

24    Randallstown/Park Heights organization, and as consideration for

25    the receipt of, and for a promise or agreement to pay a thing of

1    pecuniary value from the Randallstown/Park Heights organization,

2    an enterprise engaged in racketeering activity, Willie Mitchell,

3    Shelton Harris, Shelly Wayne Martin, and Shawn Gardner,

4    defendants, feloniously, willfully, and of deliberately

5    premeditated malice aforethought, did kill and murder Darryl

6    Wyche and did kill and murder Darryl Wyche during the

7    perpetration of robbery against the laws of Maryland.

8           Again, all four defendants are charged in Count Six,

9    which reads in relevant part, after incorporating the first five

10   paragraphs of Count One -- we're now over on Page 68 -- on or

11   about March 24/25, 2002, in the State and District of Maryland,

12   for the purpose of gaining entrance to and maintaining and

13   increasing their positions in the Randallstown/Park Heights

14   organization, and as consideration for the receipt of and for a

15   promise or agreement to pay a thing of pecuniary value from the

16   Randallstown/Park Heights organization, an enterprise engaged in

17   racketeering activity, all four named defendants feloniously,

18   willfully, and of deliberately premeditated malice aforethought,

19   did kill and murder Anthony Wyche and did murder Anthony Wyche

20   during the perpetration of robbery, against the peace, government

21   and dignity, and so on.

22          Defendant Shawn Gardner alone is charged in Count Seven

23   of the indictment with the murder in aid of racketeering of Tonya

24   Jones Spence.  Count Seven also incorporates the first five

25   paragraphs of Count One and then reads, in Paragraph Two, which

1    you'll find on Page 69, on or about June 7, 2002, in the State

2    and District of Maryland, for the purpose of gaining entrance to

3    and maintaining and increasing his position in the

4    Randallstown/Park Heights organization, and as consideration for

5    the receipt of and for a promise or agreement to pay a thing of

6    pecuniary value from the Randallstown/Park Heights organization,

7    an enterprise engaged in racketeering activity, defendant Shawn

8    Gardner, feloniously, willfully and of deliberately premeditated

9    malice aforethought, did kill and murder Tonya Joan Spence and

10   did murder Tonya Jones Spence during the perpetration of robbery,

11   against the laws of Maryland.

12            Now, in order to prove that a defendant violated

13   Section 1959 as charged in Counts Two, Four, Five, Six and Seven,

14   the government must establish beyond a reasonable doubt each one

15   of the following five elements:

16            First, that an enterprise affecting interstate commerce

17   existed;

18            Second, that the enterprise was engaged in racketeering

19   activity;

20            Third, that the defendant had or was seeking a position

21   in the enterprise;

22            Fourth, that the defendant committed the alleged crime

23   of violence;

24            And fifth, the defendant's purpose in committing the

25   crime of violence was to maintain or increase his position in the

1    enterprise or in consideration for the receipt of anything of

2    value.

3            The first element the government must prove beyond a

4    reasonable doubt is that an enterprise existed which was engaged

5    in or had an effect upon interstate or foreign commerce.  I have

6    already explained these requirements to you in connection with

7    the RICO conspiracy count, Count One.

8            The second element the government must establish beyond

9    a reasonable doubt is that the enterprise was engaged in

10   racketeering activity.  I've already reviewed with you, in

11   connection with Count One, the acts of racketeering activity that

12   were engaged in by the enterprise, according to the indictment.

13           I charge you that racketeering activity includes such

14   offenses as murder, dealing in narcotics, and robbery.  It is for

15   you to determine whether the enterprise engaged in these

16   activities as charged.  You should give the words "engaged in"

17   their ordinary, everyday meaning.

18           For an enterprise to be engaged in racketeering

19   activity, it is enough to show that the enterprise committed or

20   was planning to commit some racketeering activity within a period

21   of time short enough under all of the circumstances so that it is

22   appropriate to say that the enterprise was engaged in

23   racketeering activity.

24           Some racketeering acts, such as narcotics distribution,

25   are federal offenses that I have already defined for you.  In

1    order for state offenses, such as murder and robbery, to be

2    considered as racketeering acts, the government must prove to you

3    beyond a reasonable doubt that the defendant committed that

4    offense as defined by Maryland law.  I have already instructed

5    you on the meaning of first and second degree murder, felony

6    murder, and robbery in Maryland law, and I will review the

7    definitions in my instruction on the fourth element.

8         The third element the government must establish beyond

9    a reasonable doubt is that defendant had or was seeking a

10   position in the enterprise.  To establish this element, the

11   government must prove the defendant was actively engaged in

12   promoting the illegal activities of the enterprise.  It is not

13   enough to prove the defendant was doing business with the

14   enterprise.  The government must prove that he was actually a

15   member of the enterprise.

16        The fourth element the government must establish beyond

17   a reasonable doubt is that defendant committed murder.  Let me

18   now instruct you on the elements of murder.

19        As I told you in connection with the first racketeering

20   act in Count One, under the laws of Maryland, first degree murder

21   is defined as the intentional killing of another person with

22   willfulness, deliberation, and premeditation.  In order to

23   convict the defendants of first degree murder under Counts Two,

24   Four, Five, Six, and Seven, the government must prove beyond a

25   reasonable doubt, one, that the defendants caused the death of

1    the victim, and two, that the killing was willful, deliberate,

2    and premeditated.

3         As I also instructed you, willful means that the

4    defendant actually intended to kill the victim.  Deliberate means

5    that the defendant was conscious of the intent to kill.

6    Premeditated means that the defendant thought about the killing

7    and that there was time, though it need only have been brief, for

8    the defendant to form the intent to kill.

9         The two elements of the crime of second degree murder

10   in Maryland law are as follows:  That the conduct of the

11   defendant caused the death of the victim; and two, that the

12   defendant engaged in the deadly conduct either with the intent to

13   kill or with the intent to inflict such serious bodily harm that

14   death would be the likely result.

15        In addition to the allegations of first and second

16   degree intentional murder as described above, Counts Four, Five,

17   Six and Seven also charge the state offense of felony murder.

18   Specifically, Count Four charges that the murder of Lisa Brown

19   was committed during and in furtherance of the murder of Oliver

20   McCaffity.

21        In order to prove the charge of felony murder as

22   alleged on Count Four, the government must prove three elements.

23   One, that the defendant, or another participating in the crime

24   with the defendant, murdered Oliver McCaffity; two, that the

25   defendant, or another participating in the crime, killed Lisa

1    Brown; and three, that the act resulting in the death of Lisa

2    Brown occurred during the commission or escape from the scene of

3    the murder of Oliver McCaffity.

4         It is not necessary for the government to prove that

5    the defendant intended to kill Lisa Brown in order to convict the

6    defendant of felony murder.

7         Similarly, Counts Five, Six, and Seven charge that the

8    murders occurred during and in furtherance of the perpetration of

9    robbery.  In order to convict the defendant of felony murder on

10   these counts, the government must prove three elements:  One,

11   that the defendant or another participating, participating in the

12   crime with the defendant, committed robbery; two, that the

13   defendant, or another participating in the crime, killed the

14   victim named in each count; and three, that the act resulting in

15   the death of the victim occurred during the commission or escape

16   from the immediate scene of the robbery.

17        It is not necessary for the government to prove that

18   the defendant intended to kill the victim in order to convict of

19   felony murder.

20        As I will instruct you in more detail in these

21   instructions, the defendants also have been charged in Counts

22   Two, Four, Five, Six, and Seven with aiding and abetting the

23   offense of murder in aid of racketeering.  The law recognizes

24   that a person can be criminally responsible for an act such as

25   murder if he aids and abets the commission of the crime by,

1    first, being present when the crime was committed, and second, by

2    willfully participating with the intent to make the crime

3    succeed.

4            The fifth element the government must establish beyond

5    a reasonable doubt is the defendants's general purpose in

6    committing the murder in each count was to maintain or increase

7    his position in or to gain entrance to the enterprise, or in

8    consideration for the receipt of anything of value.

9            The government is required to prove that defendant's

10   general purpose was to maintain or increase his position in the

11   enterprise.  The government is not required to prove that it was

12   defendant's sole or principal motive.

13           In determining whether a defendant's purpose in

14   committing the murder or violent crime was to maintain or

15   increase his position in the enterprise, you should give the

16   words "maintain" and "increase" their ordinary meanings.  You

17   should consider all of the facts and circumstances in making that

18   determination.

19           For example, you may consider evidence that the crime,

20   if proved, was committed in order to maintain discipline within

21   the enterprise and served to maintain the defendant's position in

22   the enterprise.  If the defendant committed the crime because he

23   knew it was expected of him by reason of his membership in the

24   enterprise or if he committed the crime because he thought it

25   would enhance his position or prestige within the enterprise, or

1    if he committed it because he thought it was necessary to

2    maintain the position he already held, this element would be

3    established.  These examples are only meant by way of

4    illustration.  They are not exhaustive.

5         In summary and as stated above, Counts Two, Four, Five,

6    Six, and Seven of the indictment charge the defendants with first

7    and second degree murder in aid of racketeering.  In addition, as

8    stated, Counts Two, Four, Five, Six and Seven charge the

9    defendants with first degree felony murder as well.

10        If the government fails to prove that a defendant

11   committed at least one of the types of murder for each count,

12   then you must find the defendant not guilty on that count.  On

13   the other hand, the government need not prove all of the types of

14   murder for you to find the defendant guilty on each count.  It is

15   sufficient if you find beyond a reasonable doubt that the

16   defendant committed at least one of the types of murder charged

17   in Counts Two, Four, Five, Six, and Seven in order to convict the

18   defendant.

19        However, in order to convict the defendant on one or

20   more of Counts Two, Four, Five, Six and Seven, all twelve jurors

21   must agree on at least one of the specific types of murder the

22   defendant committed.  Accordingly, in order to find the defendant

23   guilty of murder in aid of racketeering, all of you must agree

24   that the defendant committed either first degree intentional

25   murder, second degree murder, or felony murder, as the case may

1    be.  Of course, it is also possible that all of you may also

2    agree that the defendant committed more than one type of these

3    predicate offenses, but there must be agreement as to at least

4    one form of murder before a defendant may be convicted.

5              We move on, then, to Count Three.

6              Count Three charges defendants Mitchell and Harris with

7    conspiring to murder Oliver McCaffity in aid of racketeering.

8    Count Three reads, after incorporating Paragraphs One Through

9    Five of Count One, as have the other VICAR murder, violent crime

10   offenses I just described, goes on to read as follows in

11   Paragraph Two:

12             On or about February 27/28, 2002, in the State and

13   District of Maryland, for the purpose of gaining entrance to and

14   maintaining and increasing their positions in the

15   Randallstown/Park Heights organization, and as consideration for

16   the receipt of or for a promise or agreement to pay a thing, to

17   pay a thing of pecuniary value from the Randallstown/Park Heights

18   organization, an enterprise engaged in racketeering activity,

19   Willie Mitchell and Shelton Harris, defendants, did conspire with

20   one another and with other persons known and unknown to the grand

21   jury to feloniously, willfully and of deliberately premeditated

22   malice aforethought kill and murder Oliver McCaffity in violation

23   of and against the peace, government and dignity of the State of

24   Maryland, and in violation of statutory and common law.

25             Count Three charges a violation of a statute, Violent

1    Crimes in Aid of Racketeering Activity, which I just described to

2    you.  The pertinent provisions of that law relevant to Count

3    Three relate to those who conspire to commit murder, in contrast

4    to the earlier counts where the statute deals with those who

5    actually commit murder.

6         The same two defendants are charged in Count Two, as I

7    just mentioned, with committing the actual murder of Oliver

8    McCaffity.  As I have explained to you, the crime of conspiracy

9    is an independent offense separate and distinct from the

10   substantive crimes.  Indeed, you may find the defendants guilty

11   of the crime of conspiracy to commit an offense against the

12   United States even though the substantive crime which was the

13   object of the conspiracy was not actually committed.

14        In order to satisfy its burden of proof for Count

15   Three, the government must establish each of the following three

16   essential elements beyond a reasonable doubt: First, that two or

17   more persons entered the unlawful agreement charged in the first

18   count of the indictment; second, that the defendant knowingly

19   became a member of the conspiracy; third, that the defendants

20   conspired to commit the murder either for the purpose of gaining

21   entrance to an enterprise engaged in racketeering activity or for

22   maintaining or increasing their position in an enterprise engaged

23   in racketeering activity, or as consideration for the receipt of

24   value, of anything of value.

25        I believe that's a typo, is it not?  Should it read,

1    first, that two or more persons entered the unlawful agreement

2    charged in Count Three?  I think --

3            MR. HARDING:  Yes, Your Honor.

4            THE COURT:  Yes.  Okay.  So again, I've caught just a

5    typo that I'm responsible for, ladies and gentlemen.  If you go

6    back up near the top of Page 77, where I'm describing the first

7    element of the offense, the conspiracy to commit murder in

8    violation of Section 1959 as alleged in Count Three, it should

9    read first that two or more persons entered the unlawful

10   agreement charged in the third count of the indictment.

11           Okay.  Resuming.  I have already explained the first

12   two elements of conspiracy in connection with Count Eight and

13   Racketeering Count Nine.  For Count Three, the third element is

14   that defendants Mitchell and Harris conspired to commit the

15   murder of Oliver McCaffity either for the purpose of gaining

16   entrance to an enterprise engaged in racketeering activity or for

17   maintaining or increasing their position in an enterprise; namely

18   here, the Randallstown/Park Heights organization, engaged in

19   racketeering activity or, as consideration for the receipt of

20   anything of value.

21           This element is the same as the fifth element for the

22   murder counts I explained to you a few moments ago.

23           To repeat, the government is required to prove that the

24   defendant's general purpose was to maintain or increase his

25   position in the enterprise.  The government is not required to

1    prove that it was the defendant's sole or principal purpose.

2            In determining whether a defendant's purpose in

3    committing the murder or violent crime was to maintain or

4    increase his position in the enterprise, you should give the

5    words "maintain" and "increase" their ordinary meanings.  You

6    should consider all of the facts and circumstances in making that

7    determination.

8            And again, ladies and gentlemen, you'll notice, I'm

9    sure you'll notice that I left out the word "conspiring to

10   commit" because here we're talking about Count Three in which Mr.

11   Mitchell and Mr. Harris are charged separately with conspiring to

12   murder Mr. McCaffity in aid of racketeering activities.  And so

13   the very first line of Page 78 should read, in determining

14   whether a defendant's purpose in conspiring to commit the murder

15   or violent crime, and so on.

16           Again, you should give those words, the words

17   "maintain" and "increase" their ordinary meanings.  You should

18   consider all of the facts and circumstances in making that

19   determination.

20           For example, you may consider evidence that the crime,

21   if proved, was committed in order to maintain discipline within

22   the enterprise and served to maintain the defendant's position in

23   the enterprise.  If the defendant committed the crime because he

24   knew it was expected of him by reason of his membership in the

25   enterprise or if he committed the crime because he thought it

1    would enhance his position or prestige within the enterprise or

2    if he committed it because he thought it was necessary to

3    maintain the position he already held, this element would be

4    established.

5              These examples, again, are only meant by way of

6    illustration.  They are not exhaustive.

7              We move now, ladies and gentlemen, to Counts 9, 10, 12

8    and 15 of the indictment.  Counts 9, 10, 12 and 15 of the

9    indictment charge the defendants who are named in those counts

10   with possessing a firearm in furtherance of a crime of violence

11   or drug trafficking offense.

12             The indictment reads, as to Count Nine:  On or about

13   February 27/28, 2002 in the State and District of Maryland,

14   Willie Mitchell and Shelton Harris, defendants, during and in

15   relation to a crime of violence for which the defendants may be

16   prosecuted in a court of the United States, that is, the murder

17   of Oliver McCaffity in aid of racketeering, in violation of

18   Section 1959(a)(1), as set forth in Count Two of -- and again

19   another typo, instead of third it should say fourth superseding

20   indictment -- and during and in relation to a drug trafficking

21   crime for which the defendants may be prosecuted in a court of

22   the United States, that is, conspiracy to distribute and possess

23   with intent to distribute controlled substances in violation of

24   federal law as set forth in Count Eight of this fourth

25   superseding indictment, did knowingly possess and discharge a

1    firearm in furtherance of said crimes.

2            Count 10 likewise charges Mr. Mitchell and Mr. Harris

3    with possession of a firearm in furtherance of a crime of

4    violence or a drug distribution, drug trafficking offense.  And

5    in all respects it is identical to Count Nine except that it

6    charges the defendants in connection with Count Four of the

7    indictment, which is the conspiracy -- excuse me -- the murder of

8    Oliver McCaffity.  Let me doublecheck and make sure I don't

9    misspeak.

10           MR. HARDING:  I think it's Lisa Brown.

11           THE COURT:  Lisa Brown.  Excuse me.  Okay.  So count --

12   thank you, Mr. Harding.  So Count Two -- I'm sorry, we're up to

13   Count 11, Count Nine -- excuse me.  So Count Nine is the count

14   that refers to Count Two, which is the murder of Oliver

15   McCaffity.  Count Ten is the same charge, possession of a firearm

16   in furtherance of a crime of violence, but it relates to both

17   Count Eight, the narcotics conspiracy, as well as the murder of

18   Lisa Brown in Count Four.

19           Count 12 -- I'm now on Page 80 -- charges all four

20   defendants.  And it reads:  On or about March 24/25, 2002, in the

21   State and District Maryland, defendants Mitchell, Harris, Martin

22   and Gardner, during and in relation to a crime of violent for

23   which the defendants may be prosecuted in a court of the United

24   States, that is the murders of Darryl and Anthony Wyche, in aid

25   of racketeering, in violation of federal law as set forth in

1    Counts Five and Six of the fourth superseding indictment, and

2    during and in relation to a drug trafficking crime for which the

3    defendants may be prosecuted in the United States, that is

4    conspiracy to distribute and possess with intent to distribute

5    controlled substances as set forth in Count Eight of, should be

6    fourth superseding indictment, did knowingly possess and

7    discharge a firearm, to wit, a .40 caliber semiautomatic handgun,

8    in furtherance of said crimes.

9        Count 15 goes on to charge that on or about June 7,

10   2002 in the State and District of Maryland, Shawn Gardner, AKA

11   Goo, defendant, during and in relation to a crime of violence for

12   which the defendant may be prosecuted in a court of the United

13   States, that is the murder of Tonya Jones Spence, in aid of

14   racketeering, in violation of Title 18, United States Code

15   Section 1959(a)(1), as set forth in Count Seven.  Again, third is

16   there, ladies and gentlemen.  We're talking always about the

17   fourth superseding indictment.

18       And you will recall, by the way, that I mentioned that

19   every time I refer to the indictment in my instructions, I'm

20   referring to the fourth superseding indictment, a separate copy

21   of which will be provided to you in the jury room during your

22   deliberations.  So wherever you see third superseding indictment,

23   understand that it should say fourth superseding indictment.

24       During and in relation to a drug trafficking crime for

25   which the defendant may be prosecuted in a court of the United

1    States, that is, conspiracy to distribute and possess with intent

2    to distribute controlled substances in violation of Title 21,

3    United States Code, Section 846, as set forth in Count Eight, did

4    knowingly possess and discharge a firearm, to wit, a .357 caliber

5    magnum Dan Wesson Model 14 revolver, bearing Serial Number

6    304373, and a .40 caliber Smith & Wesson Glock, Model 23,

7    semiautomatic pistol, bearing serial number BDW356-US, in

8    furtherance of said crimes.

9         Now, the relevant statute on these counts is Title 18,

10   United States Code, Section 924(c), which provides in pertinent

11   part, any person who, in furtherance of any crime of violence or

12   drug trafficking crime for which the person may be prosecuted in

13   a court of the United States, possesses a firearm shall be guilty

14   of a crime.  Under Count Nine, the two defendants named, Mr.

15   Mitchell and Mr. Harris, are charged with possessing a firearm in

16   furtherance of the crime of violence charged in Count Two, the

17   murder of Oliver McCaffity.  They are also charged with

18   possessing the firearm in furtherance of the conspiracy to

19   distribute controlled substances charged in Count Eight.

20        As in the earlier counts, you need not find the

21   defendants possessed the firearm in furtherance of both Counts

22   Two and Count Eight, but before you may convict the defendant

23   under this count, all 12 members of the jury must be unanimous

24   that the possession was in furtherance of either Count Two or

25   Count Eight.

1           If upon all of the evidence you find that the

2     government has failed to prove either Count Two or Count Eight

3     beyond a reasonable doubt, then you will proceed no further.

4           Count Nine is to be considered only if you first find

5     the defendant guilty under Count Two or Count Eight as proved.

6     I'll have more to say about this shortly, ladies and gentlemen.

7           The same considerations apply to Count 10, which charge

8     Mr. Mitchell and Mr. Harris, and Count 12, which charges all

9     defendants, and Count 15, which charges Mr. Gardner, where the

10    defendants named are charged with possessing firearms in

11    furtherance of both crimes of violence and the drug conspiracy

12    count.

13          In reaching your verdict on Counts 9, 10, 12, and 15,

14    you may consider the evidence of the murder counts and the drug

15    conspiracy count, Count 8, only for the purpose of determining

16    whether the elements of Counts 9, 10, 12 and 15 have been

17    satisfied.

18          The government must prove each of the following

19    elements beyond a reasonable doubt to sustain its burden of

20    proving a defendant guilty of Counts 9, 10, 12, and 15 of the

21    indictment:  First, that the defendant committed a crime of

22    violence or drug trafficking crime for which he might be

23    prosecuted in a court of the United States; second, that the

24    defendant knowingly possessed a firearm in furtherance of the

25    crime of violence charged or the drug conspiracy described in

1    Counts 9, 10, 12 and 15.

2            The first element the government must prove beyond a

3    reasonable doubt is that the defendant committed a crime of

4    violence or a drug trafficking crime for which he might be

5    prosecuted in a court of the United States.  The defendants

6    Mitchell and Harris are charged in Count Nine with possessing a

7    firearm in furtherance of the murder of Oliver McCaffity, as

8    charged in Count Two of the indictment.  I instruct you that the

9    crime of murder in aid of racketeering as charged in Count Two is

10   a crime of violence for which the defendants may be prosecuted in

11   a court of the United States.  It is for you to determine beyond

12   a reasonable doubt whether the government has proven the crime of

13   murder as charged in Count Two.

14           The two named defendants, that is Mr. Mitchell and Mr.

15   Harris, are also charged in Count Nine with possessing a firearm

16   in furtherance of the drug conspiracy in Count Eight, which I

17   instruct you is a drug trafficking crime for which the defendants

18   may be prosecuted in a court of the United States.  The very same

19   considerations apply to Counts 10, 12 and 15.

20           In Count Ten, the same two defendants are charged with

21   the murder in aid of racketeering of Lisa Brown as charged in

22   Count Four of the indictment, which I instruct you is a crime of

23   violence for which the defendants may be prosecuted in a court of

24   the United States.

25           In Count 12, all four defendants are charged with the

1    murders of Darryl and Anthony Wyche, as charged in Counts Five

2    and Six respectively, which I instruct you are crimes of violence

3    for which the defendants may be prosecuted in a court of the

4    United States.

5            In Count 15, defendant Gardner is charged with the

6    murder of Tonya Jones Spence, as set forth in Count Seven, which

7    I instruct you is a crime of violence for which the defendant may

8    be prosecuted in a court of the United States.

9            As in Count 9, the defendants charged in Counts 10, 12,

10   and 15 are also charged with possessing a firearm in furtherance

11   of the drug conspiracy, which is the separate charge placed in

12   Count 8, which I instruct you, again, is a drug trafficking crime

13   for which the defendants may be prosecuted in a court of the

14   United States.

15           Again, it is for you to determine that the government

16   has proven beyond a reasonable doubt that the defendant committed

17   the drug trafficking crimes and the crimes of violence charged.

18           The second element the government must prove beyond a

19   reasonable doubt is that the defendant knowingly possessed a

20   firearm in furtherance of one or more of the crimes described in

21   Counts 9, 10, 12 and 15.  A firearm is any weapon which will or

22   is designed to or may be readily converted to expel a projectile

23   by the action of an explosive.

24           To prove that the defendant possessed the firearm in

25   furtherance of the crime, the government must prove that the

1    defendant had possession of the firearm and that such possession

2    was in furtherance of that crime.

3         Possession means that the defendant either had physical

4    possession of the firearm on his person or that he had dominion

5    and control over the place where the firearm was located and had

6    the power and intention to exercise control over the firearm.

7         To possess a firearm in furtherance of the crime means

8    that the firearm helped forward, advance, or promote the

9    commission of the crime.  The mere possession of the firearm at

10   the scene of the crime is not sufficient under this definition.

11   The firearm must have played some part in furthering the crime in

12   order for this element to be satisfied.

13        Again, in each of the four counts charged -- in

14   addition, each of four counts charges the defendants with aiding

15   and abetting, about which I will have more to say in a few

16   minutes.

17        Now we move on to Counts 11, 13, 14 and 16.  Counts 11,

18   13, 14 and 16 charge the defendants named in each count with

19   causing the death of a person through the use of a firearm in the

20   course of committing the offense charged under count, under Title

21   18, United States Code, Section 924(c), which I just described.

22   In other words, Counts 11, 13, 14 and 16 charge the defendants

23   with causing a death in the course of committing the possession

24   and use of firearms crimes charged respectively in Counts 9, 10,

25   12, and 15.

1          So in other words, we can just step back for a moment,

2     ladies and gentlemen.  The earlier counts charged the defendants

3     with possession of a firearm in furtherance of either a crime of

4     violence, murder, or the drug conspiracy charged in Count Eight.

5     And I just instructed you on that.

6          Now I'm about to instruct you on causing a death in

7     connection with the possession of firearms which I just described

8     to you.  So Count 11 reads, On or about February 27/28, 2002, in

9     the State and District of Maryland, Mr. Mitchell and Mr. Harris,

10    defendants, in the course of a violation of Title 18, United

11    States Code, Section 924(c), which I just described to you, as

12    set forth in Count 10 of this fourth superseding indictment,

13    caused the death of a person through the use of a firearm, a

14    killing that was a murder as defined in Title 18, United States

15    Code, Section 1111 in that the defendants murdered a human being,

16    Lisa Brown, willfully, deliberately, maliciously, with

17    premeditation, and committed said murder in the perpetration of

18    the murder of Oliver McCaffity.

19          Count 13 similarly charges Mr. Mitchell, Mr. Harris,

20    Mr. Martin, and Mr. Gardner, all four defendants, with the same

21    offense; namely, in the course of a violation of Title 18, United

22    States Code, Section 924(c), the possession of a firearm charge,

23    as set forth in Count 12 of the fourth superseding indictment,

24    caused the death of a person through the use of a firearm, a

25    killing that was a murder as defined in Title 18, United States

1    Code, Section 1111, in that the defendants unlawfully and with

2    malice aforethought murdered a human being, Darryl Wyche, in the

3    perpetration of robbery.

4           Count 14, likewise, names all four defendants and

5    contains the same allegations that you see in Count 15 -- excuse

6    me -- in Count 13, only there the victim is Anthony Wyche rather

7    than Darryl Wyche.

8           Count 16 goes on, same charge, this time under the date

9    of June 7, 2002, naming only Mr. Gardner in connection with the

10   death of Tonya Jones Spence.  Namely, as the count reads on Page

11   88, Shawn Gardner, defendant herein, on or about June 7, 2002, in

12   the course of a violation of Section 924(c) of Title 18, United

13   States Code, as set forth in Count 15 of the fourth superseding

14   indictment, caused the death of a person through the use of a

15   firearm, a killing that was a murder as defined in Title 18,

16   United States Code, Section 1111, in that the defendant

17   unlawfully and with malice aforethought murdered a human being,

18   Tonya Jones Spence, in the attempted perpetration of robbery and

19   the murder of Darius Spence.

20          Now, I'm going to read the statute and then explain the

21   elements of these charges.

22          The relevant statute under Counts 11, 13, 14 and 16 is

23   Title 18, United States Code, Section 942(j), you'll notice a

24   different section from 924(c), which provides that a person who,

25   in the course of a violation of Subsection (c) of the statute

1    causes the death of a person through the use of a firearm, if the

2    killing is a murder as defined in Section 1111, is guilty of a

3    crime.

4           Section 1111 of Title 18, the United States Code, in

5    turn defines murder as follows:  Murder is the unlawful killing

6    of a human being with malice aforethought.  Every murder

7    perpetrated by any kind of willful, deliberate, malicious and

8    premeditated killing or committed in the perpetration of or

9    attempt to perpetrate murder or robbery is murder in the first

10   degree.

11          The government has charged each of the offenses in

12   Counts 11, 13, 14 and 16 as premeditated murder and also as

13   felony murders; the latter, that is the felony murders, on the

14   ground that the murders were committed in the perpetration of or

15   attempt to perpetrate murder or robbery; that is, what we mean by

16   felony murder.  You may find a defendant guilty of these counts

17   if you find him guilty of either premeditated murder or felony

18   murder or of both, premeditated and felony murder.

19          On the verdict sheet which we will come to shortly, you

20   will be asked to indicate whether you find each defendant guilty

21   or not guilty of each kind of murder.  In order to find a

22   defendant guilty of premeditated murder, the government must

23   prove each of the following elements beyond a reasonable doubt to

24   sustain its burden of proving the defendants guilty of Counts 11,

25   13, 14, and 16.  First, that the defendant committed the crime

1    charged in the underlying 924(c) counts.  For Count 11, the

2    underlying 924(c) count is Count 10; for Counts 13 and 14, it is

3    Count 12; for Count 16, it is Count 15;

4          Second, that the defendant, through the use of the

5    firearm, caused the death of the person named in Counts 11, 13,

6    14 and 16, as the case may be;

7          Third, that in causing the death, the defendant acted

8    with malice aforethought;

9          And fourth, that the defendant acted with

10   premeditation.

11         As I indicated earlier, Count 11 charges the defendants

12   named in that count with committing a murder during the course of

13   committing the murder charged in Count 10.  Accordingly, if upon

14   all of the evidence you find that the government has failed to

15   prove Count 10 beyond a reasonable doubt as to a particular

16   defendant, then you will proceed no further as to that defendant

17   on Count 11.  You should only consider the question of whether

18   the defendant committed the offense charged in Count 11 if you

19   find the particular defendant guilty under Count 10 as charged.

20         The same applies to Counts 13, 14 and 16.  You must

21   first find the defendants guilty of the murder in the underlying

22   924(c) offense named in each count.

23         The second element the government must prove is that

24   the defendants killed the victim named through the use of a

25   firearm.  In this regard, it is the government's burden to prove

1   that the defendant's use of a firearm was a direct cause of the

2   death of the victim named in each count.  This means that the

3   government must prove that the defendants inflicted an injury or

4   injuries upon the victim using a firearm from which the victim

5   died.  It is not necessary that the injuries inflicted by the use

6   of the firearm alone caused the death.  It is instead sufficient

7   if the government proves that the injury or injuries resulting

8   from the defendant's use of the firearm was a cause of the

9   victim's death.

10          The next element the government must prove beyond a

11   reasonable doubt is that the defendants acted with malice

12   aforethought.  Malice aforethought is the state of mind that

13   would cause a person to act without regard for the life of

14   another.  To satisfy this element, the defendant must have acted

15   consciously, with an intent to kill another person.  However, the

16   government need not prove a subjective intent to kill on the part

17   of the defendant.  It would be sufficient to satisfy this element

18   if it proved reckless and wanton conduct on the part of the

19   defendant which grossly deviated from a reasonable standard of

20   care, such that he was aware of the serious risk of death.

21          In order to establish this element, the government must

22   prove that the defendant acted willfully, with a bad or evil

23   purpose to break the law.  However, the government need not prove

24   spite, malevolence, hatred or ill will towards the victim.

25          The final element the government must prove beyond a

1    reasonable doubt with respect to premeditated murder under these

2    counts is that the defendants acted willfully, deliberately, and

3    with premeditation.

4            An act is done with premeditation if it is done upon

5    deliberation.  In other words, premeditation means deliberating

6    or thinking about whether to act before actually committing the

7    crime, as opposed to doing something instantaneously.

8            In order to satisfy this element, the government must

9    prove that the defendants killed the victim only after thinking

10   the matter over, deliberating whether to act before committing

11   the killings.  There is no requirement that the government prove

12   that the defendant deliberated for any particular period of time

13   in order to order to show premeditation.

14           Willful, deliberate and premeditated means that the

15   killing is done on purpose after a period of time for prior

16   consideration.  The duration of that period cannot be arbitrarily

17   fixed.  The time in which to form a deliberate design varies as

18   the minds and temperaments of individuals differ and according to

19   the circumstances in which the individual may be placed.

20           Any interval of time between the forming of the intent

21   to kill and the execution of that intent which is of sufficient

22   duration for the accused to be fully conscious of what he

23   intended is sufficient to support a conviction for premeditated

24   murder.

25           In order to prove beyond a reasonable doubt a

1    defendant's guilt of felony murder, the government must prove

2    each of the following elements:  First, that the defendant

3    committed the crime charged in the underlying 924(c) counts.  As

4    mentioned, for Count 11 the underlying 924(c) count is Count 10,

5    for Counts 13 and 14 it is Count 12, and for Count 16 it is Count

6    15.

7            Second, that the defendant, through the use of the

8    firearm, caused the death of the person named in that count.

9            And third, that the defendant acted unlawfully; that

10   is, that he acted without justification or excuse.

11           And fourth, that the death caused by the defendant

12   resulted from the perpetration of or attempt to perpetrate the

13   underlying crime charged in the indictment; namely, the murder of

14   Oliver McCaffity as alleged in Count 11, the robbery of Darryl

15   Wyche as alleged in Count 13 and 14, and the robbery of Tonya

16   Jones Spence, as alleged in Count 16.

17           I have previously defined the crimes of murder and

18   robbery in these instructions.

19           We move on, then, to Counts 17 and 18, ladies and

20   gentlemen, which are identical, with the only difference being

21   the name of the defendant in the respective count and the date of

22   the offense, and the particular handgun which is described.

23           Count 17 charges Mr. Gardner, on or about June 7, 2002,

24   having been previously convicted of one or more crimes punishable

25   by imprisonment for a term exceeding one year, did knowingly,

1    intentionally and unlawfully possess the following firearms, in

2    and affecting interstate or foreign commerce:  A .357 caliber

3    Magnum Dan Wesson Model 14 revolver, with the serial number

4    listed there in the indictment, and a .40 caliber S & W Glock

5    Model 23 semiautomatic pistol, bearing the serial number you see

6    listed there from the indictment.

7         Similarly, Count 18 of the indictment charges Mr.

8    Harris with the same offense, providing that it occurred on or

9    about January 22nd, 2004 in the State and District of Maryland,

10   wherein Mr. Harris, having previously been convicted of one or

11   more crimes punishable by imprisonment for a term exceeding one

12   year did knowingly, intentionally and unlawfully possess a

13   firearm in and affecting interstate and foreign commerce, namely,

14   a Llama .45 caliber semiautomatic pistol, bearing the serial

15   number you see listed there from the indictment.

16        Counts 17 and 18 charge the defendant named in each of

17   those counts with a violation of Section 922(g)(1) of Title 18,

18   United States Code.  That section provides, It shall be unlawful

19   for any person who has been convicted in any court of a crime

20   punishable by imprisonment for a term exceeding one year to

21   possess, in or affecting commerce, any firearm.

22        The government must prove each of the following

23   elements beyond a reasonable doubt in order to sustain its burden

24   of proving the defendant guilty.

25        First, that the defendant was convicted in any court of

1    a crime punishable by imprisonment for a term exceeding one year.

2    Second, that the defendant knowingly possessed the firearm as

3    charged.  And third, that the possession charged was in or

4    affecting interstate or foreign commerce.

5         The first element the government must prove beyond a

6    reasonable doubt before you can convict is that before the date

7    the defendant is charged with possessing the firearm, the

8    defendant had been convicted of a crime punishable by

9    imprisonment for a term exceeding one year.  The parties have

10   stipulated that the defendant was convicted of a crime in state

11   court and that this crime is punishable by imprisonment for a

12   term exceeding one year.  It has also been stipulated that this

13   felony conviction occurred prior to the time that the defendant

14   is alleged to have possessed the weapon charged in the

15   indictment, Counts 17 and 18.  You may thus accept this fact and

16   not require the government to produce any further proof upon the

17   matter.

18        It is not necessary that the government prove that the

19   defendant knew that his prior conviction was a crime punishable

20   by imprisonment for more than one year, nor is it necessary for

21   the defendant to have been sentenced to imprisonment for more

22   than one year.  A plea of guilty has the same consequences as a

23   conviction after trial.

24        I instruct you in this connection that the prior

25   conviction that is an element of the charge here, that is in

1    Counts 17 and 18, is only to be considered by you for the fact

2    that it exists and for nothing else.  You are not to consider it

3    for any other purpose.  You are not to speculate as to what it

4    was for.  You may not consider the prior convictions in deciding

5    whether it is more likely than not that the defendant was in

6    knowing possession of the gun that is charged, which is the

7    disputed element of the offense.

8            The second element which the government must prove

9    beyond a reasonable doubt is that on or about the date set forth

10   in the indictment, the defendant knowingly possessed a firearm.

11   As I instructed you previously, a firearm is any weapon which

12   will or is designed to or may be readily converted to expel a

13   projectile by the action of an explosive.

14           To possess means to have something within a person's

15   control.  This does not necessarily mean that the defendant had

16   to hold the firearm physically, that is, have actual possession

17   of it.  As long as the firearm is within his control, the

18   defendant possesses it.

19           If you find that the defendant either had actual

20   possession of the firearm or that he had the power and intention

21   to exercise control over it, even though it was not in his

22   physical possession, you may find that the government has proven

23   possession.

24           The law also recognizes that possession may be sole or

25   joint.  If one person alone possesses it, that is sole

1    possession.  However, it is possible that more than one person

2    may have the power and intention to exercise control over the

3    firearm.  This is called joint possession.

4            If you find that the defendant had such power and

5    intention, then he possessed the firearm under this element even

6    if he possessed it with another.  Proof of ownership of the

7    firearm is not required.

8            To satisfy this element, you must also find that the

9    defendant knowingly possessed the firearm.  This means that he

10   possessed the firearm purposely and voluntarily and not by

11   accident or mistake.  It also means that he knew that the weapon

12   was a firearm, as we commonly use the word.  However, the

13   government is not required to prove that the defendant knew that

14   he was breaking the law.

15           You are further instructed that the government is not

16   required to prove that the firearm was operable in order to prove

17   that it was a firearm, as I have just instructed you.

18           The third element the government must prove beyond a

19   reasonable doubt is that the firearm the defendant is charged

20   with possessing was in or affecting interstate commerce.  This

21   means that the government must prove that at some time prior to

22   the defendant's possession, the firearm traveled in interstate

23   commerce.  It is sufficient for the government to satisfy this

24   element by proving that at any time prior to the date charged in

25   the indictment the firearm crossed a state line.  It is not

1    necessary that the government prove that the defendant himself

2    carried it across the state line, nor must the government prove

3    who carried it across or how it was transported.  It is also not

4    necessary for the government to prove that the defendant knew

5    that the firearm had previously traveled in interstate commerce.

6            In this regard, there has been evidence that the

7    firearms in question were manufactured in a different state, in a

8    state different from Maryland where the defendant is charged with

9    possessing it.  You are permitted to inter from this fact that

10   the firearm traveled in interstate commerce; however, you are not

11   required to do so.

12           The last count in the indictment, ladies and gentlemen,

13   is Count 19.  Only defendant Shelton Harris is charged in Count

14   19.  He is charged in that count with retaliating against a

15   witness or informant in an official federal proceeding.

16           That count reads as follows:  The grand jury for the

17   District of Maryland charges further that on or about June 13,

18   2005, in the State and District of Maryland, Shelton Harris, the

19   defendant, did knowingly engage and attempt to engage in conduct

20   and thereby cause bodily injury and damage the tangible property

21   of another person whose identity is known to the grand jury, and

22   threatened to do so, in that the defendant physically struck and

23   wrestled with another person with the intent to retaliate against

24   the person for information relating to the commission or possible

25   commission of federal offenses; namely, racketeering, murder, and

1    narcotics trafficking given by a person to a law enforcement

2    officer.

3         The relevant statute on this subject is Section 1513 of

4    Title 18, which provides:  Whoever knowingly engages in any

5    conduct and thereby causes bodily injury to another person or

6    attempts to do so, or damages the property of another person or

7    threatens to do so, with intent to retaliate against any person

8    for any information relating to the commission or possible

9    commission of a federal offense or a violation of conditions of

10    probation, supervised release, parole, or release pending

11    judicial proceedings given by a person to a law enforcement

12    should be guilty of a crime.

13         In order to prove the defendant Harris guilty beyond a

14    reasonable doubt of Count 19 of the indictment, the government

15    must prove each of the following elements beyond a reasonable

16    doubt.

17         First, that the defendant engaged in conduct causing

18    bodily injury to a person or attempted to do so or damage the

19    property of a person, or threatening to do so.

20         Second, that the defendant acted knowingly and with

21    specific intent to retaliate against a person for information

22    given relating to the commission of a federal offense to a law

23    enforcement officer.

24         The first element the government must prove beyond a

25    reasonable doubt is that the defendant engaged in some conduct

1 and thereby caused bodily injury, or attempted to do so, or

2 threatened to do so.

3   Bodily injury means a cut, abrasion, bruise, burn or

4 disfigurement, physical pain, illness, or the impairment of the

5 function of a bodily member, organ or mental faculty.  It

6 includes injury to the body, no matter how temporary.

7   In this regard, it is not necessary that the defendant

8 himself caused the bodily injury.  It is sufficient if you find

9 that the defendant knowingly participated in some activity which

10 had the consequence or effect of injuring a person.  Nor is it

11 necessary to prove that a person actually was injured.  It is

12 sufficient if the defendant knowingly threatened to cause bodily

13 injury to a person.

14   A threat is simply the expression of intent to harm.  A

15 threat may be communicated by words as well as gestures.  In

16 order to find the defendant threatened to cause bodily injury,

17 bodily harm, you need not find that he intended to carry out the

18 threat.

19   In addition, Count 19 is charged as an attempted crime,

20 and I will instruct you on this in a moment.

21   The second element the government must prove beyond a

22 reasonable doubt is that the defendant acted knowingly and with

23 the specific intent to retaliate against the person for

24 information given relating to the commission of a federal offense

25 to a law enforcement officer.

1        An act is done knowingly if it is done voluntarily and

2   purposely and not by accident or mistake.

3        By specific intent, I mean that the defendant must have

4   acted knowingly and with unlawful intent to retaliate against the

5   person for the information given relating to the commission of a

6   federal offense to a law enforcement officer.  In order to

7   satisfy this element, it is not necessary for the government to

8   prove that the defendant knew he was breaking any particular law.

9        As I indicated, Count 19 is also charged as an

10  attempted crime.  In order to prove the crime of attempting to

11  commit the crime of witness retaliation, the government must

12  prove the following two elements beyond a reasonable doubt:

13  First, that the defendant intended to commit the crime of witness

14  retaliation; and second, that the defendant did some act that was

15  a substantial step in the effort to bring about or accomplish the

16  crime.

17       Mere intention to commit a crime does not amount to an

18  attempt.  In order to convict the defendant of an attempt, you

19  must find beyond a reasonable doubt that the defendant took some

20  action which was a substantial step toward the commission of that

21  crime.

22       In determining whether the defendant's actions amounted

23  to a substantial step toward the commission of a crime, it is

24  necessary to distinguish between mere preparation, on the one

25  hand, and the actual doing of the criminal deed, on the other.

1   Mere preparation, which may consist of planning the offense or

2   devising, obtaining, or arranging a means for its commission, is

3   not an attempt.

4           The acts of a person who intends to commit a crime will

5   constitute an attempt when the acts themselves clearly indicate

6   an attempt to commit the crime and the acts are a substantial

7   step in a course of conduct planned to culminate in the

8   commission of the crime.

9           Now we turn to the concept of aiding and abetting,

10  ladies and gentlemen.  In Counts 2 through 16, except Counts 8

11  and 19, the government asserts that you may find the defendants

12  named in those counts guilty either by finding that the named

13  defendants actually did the acts with the intent required to

14  constitute an offense, but also on the theory of aiding and

15  abetting one or more other persons in committing the acts

16  constituting the offense.

17          In other words, the government has argued that it is

18  not necessary for it to show that a defendant himself physically

19  committed the crime with which he is charged in order for you to

20  find the defendant guilty.  A person who aids or abets another to

21  commit an offense is just as guilty of that offense as if he

22  committed it himself.  Accordingly, you may find the defendant

23  guilty of the offense charged if you find beyond a reasonable

24  doubt that the government has proved that another person actually

25  committed the offense with which the defendant is charged and

1   that the defendant aided or abetted that person in the commission

2   of the offense.

3   As you can see, the first requirement is that you find

4   that another person has committed the crime charged.  Obviously,

5   no one can be convicted of aiding or abetting the criminal acts

6   of another if no crime was committed by the other person in the

7   first place.  But if you do find that a crime was committed, then

8   you must consider whether the defendant aided or abetted the

9   commission of the crime.

10  In order to aid or abet another to commit a crime, it

11  is necessary that the defendant willfully and knowingly associate

12  himself in some way with the crime, and that he willfully and

13  knowingly seek by some act to help make the crime succeed.

14  Participation in a crime is willful if action is taken

15  voluntarily or intentionally, or in the case of a failure to act,

16  with the specific intent to fail to do something the law requires

17  to be done; that is to say, with a bad purpose either to disobey

18  or disregard the law.

19  The mere presence of a defendant where a crime is being

20  committed, even coupled with knowledge by the defendant that a

21  crime is being committed, or the mere acquiescence by a defendant

22  in the criminal conduct of others, even with guilty knowledge, is

23  not sufficient to establish aiding and abetting.  An aider and

24  abetter must have some interest in the criminal venture.

25  To determine whether a defendant aided or abetted the

1    commission of crime with which he is charged, ask yourselves

2    these questions.  Did he participate in the crime charged as

3    something he wished to bring about?  Did he associate himself

4    with the criminal venture knowingly and willfully?  Did he seek

5    by his actions to make the criminal venture succeed?  If he did,

6    then the defendant is an aider and abetter and, therefore, guilty

7    of the offense.  If, on the other hand, your answers to this

8    series of questions are no, then the defendant is not an aider

9    and abetter and you must find him not guilty.

10          There is yet a further theory of criminal liability

11   which the government relies on in respect to the offenses charged

12   in Counts 2 through 16 of the indictment.  If, in light of my

13   instructions, you find beyond a reasonable doubt a defendant was

14   a member of the conspiracy charged in Count One of the indictment

15   or of the conspiracy charged in Count Eight of the indictment and

16   thus guilty of conspiracy, then you may also, but you are not

17   required to, find him guilty of the substantive crimes charged

18   against him in Counts 2 through 16, provided you find beyond a

19   reasonable doubt each of the following elements:

20          First, that the crimes charged in the substantive

21   counts, Counts 2 through 7 and 9 through 18, were committed;

22          Second, that the person or persons you find actually

23   committed the crime were members of the conspiracy you found

24   existed;

25          Third, that the substantive crimes were committed

1   pursuant to the common plan and understanding you found to exist

2   among the conspirators;

3        Fourth, that the defendant was a member of that

4   conspiracy at the time the substantive crimes were committed;

5        And fifth, that the defendant could have reasonably

6   foreseen that the substantive crimes might be committed by his

7   coconspirators.

8        If you find all five of these elements to exist beyond

9   a reasonable doubt, then you may find a defendant guilty of the

10  substantive crimes charged against him even though he did not

11  personally participate in the acts constituting the crimes or did

12  not have actual knowledge of it.

13       The reason for this rule is that, as I earlier stated,

14  a coconspirator who commits a substantive crime pursuant to a

15  conspiracy is deemed to be the agent of the other conspirators.

16  Therefore, all of the coconspirators must bear criminal

17  responsibility for the commission of the substantive crimes.  If,

18  however, you are not satisfied as to the existence of any of

19  these five elements, then you may not find the defendant guilty

20  of the substantive crime under this theory of liability.

21       In addition to the foregoing elements of the offenses,

22  you must consider whether any act in furtherance of the crime

23  occurred within the District of Maryland.  You are instructed

24  that the District of Maryland encompasses the State of Maryland.

25  In this regard, the government need not prove that the crime

1   itself was committed in this district or that the defendants

2   themselves were present here.  It is sufficient to satisfy this

3   element if any act in furtherance of the crime occurred within

4   this district.

5          If you find that the government has failed to prove

6   that any act in furtherance of the crime occurred within this

7   district or if you have a reasonable doubt on this issue, then

8   your verdict must be not guilty.

9          I'm on Page 104 now, ladies and gentlemen.

10          Defendants have raised, in respect to many counts in

11   the indictment, the defense of alibi; that is, that they were not

12   present at the time and the place where a particular crime is

13   alleged to have been committed.  It is the government's burden to

14   prove beyond a reasonable doubt each and every element of the

15   offense as I have defined those elements, including that a

16   defendant was present at the time and place that the offense is

17   alleged to have occurred.  If, after you consider all of the

18   evidence in this case, and in light of all of my instructions,

19   you have a reasonable doubt about whether any defendant was

20   present at the time and place where the crime allegedly occurred,

21   then you must acquit that defendant.

22          The government contends that the defendant's alibis are

23   false.  If you find that a defendant gave a false statement in

24   order to mislead the investigating authorities that he was not

25   present at the scene of the crime, you may, but need not, infer

1    that the defendant believed that he was guilty.  You may not,

2    however, infer on the basis of this alone that any defendant is,

3    in fact, guilty of the crime for which he is charged.

4           Whether or not evidence as to a defendant's fabrication

5    of an alibi shows that he knew he was guilty and the

6    significance, if any, to be given to this evidence are matters

7    for you, the jury, to decide.

8           While we're on the subject of elements, I should draw

9    your attention to the fact that it does not matter if the

10   indictment charges that a specific act occurred on or about a

11   certain date and the evidence indicates that, in fact, it was on

12   another date.  The law only requires a substantial similarity

13   between the dates alleged in the indictment and the date

14   established by testimony or exhibits.

15          The question of possible punishment of a defendant is

16   no concern to the jury and should not in any sense enter into or

17   influence your deliberations.  The duty of imposing sentence

18   rests exclusively upon the court.  Your function is to weigh the

19   evidence in the case and to determine whether or not a defendant

20   is guilty beyond a reasonable doubt solely upon the basis of such

21   evidence.  Under your oath as jurors, you cannot allow a

22   consideration of the punishment which may be imposed upon the

23   defendant if he is convicted to influence your verdict in any

24   way, or in any sense enter into your deliberations.

25          Now, I will be sending a copy, as I mentioned, ladies

1    and gentlemen, of the indictment, the fourth superseding

2    indictment, into the jury room for you to have during your

3    deliberations.  Of course, the indictment itself has been

4    duplicated within my instructions.  But a separate, individual

5    copy of the indictment, as I say, will be sent in for your use

6    during your deliberations.

7         You are reminded that the indictment is merely an

8    accusation and is not to be used by you as any proof of the

9    conduct charged.  You may use it to read the crimes with which

10   the defendants are charged with committing.

11        It will be your duty to return your verdict in the form

12   of written answers to the written questions which are being

13   submitted by the court.  Your answers will constitute your

14   verdict.  Each answer is to be written or checked in the space

15   provided after each question or item.  Before making each answer,

16   all of you must agree upon it.  It is your duty to answer each of

17   these questions in accordance with the evidence in the case.

18        So I'm going to now review the verdict form for you,

19   ladies and gentlemen, which you see is reproduced there on Page

20   106 of your draft instructions.

21        Now, let me say to you that the verdict form is a

22   separate, separately numbered 18-page document.  Your foreperson,

23   whoever that may turn out to be, will complete the verdict sheet

24   and will use it to deliver your verdict here in open court once

25   you have reached your verdict.  I want to just go through this

1   very quickly with you so that you have some familiarity with the

2   verdict form.

3           I should start by pointing out the verdict form is a

4   document which basically structures your consideration of the

5   evidence and of the indictment from Count One through Count 19.

6   But it's obvious, I'm sure, you're not required to do your work

7   in any particular order.  You are free to consider the counts of

8   the indictment in whatever order you choose.  We've simply listed

9   them here 1 through 19 because that's the manner in which the

10  indictment is laid out.

11          So it's an 18-page document with the name of the case,

12  the number of the case, and a series of questions and items that

13  you must reach decisions about.

14          So Page One starts with Count One, the racketeering

15  conspiracy, as you can see.  And the first four items, each asks

16  you for your verdict as to each of the four defendants charged in

17  this count.  Mr. Mitchell -- and in each count you will notice

18  where Mr. Mitchell is a defendant, he will be listed first.  And

19  in any count where all four defendants are named, they will be

20  named in the same order, Mitchell, Harris, Martin, and Gardner.

21          Of course, as you already know, there are some counts

22  in which only Mr. Gardner is named.  There are some counts in

23  which only Mr. Harris is named, that one count, 19.  There are

24  counts in which only Mr. Mitchell and Mr. Harris are named.  So

25  you will see for each count where a defendant is named, a

1    separate item for that defendant.

2         So Count One, racketeering conspiracy.  How do you find

3    the defendant, Willie Mitchell, as to the charge of racketeering

4    conspiracy in Count One of the indictment?  Not guilty or guilty,

5    as the case may be.  Same question for the other three

6    defendants.

7         And then Question Five under Count One requires you to

8    tell us which of the nine racketeering counts -- excuse me --

9    racketeering acts you find to have been proven by beyond a

10   reasonable doubt.  You will remember under my instructions, in

11   order for any defendant to be convicted, among the other

12   elements, you must find that at least two racketeering acts were

13   committed or intended to be committed by the members of the

14   conspiracy.

15        So the nine racketeering acts are listed here under

16   Question Five.  And you will tell us, One through Nine, whether

17   yes, you are unanimous in finding each racketeering act proven

18   beyond a reasonable doubt or, no, we don't find one or more of

19   the racketeering acts proven beyond a reasonable doubt.

20        Then the verdict sheet guess on to Count Two.  Count

21   Two, you will recall, is the murder in aid of racketeering, and

22   it names Mr. Mitchell and Mr. Harris.  So the first question

23   under Count Two, How do you find the defendant, Willie Mitchell,

24   as to the charge of murder in aid of racketeering, Count Two?

25   And so you will find not guilty or guilty as to both Mr. Mitchell

1    and Mr. Harris, who are the only two defendants named in that

2    count.

3         And you will remember that under Count Two there are

4    two separate forms of murder under Maryland law that you may

5    consider, premeditated murder and second degree murder.  And so

6    for each defendant in each of those counts, you will tell us

7    whether you find beyond a reasonable doubt premeditated murder

8    and/or second degree murder.  You can find both, you can find one

9    or the other, and you can find neither if that's your evaluation

10   of the evidence.

11        Count Three, likewise, goes on to a different count of

12   murder in aid of racketeering, in which Mr. Mitchell is charged

13   and Mr. Harris is charged.  Now, in Count Three, there is only

14   the conspiracy to commit murder, which is the basis for that

15   charge.  In other words, conspiracy, you remember the 1959

16   counts, murder in aid of racketeering is Count Two and then Count

17   Three is conspiracy to commit murder in aid of racketeering.  So

18   each of these Counts Two and Count Three relate to Oliver

19   McCaffity.

20        So the murder of Mr. McCaffity in Count Two, the

21   conspiracy to murder Mr. McCaffity in Count Three.  And only Mr.

22   Mitchell and Mr. Harris are charged in those two counts.

23        And then in Count Four we get back to actual murder in

24   aid of racketeering.  Count Four again charges Mr. Mitchell and

25   Mr. Harris with murder in aid of racketeering.  And this relates

1    to Lisa Brown.

2           And same configuration here, as you see.  Guilty or not

3    guilty as to the two defendants.  And then you'll have to tell us

4    whether you find premeditated murder or second degree murder.

5    And you'll notice in Count Four there's a third option with

6    respect to the type of murder -- felony murder.  And that's

7    because the indictment charges that Ms. Brown was murdered not

8    only on the basis of premeditation, intentional killing, not only

9    as a second degree murder, intentional killing without

10   premeditation, but the indictment alleges and the government

11   argues that Ms. Brown was killed in the course of the murder of

12   Mr. McCaffity.  And as I've instructed you, if a person is killed

13   in the course of somebody else's murder, then that's what we call

14   felony murder.

15          And so the Lisa Brown count, Count Four, will require

16   you to tell us which, if any or all, of the three kinds of murder

17   you find the government has proven beyond a reasonable doubt as

18   to both Mr. Mitchell and Mr. Harris.

19          Moving on.  Count Five likewise is a murder in aid of

20   racketeering.  And again we have the three options.  But this

21   time, of course, you'll recall all four defendants are charged in

22   Count Five.  This relates to one of the Wyche brother murders.

23          So you will determine whether Mr. Mitchell is guilty or

24   not, Mr. Harris is guilty or not, Mr. Martin is guilty or not,

25   and Mr. Gardner is guilty or not based on your evaluation of the

1   evidence.  And then additionally, as to that count, you will

2   determine whether it is premeditated murder or not, second degree

3   murder or not, and/or felony murder or not because, again, the

4   indictment charges and the government argues that the Wyches were

5   killed in the course of a robbery.  And so that would make it

6   felony murder if you find beyond a reasonable doubt that they

7   were killed in the course of a robbery.

8            So Count Five, all four defendants, all three types of

9   murder, related to Darryl Wyche.  And then Count Six is

10  substantially identical to Count Five, relating to Anthony Wyche.

11  Same four defendants, same three types of murder for each of the

12  four defendants.

13           Then Count Seven you will remember, of course, only Mr.

14  Gardner is charged.  This relates to the murder of Tonya Jones

15  Spence.  And so you are being asked whether Mr. Gardner is guilty

16  or not guilty of the murder in aid of racketeering of Tonya Jones

17  Spence.  And again, because the indictment charges and the

18  government has argued that Ms. Jones Spence was murdered in the

19  course of a robbery, you will also have to tell us whether felony

20  murder, in addition to premeditated murder or second degree

21  murder, was involved.

22           And again, as I just instructed you on these

23  substantive counts as opposed to Counts One and Eight, which are

24  the conspiracy counts, the theories of liability are that the

25  defendants each committed these acts themselves, that the

1    defendants aided and abetted these acts, and that the defendants

2    were members of a conspiracy, and that these acts were carried

3    out in furtherance of and in pursuit of the conspiracy during the

4    conspiracy.

5           Count Eight is the drug conspiracy, the narcotics

6    conspiracy.  And each of the defendants has a separate inquiry

7    here.  And you will see a number of items with respect to Count

8    Eight.  To begin with, again, Mr. Mitchell is listed first

9    because all four defendants are charged in Count Eight, which of

10   course you will recall is also Racketeering Act Nine.

11          So the first question is, How do you find Mr. Mitchell,

12   guilty or not guilty, of the narcotics conspiracy?  And then

13   Question Two says, If you find Mr. Mitchell guilty, as I've

14   instructed you, you must determine whether the conspiracy for

15   which you find Mr. Mitchell guilty involved crack cocaine.

16   That's Question Two.  And you will answer yes or no.

17          If you answer that question yes, then it will be

18   necessary for you to tell us what amount of crack cocaine did the

19   conspiracy distribute and/or possess with the intent to

20   distribute.  And there are three possibilities there.  You can

21   check none, one, two, or all three.  So the possibilities are

22   less than 5 grams, 5 grams to less than 50 grams, or 50 grams or

23   more.

24          Then further, still on Count Eight, if you find Mr.

25   Mitchell guilty of the narcotics conspiracy, you will have to

1    tell us whether you find that that conspiracy involved powder

2    cocaine separately from crack cocaine.  And you will answer yes

3    or no, that the conspiracy of which, of which Mr. Mitchell was a

4    part, if he is, did or did not involve powder cocaine.

5         If you say yes, that conspiracy involved powder

6    cocaine, then you will tell us the quantities if you can, of what

7    quantities of powder cocaine that conspiracy of which Mr.

8    Mitchell you say was a part beyond a reasonable doubt involved.

9         And there, as you can see, you have three

10   possibilities -- less than 500 grams of powder cocaine, more than

11   500 grams but less than 5 kilograms, or 5 kilograms or more of

12   cocaine, powder cocaine.  And you will give us those answers and

13   then you will move on to consider whether the conspiracy of which

14   Mr. Mitchell was a part you find beyond a reasonable doubt

15   involved heroin.  And you will tell us yes or no.

16        Now, with the heroin you won't have to tell us the

17   amounts.  But with the crack and the powder you will have to tell

18   us what amounts you unanimously find were involved.  Heroin is

19   just yes or no.

20        And then finally, was that conspiracy of which you find

21   Mr. Mitchell guilty, was that conspiracy one that had the

22   objective of possessing or, possessing with the intent to

23   distribute -- excuse me -- distributing or, conspiracy to

24   distribute and/or to possess with the intent to distribute

25   marijuana?  Again, with respect to the marijuana, you won't have

1    to give us the amount.  Simply yes or no, there was marijuana

2    involved in that conspiracy.

3           So as you can see, you've got a whole series of guilty

4    or not guilty questions on Mr. Mitchell under Count Eight and

5    then a subsidiary series of questions involving the quantity and

6    the type of narcotics.

7           And then you can, as you can see on Page 113, which is

8    a reproduction of the verdict sheet, you go on to Mr. Harris.

9    And the exact same series of questions will appear under Count

10   Eight for Mr. Harris.  And then the exact same series of

11   questions will appear under Count Eight for Mr. Martin.  And the

12   exact same series of questions will appear under Count Eight for

13   Mr. Gardner.

14          So for each of the four defendants charged in Count

15   Eight, the narcotics conspiracy, you will decide whether they're

16   guilty or not, and then you will tell us what type of drug was

17   involved.  And if crack and powder cocaine were involved in each

18   instance, you will tell us the amounts that you find beyond a

19   reasonable doubt were involved in those conspiracies.

20          Okay.  Count Nine begins the firearm counts, the 924(c)

21   counts.  And again, you will remember, as I instructed you, that

22   Counts 9 and 10 and 12 and 15 are the 924(c) counts.  And your

23   consideration of those counts depend on the outcome of other

24   counts.  And I'll explain it to you in plain language.  I

25   explained it to you in sort of legalese.  Let me explain it to

1    you now in plain language.

2         You will notice on the verdict sheet, Count Nine, How

3    do you find the defendant, Willie Mitchell -- I'm on Page 116 --

4    as to the charge of possessing a firearm in furtherance of a

5    crime of violence and a drug conspiracy in Count Nine of the

6    indictment?  Not guilty/guilty.  You will make your decision.  If

7    you say guilty, then you're going to tell us whether your basis

8    of guilty is either crime of violence or drug conspiracy.

9         If you don't find Mr. Mitchell guilty of the underlying

10   charge in Count Nine, and I'll tell you what that is in a second,

11   if you don't find Mr. Mitchell guilty of Count Two or Count

12   Eight, then you don't even need to consider Count Nine.  And the

13   reason for that is, as you can see, Count Nine is possession of a

14   firearm during and in furtherance of one of the other two crimes,

15   either the crime of violence or the drug conspiracy.  So if you

16   find Mr. Mitchell not guilty of Count Two, which is the crime of

17   violence which is incorporated into Count Nine, if you say the

18   government hasn't proven beyond a reasonable doubt that Mr.

19   Mitchell was involved in the murder of Oliver McCaffity, and if

20   you further say that the government hasn't proven beyond a

21   reasonable doubt that Mr. Mitchell was involved in the narcotics

22   conspiracy charged in Count Eight, then there will be no

23   predicate crimes during and in furtherance of which Mr. Mitchell

24   could have possessed a firearm.

25         So my instructions cover this.  And I'm building on it

1    now to make it as clear as I can.

2            So if you say not guilty to crime of violence and not

3    guilty of drug conspiracy, there would be no basis for finding

4    Mr. Mitchell guilty of Count Nine, possession of a firearm.

5            On the other hand, it doesn't take both.  If you find

6    Mr. Mitchell guilty of the murder of Oliver McCaffity, Count Two,

7    then that by itself would be sufficient for you to find him

8    guilty, if you so determine, of Count Nine.

9            But even if you find Mr. Mitchell not guilty of Count

10   Two but you find him guilty of Count Eight, the narcotics

11   conspiracy, then Mr. Mitchell's involvement in the narcotics

12   conspiracy would be enough, if you so find, to find him guilty of

13   Count Nine, possession of the firearm.

14           So in other words, the possession in furtherance of the

15   crime in Count 9 doesn't have to be in furtherance of both crimes

16   in Count 9.  Can be either.  It could be both if you so determine

17   but it could be either.  But if it's neither, then you can't

18   convict under Count 9.

19           And so the same considerations apply to Mr. Harris in

20   Count 9, because Mr. Mitchell and Mr. Harris are the only ones

21   charged in Count 9.

22           So the same thing is true for Mr. Mitchell and Mr.

23   Harris under Count 10.  Count 10 relates to the murder of Lisa

24   Brown, which is Count 3 of indictment, or actually Count 4.

25           So same thing.  Count 10 says Mr. Mitchell and Mr.

1   Harris possessed a firearm in furtherance of two separate crimes,

2   the narcotics conspiracy in Count 8 and the Lisa Brown murder,

3   which is charged in Count 4.  What I just described as to Count 9

4   applies equally to Count 10.

5          If you find either Mr. Mitchell and/or Mr. Harris

6   guilty of Count Four, the Lisa Brown murder, then you must

7   consider Count Ten.  If, on the other hand, you find Mr. Mitchell

8   and/or Mr. Harris not guilty of Count Eight and not guilty of

9   Count Four, then you may not convict under Count Ten.

10          Likewise, the same thing applies to Count 12, which

11   involves all four defendants, with respect to Darryl Wyche, Count

12   15, which names Mr. Gardner only.  Okay.

13          So as you go through these, you will make a decision as

14   to whether there was possession -- I'm talking now about Counts

15   9, 10, 12 and 15.  9, 10, 12 and 15.  As you go through them, if

16   you find not guilty as to both of the underlying crime of

17   violence and/or the narcotics conspiracy, you may not convict on

18   any of those counts.  On the other hand, if you find guilty

19   either as to the narcotics conspiracy or the underlying crime of

20   violence, which in each instance is a murder, then you will

21   consider those counts, 9, 10, and so son.

22          Okay.  Next are the causing a death in the course of

23   the 924(c) violations.  And the first one of those is Count 11.

24   And Count 11 charges Mr. Mitchell and Mr. Harris only with

25   causing the death of Oliver McCaffity in connection with their

1    possession of a firearm in furtherance of the death of Mr.

2    McCaffity.

3          Now, there's obviously a lot of overlap but you're

4    going to have to go through these and consider each count

5    individually.  I hope my instructions will help you do that.

6          So Count 11 asks you, if you look at the verdict sheet

7    reproduced on Page 177, Count 11 says, How do you find the

8    defendant, Willie Mitchell, as to the charge of possessing a

9    firearm resulting in death in Count 11 of the indictment?

10         Count 11 of the indictment says -- I'm paraphrasing, of

11    course -- that in connection with the death of Lisa Brown, Mr.

12    Mitchell and Mr. Harris caused her death.  Caused the death.  And

13    that -- I'm sorry.  In connection with the death of Oliver

14    McCaffity.  A couple of you corrected me, that's very good, as

15    did, I think, a couple counsel.

16         So Count 11 says, as I explained to you before, that

17    Mr. Mitchell and Mr. Harris murdered, in the course of murdering

18    Mr. McCaffity, caused the death of Lisa Brown.  And further, that

19    in causing the death of Lisa Brown which, according to Count 11,

20    was caused during the murder of Oliver McCaffity, Mr. Mitchell

21    and Mr. Harris committed either deliberate premeditated murder of

22    Lisa Brown or, in the alternative, that Lisa Brown's death was a

23    felony murder because, according to the indictment and the

24    government's arguments, Lisa Brown's death occurred, was caused

25    in the course of the murder of Oliver McCaffity.

1           Kind of strange.  If you're thinking that, I agree with

2      you.  It's kind of strange to say that a person was killed in the

3      course of somebody else's killing.  But this is the language of

4      the statute which you must apply under the evidence and my

5      instructions as I've given them to you.

6           So that's Count 11.  Relates to the death of Lisa Brown

7      and it's framed under 942(j) that talks about and is concerned

8      with causing the death of a person in the course of another

9      offense.  The other offense with respect to Lisa Brown is the

10     possession of a firearm in carrying out a crime of violence

11     against Oliver McCaffity.  So that's Count 11.

12          The analogous counts relating to the Wyches and Ms.

13     Jones Spence would be Count 13, Count 14.  Count 13 being a count

14     that names all four defendants and charges that Darryl Wyche's

15     death was caused by the offense which is charged in Count 12.

16     Count 12 is the possession of a firearm in the course of either

17     the drug trafficking crime, Count 8, or the murders of Darryl and

18     Anthony Wyche in aid of racketeering.

19          So the claim here is that, in Count 13, that Darryl

20     Wyche was killed in the course of the offense charged in Count

21     12.  And again, you will see that it could be, based on your

22     determination, deliberate, willful and malicious, premeditated

23     murder or, in the alternative, in the perpetration of robbery.

24     Because you remember the government argues and the indictment

25     charges that Darryl Wyche was intended to be robbed and that his

152

1    death came about in the course of a robbery.

2            So you will let us know whether you find both willful,

3    deliberate and malicious and premeditated murder and/or that the

4    murder occurred, the death occurred in the course of the

5    perpetration of a robbery when you answer the questions related

6    to Count 13.

7            Same thing, Count 14, in which all four defendants are

8    named and relates to the death of Anthony Wyche.

9            Next, on Page 121 and the next in line is Count 15,

10   which deals with possession of a firearm.  I've already been over

11   that.  That's Mr. Gardner, with respect to the possession of the

12   firearm in furtherance of the offense charged in Count 7 or the

13   drug conspiracy, Count 8.  And Count 16 is the charge against Mr.

14   Gardner for causing the death of Tonya Jones Spence in the

15   commission of the offense committed as charged in Count 15, the

16   possession of the firearm.

17           And then we come to the last three counts, Counts 17,

18   18 and 19.  In Count 17, only Mr. Gardner is charged with

19   possession, prohibited possession of a firearm.  In Count 18,

20   prohibited possession of a firearm by Mr. Shelton.  Obvious,

21   different dates; Mr. Harris, February, 2004; Mr. Gardner in Count

22   17 in June of 2002.

23           And then finally, Count 19, Mr. Harris is charged for

24   witness retaliation.

25           So that once you have completed all of your questions

1    and your foreperson has filled out the verdict sheet, your

2    verdict sheet will be used to deliver your verdict here in open

3    court.  As I say, you are free to go about your work in any order

4    you choose with respect to the counts of the indictment.  The

5    fact that they are listed on the verdict sheet in numerical order

6    does not in any way bind you as to how you go about your

7    business.

8              I'm at the very end, ladies and gentlemen.

9              Your verdicts must be unanimous in a special sense.

10   And we've been over this.

11             Count One of the indictment charges racketeering

12   conspiracy.  And I have explained to you that in order to find a

13   defendant guilty of this offense, you must find that at least two

14   of the nine racketeering acts charged in the indictment were, or

15   were intended to be, committed as part of the conspiracy.  I have

16   explained that the government does not have to prove that any

17   defendant committed or agreed to commit any of these acts;

18   however, all 12 of you must agree on the two racketeering acts

19   committed or intended to be committed as part of the conspiracy.

20             As the verdict sheet requires, you will be asked to

21   indicate which racketeering acts of the nine you unanimously

22   find.

23             Similarly, Counts 2, 4, 5, 6 and 7 of the indictment

24   charge the defendants with premeditated murder and second degree

25   murder.  In addition, Count 5, 5, 6 and 7 charge felony murder as

1     well.

2           Counts 11, 13, 14 and 16 charge possession of a firearm

3     resulting in death, both as premeditated murders and as felony

4     murders.  In order to convict a defendant on these murder counts,

5     all 12 of you must agree on at least one of the specific types of

6     murder in each count that each charged defendant committed.  As

7     you saw on the verdict sheet, you are being asked to indicate

8     which one or ones of the types of murder you unanimously find

9     were committed.

10          Counts 9, 10, 12, and 15 charge possession of a firearm

11    both in furtherance of a crime of violence and in furtherance of

12    the drug conspiracy, as I've been over with you.  All 12 jurors

13    must agree on the specific object the defendant was trying to

14    accomplish in those counts.  You need only find one of the two

15    objects in order to find the defendant guilty of the counts, but

16    you must be unanimous as to which one or ones you find.  As the

17    verdict sheet requires, you are being asked to indicate which

18    objects you unanimously find.

19          Thus, in both these specific instances and more

20    generally, your verdict, ladies and gentlemen, must be unanimous.

21    It must therefore represent the considered judgment of each

22    juror.

23          When you go back to the jury room to begin your

24    deliberations, there may well be some disagreement among you as

25    to the weight or significance of the evidence or as to what the

1    ultimate verdict should be.  That is not at all unusual and it

2    should not concern you.  Obviously, deliberation requires that

3    there be a full discussion of any differences among you and you

4    should discuss your differences with an open mind.

5          Although you should make every reasonable effort to

6    reach a verdict, if you cannot ultimately agree with your fellow

7    jurors, regardless of how many may disagree with you, it is your

8    duty to stick to your position.

9          Consult with one another, express your own views, and

10   listen to the opinions of your fellow jurors.  Do not hesitate to

11   re-examine your own view but do not change your opinion unless

12   you come to believe it is wrong.

13         Never refuse to change your position out of

14   stubbornness or because you are tired of listening to your fellow

15   jurors, but do not surrender your honest beliefs about the weight

16   or effect of evidence because your fellow jurors disagree with

17   you, because you want to get it over with, or for the sole

18   purpose of returning a unanimous verdict.

19         You are the impartial judges of the facts.  Your sole

20   interest is to return a just verdict by applying the law to the

21   facts you find have been proven.

22         Well, I have to say to our alternate jurors that it

23   does appear that we have a full complement of jurors who will be

24   able to render a verdict in this case.  However, as I indicated

25   to you on an earlier occasion, because we can't be certain, of

156

1    course, whether any of the regular jurors might have a family

2    emergency or some personal circumstance that might prevent him or

3    her from continuing through to the end of deliberations, I'm

4    going to instruct you, though you're going to be excused right

5    now, I'm going to instruct you to have no discussion whatsoever

6    about the case.  Continue to adhere to all of my instructions as

7    you go about your normal activities.

8            I'm sure your friends and family will think you're nuts

9    because I'm sure you've told them that you'll be able to talk

10   about the case once you're finished.  But what I'm instructing

11   you to tell them is that although you are going home and you

12   won't be coming in any more unless we call you, the fact is you

13   are still on duty.  You continue to be our backup in the event

14   that one of the regular jurors can't serve.

15           So please adhere to that instruction.  Please leave

16   your note pads and your copy of the instructions on your chairs.

17   They will be secured by Ms. Arrington.  And you are now free to

18   go into the jury room to retrieve any of your personal property

19   and to depart the courthouse.

20           We thank you very much for your service.  And no matter

21   what happens here, I can assure you that you haven't seen the

22   last of us and we will be, I'm talking now about me and Ms.

23   Arrington, we will be in touch with you about progress in the

24   case.  And we will certainly let you know immediately when the

25   jury has reached a verdict and you are no longer on duty.  But

1    we'll be in touch with you.  Thank you very much for your

2    conscientious service.

3            If you would now go into the jury room, retrieve your

4    personal belongings, and you are excused.

5            I'm sorry to do it this way but, in fact, let me just

6    explain, under the law, under the law -- ma'am, if you could just

7    wait one second.  I know you're anxious to get out of here.  I

8    would love for you to have a more, a more appropriate farewell

9    from the rest of the jurors but the fact of the matter is, at

10   this point it wouldn't be appropriate for you to be in the jury

11   room with the other jurors.  And I have a few additional things I

12   need to say to them.  That's why I'm excusing you.  I regret

13   that.  But you will have another opportunity to see them, I

14   assure you.

15           Okay?  Thank you very much.  Have a wonderful weekend.

16           (Alternates leave the courtroom.)

17           THE COURT:  Ladies and gentlemen, so it's on your

18   shoulders now.  I have a few additional things to say.  We have

19   all of the exhibits absolutely ready to go, with maybe one

20   exception.  But I think they're all ready to go right there on

21   that cart.  As soon as you go in there, if you want to start your

22   deliberations, we're going to send them in.

23           The audio recordings and several of the videos that

24   were part of the evidence have been reproduced on a single DVD or

25   CD, and we're going to send in to you a laptop computer.  I'm

1    sure among the jury probably all 12 of you, but at least half of

2    you, are comfortable with a computer.  So to the extent you want

3    to listen to any of the audiotapes you heard during the trial,

4    the statements that are in evidence, and other digital evidence,

5    most of it's going to be on that 1 DVD, which you can just -- in

6    fact, let me back up.

7            They've actually been copied, I think, most of them, on

8    the hard drive of the laptop that we're going to send in.  So

9    those of you with some commuter savvy, I'm sure you won't have

10   any problem.  And I'm sure it's been identified on the desk top

11   or the laptop.  You can pull up any of these audio or, in one

12   instance, I think, a video of the Stop Snitching excerpt is also

13   on that hard drive.  Some of the other digital evidence is in a

14   separate CD.

15           For example, I'm told that the video from the marshal's

16   lockup, the incident involving Mr. Harris, has not been

17   reproduced, is that right?  Or was?

18           MR. HARDING:  It could not be done on the laptop.  So

19   it's available as the Exhibit AH-1 and we have a DVD player.

20           THE COURT:  That's right.  Thank you.  Thank you, Mr.

21   Harding.  So in addition to the laptop, we have a DVD player,

22   which will be needed to play the tape from the marshal's lockup

23   related to Count 19 and Mr. Harris's encounter with Mr. Hayes.

24           So we're sending in some electronics for your use.  I

25   caution you not to make any use of -- I think we're also sending

1    in a cassette because Ms. Damita Green's statement to the police

2    was only available on one of the old style cassettes and we have

3    a cassette player on the cart if you want to listen to that.

4    That's also available to you.

5            So I think we've now covered the base.  There are one

6    or two other perhaps independent CD's that, that have evidence

7    that you may want to look at.

8            So I think we're giving you everything.  Of course,

9    we're not sending in the weapons.  We're not sending in any

10   narcotics.  We're not sending in the knives.  All right?  But you

11   should have everything else.

12           We're going to send in the easel as well as the large

13   placards that were used during trial, the maps and such.

14           I would caution you to take special care in your

15   handling of the exhibits, which I know you will, anyway.  As you

16   could see, some of those documents, papers and things, are rather

17   fragile.  And counsel have worked very hard to put them in quite

18   an orderly fashion.  They're all in those containers, separately

19   marked.  And each container has a separate exhibit list of what's

20   in the container.  And in addition, I believe there's also a

21   single list of all the government's exhibits and single list,

22   that should be stapled together, I think, of all the defense

23   exhibits.

24           So I say all of this just to caution you to make your

25   job easier, frankly, that while you certainly are free to handle

1    the exhibits and examine them as you wish, I would just urge you

2    to take extra care to make sure that when you take something out,

3    you mark where it came from so that perhaps you can put it back.

4    And that will make it easier for you to manage the exhibits to

5    the extent you wish to look at the exhibits.

6            We're sending in legal pads.  There will be markers and

7    paper clips and staples and anything else you might need during

8    your deliberations.  So those will be in with you.

9            The first thing you're going to want to do when you get

10   in there, and maybe the only thing you want to do today, is

11   select a foreperson.  Your foreperson gets no extra pay.  Your

12   foreperson will, in effect, preside over your deliberations,

13   maintain a little order.  And your foreperson will be your

14   spokesperson here in the courtroom when you deliver your verdict.

15           Now, let me explain to you quickly how you deliver your

16   verdict.  First of all, you're now free to take your notes and

17   your copies of the instructions into the jury room with you.  I

18   hope that you won't have any questions about the instructions,

19   but you may.  You have copies there with you.

20           But in any event, if you have any questions for us

21   about anything during your deliberations, it is critically

22   important that you communicate with us only in writing at all

23   times.  So that if you have a question, there will be a court

24   security officer and/or Ms. Arrington here in the courtroom at

25   all times during your deliberations.  And if you need something,

1    you need only knock on the door and someone will respond

2    immediately.

3            If you have a question for us, write out the question,

4    knock on the door, hand out the question, and it will be brought

5    to my attention immediately.

6            What I will then do is I will confer with counsel.  And

7    my preference and what I'll try to do is, if you send out a

8    question, I will try to send you as quickly as I can a written

9    response to your question.

10           There may be some questions for some reason or another

11   that I can only answer here in the courtroom.  And so if you ask

12   a question that I need to answer here in the courtroom, I ask

13   your patience because we are all going to have to reassemble here

14   in the courtroom.  All of you will be brought back into the

15   courtroom and I will answer your question on the record in the

16   presence of all of us.  But to the extent I can do so, I will

17   answer any of your questions by sending in a written response

18   after I've conferred with counsel.

19           Now, your verdict.  Once you have reached a verdict and

20   answered all those questions on the verdict sheet, your

21   foreperson will simply send out a note, we have reached a

22   verdict.  Do not send out the verdict sheet, don't send out any

23   evidence, simply a note, We have reached a verdict.

24           We will promptly reassemble here in the courtroom and

25   you all will come back into the jury box.  Ms. Arrington will

1    call the role and each of you will answer present or here.  We

2    will record the fact that all twelve jurors are present.  And

3    then the jury will be asked, have you agreed upon your verdict?

4    And presumably all of you will answer in unison, yes, we have.

5    And Ms. Arrington will ask, who shall speak for you?  And you all

6    will say, Our foreperson.

7            And the foreperson will then stand and Ms. Arrington

8    will ask for the verdict sheet, which she will then bring to me.

9    And I will check it for completeness.  And then I will give it

10   back to her and she'll bring it back to the foreperson.

11           And then the foreperson, while standing, will answer

12   the questions from the verdict sheet that will be read out loud.

13   And the foreperson will answer out loud each of the items in

14   questions listed on the verdict sheet for the record.

15           After that is done, the Court will have what's called a

16   poll of the jury, in which each of you individually will be asked

17   to affirm or deny that the verdict that has been delivered by

18   your foreperson is your own personal verdict with which you

19   agree.  And that will conclude your service.

20           So let me excuse you now.  And it's 4:00, Friday.

21   Whether you choose to stay for an hour or stay for an hour and a

22   half or stay for 15 minutes or get out of here right away is

23   entirely up to you.

24           So I'm going to ask you to go into the jury room, speak

25   among yourselves.  And if you would, as quickly as you can, send

1    out a note telling me what you want to do today.  Whether you

2    want to leave now and come back Monday morning or whether you

3    want to stay for an hour or so and you want the exhibits brought

4    in.  Just let me know and whatever you want to do will be fine

5    with me.

6              Okay.  The jury is excused to begin its deliberations.

7              (Jury exits the courtroom at 4:03 p.m.)

8              THE COURT:  Counsel, as I said, all of your earlier

9    objections, requests, exceptions, are expressly incorporated into

10   the record at this point and you need not do anything more to

11   preserve your record.  If there are any additional requests or

12   exceptions that have just occurred to you, I'm happy to take them

13   now.  Mr. Harding?

14             MR. HARDING:  Yes.  Just very briefly, Your Honor.

15   Could Your Honor advise the jurors that if they want to listen to

16   any of the other rap songs other than Track 11, those are not

17   available to them except by coming back to the courtroom?

18             THE COURT:  Okay.  I forgot to do that.  Thank you, Mr.

19   Harding.

20             MR. HARDING:  Also, when you were instructing on Count

21   18, you said it related to the gun that was recovered at the

22   arrest of Mr. Harris in February of '04.  It was actually in

23   January of '04.  That's very minor.

24             Around Page 91, Your Honor gave a felony murder

25   instruction.  And I never, I didn't, I didn't see it.  Maybe Your

1    Honor e-mailed us the final version of your instructions but I

2    haven't been sufficiently in touch with my computer to have

3    printed it out.  I thought Your Honor, when you gave the

4    instruction in court, for roughly the second element you said

5    that the defendant had to have committed the murder or something

6    like that, when in fact it should be, and maybe it is this in the

7    written form, I haven't seen it, a defendant must have committed

8    the murder and the --

9              THE COURT:  Oh.

10             MR. HARDING:  You see what I'm saying?

11             THE COURT:  Yeah, I do.  I appreciate that.  There are

12   all kinds of those kinds -- there are lots of those kinds of

13   inherent contradictions, unfortunately, Mr. Harding, because, I

14   mean, when you use a Pinkerton theory, that contradicts a lot of

15   stuff.  When you use an aiding and abetting theory, it

16   contradicts a lot of stuff.  My experience has been the jury

17   usually figures it out.  But to say that the defendant has to be

18   present, as some of my instructions did, contradicts the

19   Pinkerton theory on every count.

20             MR. HARDING:  Aiding and abetting.

21             THE COURT:  Yeah.  I think, I think it's okay.  I think

22   it's okay.  And if I said "committed the murder", certainly at

23   one point, because I was intrigued, I mean, I've never seen, I've

24   never seen a felony murder based on another murder.  But it's a

25   correct statement of the law.  I mean, your theory is perfectly

1    right on.  But the idea that Lisa Brown's death was a felony

2    murder is almost absurd.  I mean, she got shot in the head from

3    the back of a car.  The idea that that's a felony murder is, it's

4    certainly counter-intuitive.  I'll put it that way.

5         Yes, Mr. Martin.

6         MR. MARTIN:  Yes, Your Honor.  I just, I know we

7    covered this earlier and we have our objections based upon that.

8    But when you were instructing the jury, and especially when you

9    got to the verdict form, you were, when you were around Count 11,

10    in that area, where we were bouncing back and forth, you

11    repeatedly said, and then you corrected it one time with one of

12    the other counts, you repeatedly said all they have to find is

13    the murder.  Then on Count 13 you said the murder in aid of

14    racketeering.

15         And I'm concerned that this jury's going to think all

16    they have to find is that they committed one of those murders in

17    Counts Two, Three Or Four and that's the end of it.

18         THE COURT:  You mean without the elements of

19    maintaining?

20         MR. MARTIN:  Without the racketeering element.  Yes,

21    Your Honor.  It would give them an easy way out and it wouldn't

22    be right.  And we would have corrected that if you had given our

23    verdict form that said, Do you find the enterprise, Do you find

24    the conspiracy?  Because if they said no and then they went on to

25    find him guilty, we would know that something went bad in there.

1    That's my objection.

2            THE COURT:  I appreciate that, Mr. Martin.  I don't

3    think that the jury for one second's going to think that mere

4    murder without the 1959 elements are sufficient.

5            MR. MARTIN:  If they do, then they think we were lying

6    to them yesterday when we talked to them.

7            THE COURT:  Okay.  The jury has decided that Number 12

8    will be the foreperson.  Certainly a surprise to me.  We will

9    reconvene at 9:30 a.m. Monday.  We request to leave now.  And can

10   you please clarify the status of our note pads, exhibits?  Will

11   they be stored in the jury room?  And the answer, of course, is

12   no.  Right?

13           Where do you store them when you've got a whole cart?

14   Oh, you can get them behind there?  Okay.  Bring the jury out,

15   please.  Just one moment, Belinda.

16           So here's what I do, counsel, with your indulgence.  I

17   will have the jury, I will tell the jury to be here no later than

18   9:30, that the foreperson's been identified.  And under the

19   foreperson's leadership, they are not to begin deliberations and

20   the exhibits, exhibits and note pads and instructions will not be

21   sent in until after all 12 jurors are here and we're so notified.

22   And then they can, they can proceed.

23           Anybody have any objection to me permitting them to

24   leave for lunch for an hour at 12:30 on Monday, without

25   reassembling?

1           (No response.)

2           THE COURT:  Okay.  So we'll do it that way.

3           And I will tell them that my normal practice is at

4    5:00, normally it's 5:30 but for this case I'll do five, if I

5    haven't heard from them by five, I typically check with them to

6    see whether they want to continue working or want to call it a

7    day.  So I'll tell them that so they know.

8           Did you need, did I need to hear you, Mr. Crowe, before

9    they come back?

10          MR. CROWE:  Yes.  I will be very quick on this, Your

11   Honor.  We made a special request, as you know, for an

12   instruction that in order to convict any defendant of the RICO

13   conspiracy, they had to find that that defendant had agreed that

14   either he or another defendant would commit, he or another

15   coconspirator commit two racketeering acts.

16          I think that instruction is especially necessary now.

17   Yesterday I believe I heard Mr. Harding argue to the jury that it

18   did not even have to find the defendant even knew about two

19   racketeering acts, and then read the instruction which the Court

20   gave.

21          And I heard the Court indicate a couple, I think on

22   about three occasions today, that all that they had to do was to

23   find that two racketeering acts were committed or intended to be

24   committed without saying that each defendant had to have done

25   that.

1          Beyond that, we obviously renew all the other

2    objections, adopt everybody else's, and particularly the

3    additional special verdicts which Mr. Flannery submitted

4    yesterday.

5          THE COURT:  Thank you, Mr. Crowe.  By the way, Mr.

6    Flannery, in the end I think you were absolutely right that I

7    hadn't included the statement that Shakedown is not the

8    enterprise.  I threw that in ad hoc, because I didn't see it

9    ever.

10         MR. FLANNERY:  It was in your, I think I it was in your

11   final draft.

12         THE COURT:  You think it was?

13         MR. FLANNERY:  I believe so.

14         THE COURT:  Okay.

15         MR. FLANNERY:  The one that you e-mailed like 9:00 at

16   night.  The last one that you e-mailed us.

17         THE COURT:  I don't remember seeing it in here.

18         All right.  All right.  We'll get the jury out and out.

19         MR. HARDING:  Your Honor, I prepared a list of things

20   on the laptop.

21         THE COURT:  Great.  Thank you.

22         MR. HARDING:  For the jury's benefit.  I have several

23   more copies.

24         (Jury enters the courtroom.)

25         THE COURT:  Ladies and gentlemen, good afternoon again.

1    We're very pleased that you're so decisive.

2              You're going to be excused in just a minute or two.

3    I'm going to answer your questions.

4              First of all, the exhibits, your notes, your copies of

5    the instructions, the copy of the indictment, and the jury

6    verdict form will all be locked up whenever you're not here, but

7    not in the jury room.  In a secure location near the courthouse,

8    near the courtroom.

9              And so when you're ready to begin your deliberations,

10   everything will be made available to you immediately.

11             You've indicated you wish to call it a day and we don't

12   fault you one bit.  In fact, we think you made your first wise

13   decision.

14             You've indicated you'd like to resume at 9:30 on Monday

15   and that's perfectly fine.  As I told you the other day, if you

16   happen to get here early, 9:15, 9:10, 9:00, if all 12 of you are

17   there, you may begin your deliberations whenever you're ready.

18             Once all 12 people are present, Mr. Foreman, simply

19   knock on the door, hand out a note, We're all here, we're ready

20   to go.  And within a minute or so, I assure you the exhibits and

21   all the other material will be provided to you, including the

22   easel and so forth.

23             We will not resume here in the courtroom on Monday.  So

24   you will come in, you will go straight to the jury room.  And

25   when all of you are present, as I say, you knock on the door and

1    all the stuff will be brought in to you.

2         I'm going to tell you now, so that we don't have to

3    bother you and reconvene on Monday, with your permission, I'm

4    going to say at 12:30, you will be released for lunch.  I will

5    instruct you to keep lunch at no more than an hour.  So at 12:30,

6    knock on the door.  The court security officer will be here, let

7    you out, lock up the jury room and so forth.  Ms. Arrington will

8    be here for sure.  Go have your lunch.

9         But whenever you're out of the jury room, deliberations

10   must cease.  This is very important.

11        So if two of you go off to lunch or four of you go off

12   to lunch, six of you go off to lunch, even if eleven of you go

13   off for lunch, there can be no deliberations unless and until all

14   twelve jurors are present in the jury room.

15        Okay.  So 12:30 to 1:30 on Monday will be lunch.  And

16   as I've said to you before, if you have a question, please write

17   out your question, knock on the door, hand out your question.

18   We'll get back to you.

19        My practice for this case, at 5:00 on Monday, if we

20   haven't heard from you before then, my practice is to bring

21   everybody back to the courtroom, bring the jury out, and ask you

22   whether you wish to continue working through, into and through

23   the evening or whether you would rather call it a day.  If you

24   want to call it a day before 5:00, you just let me know.  But if

25   I haven't heard from you by five, you can expect that shortly

1    after that I'll be bringing you back into the courtroom to ask

2    you where you, where you, not where you stand in your

3    deliberations, but whether you want to continue deliberations.

4           If you choose to work late Monday night, that is

5    acceptable.  We can certainly provide anyone who wants it with an

6    escort to your car.  It might be a good idea, in case you all

7    decide to work late Monday, not to park in a garage that closes

8    at 6:00 or something.  I don't suppose there are any of those

9    around here.  But occasionally, there's a garage that has an

10   early closing hour.  So you want to doublecheck that when you

11   come in on Monday.

12          I failed to tell you a couple things, and then I'll let

13   you go.  First of all, you should never, in any written

14   communication that you send out to us, indicate the status of

15   your deliberations, unless it's absolutely critical that you do

16   so.  But never indicate, you know, we voted on these counts but

17   not these counts, or we reached agreement on these counts.  And

18   certainly never indicate, if you have voted and not reached a

19   unanimous verdict as to a particular defendant or particular

20   count, you should not indicate in any of your written

21   communications what the vote might be.  All right?

22          And I failed to mention that there remains several

23   excerpts from some of the rap songs -- you'll remember the name

24   of the CD is Pure Shit -- there were several excerpts which the

25   government used during the trial.  Those are not on the hard

1    drive of the laptop or on the CD.  Track 11 of that Pure Shit CD

2    is on the laptop.  So if you wanted to listen to that, you can.

3    But other excerpts, we haven't been able to put on the laptop.

4    So if you need to listen to any of that, we'll have to bring you

5    back into the courtroom and play those here in the courtroom.

6            But pretty much everything else should be either on the

7    hard drive of the laptop or on a separate CD or DVD or cassette

8    tape, and clearly marked.  And you will be able to find that.

9            Indeed, Mr. Harding has now given me, with the

10   agreement of all counsel, a list of all the items on the laptop,

11   which will also be sent in to you.  So with the exhibit numbers

12   and the description of the items, you should be able to find on

13   the hard drive of that laptop which we're going to send in, which

14   is a court laptop, you will be able to find the digital evidence

15   that you want to pay attention to.

16           So with that, we will not see you Monday morning but we

17   wish you well over the weekend.  Needless to say, as important as

18   my general instructions have been up until now, they take on

19   truly extra emphasis and importance.

20           During this weekend recess, you are to have no

21   discussion with anybody.  Don't even call each other.  As you

22   understand, that wouldn't be appropriate.  Don't get together for

23   lunch tomorrow, two or three or four of you.  Don't work on the

24   case.  Put it out of your mind.  Conduct no investigation.  Avoid

25   media reports.  Do not permit anyone to talk to you about the

173

1    case.  Do not discuss the case with anyone.  Continue to adhere

2    to all of my instructions.

3            Enjoy your weekend.  We thank you for your continued

4    service in this case.  It's extraordinary service.  It truly is.

5    Each and every one of you has provided extraordinary service.

6    And we appreciate your willingness and your ability to continue

7    to do so.

8            So Monday morning, no later than 9:30 or no later than

9    when all 12 of you arrive, knock on the door, hand out a note.

10   Ms. Arrington will be here, waiting to hear from you.  And she'll

11   send in all your note pads, all the exhibits, the easel, writing

12   implement, legal pads, and laptop so that you can get to work.

13           Thank you very much, ladies and gentlemen.  Enjoy your

14   weekend.  The jury's excused.

15           (Jury exits the courtroom at 4:20 p.m.)

16           THE COURT:  Counsel, thank you.  All of you, each and

17   every one of you, did extraordinary work in this case.  And I

18   appreciate it.

19           I salute the government for your efforts and your hard

20   work, and I certainly salute the lawyers on this side for service

21   way, way above and way, way beyond the call of duty.  Really

22   extraordinary.

23           Thank you very much.  We're in recess.

24           (Conclusion of Proceedings at 4:20 p.m.)

25

1                    REPORTER'S CERTIFICATE

2

3          I, Mary M. Zajac, do hereby certify that I recorded

4  stenographically the proceedings in the matter of USA v. Willie

5  Mitchell, et al., Case Number(s) AMD-04-029, on November 21,

6  2008.

7          I further certify that the foregoing pages constitute

8  the official transcript of proceedings as transcribed by me to

9  the within matter in a complete and accurate manner.

10          In Witness Whereof, I have hereunto affixed my

11  signature this _____ day of _____, 2009.

12

13

14

15          _____

                Mary M. Zajac,
16              Official Court Reporter

17

18

19

20

21

22

23

24

25

**'**

**'04** [2] - 163:22, 163:23

# 1

**1** [3] - 92:11, 139:9, 158:5
**1(a** [3] - 70:14, 71:2, 71:3
**1(a)** [1] - 70:1
**1(b** [1] - 71:4
**10** [27] - 109:7, 109:8, 110:2, 113:7, 113:13, 113:16, 113:20, 114:1, 114:19, 115:9, 115:21, 116:24, 117:12, 120:2, 120:13, 120:15, 120:19, 123:4, 146:22, 148:23, 148:25, 149:4, 149:15, 149:21, 154:10
**101** [1] - 1:25
**104** [1] - 136:9
**106** [1] - 138:20
**10:08** [1] - 2:1
**11** [33] - 7:14, 7:19, 9:14, 9:20, 110:13, 116:17, 116:22, 117:8, 118:22, 119:12, 119:24, 120:1, 120:5, 120:11, 120:17, 120:18, 123:4, 123:14, 149:23, 149:24, 150:6, 150:7, 150:9, 150:10, 150:16, 150:19, 151:6, 151:11, 154:2, 163:16, 165:9, 172:1
**1111** [5] - 117:15, 118:1, 118:16, 119:2, 119:4
**113** [1] - 146:7
**116** [1] - 147:3
**12** [36] - 53:18, 63:4, 109:7, 109:8, 110:19, 112:23, 113:8, 113:13, 113:16, 113:20, 114:1, 114:19, 114:25, 115:9, 115:21, 116:25, 117:23, 120:3, 123:5, 146:22, 149:10, 149:15, 151:15, 151:16, 151:21, 153:18, 154:5, 154:10, 154:12, 158:1, 166:7, 166:21, 169:16, 169:18, 173:9
**121** [1] - 152:9
**124** [1] - 93:24
**12:30** [4] - 166:24, 170:4, 170:5, 170:15
**13** [20] - 116:17, 116:18, 116:22, 117:19, 118:6,

118:22, 119:12, 119:25, 120:2, 120:5, 120:20, 123:5, 123:15, 128:17, 151:13, 151:19, 152:6, 154:2, 165:13
**14** [17] - 112:5, 116:17, 116:18, 116:22, 118:4, 118:22, 119:12, 119:25, 120:2, 120:6, 120:20, 123:5, 123:15, 124:3, 151:13, 152:7, 154:2
**15** [25] - 109:8, 111:9, 113:9, 113:13, 113:16, 113:20, 114:1, 114:19, 115:5, 115:10, 115:21, 116:25, 118:5, 118:13, 120:3, 123:6, 146:22, 149:12, 149:15, 152:9, 152:15, 154:10, 162:22
**1513** [1] - 129:3
**16** [17] - 116:17, 116:18, 116:22, 118:8, 118:22, 119:12, 119:25, 120:3, 120:6, 120:20, 123:5, 123:16, 132:10, 134:12, 134:18, 152:13, 154:2
**17** [9] - 30:23, 123:19, 123:23, 124:16, 125:15, 126:1, 152:17, 152:18, 152:22
**177** [1] - 150:7
**18** [29] - 53:24, 55:16, 55:25, 56:4, 56:12, 61:3, 94:9, 111:14, 112:9, 116:21, 117:10, 117:14, 117:21, 117:25, 118:12, 118:15, 118:23, 119:4, 123:19, 124:7, 124:16, 124:17, 125:15, 126:1, 129:4, 134:21, 152:18, 152:19, 163:21
**18-page** [2] - 138:22, 139:11
**18th** [1] - 95:5
**19** [15] - 13:12, 23:12, 23:13, 128:13, 128:14, 129:14, 130:19, 131:9, 132:11, 139:5, 139:9, 139:23, 152:18, 152:23, 158:23
**1959** [7] - 94:9, 94:17, 94:20, 98:13, 107:8, 141:15, 166:4
**1959(a)(1** [2] - 109:18, 111:15
**1959(b)(2** [1] - 53:24
**1961(1** [2] - 56:4, 56:11
**1961(4** [1] - 53:24
**1961(5** [1] - 56:11
**1962(c** [1] - 55:25

**1962(d** [1] - 61:3
**1984** [1] - 94:19
**1994** [8] - 55:15, 60:13, 77:22, 78:3, 78:4, 78:6, 87:11, 95:5
**1999** [1] - 48:8
**1:30** [1] - 170:15
**1:45** [3] - 91:2, 91:25, 92:10

# 2

**2** [7] - 94:6, 94:7, 132:10, 134:12, 134:18, 134:21, 153:23
**2000** [3] - 53:18, 63:4, 96:7
**2002** [37] - 30:23, 56:17, 56:24, 57:18, 58:1, 58:13, 58:20, 59:12, 59:20, 60:3, 69:21, 71:5, 72:5, 73:2, 73:8, 74:9, 74:15, 75:2, 76:4, 76:15, 77:3, 77:4, 95:12, 96:7, 96:21, 97:11, 98:1, 105:12, 109:13, 110:20, 111:10, 117:8, 118:9, 118:11, 123:23, 152:22
**2003** [1] - 6:16
**2004** [7] - 60:13, 77:22, 78:5, 78:7, 87:11, 124:9, 152:21
**2005** [1] - 128:18
**2006** [4] - 55:16, 77:24, 78:3, 95:5
**2008** [2] - 1:11, 174:6
**2009** [1] - 174:11
**21** [7] - 1:11, 60:25, 78:19, 78:21, 79:4, 112:2, 174:5
**21201** [1] - 1:25
**22nd** [1] - 124:9
**23** [2] - 112:6, 124:5
**24/25** [11] - 58:1, 58:13, 58:20, 73:2, 73:8, 74:9, 74:15, 75:2, 96:21, 97:11, 110:20
**24th/25th** [1] - 57:18
**27** [2] - 95:24, 96:7
**27/28** [10] - 56:17, 56:24, 69:21, 71:5, 72:4, 95:12, 96:7, 105:12, 109:13, 117:8
**29** [1] - 7:4

# 3

**3** [1] - 148:24
**3(a** [1] - 72:15

**3(b** [1] - 72:17
**304373** [1] - 112:6
**357** [2] - 112:4, 124:2

# 4

**4** [5] - 94:6, 94:7, 148:24, 149:3, 153:23
**4(b** [2] - 73:22, 74:14
**4-A** [1] - 63:19
**40** [3] - 111:7, 112:6, 124:4
**407** [1] - 95:24
**40F** [1] - 9:2
**411** [1] - 95:24
**42** [1] - 66:14
**45** [5] - 90:19, 90:24, 91:24, 92:10, 124:14
**49** [1] - 74:4
**4:00** [1] - 162:20
**4:03** [1] - 163:7
**4:20** [2] - 173:15, 173:24

# 5

**5** [10] - 56:4, 94:6, 94:7, 144:22, 145:11, 153:23, 153:25
**50** [4] - 60:18, 78:11, 144:22
**50%** [1] - 93:25
**500** [2] - 145:10, 145:11
**5515** [1] - 1:24
**5:00** [3] - 167:4, 170:19, 170:24
**5:30** [1] - 167:4

# 6

**6** [4] - 94:6, 94:7, 153:23, 153:25
**60** [1] - 86:11
**61** [1] - 87:8
**64** [2] - 93:22, 93:24
**67** [1] - 96:21
**68** [1] - 97:10
**69** [1] - 98:1
**6:00** [1] - 171:8

# 7

**7** [16] - 59:12, 59:20, 60:3, 76:4, 76:15, 94:6, 94:7, 98:1, 111:9, 118:9, 118:11, 123:23, 134:21, 152:12, 153:23, 153:25

**77** [1] - 107:6
**78** [1] - 108:13
**7th** [1] - 77:3

# 8

**8** [6] - 113:15, 115:12, 132:10, 149:2, 151:17, 152:13
**80** [1] - 110:19
**841** [1] - 78:19
**841(a)** [1] - 61:1
**841(a)(1** [2] - 79:4, 79:5
**846** [2] - 78:21, 112:3
**88** [1] - 118:11

# 9

**9** [21] - 109:7, 109:8, 113:13, 113:16, 113:20, 114:1, 115:9, 115:21, 116:24, 134:21, 146:22, 148:15, 148:16, 148:18, 148:20, 148:21, 149:3, 149:15, 149:21, 154:10
**91** [1] - 163:24
**922(g)(1** [1] - 124:17
**924(c** [14] - 112:10, 116:21, 117:11, 117:22, 118:12, 118:24, 120:1, 120:2, 120:22, 123:3, 123:4, 146:20, 146:22, 149:23
**942(j** [2] - 118:23, 151:7
**95** [1] - 48:9
**9:00** [2] - 168:15, 169:16
**9:10** [1] - 169:16
**9:15** [1] - 169:16
**9:30** [4] - 166:9, 166:18, 169:14, 173:8

# A

**a.m** [2] - 2:1, 166:9
**abandon** [1] - 49:18
**abandonment** [1] - 50:10
**abbreviated** [1] - 90:12
**abet** [1] - 133:10
**abets** [2] - 102:25, 132:20
**abetted** [4] - 133:1, 133:8, 133:25, 144:1
**abetter** [3] - 133:24, 134:6, 134:9
**abetting** [8] - 102:22, 116:15, 132:9, 132:15,

133:5, 133:23, 164:15, 164:20

**ability** [5] - 10:11, 33:16, 38:21, 82:6, 173:6

**able** [15] - 3:13, 6:5, 9:15, 10:14, 16:4, 17:19, 17:20, 22:5, 92:22, 155:24, 156:9, 172:3, 172:8, 172:12, 172:14

**abrasion** [1] - 130:3

**absence** [3] - 46:9, 47:19, 50:9

**Absolutely** [1] - 5:13

**absolutely** [5] - 15:24, 16:2, 157:19, 168:6, 171:15

**absurd** [1] - 165:2

**accept** [7] - 30:16, 37:11, 38:22, 39:6, 40:8, 40:15, 125:15

**acceptable** [2] - 16:7, 171:5

**access** [3] - 92:14, 92:19

**accident** [2] - 127:11, 131:2

**accomplices** [1] - 36:24

**accomplish** [5] - 47:4, 80:15, 83:11, 131:15, 154:14

**accomplished** [1] - 83:9

**accomplishment** [2] - 83:25, 86:22

**accordance** [4] - 28:17, 42:8, 51:1, 138:17

**accorded** [1] - 24:15

**according** [5] - 31:17, 99:12, 122:18, 150:19, 150:23

**accordingly** [1] - 31:1

**Accordingly** [6] - 45:7, 45:23, 47:6, 104:22, 120:13, 132:22

**account** [1] - 33:25

**accountable** [6] - 88:19, 88:21, 88:24, 89:3, 89:9, 89:15

**accurate** [3] - 33:18, 33:25, 174:9

**accusation** [2] - 52:18, 138:8

**accused** [2] - 80:10, 122:22

**achieve** [1] - 51:6

**achievement** [3] - 66:23, 67:2, 67:17

**achieving** [2] - 54:4, 63:14

**acquiescence** [2] -

86:13, 133:21

**acquit** [3] - 42:22, 52:7, 136:21

**act** [46] - 45:20, 45:21, 45:22, 51:15, 56:13, 56:16, 57:7, 57:15, 57:18, 58:10, 58:13, 59:3, 59:7, 59:11, 59:19, 59:23, 60:2, 60:12, 69:12, 69:16, 69:19, 72:3, 75:5, 76:18, 77:2, 83:11, 83:24, 85:23, 87:18, 100:20, 102:1, 102:14, 102:24, 121:13, 122:4, 122:6, 122:10, 131:1, 131:14, 133:13, 133:15, 135:22, 136:3, 136:6, 137:10, 140:17

**Act** [40] - 69:17, 70:1, 70:14, 70:17, 70:24, 71:2, 71:3, 71:4, 72:1, 72:14, 72:15, 72:17, 72:22, 72:24, 73:1, 73:18, 73:19, 73:20, 73:22, 74:2, 74:4, 74:7, 74:14, 74:25, 75:1, 76:2, 76:13, 76:23, 77:1, 77:14, 77:16, 77:21, 78:20, 81:1, 81:6, 87:5, 87:10, 88:5, 144:10

**acted** [11] - 120:7, 120:9, 121:11, 121:14, 121:22, 122:2, 123:9, 123:10, 129:20, 130:22, 131:4

**action** [6] - 49:20, 50:13, 115:23, 126:13, 131:20, 133:14

**actions** [4] - 83:20, 83:22, 131:22, 134:5

**actively** [1] - 100:11

**Activities** [1] - 81:16

**activities** [14] - 51:14, 54:1, 54:16, 55:22, 63:11, 63:24, 64:11, 66:9, 66:13, 85:11, 99:16, 100:12, 108:12, 156:7

**Activity** [1] - 106:1

**activity** [31] - 37:9, 53:4, 56:3, 56:8, 56:10, 56:11, 65:13, 66:21, 66:24, 94:12, 94:14, 94:22, 95:7, 95:18, 96:13, 97:2, 97:17, 98:7, 98:19, 99:10, 99:11, 99:13, 99:19, 99:20, 99:23, 105:18, 106:21, 106:23, 107:16, 107:19, 130:9

**acts** [74] - 45:12, 45:22,

45:25, 46:16, 46:21, 46:22, 47:7, 47:9, 47:11, 47:15, 47:18, 47:20, 47:22, 47:24, 50:1, 50:3, 53:15, 55:1, 56:5, 56:7, 56:12, 56:15, 57:17, 58:12, 63:1, 64:8, 65:15, 65:17, 65:19, 67:1, 67:4, 67:6, 67:7, 67:10, 67:12, 67:15, 69:2, 69:6, 69:10, 72:25, 74:7, 85:5, 85:20, 86:14, 89:21, 89:23, 90:2, 90:5, 90:8, 99:11, 99:24, 100:2, 132:4, 132:5, 132:6, 132:13, 132:15, 133:5, 135:11, 140:9, 140:12, 140:15, 140:19, 143:25, 144:1, 144:2, 153:14, 153:17, 153:18, 153:21, 167:15, 167:19, 167:23

**actual** [10] - 80:17, 81:11, 82:4, 89:22, 106:7, 126:16, 126:19, 131:25, 135:12, 141:23

**Actual** [1] - 81:25

**ad** [1] - 168:8

**Adam** [1] - 1:22

**add** [1] - 6:2

**addict** [1] - 38:19

**addicted** [1] - 38:11

**addition** [15] - 21:18, 44:2, 46:14, 50:18, 62:4, 69:1, 101:15, 104:7, 116:14, 130:19, 135:21, 143:20, 153:25, 158:21, 159:20

**additional** [6] - 3:24, 70:25, 157:11, 157:18, 163:11, 168:3

**additionally** [1] - 143:1

**additions** [1] - 51:14

**addressed** [1] - 30:24

**adhere** [3] - 156:6, 156:15, 173:1

**admissibility** [1] - 32:20

**admissible** [3] - 14:5, 32:23

**admitted** [15] - 7:24, 9:19, 29:11, 30:21, 30:23, 31:5, 35:25, 36:7, 36:9, 36:14, 36:23, 43:25, 46:20, 48:4, 48:10

**admitting** [1] - 32:25

**adopt** [1] - 168:2

**advance** [1] - 116:8

**adverse** [1] - 43:15

**advise** [1] - 163:15

**advised** [1] - 86:25

**affairs** [6] - 53:3, 54:24,

56:2, 56:9, 64:6, 66:20

**affect** [1] - 65:15

**affected** [8] - 33:21, 54:2, 55:23, 61:18, 63:11, 65:12, 65:14, 65:18

**affecting** [7] - 65:21, 98:16, 124:2, 124:13, 124:21, 125:4, 127:20

**affiliated** [1] - 62:14

**affirm** [1] - 162:17

**affixed** [1] - 174:10

**aforethought** [30] - 56:21, 57:4, 57:10, 57:22, 58:6, 58:15, 58:24, 59:14, 60:8, 69:24, 71:9, 72:7, 73:5, 73:12, 74:11, 74:19, 76:6, 77:8, 95:21, 96:15, 97:5, 97:18, 98:9, 105:22, 118:2, 118:17, 119:6, 120:8, 121:12

**afternoon** [2] - 93:21, 168:25

**age** [1] - 25:15

**Agent** [2] - 16:25, 20:24

**agent** [6] - 17:1, 47:5, 53:19, 63:5, 90:1, 135:15

**ago** [3] - 84:22, 93:10, 107:22

**agree** [24] - 14:6, 14:13, 16:2, 30:16, 30:17, 55:25, 57:2, 58:4, 58:22, 60:6, 71:7, 73:10, 74:17, 77:6, 104:21, 104:23, 105:2, 138:16, 151:1, 153:18, 154:5, 154:13, 155:6, 162:19

**agreed** [12] - 29:5, 36:7, 56:6, 66:19, 67:6, 67:8, 67:9, 67:15, 90:7, 153:17, 162:3, 167:13

**agreement** [34] - 2:9, 29:3, 36:21, 50:24, 50:25, 66:23, 66:25, 71:12, 71:16, 71:18, 71:22, 71:23, 80:14, 81:4, 82:25, 83:4, 83:14, 83:21, 84:24, 85:2, 87:2, 94:10, 95:16, 96:11, 96:25, 97:15, 98:5, 105:3, 105:16, 106:17, 107:1, 107:10, 171:17, 172:10

**agreements** [3] - 37:6, 50:25, 51:6

**AH-1** [1] - 158:19

**ahead** [2] - 2:5, 16:15

**aid** [30] - 30:7, 32:13, 79:17, 94:8, 94:25, 96:2,

96:18, 97:23, 102:23, 104:7, 104:23, 105:7, 108:12, 109:17, 110:24, 111:13, 114:9, 114:21, 133:10, 140:21, 140:24, 141:12, 141:16, 141:17, 141:24, 141:25, 142:19, 143:16, 151:18, 165:13

**Aid** [2] - 94:18, 106:1

**aided** [4] - 133:1, 133:8, 133:25, 144:1

**aider** [1] - 133:23, 134:6, 134:8

**Aiding** [1] - 164:20

**aiding** [8] - 86:21, 102:22, 116:14, 132:9, 132:14, 133:5, 133:23, 164:15

**aids** [2] - 102:25, 132:20

**aims** [2] - 85:1, 86:7

**air** [1] - 90:21

**AKA** [12] - 53:8, 53:9, 53:10, 56:18, 56:19, 59:13, 76:5, 77:4, 95:19, 111:10

**Akers** [1] - 5:7

**al** [1] - 174:5

**alcoholic** [1] - 92:6

**alert** [1] - 22:3

**alerted** [1] - 79:1

**alibi** [2] - 136:11, 137:5

**alibis** [1] - 136:22

**allegations** [5] - 46:15, 77:2, 79:19, 101:15, 118:5

**allege** [1] - 69:7

**alleged** [29] - 31:14, 31:15, 36:24, 49:7, 61:17, 61:23, 62:15, 67:12, 69:2, 78:2, 78:3, 83:2, 83:6, 86:1, 87:9, 87:10, 87:14, 88:11, 90:5, 98:22, 101:22, 107:8, 123:14, 123:15, 123:16, 125:14, 136:13, 136:17, 137:13

**allegedly** [3] - 30:21, 31:6, 136:20

**alleges** [1] - 142:10

**allow** [2] - 25:24, 137:21

**allowed** [2] - 39:22, 48:6

**allowing** [1] - 46:24

**almost** [1] - 165:2

**alone** [17] - 23:22, 26:8, 27:21, 30:9, 32:8, 37:13, 42:21, 56:15, 57:17, 58:12, 73:1, 74:7, 76:3,

97:22, 121:6, 126:25, 137:2
**alphabetical** [1] - 18:10
**alternate** [2] - 91:16, 155:22
**Alternates** [1] - 157:16
**alternative** [2] - 150:22, 151:23
**ambit** [1] - 85:24
**AMD-04-029** [2] - 1:6, 174:5
**America** [1] - 24:14
**AMERICA** [1] - 1:5
**ammunition** [1] - 20:3
**amount** [4] - 88:8, 131:17, 144:18, 146:1
**amounted** [2] - 16:3, 131:22
**amounts** [3] - 145:17, 145:18, 146:18
**Amstel** [1] - 92:4
**analogous** [1] - 15:21, 151:12
**analysis** [1] - 80:2
**Andre** [1] - 1:13
**Annotated** [2] - 56:23, 95:24
**answer** [20] - 28:23, 33:2, 88:3, 138:14, 138:15, 138:16, 144:16, 144:17, 145:2, 152:5, 161:11, 161:12, 161:15, 161:17, 162:1, 162:4, 162:11, 162:13, 166:11, 169:3
**answered** [1] - 161:20
**answering** [1] - 48:13
**answers** [5] - 28:22, 134:7, 138:12, 138:13, 145:12
**Anthony** [23] - 58:11, 58:16, 58:25, 59:4, 59:5, 73:19, 73:21, 73:23, 74:12, 74:19, 74:20, 75:3, 97:19, 110:24, 115:1, 118:6, 143:10, 151:18, 152:8
**anxious** [1] - 157:7
**anyway** [2] - 2:6, 159:15
**apartment** [1] - 16:7
**apologize** [1] - 78:2
**appealed** [1] - 34:23
**appear** [5] - 40:22, 146:9, 146:11, 146:12, 155:23
**appearance** [1] - 80:6
**Appearances** [1] - 1:15
**appearances** [1] - 93:23

**applies** [5] - 22:16, 35:18, 120:20, 149:4, 149:10
**apply** [9] - 22:18, 24:5, 40:5, 74:24, 89:20, 113:7, 114:19, 148:19, 151:4
**applying** [1] - 155:20
**appreciate** [5] - 3:12, 164:11, 166:2, 173:6, 173:18
**Appreciate** [1] - 3:17
**apprised** [1] - 85:11
**appropriate** [7] - 29:21, 49:25, 75:22, 99:22, 157:8, 157:10, 172:22
**April** [1] - 30:23
**arbitrarily** [1] - 122:16
**area** [3] - 11:17, 55:8, 165:10
**argue** [3] - 37:7, 37:8, 167:17
**argued** [4] - 31:12, 34:6, 132:17, 143:18
**argues** [5] - 43:25, 44:1, 142:11, 143:4, 151:24
**arguments** [5] - 23:6, 25:6, 28:20, 41:1, 150:24
**armed** [5] - 53:16, 54:9, 55:2, 59:3, 59:19, 63:2, 63:17, 64:9, 69:11, 75:1, 75:11, 76:14, 76:21, 95:10
**arranging** [1] - 132:2
**array** [1] - 3:6
**arrays** [1] - 3:4
**arrest** [4] - 50:7, 54:19, 64:2, 163:22
**arrested** [4] - 21:2, 50:6, 50:8, 50:11
**Arrington** [19] - 8:18, 12:20, 18:24, 19:7, 19:12, 19:22, 45:17, 45:19, 79:1, 90:14, 90:17, 156:17, 156:23, 160:24, 161:25, 162:5, 162:7, 170:7, 173:10
**arrive** [2] - 26:14, 173:9
**arrives** [1] - 79:1
**arriving** [1] - 25:22
**Article** [1] - 95:24
**aspects** [1] - 94:4
**assault** [3] - 8:10, 69:11, 93:15
**assembled** [1] - 86:6
**assembly** [4] - 59:7, 59:24, 75:5, 76:18
**assert** [1] - 31:22
**asserting** [1] - 31:25
**assertion** [1] - 31:20

**assertions** [1] - 32:6
**asserts** [1] - 132:11
**assist** [5] - 29:19, 30:3, 30:12, 39:25, 88:2
**assisted** [1] - 86:25
**associate** [3] - 84:13, 133:11, 134:3
**associated** [10] - 54:1, 55:21, 61:19, 62:1, 63:10, 65:24, 66:1, 66:5, 66:7, 82:18
**associates** [18] - 53:23, 54:8, 54:17, 54:20, 54:23, 54:25, 55:7, 55:10, 63:8, 63:16, 63:25, 64:1, 64:3, 64:6, 64:7, 64:13, 64:15, 95:7
**associates'** [2] - 54:16, 63:24
**association** [1] - 86:2
**assume** [4] - 12:10, 10:15, 17:22, 92:16
**Assume** [1] - 27:3
**assure** [5] - 92:4, 93:23, 156:21, 157:14, 169:20
**attach** [1] - 43:14
**attack** [1] - 39:14
**attempt** [12] - 44:24, 59:22, 76:16, 119:9, 119:15, 123:12, 128:19, 131:18, 132:3, 132:5, 132:6
**attempted** [12] - 44:15, 44:18, 55:1, 64:8, 81:11, 88:22, 89:11, 118:18, 129:18, 130:1, 130:19, 131:10
**attempting** [1] - 131:10
**attempts** [3] - 31:18, 94:15, 129:6
**attention** [5] - 21:2, 22:7, 137:9, 161:5, 172:15
**Attorney** [2] - 13:6, 42:15
**attributable** [2] - 88:15, 88:17
**audio** [3] - 10:11, 157:23, 158:11
**audiotapes** [1] - 158:3
**August** [2] - 55:16, 95:5
**author** [1] - 15:16
**authorities** [1] - 136:24
**authorized** [1] - 68:20
**automatically** [1] - 86:3
**available** [9] - 9:11, 29:12, 36:1, 36:14, 36:15, 36:16, 45:10, 158:19, 159:2, 159:4, 163:17, 169:10

**Avoid** [1] - 172:24
**avoid** [1] - 94:2
**awaiting** [1] - 18:16
**aware** [1] - 121:20
**awareness** [1] - 85:1

**B**

**B-8** [3] - 16:24, 16:25, 17:11
**backup** [1] - 156:13
**bad** [3] - 121:22, 133:17, 165:25
**Baltimore** [8] - 1:12, 1:25, 53:13, 55:8, 62:24, 64:14
**bank** [2] - 82:11, 90:22
**Barry** [1] - 1:22
**base** [6] - 54:10, 55:11, 60:19, 78:12, 88:7, 159:5
**based** [13] - 23:20, 25:10, 26:2, 28:9, 32:15, 32:18, 34:25, 42:6, 68:18, 142:25, 151:21, 164:24, 165:7
**basic** [1] - 85:1
**basis** [10] - 26:10, 27:12, 27:16, 37:13, 137:2, 137:20, 141:14, 142:8, 147:7, 148:3
**BDW356-US** [1] - 112:7
**bear** [5] - 23:18, 33:19, 49:5, 90:2, 135:16
**bearing** [9] - 34:10, 40:13, 46:10, 49:4, 85:17, 112:5, 112:7, 124:5, 124:14
**beat** [5] - 4:4, 14:1, 14:8
**became** [5] - 61:21, 66:17, 81:5, 84:4, 88:13, 106:19
**become** [1] - 85:9
**becomes** [3] - 47:5, 50:11, 87:1
**bed** [1] - 16:9
**Beethoven** [1] - 93:7
**Beethoven's** [1] - 93:9
**begin** [14] - 42:20, 91:3, 91:5, 91:11, 91:14, 91:17, 91:18, 91:21, 144:8, 154:23, 163:6, 166:19, 169:9, 169:17
**begins** [1] - 146:20
**Behalf** [5] - 1:15, 1:17, 1:18, 1:20, 1:21
**behalf** [1] - 31:8
**behavior** [1] - 37:10
**behind** [2] - 16:9, 166:14

**belief** [1] - 33:13
**beliefs** [1] - 155:15
**believable** [1] - 38:20
**Belinda** [4] - 12:10, 86:18, 92:15, 166:15
**Belinda's** [1] - 2:24
**belong** [1] - 2:14
**belongings** [1] - 157:4
**below** [7] - 56:5, 56:8, 56:14, 57:16, 58:11, 72:25, 74:6
**benefit** [2] - 37:22, 168:22
**Benson** [3] - 16:25, 20:24
**best** [1] - 37:25
**better** [2] - 32:14, 94:1
**between** [14] - 7:12, 23:7, 28:16, 30:18, 35:6, 35:12, 65:9, 71:13, 79:21, 94:19, 122:20, 131:24, 137:13
**beverages** [1] - 92:6
**beyond** [84] - 26:7, 26:19, 28:12, 32:11, 37:14, 41:13, 42:4, 42:19, 42:24, 43:1, 43:10, 46:7, 47:12, 50:15, 61:16, 61:22, 65:6, 65:23, 66:3, 66:10, 66:15, 68:7, 69:13, 70:15, 72:19, 73:24, 75:12, 80:8, 81:2, 82:24, 84:2, 87:23, 87:24, 93:25, 98:14, 99:3, 99:8, 100:3, 100:8, 100:16, 100:24, 103:4, 104:15, 106:16, 113:3, 113:19, 114:2, 114:11, 115:16, 115:18, 119:23, 120:15, 121:10, 121:25, 122:25, 124:23, 125:5, 126:9, 127:18, 129:13, 129:15, 129:24, 130:21, 131:12, 131:19, 132:23, 134:13, 134:18, 135:8, 136:14, 137:20, 140:9, 140:18, 140:19, 141:7, 142:17, 143:6, 145:8, 145:14, 146:18, 147:18, 147:20, 173:21
**Beyond** [1] - 168:1
**bias** [2] - 26:13, 33:23
**bind** [1] - 153:6
**binder** [3] - 19:13, 19:14, 19:16
**binders** [1] - 19:16
**bit** [1] - 169:12
**blank** [3] - 5:22, 92:13
**block** [1] - 5:9

**Bo** [4] - 4:3, 53:8, 56:18, 95:19
**boards** [1] - 5:15
**Bodily** [1] - 130:3
**bodily** [13] - 70:6, 70:12, 75:20, 101:13, 128:20, 129:5, 129:18, 130:1, 130:5, 130:8, 130:12, 130:16, 130:17
**body** [1] - 130:6
**books** [2] - 2:21, 2:25
**bother** [1] - 170:3
**bottom** [2] - 2:11, 86:11
**bouncing** [1] - 165:10
**bound** [1] - 33:8
**box** [2] - 82:10, 161:25
**Brahms** [1] - 93:8
**break** [1] - 121:23
**breaking** [2] - 127:14, 131:8
**brief** [3] - 70:22, 91:23, 101:7
**briefly** [1] - 163:14
**bring** [2] - 16:17, 45:18, 68:14, 69:5, 92:9, 131:15, 134:3, 162:8, 162:10, 170:20, 170:21, 172:4
**Bring** [1] - 166:14
**bringing** [1] - 171:1
**broken** [1] - 19:20
**brother** [1] - 142:22
**brought** [8] - 10:24, 24:13, 78:20, 161:4, 161:14, 163:3, 170:1
**Brown** [28] - 57:7, 57:11, 72:3, 72:7, 96:2, 96:15, 101:18, 102:1, 102:2, 102:5, 110:10, 110:11, 110:18, 114:21, 117:16, 142:1, 142:7, 142:11, 142:15, 148:24, 149:2, 149:6, 150:11, 150:18, 150:19, 150:22, 151:6, 151:9
**Brown's** [3] - 150:22, 150:24, 165:1
**bruise** [1] - 130:3
**building** [1] - 147:25
**bunch** [1] - 14:4
**burden** [20] - 25:13, 25:16, 26:18, 39:17, 41:4, 42:18, 42:25, 43:2, 43:3, 43:9, 43:10, 50:14, 66:18, 80:25, 106:14, 113:19, 119:24, 120:25, 124:23, 136:13
**burn** [1] - 130:3
**business** [7] - 53:20, 54:17, 63:6, 63:25,

84:13, 100:13, 153:7

## C

**C-1** [1] - 11:24
**C-12** [1] - 11:24
**C-13** [1] - 11:22
**caliber** [6] - 111:7, 112:4, 112:6, 124:2, 124:4, 124:14
**cannot** [8] - 27:7, 48:11, 51:22, 66:7, 82:14, 122:16, 137:21, 155:6
**capable** [1] - 75:19
**car** [2] - 165:3, 171:6
**care** [8] - 2:5, 18:6, 22:7, 37:17, 44:6, 121:20, 159:14, 160:2
**careful** [2] - 18:9, 42:22
**carefully** [1] - 33:10
**carried** [3] - 128:2, 128:3, 144:2
**carry** [3] - 13:6, 13:10, 130:17
**carry-over** [2] - 13:6, 13:10
**carrying** [3] - 47:6, 75:8, 151:10
**cart** [18] - 2:10, 2:17, 2:18, 2:19, 2:22, 2:24, 2:25, 8:19, 9:25, 13:18, 16:18, 16:20, 18:5, 18:14, 157:21, 159:3, 166:13
**Case** [1] - 174:5
**case** [78] - 11:7, 11:8, 22:7, 22:15, 22:17, 22:21, 23:10, 23:21, 24:9, 25:3, 25:7, 25:21, 25:23, 26:5, 26:23, 28:18, 28:25, 29:12, 29:20, 30:25, 31:4, 31:7, 31:18, 32:7, 33:20, 36:1, 36:8, 36:17, 37:3, 37:6, 37:15, 38:23, 40:8, 40:11, 40:22, 40:25, 41:9, 43:5, 43:7, 43:20, 44:17, 59:7, 59:24, 68:5, 69:3, 69:5, 75:5, 76:18, 79:17, 80:10, 83:17, 88:7, 91:10, 91:22, 92:17, 104:25, 120:6, 133:15, 136:18, 137:19, 138:17, 139:11, 139:12, 140:5, 155:24, 156:6, 156:10, 156:24, 167:4, 170:19, 171:6, 172:24, 173:1, 173:4, 173:17
**CASE** [1] - 1:6

**cases** [4] - 31:11, 83:20, 94:21, 94:23
**cassette** [8] - 5:20, 8:14, 8:16, 8:21, 9:12, 159:1, 159:3, 172:7
**cassettes** [1] - 159:2
**catch** [1] - 22:5
**caught** [1] - 107:4
**caused** [18] - 33:24, 70:10, 100:25, 101:11, 117:13, 117:24, 118:14, 120:5, 121:6, 123:8, 123:11, 130:1, 130:8, 150:12, 150:18, 150:20, 150:24, 151:15
**Caused** [1] - 150:12
**causes** [2] - 119:1, 129:5
**causing** [11] - 75:20, 116:19, 116:23, 117:6, 120:7, 129:17, 149:22, 149:25, 150:19, 151:8, 152:14
**caution** [7] - 32:4, 37:16, 85:25, 86:12, 158:25, 159:14, 159:24
**CD** [19] - 7:11, 7:15, 7:23, 8:14, 8:24, 8:25, 9:22, 10:12, 11:21, 12:1, 12:6, 12:10, 93:15, 157:25, 158:14, 171:24, 172:1, 172:7
**CD's** [4] - 10:13, 10:21, 12:20, 159:6
**cease** [1] - 170:10
**cell** [5] - 5:9, 17:8, 17:9, 20:20, 21:1
**Certain** [1] - 32:12
**certain** [18] - 7:24, 24:22, 27:1, 29:4, 29:15, 29:17, 31:5, 32:20, 34:5, 42:12, 43:24, 43:25, 45:13, 61:8, 88:3, 94:3, 137:11, 155:25
**Certainly** [1] - 166:8
**certainly** [8] - 24:24, 156:24, 159:25, 164:22, 165:4, 171:5, 171:18, 173:20
**CERTIFICATE** [1] - 174:1
**certify** [2] - 174:3, 174:7
**chain** [1] - 26:25
**chairs** [2] - 21:19, 91:9, 156:16
**change** [2] - 155:11, 155:13
**changes** [1] - 51:13
**character** [1] - 86:24
**characterized** [2] -

64:19, 83:16
**charge** [36] - 46:12, 52:8, 77:18, 77:19, 81:6, 87:16, 94:7, 99:13, 101:17, 101:21, 102:7, 104:6, 104:8, 109:9, 110:15, 111:9, 113:7, 115:11, 116:18, 116:22, 117:22, 118:8, 124:16, 125:25, 140:3, 140:24, 141:15, 147:4, 147:10, 150:8, 152:13, 153:24, 153:25, 154:2, 154:10
**charged** [131] - 23:17, 24:12, 25:25, 26:10, 31:16, 36:24, 44:23, 45:2, 46:4, 47:14, 49:11, 50:16, 51:8, 51:17, 51:21, 51:23, 52:1, 52:6, 52:10, 52:20, 53:2, 61:2, 62:14, 62:16, 65:1, 66:4, 69:6, 69:7, 69:10, 71:2, 81:4, 83:1, 83:24, 84:5, 84:21, 87:15, 87:20, 87:21, 87:23, 88:11, 94:24, 96:1, 96:17, 97:8, 97:22, 98:13, 99:16, 102:21, 104:16, 106:6, 106:17, 107:2, 107:10, 108:11, 112:15, 112:16, 112:17, 112:19, 113:10, 113:25, 114:6, 114:8, 114:9, 114:13, 114:15, 114:20, 114:21, 114:25, 115:1, 115:5, 115:9, 115:10, 115:17, 116:13, 116:20, 116:24, 117:2, 117:4, 119:11, 120:1, 120:13, 120:18, 120:19, 123:3, 123:13, 125:3, 125:7, 125:14, 126:6, 127:19, 127:24, 128:8, 128:13, 128:14, 130:19, 131:9, 132:19, 132:23, 132:25, 133:4, 134:1, 134:2, 134:11, 134:14, 134:15, 134:17, 134:20, 135:10, 137:3, 138:9, 138:10, 139:16, 141:12, 141:13, 141:22, 142:21, 143:14, 144:9, 146:14, 147:22, 148:21, 149:3, 151:15, 151:20, 152:12, 152:15, 152:18, 152:23, 153:14, 154:6
**charges** [56] - 29:1, 30:25, 31:22, 32:1, 32:10, 44:1, 46:11, 46:23, 48:12, 48:18, 52:15, 52:17, 52:23, 52:24, 53:6, 62:18,

67:19, 68:14, 68:22, 68:23, 69:17, 70:24, 72:2, 72:15, 72:17, 73:21, 73:22, 74:25, 76:2, 76:13, 76:23, 95:3, 101:18, 105:6, 105:25, 110:2, 110:6, 110:19, 113:8, 113:9, 116:14, 117:19, 118:21, 120:11, 123:23, 124:7, 128:17, 137:10, 141:24, 142:7, 143:4, 143:17, 149:24, 151:14, 151:25, 153:11
**check** [5] - 17:20, 17:21, 45:17, 144:21, 162:9, 167:5
**checked** [1] - 138:14
**chemical** [1] - 80:2
**chemist** [1] - 80:2
**chilly** [3] - 45:15, 45:16
**choices** [1] - 92:9
**choose** [4] - 139:8, 153:4, 162:21, 171:4
**Christopher** [1] - 48:16
**circumstance** [2] - 46:9, 156:2
**circumstances** [10] - 26:25, 33:11, 45:25, 67:24, 83:17, 99:21, 103:17, 108:6, 108:18, 122:19
**Circumstantial** [2] - 28:14, 80:3
**circumstantial** [10] - 26:25, 27:2, 27:11, 27:19, 28:2, 28:10, 28:16, 28:19, 79:25, 80:7
**cited** [1] - 11:9
**civil** [1] - 31:7
**claim** [2] - 50:21, 151:19
**clarification** [1] - 24:23
**clarify** [1] - 166:10
**clean** [2] - 42:21, 93:1
**cleaning** [1] - 15:14
**clear** [2] - 26:12, 148:1
**clearly** [3] - 45:21, 132:5, 172:8
**CLERK** [1] - 2:17
**Clerk** [1] - 31:6
**clerk** [3] - 4:18, 13:8, 29:15
**clerks** [1] - 10:24
**client** [2] - 14:7, 14:8
**climate** [2] - 55:8, 64:14
**clip** [1] - 6:12
**clips** [1] - 160:7
**clock** [1] - 90:25
**close** [2] - 82:15, 94:19
**closes** [1] - 171:7

**closing** [1] - 171:10
**coat** [1] - 27:6
**Coburn** [1] - 1:22
**cocaine** [39] - 54:10, 54:11, 55:11, 60:19, 60:21, 77:19, 78:12, 78:14, 79:10, 79:15, 79:20, 79:24, 80:4, 80:8, 80:11, 80:12, 81:8, 88:7, 88:8, 88:9, 144:15, 144:18, 145:2, 145:4, 145:6, 145:7, 145:10, 145:12, 146:17
**coconspirator** [4] - 47:21, 89:25, 135:14, 167:15
**coconspirators** [8] - 46:23, 50:4, 51:15, 83:24, 89:21, 90:2, 135:7, 135:16
**Code** [23] - 2:11, 53:25, 55:25, 56:4, 56:12, 56:23, 61:1, 61:4, 78:19, 95:24, 111:14, 112:3, 112:10, 116:21, 117:11, 117:15, 117:22, 118:1, 118:13, 118:16, 118:23, 119:4, 124:18
**codefendants** [1] - 48:6
**color** [1] - 38:5
**combination** [2] - 27:9, 80:14
**combine** [8] - 55:24, 57:1, 58:3, 58:22, 60:5, 73:9, 74:16, 77:5
**comfortable** [1] - 158:2
**coming** [4] - 11:10, 18:5, 156:12, 163:17
**comment** [1] - 11:1
**commerce** [21] - 54:2, 55:23, 61:19, 63:12, 65:7, 65:8, 65:12, 65:14, 65:15, 65:18, 65:22, 98:16, 99:5, 124:2, 124:13, 124:21, 125:4, 127:20, 127:23, 128:5, 128:10
**commission** [24] - 49:25, 50:1, 56:5, 67:4, 102:2, 102:15, 102:25, 116:9, 128:24, 128:25, 129:8, 129:9, 129:22, 130:24, 131:5, 131:20, 131:23, 132:2, 132:8, 133:1, 133:9, 134:1, 135:17, 152:15
**commit** [43] - 53:16, 55:1, 56:7, 63:2, 64:8, 66:25, 67:6, 67:9, 67:15, 71:13, 71:14, 71:16,

72:21, 73:17, 74:1, 74:24, 76:25, 78:22, 80:20, 90:8, 99:20, 106:3, 106:5, 106:11, 106:20, 107:7, 107:14, 108:10, 108:14, 131:11, 131:13, 131:17, 132:4, 132:6, 132:21, 133:10, 141:14, 141:17, 153:17, 167:14, 167:15
**commits** [1] - 135:14
**committed** [93] - 32:1, 46:22, 53:15, 55:1, 56:14, 57:16, 58:11, 63:1, 64:8, 67:7, 67:9, 67:13, 67:15, 69:14, 70:14, 70:16, 71:1, 71:3, 71:18, 72:20, 72:23, 72:25, 73:25, 74:2, 74:6, 75:17, 77:1, 80:22, 87:19, 90:6, 90:7, 98:22, 99:19, 100:3, 100:17, 101:19, 102:12, 103:1, 103:20, 103:22, 103:24, 104:1, 104:11, 104:16, 104:22, 104:24, 105:2, 106:13, 108:21, 108:23, 108:25, 109:2, 113:21, 114:3, 115:16, 117:17, 119:8, 119:14, 119:25, 120:18, 123:3, 132:19, 132:22, 132:25, 133:4, 133:6, 133:7, 133:20, 133:21, 134:21, 134:23, 134:25, 135:4, 135:6, 136:1, 136:13, 140:13, 143:25, 150:21, 152:15, 153:15, 153:17, 153:19, 154:6, 154:9, 164:5, 164:7, 164:22, 165:16, 167:23, 167:24
**committing** [15] - 52:21, 80:24, 98:24, 103:6, 103:14, 106:7, 108:3, 116:20, 116:23, 120:12, 120:13, 122:6, 122:10, 132:15, 138:10
**common** [31] - 28:3, 34:24, 40:10, 47:8, 51:4, 54:4, 56:23, 57:14, 57:25, 58:9, 58:19, 59:2, 59:9, 59:18, 60:1, 60:11, 62:2, 62:4, 63:14, 64:19, 73:15, 75:7, 76:10, 76:20, 77:11, 83:11, 83:23, 86:7, 95:23, 105:24, 135:1
**commonly** [5] - 54:10, 55:11, 60:19, 78:13, 127:12

**Commonwealth** [1] - 55:17
**communicate** [2] - 50:3, 160:22
**communicated** [1] - 130:15
**communication** [2] - 41:15, 171:14
**communications** [2] - 41:16, 171:21
**community** [1] - 24:11
**commuter** [1] - 158:9
**company** [1] - 91:16
**compensation** [1] - 75:24
**complement** [1] - 155:23
**complete** [6] - 6:2, 49:16, 87:5, 91:2, 138:23, 174:9
**completed** [1] - 152:25
**completely** [1] - 33:25
**completeness** [1] - 162:9
**completing** [1] - 48:14
**complied** [1] - 20:14
**comply** [1] - 22:18
**comprising** [1] - 65:3
**computer** [4] - 93:16, 157:25, 158:2, 164:2
**concept** [2] - 81:22, 132:9
**concepts** [1] - 94:21
**concern** [5] - 24:10, 41:11, 137:16, 155:2
**concerned** [3] - 32:21, 151:7, 165:15
**concerning** [5] - 31:2, 48:21, 67:22, 68:1, 80:5
**concerns** [2] - 34:21, 73:19
**conclude** [5] - 27:10, 27:15, 34:7, 67:7, 162:19
**Conclusion** [1] - 173:24
**conclusion** [1] - 27:25
**conclusively** [1] - 45:21
**concrete** [1] - 81:20
**conditions** [1] - 129:9
**Conduct** [1] - 172:24
**conduct** [24] - 45:12, 53:2, 56:1, 56:2, 56:8, 62:2, 67:8, 68:10, 68:11, 68:16, 70:9, 70:11, 83:17, 86:6, 101:10, 101:12, 121:18, 128:19, 129:5, 129:17, 129:25, 132:7, 133:22, 138:9
**conducted** [2] - 54:24, 64:6
**confederate** [9] - 55:24,

57:2, 58:3, 58:22, 60:6, 71:7, 73:10, 74:17, 77:6
**confederates** [1] - 46:23
**confer** [1] - 161:6
**conferred** [1] - 161:18
**confession** [1] - 15:22
**configuration** [1] - 142:2
**confirm** [2] - 10:7, 10:9
**confirmed** [1] - 9:7
**Confirming** [1] - 10:10
**conflicts** [1] - 34:16
**Congress** [1] - 61:12
**connect** [1] - 92:22
**connected** [1] - 66:11
**connection** [17] - 27:17, 46:18, 73:18, 82:20, 85:8, 87:11, 99:6, 99:11, 100:19, 107:12, 110:6, 117:7, 118:9, 125:24, 149:25, 150:11, 150:13
**conscientious** [1] - 157:2
**conscious** [3] - 70:20, 101:5, 122:22
**consciously** [1] - 121:15
**consciousness** [1] - 44:13
**consent** [2] - 55:14, 64:16
**consequence** [1] - 130:10
**consequences** [1] - 125:22
**Consequently** [1] - 27:8
**Consider** [4] - 33:14, 33:16, 33:19, 34:2
**consider** [52] - 11:4, 23:2, 23:13, 25:4, 25:7, 25:12, 28:23, 28:25, 29:18, 31:25, 32:2, 32:6, 34:17, 34:19, 35:14, 35:20, 37:19, 39:3, 39:4, 40:2, 41:3, 42:16, 43:17, 44:16, 46:10, 47:20, 50:5, 52:22, 79:16, 83:22, 84:10, 84:20, 88:18, 103:17, 103:19, 108:6, 108:18, 108:20, 113:14, 120:17, 126:2, 126:4, 133:8, 135:22, 136:17, 139:7, 141:5, 145:13, 147:12, 149:7, 149:21, 150:4
**consideration** [23] - 22:8, 24:15, 32:17, 36:17, 39:12, 42:23, 48:12, 94:9, 94:10,

95:15, 96:10, 96:24, 97:14, 98:4, 99:1, 103:8, 105:15, 106:23, 107:19, 122:16, 137:22, 139:4, 146:23
**considerations** [8] - 24:1, 37:17, 40:4, 46:18, 49:4, 113:7, 114:19, 148:19
**considered** [18] - 28:21, 31:3, 34:10, 35:13, 36:8, 40:13, 44:12, 47:17, 48:2, 48:11, 52:18, 69:12, 82:20, 100:2, 113:4, 126:1, 154:21
**considering** [6] - 28:5, 32:14, 38:22, 47:13, 47:15, 84:9
**consist** [2] - 61:25, 132:1
**consisted** [1] - 56:12
**consistent** [2] - 11:14, 29:18
**consists** [1] - 29:1
**consolidated** [2] - 2:23, 8:25
**conspiracies** [12] - 46:17, 49:10, 49:11, 50:22, 51:5, 51:7, 51:8, 51:9, 51:19, 52:2, 52:10, 146:19
**conspiracy** [213] - 31:16, 46:13, 46:14, 46:19, 47:1, 47:2, 47:4, 47:6, 47:8, 47:9, 47:14, 47:16, 47:17, 47:23, 47:25, 48:1, 48:5, 48:22, 48:25, 49:1, 49:3, 49:5, 49:7, 49:8, 49:14, 49:17, 49:19, 49:21, 49:23, 50:2, 50:6, 50:8, 50:9, 50:10, 50:12, 50:13, 50:16, 50:20, 50:21, 51:4, 51:10, 51:13, 51:16, 51:18, 51:20, 51:23, 51:25, 52:6, 52:8, 52:12, 52:25, 53:2, 53:16, 56:6, 56:13, 57:13, 57:15, 58:10, 60:2, 61:15, 61:21, 63:2, 66:17, 67:3, 67:14, 67:17, 69:11, 69:19, 71:12, 71:14, 71:21, 72:9, 72:13, 72:17, 73:17, 73:22, 74:23, 76:24, 77:13, 77:18, 78:2, 78:3, 80:10, 80:13, 80:15, 80:19, 80:21, 80:23, 81:5, 81:6, 82:24, 83:3, 83:15, 83:20, 84:3,

84:4, 84:5, 84:7, 84:9, 84:11, 84:15, 84:21, 85:1, 85:4, 85:9, 85:13, 85:24, 86:2, 86:3, 86:8, 86:16, 86:21, 86:24, 87:6, 87:9, 87:13, 87:19, 87:20, 87:23, 88:2, 88:4, 88:9, 88:11, 88:12, 88:13, 89:1, 89:4, 89:6, 89:8, 89:10, 89:14, 89:17, 89:18, 90:1, 90:3, 90:6, 90:10, 95:8, 99:7, 106:8, 106:11, 106:13, 106:19, 107:7, 107:12, 109:22, 110:7, 110:17, 111:4, 112:1, 112:18, 113:11, 113:15, 113:25, 114:16, 115:11, 117:4, 134:14, 134:15, 134:16, 134:23, 135:4, 135:15, 139:15, 140:2, 140:4, 140:14, 141:14, 141:15, 141:17, 141:21, 143:24, 144:2, 144:3, 144:4, 144:5, 144:6, 144:12, 144:14, 144:19, 144:25, 145:1, 145:3, 145:5, 145:7, 145:13, 145:20, 145:21, 145:23, 146:2, 146:15, 147:5, 147:8, 147:15, 147:22, 148:3, 148:11, 148:12, 149:2, 149:17, 149:19, 152:13, 153:12, 153:15, 153:19, 154:12, 165:24, 167:13
 **Conspiracy** [2] - 71:21, 71:23
 **conspiracy's** [1] - 85:15
 **conspirator** [4] - 50:7, 56:7, 84:23, 87:3
 **conspirator's** [1] - 85:17
 **conspirators** [6] - 47:5, 83:6, 83:10, 85:21, 135:2, 135:15
 **conspire** [14] - 55:24, 57:2, 58:3, 58:22, 60:6, 60:16, 61:5, 71:6, 73:10, 74:17, 77:6, 78:9, 105:19, 106:3
 **conspired** [6] - 72:21, 74:1, 76:25, 82:21, 106:20, 107:14
 **conspires** [2] - 78:22, 94:15
 **conspiring** [5] - 70:25, 105:7, 108:9, 108:11, 108:14
 **constitute** [5] - 81:19, 132:5, 132:14, 138:13,

174:7
 **constituted** [4] - 53:23, 54:3, 63:9, 63:12
 **constitutes** [7] - 31:15, 56:15, 57:17, 58:12, 68:11, 73:1, 74:7
 **constituting** [2] - 132:16, 135:11
 **Constitution** [1] - 43:8
 **constructive** [2] - 81:11, 82:13
 **Consult** [1] - 155:9
 **contained** [5] - 7:23, 25:20, 52:15, 52:21, 52:23
 **container** [2] - 159:19, 159:20
 **containers** [1] - 159:18
 **containing** [10] - 29:24, 30:1, 60:19, 60:21, 60:23, 60:24, 78:12, 78:14, 78:16, 78:17
 **contains** [4] - 13:5, 23:12, 46:15, 118:5
 **contend** [1] - 50:18
 **contending** [1] - 31:20
 **contends** [1] - 136:22
 **contentions** [1] - 37:11
 **contents** [1] - 21:21
 **context** [2] - 24:6, 83:19
 **continuation** [1] - 31:15
 **Continue** [2] - 156:6, 173:1
 **continue** [8] - 15:12, 50:12, 90:24, 156:13, 167:6, 170:22, 171:3, 173:6
 **continued** [3] - 51:15, 64:24, 173:3
 **continuing** [5] - 54:4, 62:7, 63:13, 64:21, 156:3
 **contradicted** [4] - 34:3, 34:14, 44:4, 44:12
 **contradictions** [1] - 164:13
 **contradicts** [3] - 164:14, 164:16, 164:18
 **contrary** [4] - 59:6, 59:23, 75:4, 76:17
 **contrast** [2] - 51:5, 106:3
 **control** [13] - 23:24, 75:9, 75:14, 82:1, 82:6, 82:12, 82:18, 116:5, 116:6, 126:15, 126:17, 126:21, 127:2
 **controlled** [23] - 53:15, 54:10, 60:20, 60:22, 60:23, 60:25, 63:1, 63:18, 78:13, 78:15,

78:16, 78:18, 79:8, 79:10, 79:11, 88:6, 88:14, 88:16, 95:9, 109:23, 111:5, 112:2, 112:19
 **converted** [2] - 115:22, 126:12
 **convict** [18] - 28:13, 37:12, 71:14, 75:11, 100:23, 102:5, 102:9, 102:18, 104:17, 104:19, 112:22, 125:6, 131:18, 148:18, 149:9, 149:17, 154:4, 167:12
 **convicted** [12] - 39:1, 39:5, 105:4, 123:24, 124:10, 124:19, 124:25, 125:8, 125:10, 133:5, 137:23, 140:11
 **conviction** [6] - 68:21, 122:23, 125:13, 125:19, 125:23, 125:25
 **convictions** [2] - 39:3, 126:4
 **convinced** [1] - 42:24
 **convinces** [1] - 37:13
 **cooperate** [3] - 44:16, 44:19, 44:25
 **copied** [4] - 12:8, 12:9, 17:4, 158:7
 **copies** [11] - 4:18, 17:3, 19:1, 19:2, 19:5, 22:22, 91:8, 160:17, 160:19, 168:23, 169:4
 **copy** [15] - 3:22, 5:22, 9:15, 12:24, 19:6, 19:23, 21:19, 21:23, 111:20, 137:25, 138:5, 156:16, 169:5
 **core** [1] - 65:2
 **corporation** [2] - 62:10, 62:13
 **Correct** [1] - 8:15
 **correct** [3] - 5:15, 8:14, 164:25
 **corrected** [3] - 150:14, 165:11, 165:22
 **Corrupt** [1] - 53:1
 **counsel** [23] - 2:9, 16:7, 17:3, 17:19, 22:10, 23:7, 25:6, 25:8, 28:20, 29:14, 34:6, 36:7, 39:14, 41:1, 92:2, 92:4, 92:9, 150:15, 159:17, 161:6, 161:18, 166:16, 172:10
 **Counsel** [3] - 23:5, 163:8, 173:16
 **Count** [259] - 13:12, 31:16, 46:12, 46:14, 51:21, 52:24, 53:5, 61:3,

65:1, 67:11, 67:13, 69:6, 69:17, 72:15, 73:20, 77:14, 77:16, 77:17, 77:21, 78:3, 78:4, 78:20, 80:25, 81:5, 87:9, 88:4, 88:11, 90:5, 94:6, 94:24, 95:2, 95:4, 96:1, 96:3, 96:5, 96:17, 96:18, 96:19, 97:8, 97:10, 97:22, 97:24, 97:25, 99:7, 99:11, 100:20, 101:18, 101:22, 105:5, 105:6, 105:8, 105:9, 105:25, 106:2, 106:6, 106:14, 107:2, 107:8, 107:12, 107:13, 108:10, 109:12, 109:18, 109:24, 110:2, 110:5, 110:6, 110:12, 110:13, 110:14, 110:15, 110:17, 110:18, 110:19, 111:5, 111:9, 111:15, 112:3, 112:14, 112:16, 112:19, 112:22, 112:24, 112:25, 113:2, 113:4, 113:5, 113:7, 113:8, 113:9, 113:15, 114:6, 114:8, 114:9, 114:13, 114:15, 114:16, 114:20, 114:22, 114:25, 115:5, 115:6, 115:9, 115:12, 117:4, 117:8, 117:12, 117:19, 117:23, 118:4, 118:5, 118:6, 118:8, 118:13, 120:1, 120:2, 120:3, 120:11, 120:13, 120:15, 120:17, 120:18, 120:19, 123:4, 123:5, 123:14, 123:15, 123:16, 123:23, 124:7, 128:13, 129:14, 130:19, 131:9, 134:14, 134:15, 139:5, 139:14, 140:2, 140:4, 140:7, 140:20, 140:23, 140:24, 141:3, 141:11, 141:13, 141:16, 141:18, 141:20, 141:21, 141:23, 141:24, 142:5, 142:15, 142:19, 142:22, 143:8, 143:9, 143:10, 143:13, 144:5, 144:7, 144:9, 144:24, 146:4, 146:9, 146:11, 146:12, 146:14, 146:20, 147:2, 147:5, 147:10, 147:11, 147:12, 147:13, 147:16, 147:17, 147:22, 148:4, 148:6, 148:8, 148:9, 148:10, 148:13, 148:15, 148:16, 148:18, 148:20, 148:21, 148:23, 148:24, 148:25, 149:2, 149:3,

149:4, 149:6, 149:7, 149:8, 149:9, 149:10, 149:11, 149:23, 149:24, 150:6, 150:7, 150:9, 150:10, 150:16, 150:19, 151:6, 151:11, 151:13, 151:15, 151:16, 151:17, 151:19, 151:20, 152:6, 152:7, 152:9, 152:12, 152:13, 152:15, 152:18, 152:19, 152:21, 152:23, 153:11, 153:25, 158:23, 163:20, 165:9, 165:13
 **count** [46] - 23:15, 23:21, 23:23, 23:25, 51:23, 51:24, 99:7, 102:14, 103:6, 104:11, 104:12, 104:14, 106:18, 107:10, 110:11, 110:13, 112:23, 113:12, 113:15, 116:18, 116:20, 118:10, 120:2, 120:12, 120:22, 121:2, 123:4, 123:8, 123:21, 128:12, 128:14, 128:16, 139:17, 139:19, 139:23, 139:25, 141:2, 141:11, 142:15, 143:1, 150:4, 151:13, 154:6, 164:19, 171:20
 **counter** [1] - 165:4
 **counter-intuitive** [1] - 165:4
 **country** [1] - 11:12
 **Counts** [55] - 49:12, 51:8, 51:21, 52:11, 94:6, 98:13, 100:23, 101:16, 102:7, 102:21, 104:5, 104:8, 104:17, 104:20, 109:7, 109:8, 111:1, 112:21, 113:13, 113:16, 113:20, 114:1, 114:19, 115:1, 115:9, 115:21, 116:17, 116:22, 116:24, 118:22, 119:12, 119:24, 120:2, 120:5, 120:20, 123:5, 123:19, 124:16, 125:15, 126:1, 132:10, 134:12, 134:18, 134:21, 141:18, 143:23, 146:22, 149:14, 152:17, 153:23, 154:2, 154:10, 165:17
 **counts** [55] - 11:11, 11:13, 23:12, 23:13, 23:16, 51:11, 51:24, 69:8, 69:9, 91:12, 102:10, 106:4, 107:22, 109:9, 112:9, 112:20, 113:14, 116:13, 116:14, 117:2, 119:16, 120:1, 122:2, 123:3, 124:17,

132:12, 134:21, 136:10, 139:7, 139:21, 139:22, 139:24, 140:8, 141:6, 141:16, 141:22, 143:23, 143:24, 146:20, 146:21, 146:22, 146:23, 146:24, 149:18, 149:21, 151:12, 152:17, 153:4, 154:4, 154:14, 154:15, 165:12, 171:16, 171:17

**County** [2] - 53:13, 62:25

**couple** [7] - 3:25, 16:14, 17:18, 150:14, 150:15, 167:21, 171:12

**coupled** [1] - 133:20

**course** [42] - 8:13, 20:4, 22:1, 22:22, 23:9, 62:2, 74:23, 79:14, 83:13, 92:23, 105:1, 116:20, 116:23, 117:10, 117:21, 118:12, 118:25, 120:12, 132:7, 138:3, 139:21, 142:11, 142:13, 142:21, 143:5, 143:7, 143:13, 143:19, 144:10, 149:22, 150:11, 150:17, 150:25, 151:3, 151:8, 151:16, 151:20, 152:1, 152:4, 156:1, 159:8, 166:11

**COURT** [136] - 1:1, 2:3, 2:7, 2:13, 2:16, 2:20, 3:1, 3:4, 3:8, 3:16, 3:19, 4:1, 4:5, 4:8, 4:12, 4:14, 4:17, 4:22, 4:25, 5:3, 5:6, 5:13, 5:17, 5:23, 6:4, 6:7, 6:9, 6:11, 6:13, 6:17, 6:19, 6:22, 6:24, 7:2, 7:4, 7:10, 7:13, 7:16, 7:18, 7:21, 7:25, 8:3, 8:5, 8:7, 8:13, 8:16, 8:20, 8:24, 9:3, 9:5, 9:7, 9:10, 9:17, 9:20, 9:25, 10:2, 10:5, 10:8, 10:18, 10:21, 11:3, 11:18, 11:25, 12:3, 12:6, 12:9, 12:16, 12:19, 12:22, 13:18, 13:21, 14:3, 14:9, 15:1, 15:5, 15:9, 15:18, 16:2, 16:8, 16:11, 16:15, 16:17, 16:20, 17:4, 17:15, 17:17, 17:22, 17:24, 18:2, 18:19, 19:2, 19:7, 19:14, 19:21, 20:4, 20:7, 20:9, 20:12, 20:15, 20:19, 20:22, 21:6, 21:9, 21:11, 21:13, 21:17, 78:1, 92:2, 92:8, 92:18, 92:21, 93:1, 93:7, 93:11, 93:18, 93:21, 107:4,

110:11, 157:17, 158:20, 163:8, 163:18, 164:9, 164:11, 164:21, 165:18, 166:2, 166:7, 167:2, 168:5, 168:12, 168:14, 168:17, 168:21, 168:25, 173:16

**Court** [20] - 11:4, 21:1, 23:8, 25:2, 29:7, 30:21, 30:22, 30:23, 31:6, 31:25, 32:5, 32:19, 33:1, 48:4, 48:6, 162:15, 167:19, 167:21, 174:6

**court** [34] - 5:22, 8:1, 8:6, 11:9, 29:15, 54:20, 64:3, 92:13, 93:5, 109:16, 109:21, 110:23, 111:12, 111:25, 112:13, 113:23, 114:5, 114:11, 114:18, 114:23, 115:3, 115:8, 115:13, 124:19, 124:25, 125:11, 137:18, 138:13, 138:24, 153:3, 160:23, 164:4, 170:6, 172:14

**Court's** [4] - 11:8, 23:9, 32:21, 93:14

**courthouse** [2] - 156:19, 169:7

**Courthouse** [1] - 1:24

**courtroom** [31] - 9:22, 10:2, 10:5, 11:21, 21:16, 29:9, 45:16, 45:18, 61:9, 90:25, 92:1, 92:19, 93:20, 157:16, 160:14, 160:24, 161:11, 161:12, 161:14, 161:15, 161:24, 163:7, 163:17, 168:24, 169:8, 169:23, 170:21, 171:1, 172:5, 173:15

**cover** [2] - 69:9, 147:25

**covered** [2] - 159:5, 165:7

**crack** [18] - 54:11, 55:11, 60:20, 77:18, 78:13, 79:9, 79:15, 79:20, 79:23, 80:12, 81:7, 88:7, 88:8, 144:15, 144:18, 145:2, 145:17, 146:17

**credence** [1] - 38:7

**credibility** [7] - 29:21, 33:6, 37:18, 39:4, 39:15, 40:14, 40:18

**credible** [1] - 25:1

**credit** [1] - 15:25

**Cree** [1] - 30:22

**crime** [134] - 39:1, 46:3, 46:8, 46:13, 47:1, 47:3, 49:25, 50:1, 52:21,

68:11, 70:25, 71:13, 71:16, 71:21, 80:15, 80:19, 80:21, 80:24, 86:1, 94:16, 98:22, 98:25, 101:9, 101:23, 101:25, 102:12, 102:13, 102:25, 103:1, 103:2, 103:14, 103:19, 103:22, 103:24, 105:9, 106:8, 106:11, 106:12, 108:3, 108:15, 108:20, 108:23, 108:25, 109:10, 109:15, 109:21, 110:3, 110:16, 110:22, 111:2, 111:11, 111:24, 112:11, 112:12, 112:14, 112:16, 113:21, 113:22, 113:25, 114:3, 114:4, 114:9, 114:10, 114:12, 114:17, 114:22, 115:7, 115:12, 115:25, 116:2, 116:7, 116:9, 116:10, 116:11, 117:3, 119:3, 119:25, 122:7, 123:3, 123:13, 124:19, 125:1, 125:8, 125:10, 125:11, 125:19, 129:12, 130:19, 131:10, 131:11, 131:13, 131:16, 131:17, 131:21, 131:23, 132:4, 132:6, 132:8, 132:19, 133:4, 133:6, 133:7, 133:9, 133:10, 133:12, 133:13, 133:14, 133:19, 133:21, 134:1, 134:2, 134:23, 135:14, 135:20, 135:22, 135:25, 136:3, 136:6, 136:12, 136:20, 136:25, 137:3, 147:5, 147:8, 147:15, 147:16, 148:2, 148:15, 149:16, 149:19, 151:10, 151:17, 154:11

**Crimes** [2] - 94:18, 106:1

**crimes** [34] - 24:12, 25:25, 26:10, 36:24, 44:22, 45:1, 80:18, 94:8, 106:10, 110:1, 111:8, 112:8, 113:11, 115:2, 115:17, 115:20, 116:24, 123:17, 123:24, 124:11, 134:17, 134:20, 134:25, 135:4, 135:6, 135:10, 135:11, 135:17, 138:9, 147:14, 147:23, 148:15, 149:1

**CRIMINAL** [1] - 1:6

**criminal** [32] - 24:10, 31:7, 31:10, 31:11, 31:22, 37:3, 37:9, 37:10, 43:5, 53:12, 55:4, 62:24,

64:11, 67:1, 67:21, 68:9, 68:14, 69:2, 78:23, 80:13, 86:5, 90:2, 131:25, 133:5, 133:22, 133:24, 134:4, 134:5, 134:10, 135:16

**criminally** [1] - 102:24

**critical** [1] - 171:15

**critically** [1] - 160:21

**crossed** [1] - 127:25

**Crowe** [3] - 1:20, 167:8, 168:5

**CROWE** [1] - 167:10

**CT-13** [1] - 11:22

**cue** [1] - 8:2

**culminate** [1] - 132:7

**custody** [4] - 82:1, 82:4, 82:7, 82:11

**customarily** [1] - 41:20

**cut** [4] - 13:4, 13:10, 17:7, 130:3

# D

**damage** [2] - 128:20, 129:18

**damages** [1] - 129:6

**Damita** [8] - 8:17, 9:11, 35:19, 36:6, 36:9, 36:11, 36:13, 159:1

**Dan** [2] - 112:5, 124:3

**dangerous** [6] - 59:6, 59:23, 75:4, 75:17, 75:19, 76:17

**Darius** [8] - 16:6, 60:2, 60:8, 76:24, 77:8, 118:19, 169:13

**Darryl** [29] - 57:16, 57:22, 58:6, 58:7, 59:3, 59:5, 72:16, 72:18, 72:22, 73:5, 73:6, 73:12, 73:13, 75:3, 96:18, 97:5, 97:6, 110:24, 115:1, 118:2, 118:7, 123:14, 143:9, 149:11, 151:14, 151:17, 151:19, 151:25

**date** [10] - 72:4, 76:15, 118:8, 123:21, 125:6, 126:9, 127:24, 137:11, 137:12, 137:13

**dates** [8] - 57:8, 58:20, 59:4, 71:5, 78:4, 87:15, 137:13, 152:21

**Davis** [1] - 1:13

**DEA** [1] - 7:5

**deadly** [6] - 59:6, 59:23, 70:11, 75:4, 76:17, 101:12

**deal** [1] - 75:25

**dealing** [2] - 11:13,

99:14

**deals** [2] - 106:4, 152:10

**death** [46] - 70:7, 70:10, 70:12, 75:20, 100:25, 101:11, 101:14, 102:1, 102:15, 116:19, 116:23, 117:6, 117:13, 117:24, 118:10, 118:14, 119:1, 120:5, 120:7, 121:2, 121:6, 121:9, 121:20, 123:8, 123:11, 149:22, 149:25, 150:1, 150:9, 150:11, 150:12, 150:13, 150:18, 150:19, 150:22, 150:24, 151:6, 151:8, 151:15, 152:1, 152:4, 152:8, 152:14, 154:3, 165:1

**December** [2] - 53:18, 63:4

**decide** [12] - 22:17, 26:8, 27:21, 34:13, 38:22, 40:15, 42:3, 45:3, 45:7, 137:7, 146:15, 171:7

**decided** [1] - 166:7

**deciding** [12] - 22:17, 25:4, 34:17, 38:7, 39:6, 40:5, 41:3, 41:6, 44:5, 47:21, 84:8, 126:4

**decision** [12] - 11:11, 23:24, 25:9, 25:12, 27:15, 40:1, 68:4, 68:17, 82:21, 147:6, 149:13, 169:13

**decisionmaking** [1] - 26:1

**decisions** [3] - 55:13, 64:16, 139:13

**decisive** [1] - 169:1

**declarations** [2] - 47:7, 47:11

**deduction** [1] - 27:25

**deed** [1] - 131:25

**deem** [1] - 29:21

**deemed** [4] - 47:9, 84:15, 89:25, 135:15

**defeated** [1] - 49:21

**defendant** [308] - 18:25, 19:11, 19:13, 19:14, 19:25, 23:16, 23:20, 23:21, 23:22, 23:23, 23:25, 24:3, 24:5, 24:6, 26:9, 28:12, 30:1, 30:11, 30:14, 31:10, 37:12, 42:14, 42:17, 43:3, 43:4, 43:10, 43:12, 43:15, 43:17, 43:21, 43:22, 43:25, 44:11, 44:18,

44:22, 44:25, 46:6, 46:10, 47:13, 47:18, 48:5, 48:13, 48:14, 48:20, 48:23, 49:1, 49:19, 49:22, 50:11, 50:16, 51:22, 52:5, 52:7, 53:2, 56:6, 59:13, 59:21, 60:5, 61:11, 61:19, 61:20, 65:18, 65:21, 65:24, 66:1, 66:5, 66:11, 66:12, 66:16, 66:19, 67:1, 67:5, 67:14, 67:16, 70:11, 70:18, 70:19, 70:21, 70:22, 71:14, 71:15, 71:17, 71:24, 75:11, 75:13, 75:14, 75:15, 75:16, 76:2, 76:5, 76:13, 76:15, 76:23, 77:5, 80:22, 81:4, 82:2, 82:15, 82:16, 82:17, 82:21, 84:8, 84:10, 84:15, 84:19, 84:20, 84:22, 84:25, 85:9, 85:11, 85:14, 85:23, 86:4, 86:14, 86:16, 86:19, 86:23, 88:10, 88:12, 88:15, 88:17, 88:18, 88:21, 88:24, 89:1, 89:3, 89:7, 89:9, 89:13, 89:14, 89:20, 89:22, 89:24, 90:7, 90:9, 98:7, 98:12, 98:20, 98:22, 100:3, 100:9, 100:11, 100:13, 100:17, 101:4, 101:5, 101:6, 101:8, 101:11, 101:12, 101:23, 101:24, 101:25, 102:5, 102:6, 102:9, 102:11, 102:12, 102:13, 102:18, 103:22, 104:10, 104:12, 104:14, 104:16, 104:18, 104:19, 104:22, 104:24, 105:2, 105:4, 106:18, 108:23, 111:11, 111:12, 111:25, 112:22, 113:5, 113:20, 113:21, 113:24, 114:3, 115:5, 115:7, 115:16, 115:19, 115:24, 116:1, 116:3, 118:11, 118:16, 119:16, 119:20, 119:22, 119:25, 120:4, 120:7, 120:9, 120:16, 120:18, 120:19, 121:14, 121:17, 121:19, 121:22, 122:12, 123:2, 123:7, 123:9, 123:11, 123:21, 124:16, 124:24, 124:25, 125:2, 125:7, 125:8, 125:10, 125:13, 125:19, 125:21, 126:5, 126:10, 126:15, 126:18,

126:19, 127:4, 127:9, 127:13, 127:19, 128:1, 128:4, 128:8, 128:13, 128:19, 128:22, 129:13, 129:17, 129:20, 129:25, 130:7, 130:9, 130:12, 130:16, 130:22, 131:3, 131:8, 131:13, 131:14, 131:18, 131:19, 132:18, 132:20, 132:22, 132:25, 133:1, 133:8, 133:11, 133:19, 133:20, 133:21, 133:25, 134:6, 134:8, 134:13, 135:3, 135:5, 135:9, 135:19, 136:16, 136:19, 136:21, 136:23, 137:1, 137:2, 137:15, 137:19, 137:23, 139:18, 139:25, 140:1, 140:3, 140:11, 140:23, 141:6, 147:3, 150:8, 153:13, 153:17, 154:4, 154:6, 154:13, 154:15, 164:5, 164:7, 164:17, 167:12, 167:13, 167:14, 167:18, 167:24, 171:19

**Defendant** [6] - 1:17, 1:18, 1:20, 1:21, 2:1, 97:22

**defendant's** [42] - 23:14, 25:14, 26:15, 26:18, 34:11, 37:14, 41:13, 42:19, 42:24, 44:5, 44:13, 44:24, 47:19, 47:21, 50:5, 50:12, 66:22, 66:25, 71:22, 80:19, 85:3, 85:7, 85:16, 85:17, 85:25, 98:24, 103:9, 103:12, 103:13, 103:21, 107:24, 108:1, 108:2, 108:14, 108:22, 121:1, 121:8, 123:1, 127:22, 131:22, 136:22, 137:4

**Defendants** [5] - 1:9, 31:10, 94:24, 96:1, 136:10

**defendants** [166] - 23:10, 24:4, 24:7, 24:8, 24:11, 24:16, 26:7, 31:6, 31:13, 31:23, 32:11, 39:18, 41:6, 42:5, 42:8, 42:11, 42:13, 42:20, 42:22, 43:7, 43:19, 43:24, 44:3, 44:14, 46:4, 46:12, 46:21, 46:24, 46:25, 49:6, 49:9, 50:18, 52:15, 52:18, 52:19, 52:20, 52:25, 54:23, 55:19, 56:14, 56:19, 57:1, 57:16, 57:20, 58:2,

58:11, 58:14, 58:21, 59:5, 60:15, 61:2, 61:14, 61:15, 64:5, 69:17, 69:23, 70:10, 70:17, 70:25, 71:1, 71:5, 72:2, 72:5, 72:16, 72:17, 72:20, 72:25, 73:3, 73:9, 73:21, 73:22, 73:25, 74:1, 74:6, 74:10, 74:16, 74:25, 75:2, 77:18, 78:9, 80:5, 80:10, 84:3, 87:21, 94:7, 95:20, 96:14, 96:17, 97:4, 97:8, 97:17, 100:23, 100:25, 102:21, 104:6, 104:9, 105:6, 105:19, 106:6, 106:10, 106:19, 107:14, 109:9, 109:14, 109:15, 109:21, 110:6, 110:20, 110:21, 110:23, 111:3, 112:14, 112:21, 113:9, 113:10, 114:5, 114:10, 114:14, 114:17, 114:20, 114:23, 114:25, 115:3, 115:9, 115:13, 116:14, 116:18, 116:22, 117:2, 117:10, 117:15, 117:20, 118:1, 118:4, 119:24, 120:11, 120:21, 120:24, 121:3, 121:11, 122:2, 122:9, 132:11, 132:13, 136:1, 138:10, 139:16, 139:19, 140:6, 141:1, 142:3, 142:21, 143:8, 143:11, 143:12, 143:25, 144:1, 144:6, 144:9, 146:14, 149:11, 151:14, 152:7, 153:24

**defendants'** [3] - 31:14, 57:13, 72:8

**defendants's** [1] - 103:5

**defense** [12] - 2:9, 17:3, 18:18, 18:20, 19:23, 27:20, 31:19, 37:11, 39:14, 49:6, 136:11, 159:22

**defenses** [4] - 31:22, 31:24, 32:3, 32:7

**define** [1] - 46:16

**defined** [20] - 53:24, 56:3, 56:11, 63:9, 69:14, 69:15, 70:3, 78:22, 79:4, 81:11, 95:8, 99:25, 100:4, 100:21, 117:14, 117:25, 118:15, 119:2, 123:17, 136:15

**defines** [1] - 119:5

**definite** [1] - 50:9

**definition** [2] - 72:12,

116:10

**definitions** [9] - 71:19, 72:10, 73:16, 74:22, 74:24, 76:11, 81:8, 94:22, 100:7

**degree** [28] - 67:20, 70:2, 70:5, 70:7, 70:15, 70:16, 71:20, 72:11, 73:17, 74:23, 76:12, 100:5, 100:20, 100:23, 101:9, 101:16, 104:7, 104:9, 104:24, 104:25, 119:10, 141:5, 141:8, 142:4, 142:9, 143:2, 143:20, 153:24

**delay** [1] - 22:13

**delays** [1] - 22:9

**deleted** [2] - 4:7, 12:16

**deliberate** [7] - 101:1, 119:7, 122:14, 122:17, 150:21, 151:22, 152:3

**Deliberate** [2] - 70:19, 101:4

**deliberated** [1] - 122:12

**deliberately** [26] - 56:20, 57:3, 57:10, 57:21, 58:5, 58:15, 58:24, 59:14, 60:7, 69:23, 71:8, 72:6, 73:4, 73:11, 74:11, 74:18, 76:6, 77:7, 95:20, 96:14, 97:4, 97:18, 98:8, 105:21, 117:16, 122:2

**deliberating** [2] - 122:5, 122:10

**deliberation** [6] - 27:4, 70:4, 70:8, 100:22, 122:5, 155:2

**deliberations** [33] - 22:23, 36:2, 37:19, 43:18, 91:3, 91:5, 91:12, 91:14, 91:18, 91:19, 91:21, 91:22, 111:22, 137:17, 137:24, 138:3, 138:6, 154:24, 156:3, 157:22, 160:8, 160:12, 160:21, 160:25, 163:6, 166:19, 169:9, 169:17, 170:9, 170:13, 171:3, 171:15

**deliver** [6] - 81:10, 81:13, 138:24, 153:2, 160:14, 160:15

**Deliver** [1] - 81:11

**delivered** [2] - 92:5, 162:17

**delivering** [1] - 81:19

**demeanor** [1] - 33:15

**demonstrated** [1] - 49:20

**denied** [2] - 32:2, 32:5

**deny** [1] - 162:17

**depart** [2] - 36:3, 156:19

**dependent** [3] - 51:24, 52:8, 68:18

**deposit** [1] - 82:10

**deprive** [3] - 75:10, 75:15, 75:21

**depriving** [1] - 49:24

**Deputy** [1] - 5:7

**describe** [1] - 61:12

**described** [13] - 37:16, 51:10, 61:24, 101:16, 105:10, 106:1, 113:25, 115:20, 116:21, 117:7, 117:11, 123:22, 149:3

**describes** [1] - 52:17

**describing** [1] - 107:6

**description** [1] - 172:12

**deserve** [1] - 44:9

**deserves** [5] - 33:7, 38:24, 39:16, 40:7, 40:19

**deserving** [1] - 39:12

**design** [3] - 83:12, 83:23, 122:17

**designed** [2] - 115:22, 126:12

**desk** [1] - 158:10

**despite** [3] - 51:13, 80:23, 93:23

**detail** [3] - 34:22, 35:15, 81:24, 83:7, 102:20

**details** [1] - 85:12

**detained** [2] - 43:19, 43:21

**determination** [10] - 30:7, 32:8, 34:18, 40:11, 61:11, 79:17, 103:18, 108:7, 108:19, 151:22

**determine** [29] - 29:22, 33:1, 35:1, 41:12, 47:22, 48:24, 51:1, 52:9, 52:12, 64:24, 68:5, 79:14, 87:24, 88:8, 88:14, 99:15, 114:11, 115:15, 133:25, 137:19, 142:23, 143:2, 144:14, 148:8, 148:16

**determined** [1] - 32:5

**determines** [1] - 69:4

**determining** [11] - 32:10, 33:9, 35:3, 83:21, 84:20, 88:16, 103:13, 108:2, 108:13, 113:15, 131:22

**developed** [1] - 25:11

**development** [1] - 11:16

**deviated** [1] - 121:19

**device** [3] - 41:16, 41:19, 41:20
**devices** [1] - 41:15
**devised** [1] - 45:8
**devising** [1] - 132:2
**died** [1] - 121:5
**differ** [2] - 81:22, 122:18
**difference** [2] - 23:7, 123:20
**differences** [2] - 155:3, 155:4
**different** [10] - 9:13, 22:15, 27:17, 35:6, 85:20, 118:24, 128:7, 128:8, 141:11, 152:21
**differently** [2] - 30:13, 35:8
**differing** [1] - 35:12
**difficult** [1] - 6:15
**digestion** [1] - 46:13
**digital** [3] - 158:4, 158:13, 172:14
**digitized** [1] - 5:20
**dignity** [21] - 56:22, 57:5, 57:12, 57:24, 58:8, 58:18, 59:1, 59:8, 59:17, 59:25, 60:10, 69:25, 71:10, 73:14, 75:6, 76:9, 76:19, 77:10, 95:22, 97:21, 105:23
**diminish** [1] - 43:21
**direct** [14] - 26:23, 27:8, 27:18, 28:2, 28:10, 28:14, 28:16, 28:18, 45:10, 79:24, 80:1, 80:7, 83:15, 121:1
**directed** [2] - 28:23, 28:24
**direction** [3] - 22:23, 55:14, 64:17
**directly** [2] - 56:1, 66:19
**disagree** [3] - 30:18, 155:7, 155:16
**disagreement** [1] - 154:24
**disavowed** [1] - 49:20
**discharge** [2] - 109:25, 111:7, 112:4
**discipline** [2] - 103:20, 108:21
**discovery** [1] - 20:25
**discredit** [1] - 35:7
**discrepancies** [3] - 35:5, 35:11, 35:14
**discrepancy** [1] - 35:16
**discretion** [1] - 42:14
**discuss** [3] - 25:17, 155:4, 173:1
**discussed** [1] - 48:6,

86:7
**discusses** [1] - 14:16
**discussing** [1] - 74:5
**discussion** [5] - 91:9, 91:22, 155:3, 156:5, 172:21
**discussions** [1] - 4:3
**disfigurement** [1] - 130:4
**dishonesty** [1] - 39:2
**disk** [1] - 6:5
**disobey** [2] - 83:14, 133:17
**dispense** [2] - 79:7, 79:8
**dispense** [1] - 75:24
**dispute** [2] - 37:11, 79:19
**disputed** [2] - 27:15, 126:7
**disputes** [1] - 31:19
**disregard** [5] - 24:20, 25:18, 28:24, 83:14, 133:18
**disregarded** [2] - 29:8, 29:10
**disruption** [1] - 54:20, 64:3
**distant** [1] - 45:9
**distinct** [7] - 46:11, 49:11, 51:6, 71:21, 80:17, 85:20, 106:9
**distinction** [1] - 28:15
**distinguish** [1] - 131:24
**distribute** [35] - 60:18, 77:18, 78:11, 79:7, 79:8, 80:11, 81:7, 81:9, 81:10, 81:12, 88:1, 88:20, 88:23, 89:1, 89:2, 89:5, 89:11, 89:12, 89:18, 89:19, 95:8, 109:22, 109:23, 111:4, 112:1, 112:2, 112:19, 144:19, 144:20, 145:23, 145:24
**distributed** [5] - 87:25, 88:20, 88:25, 89:5, 89:16
**distributing** [1] - 145:23
**distribution** [9] - 53:15, 54:9, 63:1, 63:18, 81:7, 81:19, 81:20, 99:24, 110:4
**Distribution** [1] - 81:16
**DISTRICT** [2] - 1:1, 1:2
**district** [5] - 11:10, 96:8, 136:1, 136:4, 136:7
**District** [37] - 53:6, 55:16, 56:18, 56:25, 57:8, 57:19, 58:2, 59:12, 59:20, 60:4, 60:14,

69:22, 72:5, 73:2, 73:8, 74:10, 74:15, 76:4, 77:4, 77:23, 78:7, 87:17, 95:3, 95:13, 96:22, 97:11, 98:2, 105:13, 109:13, 110:21, 111:10, 117:9, 124:9, 128:17, 128:18, 135:23, 135:24
**disturbances** [3] - 9:23, 10:3, 11:22
**DIVISION** [1] - 1:2
**Dobropolski** [5] - 6:15, 6:20, 7:12, 10:21, 48:16
**Dobropolski/Harris** [1] - 10:11
**doctrine** [1] - 68:13
**document** [3] - 138:22, 139:4, 139:11
**documentary** [1] - 22:8
**documents** [5] - 18:8, 29:24, 32:15, 41:14, 159:16
**dominion** [1] - 116:4
**donate** [1] - 93:17
**done** [19] - 4:12, 18:17, 24:18, 45:20, 47:15, 47:18, 47:24, 48:1, 49:16, 80:2, 122:4, 122:15, 131:1, 133:17, 158:18, 162:15, 167:24
**door** [7] - 161:1, 161:4, 169:19, 169:25, 170:6, 170:17, 173:9
**doublecheck** [3] - 10:23, 110:8, 171:10
**doubt** [85] - 26:8, 26:15, 26:19, 28:12, 32:11, 37:14, 41:13, 42:4, 42:20, 42:24, 43:1, 43:10, 46:7, 47:12, 50:15, 61:16, 61:23, 65:6, 65:24, 66:3, 66:10, 66:16, 68:7, 69:13, 70:15, 72:19, 73:24, 75:12, 80:9, 81:2, 82:24, 84:2, 87:24, 98:14, 99:4, 99:9, 100:3, 100:9, 100:17, 100:25, 103:5, 104:15, 106:16, 113:3, 113:19, 114:3, 114:12, 115:16, 115:19, 119:23, 120:15, 121:11, 122:1, 122:25, 124:23, 125:6, 126:9, 127:19, 129:14, 129:16, 129:25, 130:22, 131:12, 131:19, 132:24, 134:13, 134:19, 135:9, 136:7, 136:14, 136:19, 137:20, 140:10, 140:18, 140:19, 141:7, 142:17,

143:6, 145:8, 145:14, 146:19, 147:18, 147:21
**down** [6] - 2:6, 10:24, 11:9, 19:20, 92:16
**draft** [2] - 138:20, 168:11
**draw** [12] - 24:21, 27:19, 27:20, 27:22, 28:1, 28:6, 32:24, 41:22, 42:10, 85:23, 137:8
**drawing** [2] - 27:23, 28:3
**drawn** [6] - 27:18, 28:11, 32:12, 43:16, 46:1, 85:6
**dripping** [2] - 27:6, 27:7
**drive** [11] - 9:3, 9:10, 9:21, 10:19, 10:20, 10:22, 158:8, 158:13, 172:1, 172:7, 172:13
**drug** [28] - 60:12, 109:11, 109:20, 110:4, 111:2, 111:24, 112:12, 113:11, 113:14, 113:22, 113:25, 114:4, 114:16, 114:17, 115:11, 115:12, 115:17, 117:4, 144:5, 146:16, 147:5, 147:8, 147:15, 148:3, 151:17, 152:13, 154:12
**drugs** [28] - 38:11, 38:12, 38:17, 38:19, 38:20, 81:18, 81:19, 81:21, 82:3, 82:4, 82:14, 82:15, 82:17, 82:18, 82:19, 82:22, 88:19, 88:22, 88:24, 89:2, 89:4, 89:7, 89:10, 89:13, 89:15, 89:19
**dual** [2] - 11:5, 68:13
**duplicated** [1] - 138:4
**duration** [4] - 51:16, 85:18, 122:16, 122:22
**during** [47] - 22:23, 30:22, 35:23, 36:1, 37:19, 43:17, 47:23, 48:25, 57:23, 58:16, 59:16, 64:25, 66:4, 69:3, 73:6, 74:12, 76:8, 87:13, 90:20, 91:10, 91:22, 97:6, 97:20, 98:10, 101:19, 102:2, 102:8, 102:15, 109:14, 109:20, 110:22, 111:2, 111:11, 111:21, 120:12, 138:2, 138:6, 144:3, 147:14, 147:23, 150:20, 158:3, 159:13, 160:7, 160:21, 160:25, 171:25
**During** [3] - 30:21,

111:24, 172:20
**duty** [12] - 13:15, 22:16, 22:17, 34:25, 43:5, 137:17, 138:11, 138:16, 155:8, 156:13, 156:25, 173:21
**DVD** [7] - 93:15, 93:17, 157:24, 158:5, 158:19, 158:21, 172:7

**E**

**e-mailed** [3] - 164:1, 168:15, 168:16
**e-mails** [1] - 11:12
**early** [2] - 169:16, 171:10
**ease** [1] - 24:2
**easel** [4] - 5:19, 159:12, 169:22, 173:11
**easier** [2] - 159:25, 160:4
**easily** [3] - 16:23, 17:2, 17:12
**easy** [2] - 13:2, 165:21
**effect** [10] - 19:24, 35:13, 38:20, 65:7, 65:19, 69:4, 99:5, 130:10, 155:16, 160:12
**effectiveness** [1] - 49:24
**effort** [3] - 31:21, 131:15, 155:5
**efforts** [5] - 49:18, 49:24, 49:25, 50:3, 173:19
**Eight** [44] - 46:12, 49:12, 51:9, 51:21, 52:11, 76:23, 77:1, 77:15, 77:17, 77:21, 78:4, 78:20, 80:25, 81:5, 87:9, 88:5, 88:11, 107:12, 109:24, 110:17, 111:5, 112:3, 112:19, 112:22, 112:25, 113:2, 113:5, 114:16, 114:17, 134:15, 143:23, 144:5, 144:8, 144:9, 144:24, 146:4, 146:10, 146:11, 146:12, 146:15, 147:12, 147:22, 148:10, 149:8
**eight** [2] - 60:2, 92:25
**either** [37] - 28:2, 33:20, 34:3, 56:15, 57:17, 58:12, 62:5, 67:5, 70:5, 70:11, 70:15, 72:25, 74:7, 79:18, 79:24, 101:12, 104:24, 106:20, 107:15, 112:24, 113:2,

116:3, 117:3, 119:17, 126:19, 132:12, 133:17, 147:8, 147:15, 148:16, 148:17, 149:5, 149:19, 150:21, 151:16, 167:14, 172:6
**electronics** [1] - 158:24
**element** [46] - 46:3, 61:22, 65:5, 65:16, 65:23, 66:10, 66:15, 66:22, 68:6, 82:23, 83:2, 84:1, 99:3, 99:8, 100:7, 100:8, 100:10, 100:16, 103:4, 104:2, 107:7, 107:13, 107:21, 109:3, 114:2, 115:18, 116:12, 120:23, 121:10, 121:14, 121:17, 121:21, 121:25, 122:8, 125:5, 125:25, 126:7, 126:8, 127:5, 127:8, 127:18, 127:24, 129:24, 130:21, 131:7, 136:3, 136:14, 164:4, 165:20
**elements** [32] - 61:17, 68:23, 68:24, 69:8, 69:15, 75:12, 81:2, 87:23, 98:15, 100:18, 101:9, 101:22, 102:10, 106:16, 107:12, 113:16, 113:19, 118:21, 119:23, 123:2, 124:23, 129:15, 131:12, 134:19, 135:8, 135:19, 135:21, 136:15, 137:8, 140:12, 165:18, 166:4
**eleven** [1] - 170:12
**elsewhere** [6] - 53:14, 55:18, 60:14, 62:25, 77:23, 78:7
**emergency** [1] - 156:2
**emphasis** [2] - 22:24, 172:19
**employ** [1] - 31:13
**employed** [8] - 39:9, 41:20, 55:21, 61:20, 65:25, 66:1, 66:5, 66:7
**enacted** [1] - 94:19
**encompasses** [1] - 135:24
**encounter** [1] - 158:23
**encountered** [1] - 12:23
**end** [5] - 47:4, 153:8, 156:3, 165:17, 168:6
**ended** [1] - 50:6
**ends** [1] - 86:22
**enforcement** [14] - 24:10, 39:8, 39:10, 39:15, 41:10, 43:24, 49:23, 55:6, 64:13,

129:1, 129:11, 129:23, 130:25, 131:6
**engage** [3] - 66:24, 128:19
**engaged** [34] - 53:14, 54:1, 55:22, 62:25, 63:11, 65:6, 65:11, 70:11, 86:25, 94:11, 94:13, 95:7, 95:18, 96:13, 97:2, 97:16, 98:7, 98:18, 99:4, 99:9, 99:12, 99:15, 99:16, 99:18, 99:22, 100:11, 101:12, 105:18, 106:21, 106:22, 107:16, 107:18, 129:17, 129:25
**engages** [1] - 129:4
**engaging** [1] - 62:2
**enhance** [3] - 11:16, 103:25, 109:1
**enhancing** [2] - 54:15, 63:23
**Enjoy** [1] - 173:3, 173:13
**enjoying** [1] - 5:10
**enriching** [1] - 63:15
**Enriching** [1] - 54:7
**enter** [4] - 37:5, 47:4, 137:16, 137:24
**entered** [9] - 27:3, 71:15, 71:17, 81:3, 82:25, 83:3, 106:17, 107:1, 107:9
**entering** [1] - 36:21
**enterprise** [99] - 53:3, 53:23, 54:2, 54:5, 54:6, 54:7, 54:8, 54:12, 54:15, 54:22, 54:24, 54:25, 55:7, 55:10, 55:13, 55:22, 56:9, 61:17, 61:18, 61:20, 61:23, 61:24, 62:15, 62:16, 62:19, 63:9, 63:12, 63:14, 63:15, 63:16, 63:20, 63:23, 64:7, 64:13, 64:15, 64:16, 64:21, 64:23, 64:24, 65:3, 65:6, 65:11, 65:19, 65:25, 66:1, 66:2, 66:6, 66:8, 66:11, 66:13, 66:20, 66:24, 67:8, 94:11, 94:13, 94:22, 95:1, 95:6, 95:18, 96:13, 97:2, 97:16, 98:7, 98:16, 98:18, 98:21, 99:1, 99:4, 99:9, 99:12, 99:15, 99:18, 99:19, 99:22, 100:10, 100:12, 100:14, 100:15, 103:7, 103:11, 103:15, 103:21, 103:22,

103:24, 103:25, 105:18, 106:21, 106:22, 107:16, 107:17, 107:25, 108:4, 108:22, 108:23, 108:25, 109:1, 165:23, 168:8
**enterprise's** [4] - 55:4, 56:2, 64:10, 66:8
**enters** [2] - 21:16, 93:20, 168:24
**Entertainment** [6] - 53:18, 54:18, 62:12, 62:14, 63:4, 64:1
**entire** [5] - 14:15, 43:11, 51:16, 64:25, 66:2
**entirely** [3] - 29:8, 29:9, 162:23
**entitled** [1] - 25:15
**entitles** [1] - 24:14
**entity** [3] - 53:25, 62:9, 63:10
**entrance** [10] - 94:12, 95:13, 96:8, 96:22, 97:12, 98:2, 103:7, 105:13, 106:21, 107:16
**entry** [1] - 71:22
**episode** [1] - 14:19
**equal** [1] - 85:22
**Equally** [1] - 24:11
**equally** [2] - 25:24, 149:4
**Ernest** [1] - 35:20
**errand** [1] - 90:22
**error** [1] - 35:16
**escape** [2] - 102:2, 102:15
**escort** [1] - 171:6
**especially** [2] - 165:8, 167:16
**Esquire** [10] - 1:16, 1:16, 1:17, 1:18, 1:19, 1:19, 1:20, 1:21, 1:22, 1:22
**essential** [2] - 81:2, 84:18, 106:16
**essentially** [1] - 64:25
**establish** [18] - 45:10, 46:5, 50:8, 61:16, 81:1, 82:24, 84:2, 86:8, 98:14, 99:8, 100:8, 100:10, 100:16, 103:4, 106:15, 121:21, 133:23
**established** [8] - 27:12, 28:2, 45:24, 83:14, 85:4, 104:3, 109:4, 137:14
**establishing** [1] - 30:25
**establishment** [1] - 51:24
**et** [1] - 174:5
**evaluating** [3] - 29:19, 39:4, 68:5

**evaluation** [3] - 32:9, 141:9, 142:25
**evening** [1] - 170:23
**event** [2] - 156:13, 160:20
**events** [6] - 38:11, 38:14, 38:18, 38:21, 45:13, 46:1
**everyday** [3] - 81:23, 82:9, 99:17
**Evidence** [1] - 34:11
**evidence** [135] - 2:10, 5:20, 8:22, 10:13, 10:22, 22:9, 23:20, 25:5, 25:10, 25:11, 25:21, 26:2, 26:3, 26:5, 26:6, 26:10, 26:21, 26:23, 26:24, 26:25, 27:2, 27:8, 27:11, 27:19, 27:24, 28:3, 28:5, 28:10, 28:11, 28:14, 28:15, 28:16, 28:17, 28:21, 28:22, 28:23, 28:25, 29:2, 29:6, 29:7, 29:9, 29:11, 30:4, 30:5, 31:15, 32:13, 32:14, 32:16, 32:18, 32:20, 32:22, 32:25, 33:2, 33:12, 34:4, 34:5, 34:9, 34:10, 35:1, 36:7, 36:9, 36:14, 38:6, 38:9, 38:23, 39:3, 39:19, 40:1, 40:7, 40:25, 41:5, 41:12, 41:24, 42:2, 42:7, 42:23, 43:6, 43:9, 43:23, 44:2, 44:4, 44:10, 44:12, 44:13, 44:16, 44:24, 45:3, 46:20, 46:24, 48:2, 52:17, 52:19, 67:22, 68:5, 79:16, 79:25, 80:1, 80:3, 80:7, 82:20, 85:5, 91:10, 92:24, 103:19, 108:20, 113:1, 113:14, 120:14, 128:6, 136:18, 137:4, 137:6, 137:11, 137:19, 137:21, 138:17, 139:5, 141:10, 143:1, 151:4, 154:25, 155:16, 157:24, 158:4, 158:13, 159:6, 161:23, 172:14
**evidentiary** [1] - 46:17
**evil** [1] - 121:22
**exact** [3] - 146:9, 146:10, 146:12
**exactly** [1] - 17:13
**examine** [3] - 44:6, 155:11, 160:1
**examined** [2] - 37:16, 38:15
**example** [8] - 27:2, 49:22, 80:1, 82:2, 82:9, 103:19, 108:20, 158:15

**examples** [2] - 104:3, 109:5
**exceeding** [6] - 123:25, 124:11, 124:20, 125:1, 125:9, 125:12
**excellent** [1] - 9:5
**Excellent** [2] - 12:19, 20:22
**Except** [2] - 2:10, 34:8
**except** [5] - 16:5, 24:5, 110:5, 132:10, 163:17
**exception** [4] - 20:20, 23:24, 35:18, 157:20
**exceptions** [3] - 20:16, 163:9, 163:12
**excerpt** [4] - 35:21, 35:22, 35:25, 158:12
**excerpted** [1] - 8:4
**excerpts** [6] - 7:24, 9:13, 171:23, 171:24, 172:3
**excluded** [1] - 8:8
**exclusively** [3] - 26:2, 34:25, 137:18
**exculpatory** [2] - 44:3, 44:11
**excuse** [8] - 87:7, 110:7, 110:13, 118:5, 123:10, 140:8, 145:23, 162:20
**Excuse** [4] - 72:14, 78:25, 86:18, 110:11
**excused** [6] - 91:23, 156:4, 157:4, 163:6, 169:2, 173:14
**excusing** [1] - 157:12
**execution** [1] - 122:21
**exercise** [5] - 28:3, 82:6, 116:6, 126:21, 127:2
**exercises** [1] - 82:12
**exhaustive** [2] - 104:4, 109:6
**exhibit** [19] - 3:9, 7:1, 12:12, 16:21, 16:22, 17:1, 17:12, 17:14, 17:19, 18:13, 19:3, 19:4, 19:9, 19:20, 29:18, 29:22, 36:17, 159:19, 172:11
**Exhibit** [1] - 158:19
**exhibits** [48] - 2:5, 2:17, 7:6, 16:14, 16:24, 17:3, 17:11, 17:16, 17:25, 18:6, 18:12, 18:18, 18:20, 18:21, 18:22, 19:15, 19:18, 20:3, 25:7, 29:2, 29:11, 29:13, 29:15, 32:9, 36:1, 36:2, 40:24, 93:3, 137:14,

157:19, 159:15, 159:21,
159:23, 160:1, 160:4,
160:5, 163:3, 166:10,
166:20, 169:4, 169:20,
173:11

**exist** [5] - 51:5, 51:19,
51:22, 135:1, 135:8

**existed** [17] - 49:10,
50:24, 52:1, 52:11,
61:17, 61:23, 62:19,
64:22, 64:23, 66:2,
83:21, 83:23, 84:6,
88:12, 98:17, 99:4,
134:24

**existence** [14] - 27:1,
27:13, 47:23, 48:25,
50:19, 66:8, 66:12,
71:22, 83:13, 83:16,
86:8, 135:18

**existing** [2] - 49:1, 49:2

**exists** [4] - 27:16, 51:4,
126:2

**exits** [3] - 92:1, 163:7,
173:15

**expand** [2] - 55:4, 64:10

**expect** [1] - 170:25

**expected** [2] - 103:23,
108:24

**expedite** [1] - 24:23

**expel** [2] - 115:22,
126:12

**experience** [6] - 27:12,
28:8, 35:10, 45:15, 82:9,
164:16

**experienced** [1] - 39:25

**expert** [7] - 15:12,
15:13, 15:21, 15:22,
39:22, 40:6, 40:9

**Expert** [1] - 39:23

**expert's** [2] - 40:2, 40:3

**experts** [1] - 39:21

**explain** [10] - 11:11,
23:24, 46:18, 69:8,
81:23, 118:20, 146:24,
146:25, 157:6, 160:15

**explained** [8] - 99:6,
106:8, 107:11, 107:22,
146:25, 150:16, 153:12,
153:16

**explanation** [2] - 34:22,
34:23

**explanations** [1] -
45:22

**explicit** [1] - 24:6

**explorer** [1] - 92:20

**explosive** [2] - 115:23,
126:13

**express** [3] - 39:22,
83:3, 155:9

**expression** [2] - 24:18,

130:14

**expressly** [2] - 25:2,
163:9

**extensively** [1] - 15:3

**extent** [6] - 34:2, 85:16,
85:18, 158:2, 160:5,
161:16

**extra** [3] - 160:2,
160:11, 172:19

**extraordinary** [4] -
173:4, 173:5, 173:17,
173:22

**eyeball** [1] - 17:20

**eyewitness** [1] - 26:24

## F

**fabrication** [1] - 137:4

**facing** [1] - 48:18

**fact** [49] - 11:9, 13:2,
13:5, 15:15, 24:13,
24:21, 27:13, 27:15,
27:16, 29:4, 32:4, 34:17,
34:21, 39:4, 39:9, 41:15,
41:23, 42:12, 43:14,
43:20, 44:7, 45:6, 45:7,
51:1, 51:17, 54:1, 63:10,
79:15, 80:23, 84:9,
85:23, 86:6, 86:14,
92:13, 125:15, 126:1,
128:9, 137:3, 137:9,
137:11, 153:5, 156:12,
157:5, 157:9, 158:6,
162:2, 164:6, 169:12

**factor** [1] - 84:19

**factors** [4] - 40:13,
68:18, 82:19, 88:18

**facts** [29] - 22:17,
22:18, 24:17, 25:4,
25:20, 26:22, 27:1, 27:9,
27:18, 27:23, 28:1, 28:6,
28:17, 29:2, 29:5, 30:20,
34:1, 40:1, 40:11, 41:3,
41:25, 43:25, 45:24,
85:8, 103:17, 108:6,
108:18, 155:19, 155:21

**factual** [1] - 24:19

**faculty** [1] - 130:5

**fail** [1] - 133:16

**failed** [5] - 113:2,
120:14, 136:5, 171:12,
171:22

**fails** [3] - 43:2, 50:19,
104:10

**failure** [2] - 35:9, 133:15

**faith** [1] - 49:16

**falls** [1] - 23:21

**false** [4] - 34:19, 39:2,
136:23

**falsehood** [1] - 35:17

**falsely** [1] - 37:25

**familiar** [1] - 14:21

**familiarity** [1] - 139:1

**family** [2] - 156:1, 156:8

**farewell** [1] - 157:8

**fashion** [1] - 159:18

**fault** [1] - 169:12

**favor** [1] - 41:25

**favorable** [2] - 37:24,
42:10

**fear** [3] - 26:12, 55:8,
64:14

**February** [19] - 56:17,
56:24, 60:13, 69:21,
71:5, 72:4, 77:22, 77:24,
78:5, 78:6, 87:11, 95:12,
96:7, 105:12, 109:13,
117:8, 152:21, 163:22

**Federal** [1] - 2:11

**federal** [31] - 11:9,
36:22, 37:1, 39:10, 63:9,
67:18, 67:19, 68:8,
68:12, 68:13, 68:14,
68:16, 68:17, 68:20,
68:23, 69:7, 69:9, 80:16,
80:17, 95:8, 95:9, 95:10,
99:25, 109:24, 110:25,
128:15, 128:25, 129:9,
129:22, 130:24, 131:6

**feelings** [2] - 25:13,
25:25

**fellow** [4] - 155:6,
155:10, 155:14, 155:16

**feloniously** [28] - 56:20,
57:3, 57:9, 57:21, 58:5,
58:14, 58:23, 59:5,
59:13, 59:21, 60:7,
69:23, 71:8, 72:6, 73:4,
73:11, 74:10, 74:18,
75:3, 76:5, 76:16, 77:7,
95:20, 96:14, 97:4,
97:17, 98:8, 105:21

**felons** [1] - 39:5

**felony** [27] - 100:5,
101:17, 101:21, 102:6,
102:9, 102:19, 104:9,
104:25, 119:13, 119:16,
119:17, 119:18, 123:1,
125:13, 142:6, 142:14,
143:3, 143:6, 143:19,
150:23, 153:25, 154:3,
163:24, 164:24, 165:1,
165:3

**few** [9] - 2:5, 2:6, 10:20,
37:19, 48:4, 107:22,
116:15, 157:11, 157:18

**fewer** [1] - 10:18

**field** [1] - 39:25

**fifth** [4] - 98:24, 103:4,

107:21, 135:5

**figures** [1] - 164:17

**file** [4] - 15:14, 16:22,
17:1, 17:21

**filed** [1] - 31:6

**files** [4] - 6:1, 6:2, 31:7,
92:17

**filing** [1] - 31:10

**filled** [1] - 153:1

**final** [7] - 10:23, 18:17,
19:6, 19:9, 121:25,
164:1, 168:11

**finally** [2] - 145:20,
152:23

**Finally** [1] - 65:20

**financial** [1] - 84:17

**findings** [3] - 13:1,
13:7, 30:19

**fine** [7] - 2:5, 5:9, 5:18,
13:16, 17:23, 18:1,
93:12, 163:4, 169:15

**finish** [1] - 86:10

**finished** [2] - 93:25,
156:10

**firearm** [79] - 109:10,
110:1, 110:3, 110:15,
111:7, 112:4, 112:13,
112:15, 112:18, 112:21,
113:24, 114:7, 114:15,
115:10, 115:20, 115:21,
115:24, 116:1, 116:4,
116:5, 116:6, 116:7,
116:8, 116:9, 116:11,
116:19, 117:3, 117:13,
117:22, 117:24, 118:15,
119:1, 120:5, 120:25,
121:1, 121:4, 121:6,
121:8, 123:8, 124:13,
124:21, 125:2, 125:7,
126:10, 126:11, 126:16,
126:17, 126:20, 127:3,
127:5, 127:7, 127:9,
127:10, 127:12, 127:16,
127:17, 127:19, 127:22,
127:25, 128:5, 128:10,
146:20, 147:4, 147:14,
147:24, 148:4, 148:13,
149:1, 150:1, 150:9,
151:10, 151:16, 152:10,
152:12, 152:16, 152:19,
152:20, 154:2, 154:10

**firearms** [6] - 20:2,
113:10, 116:24, 117:7,
124:1, 128:7

**First** [16] - 6:4, 61:17,
81:3, 88:18, 98:16,
106:16, 113:21, 119:25,
123:2, 124:25, 129:17,
131:13, 134:20, 160:16,
169:4, 171:13

**first** [52] - 13:10, 44:6,
46:13, 47:22, 48:24,
61:22, 70:2, 70:15,
71:19, 72:10, 73:16,
74:23, 76:11, 82:23,
84:23, 92:18, 94:19,
96:20, 97:9, 97:24, 99:3,
100:5, 100:19, 100:20,
100:23, 101:15, 103:1,
104:6, 104:9, 104:24,
106:17, 107:1, 107:6,
107:9, 107:11, 108:13,
113:4, 114:2, 119:9,
120:21, 125:5, 129:24,
133:3, 133:7, 139:15,
139:18, 140:22, 144:8,
144:11, 149:23, 160:9,
169:12

**Five** [27] - 74:25, 75:2,
95:3, 96:4, 96:5, 96:6,
96:17, 96:18, 96:19,
98:13, 100:24, 101:16,
102:7, 102:22, 104:5,
104:8, 104:17, 104:20,
105:9, 111:1, 115:1,
140:7, 140:16, 142:19,
142:22, 143:8, 143:10

**five** [13] - 19:10, 59:3,
60:20, 78:13, 96:20,
97:9, 97:24, 98:15,
135:8, 135:19, 167:4,
167:5, 170:25

**fixed** [2] - 16:13, 122:17

**flag** [1] - 4:7

**flagged** [1] - 4:6

**Flannery** [11] - 1:19,
3:18, 5:3, 10:8, 10:23,
13:16, 14:6, 14:9, 18:4,
168:3, 168:6

**FLANNERY** [13] - 3:20,
5:7, 7:5, 10:7, 10:9,
10:14, 13:17, 13:23,
14:5, 15:8, 168:10,
168:13, 168:15

**floor** [1] - 16:8

**focus** [1] - 66:22

**focuses** [1] - 71:21

**folder** [1] - 8:20

**follow** [1] - 30:15

**following** [24] - 35:19,
54:7, 54:25, 56:12,
56:15, 57:17, 58:12,
61:16, 62:19, 72:25,
74:6, 75:12, 81:2, 88:18,
98:15, 106:15, 113:18,
119:23, 123:2, 124:1,
124:22, 129:15, 131:12,
134:19

**follows** [15] - 53:5,
61:5, 69:16, 69:20,

72:14, 72:24, 77:3,
77:21, 94:9, 95:2, 96:3,
101:10, 105:10, 119:5,
128:16
  **food** [1] - 92:7
  **FOR** [1] - 1:2
  **force** [3] - 75:9, 75:14,
75:15
  **foregoing** [2] - 135:21,
174:7
  **foreign** [11] - 54:2,
55:23, 61:19, 63:12,
65:7, 65:10, 65:21, 99:5,
124:2, 124:13, 125:4
  **Foreman** [1] - 169:18
  **foreperson** [16] - 13:6,
13:12, 138:22, 153:1,
160:11, 160:12, 160:13,
161:21, 162:6, 162:7,
162:10, 162:11, 162:13,
162:18, 166:8
  **foreperson's** [3] - 17:6,
166:18, 166:19
  **foreseeable** [4] - 47:7,
89:6, 89:12, 89:24
  **foreseen** [1] - 135:6
  **forgot** [1] - 163:18
  **form** [20] - 24:4, 48:15,
59:7, 59:23, 64:25,
70:22, 75:4, 76:17,
101:8, 105:4, 122:17,
138:11, 138:18, 138:21,
139:2, 139:3, 164:7,
165:9, 165:23, 169:6
  **formal** [5] - 62:6, 62:9,
62:13, 64:20, 83:4
  **formed** [1] - 62:10
  **forming** [1] - 122:20
  **forms** [1] - 141:4
  **forth** [16] - 56:5, 95:4,
109:18, 109:24, 110:25,
111:5, 111:15, 112:3,
115:6, 117:12, 117:23,
118:13, 126:9, 165:10,
169:22, 170:7
  **forward** [2] - 68:17,
116:8
  **Four** [26] - 73:19, 73:20,
74:4, 74:8, 96:2, 96:3,
98:13, 100:24, 101:16,
101:18, 101:22, 102:22,
104:5, 104:8, 104:17,
104:20, 110:6, 110:18,
114:22, 141:23, 141:24,
142:5, 142:15, 149:6,
149:9, 165:17
  **four** [40] - 3:2, 23:10,
58:10, 58:13, 58:21,
59:5, 72:16, 73:3, 73:8,
73:21, 74:10, 74:15,

74:25, 75:2, 75:16,
77:18, 96:17, 97:8,
97:17, 110:19, 114:25,
116:13, 116:14, 117:20,
118:4, 139:15, 139:16,
139:19, 142:21, 143:8,
143:11, 143:12, 144:9,
146:14, 149:11, 151:14,
152:7, 170:11, 172:23
  **fourth** [20] - 23:11,
53:7, 61:20, 62:20,
66:15, 100:7, 100:16,
109:19, 109:24, 111:1,
111:6, 111:17, 111:20,
111:23, 117:12, 117:23,
118:13, 120:9, 123:11,
138:1
  **Fourth** [3] - 89:9, 98:22,
135:3
  **fragile** [2] - 18:8, 159:17
  **framed** [1] - 151:7
  **frankly** [1] - 159:25
  **free** [8] - 21:23, 22:1,
90:21, 139:7, 153:3,
156:17, 159:25, 160:16
  **frequently** [1] - 31:11
  **fresh** [1] - 90:21
  **Friday** [2] - 1:11, 162:20
  **friendly** [1] - 86:4
  **friends** [1] - 156:8
  **front** [2] - 19:12, 19:17
  **full** [3] - 19:23, 155:3,
155:23
  **fully** [2] - 85:12, 122:22
  **function** [3] - 62:6,
130:5, 137:18
  **functioned** [3] - 54:3,
63:13, 64:20
  **functions** [1] - 22:14
  **furtherance** [48] - 47:8,
47:15, 47:23, 48:1, 48:5,
48:22, 49:1, 57:12, 72:8,
81:17, 87:19, 101:19,
102:8, 109:10, 110:1,
110:3, 110:16, 111:8,
112:8, 112:11, 112:16,
112:18, 112:21, 112:24,
113:11, 113:24, 114:7,
114:16, 115:10, 115:20,
115:25, 116:2, 116:7,
117:3, 135:22, 136:3,
136:6, 144:3, 147:4,
147:14, 147:23, 148:14,
148:15, 149:1, 150:1,
152:12, 154:11
  **furthering** [3] - 84:12,
86:25, 116:11
  **Furthermore** [3] -
85:14, 87:16, 88:9

**G**

  **gain** [2] - 38:3, 103:7
  **gaining** [9] - 94:12,
95:13, 96:8, 96:22,
97:12, 98:2, 105:13,
106:20, 107:15
  **gaps** [1] - 29:16
  **garage** [2] - 171:7,
171:9
  **GARDNER** [1] - 1:8
  **Gardner** [45] - 1:21,
18:22, 19:18, 48:8, 48:9,
48:10, 48:14, 53:10,
55:19, 57:20, 59:13,
59:21, 60:4, 60:15,
62:21, 73:4, 76:3, 76:5,
76:14, 76:24, 76:25,
77:4, 78:8, 97:3, 97:22,
98:8, 110:22, 111:10,
113:9, 115:5, 117:20,
118:9, 118:11, 123:23,
139:20, 139:22, 142:25,
143:14, 143:15, 146:13,
149:12, 152:11, 152:14,
152:18, 152:21
  **general** [10] - 11:15,
28:15, 37:17, 66:13,
68:10, 68:15, 103:5,
103:10, 107:24, 172:18
  **Generally** [1] - 26:21
  **generally** [1] - 154:20
  **gentlemen** [28] - 13:19,
21:17, 36:4, 45:14,
66:14, 74:3, 78:25, 79:3,
86:11, 87:4, 93:21,
107:5, 108:8, 109:7,
111:16, 113:6, 117:2,
123:20, 128:12, 132:10,
136:9, 138:1, 138:19,
153:8, 154:20, 157:17,
168:25, 173:13
  **George** [1] - 48:7
  **Gerard** [1] - 1:19
  **gestures** [1] - 130:15
  **given** [20] - 4:22, 30:3,
33:1, 33:10, 35:3, 35:23,
37:17, 39:7, 45:2, 67:25,
129:1, 129:11, 129:22,
130:24, 131:5, 137:6,
151:5, 165:22, 172:9
  **glad** [1] - 15:10
  **Glock** [2] - 112:6, 124:4
  **goals** [1] - 90:3
  **Goo** [7] - 21:3, 21:4,
53:10, 59:13, 76:5, 77:5,
111:11
  **goods** [1] - 65:8
  **governed** [1] - 23:9

  **governing** [1] - 23:6
  **Government** [1] - 1:15
  **government** [184] - 2:9,
3:13, 16:2, 18:20, 18:23,
19:11, 19:23, 19:25,
24:9, 24:14, 25:13,
25:16, 26:7, 26:9, 26:18,
27:19, 30:11, 30:13,
31:1, 31:12, 31:17,
32:10, 36:20, 36:22,
37:1, 37:2, 37:5, 37:7,
38:10, 39:10, 39:18,
41:2, 41:4, 41:8, 42:4,
42:11, 42:19, 43:2,
43:25, 44:1, 44:15,
44:19, 44:21, 46:23,
50:15, 56:22, 57:5,
57:11, 57:24, 58:8,
58:17, 59:1, 59:8, 59:17,
59:25, 60:10, 61:15,
61:22, 65:5, 65:11,
65:20, 65:23, 66:3,
66:10, 66:15, 66:18,
67:1, 67:5, 67:11, 67:16,
68:6, 68:8, 68:9, 68:14,
69:13, 69:25, 70:9,
71:10, 71:15, 73:14,
75:6, 75:11, 76:9, 76:19,
77:10, 79:23, 80:7, 81:1,
82:23, 83:1, 83:9, 84:1,
87:12, 87:18, 87:22,
88:10, 90:4, 90:8, 93:2,
95:22, 97:20, 98:14,
99:3, 99:8, 100:2, 100:8,
100:11, 100:14, 100:16,
100:24, 101:22, 102:4,
102:10, 102:17, 103:4,
103:9, 103:11, 104:10,
104:13, 105:23, 106:15,
107:23, 107:25, 113:2,
113:18, 114:2, 114:12,
115:15, 115:18, 115:25,
119:11, 119:22, 120:14,
120:23, 121:3, 121:7,
121:10, 121:16, 121:21,
121:23, 121:25, 122:8,
122:11, 123:1, 124:22,
125:5, 125:16, 125:18,
126:8, 126:22, 127:13,
127:15, 127:18, 127:21,
127:23, 128:1, 128:2,
128:4, 129:14, 129:24,
130:21, 131:7, 131:11,
132:11, 132:17, 132:24,
134:11, 135:25, 136:5,
136:22, 142:10, 142:17,
143:4, 143:18, 147:18,
147:20, 151:24, 153:16,
171:25, 173:19
  **government's** [15] -
15:15, 15:22, 15:23,

19:19, 29:25, 30:24,
31:19, 37:4, 42:25,
50:19, 68:17, 120:25,
136:13, 150:24, 159:21
  **GPS** [1] - 17:8
  **grams** [8] - 60:18,
78:12, 144:22, 145:10,
145:11
  **grand** [16] - 35:20,
35:21, 35:23, 35:24,
36:16, 42:15, 53:6,
53:11, 55:20, 60:17,
62:22, 78:10, 95:2,
105:20, 128:16, 128:21
  **grant** [1] - 37:1
  **Great** [6] - 3:16, 6:17,
6:19, 12:22, 93:18,
168:21
  **great** [2] - 37:17, 44:6
  **greater** [4] - 24:15,
32:17, 38:16, 39:12
  **greatly** [1] - 11:16
  **Green** [6] - 8:17, 9:11,
35:20, 35:21, 35:25,
36:6, 36:9
  **Green's** [3] - 36:11,
36:13, 159:1
  **grossly** [1] - 121:19
  **ground** [2] - 82:15,
119:14
  **group** [11] - 53:11,
53:25, 62:1, 62:4, 62:8,
62:10, 62:22, 63:10,
64:18, 64:19, 65:2
  **groups** [1] - 50:23
  **guess** [4] - 19:8, 27:14,
33:2, 140:20
  **guesswork** [1] - 27:24
  **guide** [1] - 30:3
  **guided** [1] - 26:5
  **guides** [1] - 30:6
  **guilt** [23] - 23:18, 26:7,
26:16, 26:18, 28:12,
34:11, 37:14, 41:13,
42:4, 42:9, 42:19, 42:24,
42:25, 44:13, 44:17,
46:5, 46:6, 47:13, 47:21,
52:19, 61:11, 85:17,
123:1
  **Guilty** [1] - 142:2
  **guilty** [94] - 23:19, 26:9,
26:17, 26:20, 36:21,
41:6, 42:6, 43:3, 43:10,
44:22, 45:1, 51:22,
80:19, 80:22, 88:10,
94:16, 104:12, 104:14,
104:23, 106:10, 112:13,
113:5, 113:20, 119:2,
119:16, 119:17, 119:20,
119:21, 119:22, 119:24,

120:19, 120:21, 124:24, 125:22, 129:12, 129:13, 132:12, 132:20, 132:21, 132:23, 133:22, 134:6, 134:9, 134:16, 134:17, 135:9, 135:19, 136:8, 137:1, 137:3, 137:5, 137:20, 140:4, 140:25, 142:3, 142:23, 142:24, 142:25, 143:15, 143:16, 144:12, 144:13, 144:15, 144:25, 145:21, 146:3, 146:4, 146:16, 147:7, 147:8, 147:9, 147:11, 147:16, 148:2, 148:3, 148:4, 148:6, 148:8, 148:9, 148:10, 148:12, 149:6, 149:8, 149:16, 149:18, 153:13, 154:15, 165:25

**guilty/guilty** [1] - 147:6
**gun** [4] - 16:6, 16:8, 126:6, 163:21
**guy** [2] - 5:21, 92:16

## H

**half** [3] - 87:6, 158:1, 162:22
**halfway** [2] - 94:1
**hand** [15] - 26:17, 38:15, 51:20, 81:13, 81:15, 104:13, 131:25, 134:7, 148:5, 149:7, 149:18, 161:4, 169:19, 170:17, 173:9
**handed** [1] - 81:14
**handgun** [2] - 111:7, 123:22
**handle** [1] - 159:25
**handling** [1] - 159:15
**HANLON** [14] - 15:17, 16:1, 16:5, 16:10, 16:12, 16:16, 16:19, 17:16, 17:18, 17:23, 18:1, 20:2, 20:5, 20:8
**Hanlon** [10] - 1:16, 2:4, 3:3, 3:11, 12:14, 15:11, 15:15, 15:24, 16:4, 17:15
**happy** [1] - 163:12
**Hard** [3] - 53:9, 56:19, 95:19
**hard** [13] - 9:3, 9:10, 9:20, 10:19, 10:20, 10:22, 158:8, 158:13, 159:17, 171:25, 172:7, 172:13, 173:19
**HARDING** [81] - 2:4, 2:8, 2:15, 3:18, 3:23, 4:2, 4:6, 4:10, 4:13,

4:15, 4:20, 4:24, 5:2, 5:16, 5:21, 5:24, 6:6, 6:8, 6:10, 6:12, 6:14, 6:18, 6:20, 6:23, 6:25, 7:3, 7:8, 7:11, 7:14, 7:17, 7:19, 7:22, 8:1, 8:4, 8:6, 8:9, 8:23, 9:1, 9:4, 9:6, 9:9, 9:14, 9:18, 9:22, 10:1, 10:4, 10:13, 10:16, 10:20, 11:21, 12:1, 12:5, 12:8, 12:20, 13:20, 13:22, 13:24, 14:4, 15:2, 16:21, 17:9, 18:23, 20:21, 20:23, 21:8, 77:25, 92:12, 92:20, 92:25, 93:6, 93:9, 93:14, 107:3, 110:10, 158:18, 163:14, 163:20, 164:10, 164:20, 168:19, 168:22
**Harding** [24] - 1:16, 2:21, 4:8, 8:8, 9:8, 10:10, 10:19, 12:22, 15:5, 15:9, 15:18, 15:19, 15:24, 16:1, 17:7, 93:18, 110:12, 158:21, 163:13, 163:19, 164:13, 167:17, 172:9
**harm** [7] - 44:20, 70:7, 70:12, 75:20, 101:13, 130:14, 130:17
**HARRIS** [1] - 1:7
**Harris** [75] - 1:18, 2:1, 5:8, 5:9, 6:16, 6:21, 7:12, 14:1, 14:24, 18:22, 30:14, 53:8, 55:18, 56:19, 56:25, 57:9, 57:20, 60:15, 62:20, 69:18, 69:22, 71:6, 72:2, 72:6, 73:3, 78:8, 94:24, 95:19, 96:1, 96:14, 97:3, 105:6, 105:19, 107:14, 108:11, 109:14, 110:2, 110:21, 112:15, 113:8, 114:6, 114:15, 117:9, 117:19, 124:8, 124:10, 128:13, 128:18, 129:13, 139:20, 139:23, 139:24, 140:22, 141:1, 141:13, 141:22, 141:25, 142:18, 142:24, 146:8, 146:10, 148:19, 148:20, 148:23, 149:1, 149:5, 149:8, 149:24, 150:12, 150:17, 150:21, 152:21, 152:23, 158:16, 163:22
**Harris's** [3] - 30:1, 30:11, 158:23
**hatred** [1] - 121:24
**Hayes** [9] - 3:21, 4:9,

8:10, 10:23, 14:11, 35:19, 35:21, 35:24, 158:23
**Hayes'** [1] - 18:3
**Hayes's** [2] - 3:25, 5:4
**head** [1] - 165:2
**hear** [10] - 8:7, 14:9, 22:10, 30:10, 30:12, 35:8, 90:18, 91:13, 167:8, 173:10
**heard** [22] - 14:24, 25:19, 29:8, 34:5, 36:19, 38:25, 39:8, 39:21, 41:1, 41:14, 44:2, 44:14, 67:21, 67:25, 69:3, 91:6, 158:3, 167:5, 167:17, 167:21, 170:20, 170:25
**hearing** [4] - 14:11, 14:12, 14:14, 14:18
**heat** [1] - 45:18
**heavily** [1] - 15:7
**heavy** [1] - 13:15
**Heights** [21] - 53:12, 53:22, 55:21, 61:25, 62:15, 62:23, 63:7, 95:6, 95:15, 95:17, 96:10, 96:12, 96:24, 97:1, 97:13, 97:16, 98:4, 98:6, 105:15, 105:17, 107:18
**held** [2] - 104:2, 109:3
**help** [4] - 29:13, 29:14, 133:13, 150:5
**helped** [1] - 116:8
**helpful** [1] - 18:11
**helping** [1] - 34:12
**hereby** [1] - 174:3
**herein** [9] - 53:12, 55:19, 56:19, 57:20, 59:13, 62:23, 95:4, 95:20, 118:11
**hereunto** [1] - 174:10
**Heroin** [1] - 145:18
**heroin** [15] - 54:11, 55:12, 60:23, 77:19, 78:16, 79:10, 79:15, 79:20, 79:24, 80:4, 80:8, 80:12, 81:8, 145:15, 145:16
**herself** [1] - 34:14
**hesitate** [3] - 26:16, 26:19, 155:10
**Hickey** [4] - 4:4, 14:2, 14:21, 14:25
**himself** [9] - 34:14, 80:23, 86:5, 128:1, 130:8, 132:18, 132:22, 133:12, 134:3
**hmm** [1] - 6:25
**hoc** [1] - 168:8
**hold** [2] - 3:19, 126:16

**hold-up** [1] - 3:19
**holding** [2] - 4:15, 20:2
**home** [6] - 53:17, 54:9, 55:2, 63:3, 63:17, 156:11
**honest** [1] - 155:15
**Honor** [42] - 2:4, 2:8, 3:2, 3:11, 3:20, 4:24, 5:5, 5:11, 6:3, 7:24, 8:23, 10:7, 11:1, 11:20, 13:23, 14:10, 15:8, 16:1, 16:5, 16:13, 16:21, 17:16, 18:1, 18:15, 19:10, 20:2, 20:5, 20:10, 20:18, 20:23, 21:10, 93:14, 107:3, 163:14, 163:15, 163:24, 164:1, 164:3, 165:6, 165:21, 167:11, 168:19
**Honorable** [1] - 1:13
**hope** [3] - 90:21, 150:5, 160:18
**hoped** [1] - 37:23
**hopefully** [1] - 21:21
**hopes** [1] - 38:2
**hostility** [1] - 33:24
**hour** [6] - 162:21, 163:3, 166:24, 170:5, 171:10
**housekeeping** [1] - 21:11
**human** [4] - 117:15, 118:2, 118:17, 119:6
**hydrochloride** [2] - 60:21, 78:15

## I

**idea** [4] - 22:23, 165:1, 165:3, 171:6
**identical** [6] - 31:13, 51:18, 77:17, 110:5, 123:20, 143:10
**identification** [1] - 12:17
**identified** [2] - 158:10, 166:18
**identify** [1] - 16:23
**identities** [1] - 85:10
**identity** [1] - 128:21
**ignore** [1] - 23:1
**II** [5] - 60:20, 60:22, 78:13, 78:15, 79:11
**ill** [1] - 121:24
**illegal** [3] - 71:22, 87:1, 100:12
**illness** [1] - 130:4
**illustration** [2] - 104:4, 109:6
**immaterial** [2] - 31:22,

46:7
**immediate** [1] - 102:16
**immediately** [5] - 18:6, 156:24, 161:2, 161:5, 169:10
**immunity** [2] - 37:1, 37:6
**impairment** [1] - 130:4
**impartial** [2] - 42:23, 155:19
**implement** [1] - 173:12
**implications** [1] - 61:8
**imply** [1] - 51:18
**importance** [2] - 35:15, 172:19
**important** [11] - 24:9, 24:11, 25:9, 34:21, 42:2, 85:3, 91:13, 91:20, 160:22, 170:10, 172:17
**imposed** [1] - 137:22
**imposes** [1] - 43:4
**imposing** [1] - 137:17
**impresses** [1] - 33:17
**imprisonment** [8] - 123:25, 124:11, 124:20, 125:1, 125:9, 125:11, 125:20, 125:21
**improper** [9] - 25:11, 25:24, 37:4, 38:13, 91:18
**IN** [1] - 1:1
**inappropriate** [1] - 31:9
**incapable** [1] - 80:23
**incarcerated** [1] - 50:11
**incentive** [1] - 33:22
**incident** [3] - 14:25, 35:8, 158:16
**include** [2] - 28:22, 87:15
**included** [4] - 6:1, 6:2, 92:4, 168:7
**includes** [2] - 65:8, 99:13, 130:6
**including** [16] - 21:3, 48:13, 53:16, 53:22, 54:10, 54:18, 55:2, 63:2, 63:8, 63:18, 63:25, 64:9, 79:18, 92:14, 136:15, 169:21
**Inconsistencies** [2] - 35:5, 35:11
**inconsistencies** [1] - 35:14
**inconsistency** [3] - 34:20, 34:23, 35:16
**inconsistent** [6] - 34:7, 34:9, 34:11, 35:2, 35:3, 50:2
**incorporate** [1] - 67:20
**incorporated** [8] - 20:13, 53:19, 63:5, 95:4,

96:4, 96:5, 147:17, 163:9
**incorporates** [1] - 97:24
**incorporating** [3] -
96:20, 97:9, 105:8
**increase** [9] - 98:25,
103:6, 103:10, 103:15,
103:16, 107:24, 108:4,
108:5, 108:17
**increasing** [9] - 94:13,
95:14, 96:9, 96:23,
97:13, 98:3, 105:14,
106:22, 107:17
**indeed** [1] - 50:25
**Indeed** [6] - 68:19,
80:18, 83:9, 85:19,
106:10, 172:9
**independent** [8] -
32:16, 40:1, 50:22, 51:7,
80:16, 85:5, 106:9, 159:6
**indicate** [12] - 24:19,
33:12, 119:20, 132:5,
153:21, 154:7, 154:17,
167:21, 171:14, 171:16,
171:18, 171:20
**indicated** [5] - 120:11,
131:9, 155:24, 169:11,
169:14
**indicates** [1] - 137:11
**indicted** [1] - 42:14
**indictment** [120] -
12:24, 13:5, 13:13,
23:11, 23:12, 23:13,
31:16, 32:1, 36:25,
42:13, 44:2, 46:11,
46:15, 47:14, 49:7,
49:12, 50:17, 51:9,
51:11, 51:17, 51:21,
52:1, 52:7, 52:11, 52:16,
52:22, 52:23, 52:24,
53:5, 53:8, 61:3, 61:18,
61:24, 62:17, 62:18,
62:20, 65:1, 66:4, 67:20,
69:8, 69:17, 72:15,
73:20, 77:15, 77:16,
77:17, 79:13, 83:1, 84:5,
84:21, 87:10, 87:14,
87:20, 94:7, 94:25,
97:23, 99:12, 104:6,
106:18, 107:10, 109:8,
109:9, 109:12, 109:20,
109:25, 110:7, 111:1,
111:6, 111:17, 111:19,
111:20, 111:22, 111:23,
113:21, 114:8, 114:22,
117:12, 117:23, 118:14,
123:13, 124:4, 124:6,
124:7, 124:15, 125:15,
126:10, 127:25, 128:12,
129:14, 134:12, 134:14,
134:15, 136:11, 137:10,

137:13, 138:1, 138:2,
138:3, 138:5, 138:7,
139:5, 139:8, 139:10,
140:4, 142:7, 142:10,
143:4, 143:17, 147:6,
148:24, 150:9, 150:10,
150:23, 151:24, 153:4,
153:11, 153:14, 153:23,
169:5
**indirect** [1] - 26:24
**indirectly** [2] - 56:1,
66:19
**individual** [9] - 23:1,
23:19, 48:17, 66:25,
70:3, 82:6, 94:14,
122:19, 138:4
**individually** [3] - 24:5,
150:5, 162:16
**individuals** [13] - 53:25,
54:13, 55:5, 62:1, 62:5,
62:8, 63:10, 63:21,
64:12, 64:18, 65:3, 65:9,
122:18
**indulge** [1] - 87:4
**indulgence** [3] - 90:13,
90:19, 166:16
**inevitably** [1] - 50:7
**infer** [7] - 14:22, 27:12,
44:21, 80:4, 83:16,
136:25, 137:2
**inference** [8] - 24:21,
27:14, 27:25, 32:24,
42:10, 43:15, 85:7, 85:13
**inferences** [11] - 25:20,
27:18, 27:20, 27:21,
27:23, 28:3, 28:7, 28:11,
41:22, 46:1, 85:6
**inferred** [2] - 22:25,
45:11
**inflict** [3] - 70:6, 70:12,
101:13
**inflicted** [2] - 121:3,
121:5
**influence** [3] - 25:22,
137:17, 137:23
**Influenced** [1] - 52:25
**informal** [2] - 62:6,
64:20
**informant** [1] - 128:15
**information** [6] - 93:15,
128:24, 129:8, 129:21,
130:24, 131:5
**informed** [1] - 85:12
**inherent** [1] - 164:13
**injured** [1] - 130:11
**injuries** [3] - 121:4,
121:5, 121:7
**injuring** [1] - 130:10
**injury** [11] - 121:3,
121:7, 128:20, 129:5,

129:18, 130:1, 130:3,
130:6, 130:8, 130:13,
130:16
**inmates** [1] - 4:4
**innocence** [3] - 25:16,
42:21, 43:22
**innocent** [6] - 34:20,
35:9, 35:16, 39:20,
43:13, 46:6
**inquiry** [2] - 68:1, 144:6
**insert** [1] - 21:6
**inside** [1] - 16:6
**insofar** [1] - 31:17
**instance** [4] - 12:25,
146:18, 149:20, 158:12
**instances** [4] - 48:4,
67:23, 67:25, 154:19
**instantaneously** [1] -
122:7
**instead** [2] - 109:19,
121:6
**instruct** [28] - 22:16,
24:20, 26:11, 34:8, 37:3,
38:12, 44:8, 48:11,
49:12, 52:10, 85:8,
87:12, 92:23, 93:12,
100:18, 102:20, 114:8,
114:17, 114:22, 115:2,
115:7, 115:12, 117:6,
125:24, 130:20, 156:4,
156:5, 170:5
**instructed** [31] - 20:15,
41:7, 41:22, 43:20,
48:21, 67:18, 71:19,
72:10, 72:12, 73:16,
74:22, 76:11, 76:21,
77:12, 79:3, 79:9, 84:17,
87:18, 89:25, 91:12,
100:4, 101:3, 117:5,
126:11, 127:15, 127:17,
135:23, 142:12, 143:22,
144:14, 146:21
**instructing** [3] - 156:10,
163:20, 165:8
**instruction** [14] - 11:6,
20:11, 23:1, 23:3, 35:18,
87:5, 91:7, 100:7,
156:15, 163:25, 164:4,
167:12, 167:16, 167:19
**instructions** [49] - 11:2,
21:12, 21:19, 21:22,
21:24, 21:25, 22:2, 22:3,
22:21, 23:2, 23:8, 23:9,
24:2, 24:5, 29:19, 34:9,
42:8, 51:2, 52:14, 79:12,
91:2, 91:7, 91:9, 91:10,
91:13, 93:22, 94:3, 94:5,
102:21, 111:19, 123:18,
134:13, 136:18, 138:4,
138:20, 140:10, 147:25,

150:5, 151:5, 156:6,
156:16, 160:17, 160:18,
164:1, 164:18, 166:20,
169:5, 172:18, 173:2
**instrument** [1] - 45:8
**intelligence** [1] - 33:14
**intended** [18] - 22:24,
24:23, 24:24, 67:13,
70:18, 75:15, 90:6,
101:4, 102:5, 102:18,
122:23, 130:17, 131:13,
140:13, 151:25, 153:15,
153:19, 167:23
**intends** [1] - 132:4
**intent** [46] - 45:4, 45:20,
45:23, 46:10, 70:6,
70:11, 70:12, 70:20,
70:23, 71:18, 75:10,
79:7, 80:11, 81:7, 88:1,
88:20, 88:23, 89:2, 89:5,
89:11, 89:19, 101:5,
101:8, 101:12, 101:13,
103:2, 109:23, 111:4,
112:1, 121:15, 121:16,
122:20, 122:21, 128:23,
129:7, 129:21, 130:14,
130:23, 131:3, 131:4,
132:13, 133:16, 144:19,
145:22, 145:24
**intention** [7] - 84:12,
86:21, 116:6, 126:20,
127:2, 127:5, 131:17
**intentional** [6] - 70:3,
100:21, 101:16, 104:24,
142:8, 142:9
**intentionally** [9] -
55:24, 60:18, 78:11,
79:7, 86:24, 88:13,
124:1, 124:12, 133:15
**inter** [1] - 128:9
**interest** [4] - 84:17,
84:19, 133:24, 155:20
**interests** [2] - 37:25,
86:7
**interfere** [2] - 26:1,
26:13
**interim** [1] - 91:7
**internet** [3] - 92:14,
92:19, 92:20
**Internet** [1] - 92:22
**interpretation** [5] -
29:25, 30:2, 30:9, 30:15,
32:8
**interpreted** [1] - 30:14
**interstate** [19] - 54:2,
55:23, 61:18, 63:11,
65:7, 65:12, 65:14,
65:15, 65:18, 65:21,
98:16, 99:5, 124:2,
124:13, 125:4, 127:20,

150:5, 151:5, 156:6,
156:16, 160:17, 160:18,
164:1, 164:18, 166:20,
169:5, 172:18, 173:2
**instrument** [1] - 45:8
**intelligence** [1] - 33:14
127:22, 128:5, 128:10
**Interstate** [2] - 48:9,
65:7
**interval** [1] - 122:20
**interview** [4] - 36:6,
36:9, 36:12, 36:13
**intimidation** [6] - 54:14,
54:20, 55:3, 63:21, 64:3,
64:10
**intrigued** [1] - 164:23
**introduced** [1] - 38:9
**intuitive** [1] - 165:4
**invasion** [5] - 53:17,
54:9, 55:2, 63:3, 63:17
**investigating** [1] -
136:24
**investigation** [1] -
172:24
**investigative** [3] - 41:2,
41:9, 41:10
**involve** [2] - 45:4, 145:4
**involved** [27] - 14:24,
40:22, 54:18, 63:25,
65:2, 67:3, 67:4, 82:17,
83:18, 88:6, 88:9, 89:8,
89:14, 94:21, 143:21,
144:15, 145:1, 145:5,
145:8, 145:15, 145:18,
146:2, 146:17, 146:19,
147:19, 147:21
**involvement** [3] -
23:14, 81:20, 148:11
**involves** [2] - 14:7,
149:11
**involving** [4] - 39:2,
81:6, 146:5, 156:19
**Irene** [1] - 29:23
**issue** [7] - 40:23, 47:21,
49:5, 49:9, 79:17, 85:17,
136:7
**IT** [5] - 5:21, 5:25, 8:11,
12:7, 92:16
**item** [5] - 16:12, 82:8,
92:5, 138:15, 140:1
**items** [10] - 17:18,
29:17, 82:10, 82:12,
139:12, 139:15, 144:7,
162:13, 172:10, 172:12
**itself** [6] - 45:21, 52:16,
86:1, 136:1, 138:3, 148:7

**J**

**jail** [1] - 39:2
**James** [1] - 1:21
**January** [2] - 124:9,
163:23
**Joan** [1] - 98:9
**job** [5] - 3:12, 14:12,

14:16, 14:20, 159:25
**join** [2] - 51:3, 80:14
**joined** [6] - 84:10,
84:24, 84:25, 85:15,
89:8, 89:14
**joins** [1] - 49:14
**joint** [3] - 83:11, 126:25,
127:3
**Jones** [21] - 59:11,
59:15, 59:19, 59:22,
76:3, 76:7, 76:16, 97:24,
98:10, 111:13, 115:6,
118:10, 118:18, 123:16,
143:14, 143:16, 143:18,
151:13, 152:14
**Judge** [7] - 1:13, 3:17,
3:23, 11:21, 18:23,
20:21, 92:12
**judge** [3] - 22:14, 22:16,
45:15
**judges** [4] - 24:17,
30:20, 33:6, 155:19
**judgment** [4] - 25:22,
35:1, 40:10, 154:21
**judicial** [1] - 129:11
**June** [13] - 59:12,
59:20, 60:3, 76:4, 76:15,
77:3, 98:1, 111:9, 118:9,
118:11, 123:23, 128:17,
152:22
**juries** [1] - 45:5
**jurisdiction** [1] - 31:25
**jurisdictional** [2] -
31:24, 32:3
**juror** [2] - 19:3, 154:22
**jurors** [22] - 12:24, 26:4,
33:6, 91:16, 92:3,
104:20, 137:21, 154:12,
155:7, 155:10, 155:15,
155:16, 155:22, 155:23,
156:1, 156:14, 157:9,
157:11, 162:2, 163:15,
166:21, 170:14
**jury** [84] - 8:5, 9:14,
18:5, 20:11, 20:15,
21:15, 21:19, 21:21,
21:22, 21:24, 22:6,
22:15, 26:22, 27:3, 27:7,
27:25, 28:17, 30:20,
32:6, 35:7, 35:20, 35:21,
35:23, 35:24, 36:16,
42:15, 43:18, 45:3,
45:14, 51:1, 53:6, 53:11,
55:20, 60:17, 62:22,
78:11, 90:11, 90:13,
90:17, 90:18, 90:24,
91:1, 91:17, 91:24, 92:6,
93:22, 95:2, 105:21,
111:21, 112:23, 128:16,
128:21, 137:7, 137:16,

138:2, 154:23, 156:18,
156:25, 157:3, 157:10,
158:1, 160:17, 161:25,
162:3, 162:16, 162:24,
163:6, 164:16, 165:8,
166:3, 166:7, 166:11,
166:14, 166:17, 167:17,
168:18, 169:5, 169:7,
169:24, 170:7, 170:9,
170:14, 170:21
**Jury** [8] - 1:14, 2:2,
21:16, 92:1, 93:20,
163:7, 168:24, 173:15
**jury's** [4] - 91:23,
165:15, 168:22, 173:14
**justice** [4] - 10:4, 31:18,
55:5, 64:12
**justification** [1] -
123:10
**justified** [1] - 28:7
**justify** [1] - 85:13

## K

**keep** [3] - 29:13, 39:17,
170:5
**keeps** [1] - 82:10
**Kelsey** [1] - 1:17
**key** [1] - 84:24
**kill** [39] - 56:21, 57:4,
57:11, 57:22, 58:6,
58:15, 58:24, 59:15,
60:8, 69:24, 70:6, 70:12,
70:19, 70:20, 70:23,
71:9, 72:7, 73:5, 73:12,
74:12, 74:19, 76:6, 77:8,
95:21, 96:15, 97:5, 97:6,
97:19, 98:9, 101:4,
101:5, 101:8, 101:13,
102:5, 102:18, 105:22,
121:15, 121:16, 122:21
**killed** [10] - 101:25,
102:13, 120:24, 122:9,
142:11, 142:12, 143:5,
143:7, 151:2, 151:20
**killing** [16] - 70:3, 70:5,
70:21, 100:21, 101:1,
101:6, 117:14, 117:25,
118:15, 119:2, 119:5,
119:8, 122:15, 142:8,
142:9, 151:3
**killings** [1] - 122:11
**kilograms** [4] - 60:20,
78:14, 145:11
**Kind** [1] - 151:1
**kind** [7] - 11:15, 13:15,
80:13, 93:3, 119:7,
119:21, 151:2
**kinds** [4] - 142:16,

164:12
**knives** [4] - 20:5, 20:6,
20:7, 159:10
**knock** [7] - 161:1,
161:4, 169:19, 169:25,
170:6, 170:17, 173:9
**knowing** [2] - 87:1,
126:6
**knowingly** [44] - 44:18,
55:23, 57:1, 58:2, 58:21,
60:5, 60:16, 60:17,
61:21, 66:16, 71:6, 73:9,
74:16, 77:5, 78:9, 78:11,
79:6, 81:4, 84:3, 84:10,
84:24, 88:12, 106:18,
109:25, 111:6, 112:4,
113:24, 115:19, 123:25,
124:12, 125:2, 126:10,
127:9, 128:19, 129:4,
129:20, 130:9, 130:12,
130:22, 131:1, 131:4,
133:11, 133:13, 134:4
**knowledge** [16] - 37:10,
38:14, 39:23, 40:23,
45:24, 47:19, 84:11,
85:7, 85:14, 86:12,
86:15, 86:20, 89:22,
133:20, 133:22, 135:12
**Knowledge** [1] - 45:4
**known** [21] - 53:10,
54:10, 55:11, 55:20,
57:3, 58:4, 58:23, 60:6,
60:17, 60:19, 62:21,
71:7, 73:11, 74:18, 77:6,
78:10, 78:13, 82:13,
85:10, 105:20, 128:21
**knows** [2] - 14:21,
18:16
**KURLAND** [12] - 3:11,
3:17, 8:22, 11:1, 11:4,
11:20, 19:10, 19:15,
20:10, 20:14, 20:18, 92:7
**Kurland** [3] - 1:22, 3:8,
11:19

## L

**lack** [6] - 23:22, 25:11,
26:2, 41:5, 41:12, 42:7
**lacks** [1] - 31:25
**Ladies** [4] - 21:17,
45:14, 157:17, 168:25
**ladies** [23] - 36:4, 66:14,
74:3, 78:25, 79:3, 86:11,
87:4, 93:21, 107:5,
108:8, 109:7, 111:16,
113:6, 117:2, 123:19,
128:12, 132:10, 136:9,
137:25, 138:19, 153:8,
154:20, 173:13

**laid** [1] - 139:10
**language** [4] - 31:13,
146:24, 147:1, 151:3
**laptop** [29] - 5:22, 8:2,
8:12, 9:1, 9:24, 12:2,
12:10, 12:21, 92:12,
92:13, 92:23, 93:1, 93:2,
93:13, 157:25, 158:8,
158:11, 158:18, 158:21,
168:20, 172:1, 172:2,
172:3, 172:7, 172:10,
172:13, 172:14, 173:12
**laptops** [1] - 93:5
**large** [1] - 159:12
**last** [10] - 13:4, 13:13,
14:18, 15:22, 18:16,
89:20, 128:12, 152:17,
156:22, 168:16
**lasted** [2] - 78:2, 87:10
**late** [2] - 171:4, 171:7
**latter** [1] - 119:13
**laughing** [1] - 92:2
**Laura** [1] - 1:17
**law** [108] - 2:21, 4:18,
10:24, 11:7, 11:17, 13:8,
22:16, 22:18, 22:19,
22:21, 23:6, 23:7, 23:13,
26:11, 28:15, 32:23,
39:8, 39:10, 39:15,
40:20, 40:24, 41:10,
43:4, 43:24, 47:9, 49:5,
49:23, 55:6, 56:23, 57:6,
57:14, 57:25, 58:9,
58:19, 59:2, 59:10,
59:18, 60:1, 60:11, 61:4,
63:9, 64:12, 67:21,
68:12, 68:16, 69:7,
69:11, 69:14, 69:16,
70:2, 71:11, 72:8, 72:12,
73:15, 74:13, 74:21,
75:1, 75:7, 76:10, 76:14,
76:20, 76:21, 77:11,
77:12, 79:9, 80:16,
80:18, 83:14, 85:22,
86:17, 91:20, 95:8, 95:9,
95:10, 95:23, 100:4,
100:6, 101:10, 102:23,
105:24, 106:2, 109:24,
110:25, 121:23, 126:24,
127:14, 129:1, 129:11,
129:22, 130:25, 131:6,
131:8, 133:16, 133:18,
137:12, 141:4, 155:20,
157:6, 164:25
**lawful** [1] - 62:11
**Lawlor** [3] - 1:18, 4:6,
21:9
**LAWLOR** [2] - 21:10,
21:12
**laws** [13] - 24:10, 71:12,

71:20, 72:11, 73:7,
73:18, 76:12, 78:23,
80:18, 94:15, 97:7,
98:11, 100:20
**lawyer** [1] - 31:8
**lawyers** [3] - 11:10,
11:12, 173:20
**lay** [1] - 31:21
**leaders** [2] - 55:14,
64:17
**leadership** [3] - 53:23,
63:8, 166:19
**least** [17] - 56:7, 67:12,
71:16, 72:21, 74:1,
76:25, 85:1, 86:20, 90:4,
104:11, 104:16, 104:21,
105:3, 140:12, 153:13,
154:5, 158:1
**leave** [6] - 91:8, 156:15,
157:16, 163:2, 166:9,
166:24
**leaves** [1] - 14:7
**leaving** [1] - 13:14
**left** [5] - 13:25, 14:4,
36:5, 80:12, 108:9
**legal** [13] - 11:15, 41:7,
62:13, 69:4, 81:22, 82:5,
160:6, 173:12
**legalese** [1] - 146:25
**legally** [3] - 31:22, 62:8,
62:9
**legitimate** [2] - 39:14,
62:10
**less** [9] - 14:6, 28:14,
38:20, 39:12, 87:15,
144:22, 145:10, 145:11
**lesser** [2] - 24:15, 39:12
**letter** [6] - 3:13, 30:21,
30:23, 31:1, 31:2
**liability** [4] - 85:18,
134:10, 135:20, 143:24
**lie** [1] - 38:4
**life** [2] - 15:6, 121:13
**lifting** [1] - 13:16
**Light** [1] - 92:4
**light** [7] - 23:3, 28:8,
38:23, 40:7, 44:9,
134:12, 136:18
**likely** [4] - 70:7, 70:13,
101:14, 126:5
**likewise** [4] - 110:2,
118:4, 141:11, 142:19
**Likewise** [1] - 149:10
**limit** [2] - 90:19, 92:9
**limited** [1] - 34:12
**Limited** [5] - 13:9,
54:18, 62:12, 62:14, 63:5
**line** [6] - 13:6, 13:10,
90:23, 108:13, 127:25,
128:2, 152:9

**Lisa** [29] - 57:7, 57:11, 72:3, 72:7, 96:2, 96:15, 101:18, 101:25, 102:1, 102:5, 110:10, 110:11, 110:18, 114:21, 117:16, 142:1, 142:15, 148:23, 149:2, 149:6, 150:11, 150:18, 150:19, 150:22, 150:24, 151:6, 151:9, 165:1

**list** [18] - 6:1, 7:1, 17:14, 17:19, 18:15, 18:17, 18:18, 19:3, 19:4, 19:20, 19:23, 159:19, 159:21, 168:19, 172:10

**listed** [14] - 17:13, 18:18, 56:8, 57:8, 63:18, 124:4, 124:6, 124:15, 139:8, 139:18, 140:15, 144:8, 153:5, 162:14

**listen** [10] - 10:12, 21:25, 22:2, 22:4, 155:10, 158:3, 159:3, 163:15, 172:2, 172:4

**listened** [1] - 36:11

**listening** [2] - 30:3, 155:14

**lists** [7] - 12:12, 18:13, 18:20, 19:9, 19:17, 19:24, 19:25

**Llama** [1] - 124:14

**load** [1] - 8:11

**loaded** [2] - 9:23, 93:16

**Loaned** [1] - 2:17

**located** [1] - 116:5

**location** [1] - 169:7

**locations** [1] - 17:9

**lock** [1] - 170:7

**locked** [1] - 169:6

**lockup** [2] - 158:16, 158:22

**logical** [3] - 27:10, 27:15, 28:10

**Lombard** [1] - 1:25

**look** [9] - 15:14, 16:13, 17:1, 27:7, 38:6, 41:5, 150:6, 159:7, 160:5

**looking** [1] - 3:3

**looks** [1] - 13:2

**looseleaf** [1] - 93:24

**looseleafs** [1] - 21:25

**losing** [3] - 14:12, 14:16, 14:19

**lost** [1] - 11:8

**loud** [2] - 162:12, 162:13

**louder** [1] - 83:20

**Louis** [1] - 5:21

**love** [1] - 157:8

**loyalty** [1] - 33:22

**lunch** [21] - 15:20, 18:7, 79:1, 86:9, 87:7, 90:19, 90:20, 91:11, 91:16, 91:23, 92:10, 166:24, 170:4, 170:5, 170:8, 170:11, 170:12, 170:13, 170:15, 172:23

**Lunch** [1] - 90:13

**Luncheon** [1] - 92:11

**luncheon** [2] - 90:11, 90:12

**lunches** [1] - 90:17

**lying** [2] - 37:22, 166:5

**lyric** [2] - 16:14, 17:16

## M

**ma'am** [1] - 157:6

**Magginson** [2] - 6:6, 29:23

**Magnum** [1] - 124:3

**magnum** [1] - 112:5

**mail** [2] - 6:6, 29:23

**mailed** [3] - 164:1, 168:15, 168:16

**mails** [1] - 11:12

**main** [1] - 18:15

**maintain** [17] - 18:11, 98:25, 103:6, 103:10, 103:14, 103:16, 103:20, 103:21, 104:2, 107:24, 108:3, 108:5, 108:17, 108:21, 108:22, 109:3, 160:13

**maintaining** [12] - 54:16, 63:24, 94:13, 95:14, 96:9, 96:23, 97:12, 98:3, 105:14, 106:22, 107:17, 165:19

**major** [1] - 85:21

**malevolence** [1] - 121:24

**malice** [29] - 56:20, 57:4, 57:10, 57:21, 58:6, 58:15, 58:24, 59:14, 60:7, 69:24, 71:9, 72:7, 73:5, 73:12, 74:11, 74:19, 76:6, 77:7, 95:21, 96:15, 97:5, 97:18, 98:9, 105:22, 118:2, 118:17, 119:6, 120:8, 121:11

**Malice** [1] - 121:12

**malicious** [3] - 119:7, 151:22, 152:3

**maliciously** [1] - 117:16

**man** [1] - 7:2

**manage** [1] - 160:4

**manages** [1] - 90:15

**manner** [8] - 30:13,

33:15, 33:20, 67:2, 67:16, 90:9, 139:9, 174:9

**manufactured** [1] - 128:7

**maps** [2] - 16:24, 159:13

**March** [12] - 57:18, 58:1, 58:13, 58:20, 73:2, 73:7, 74:9, 74:14, 75:2, 96:21, 97:11, 110:20

**marijuana** [14] - 54:11, 55:12, 60:24, 77:19, 78:18, 79:10, 79:16, 79:20, 79:24, 80:12, 81:8, 145:25, 146:1

**mark** [1] - 160:3

**marked** [6] - 4:20, 5:17, 11:22, 12:17, 159:19, 172:8

**markers** [1] - 160:6

**Marshal** [1] - 5:7

**marshal's** [2] - 158:15, 158:22

**MARTIN** [5] - 1:8, 5:11, 165:6, 165:20, 166:5

**Martin** [23] - 1:19, 1:20, 5:13, 6:10, 18:22, 21:4, 48:9, 48:13, 53:9, 55:19, 57:20, 60:15, 62:21, 72:3, 78:8, 97:3, 110:21, 117:20, 139:20, 142:24, 146:11, 165:5, 166:2

**Martin's** [1] - 30:22

**Martinez** [3] - 4:22, 4:25, 13:3

**Mary** [3] - 1:24, 174:3, 174:15

**MARYLAND** [1] - 1:2

**Maryland** [101] - 1:12, 1:25, 48:7, 53:6, 53:19, 55:17, 56:18, 56:22, 56:23, 56:25, 57:6, 57:9, 57:12, 57:14, 57:19, 57:24, 57:25, 58:2, 58:8, 58:9, 58:18, 59:1, 59:2, 59:9, 59:12, 59:17, 59:18, 59:21, 59:25, 60:1, 60:4, 60:10, 60:11, 60:14, 62:12, 63:5, 67:21, 69:1, 69:4, 69:14, 69:16, 69:22, 70:2, 71:12, 71:20, 72:8, 72:11, 73:2, 73:7, 73:14, 73:15, 73:18, 74:10, 74:13, 74:15, 74:21, 75:7, 76:4, 76:9, 76:12, 76:20, 76:22, 77:4, 77:10, 77:23, 78:7, 78:24, 87:17, 87:20, 87:21, 95:3, 95:13,

95:23, 95:25, 96:22, 97:7, 97:11, 98:2, 98:11, 100:4, 100:6, 100:20, 101:10, 105:13, 105:24, 109:13, 110:21, 111:10, 117:9, 124:9, 128:8, 128:17, 128:18, 135:23, 135:24, 141:4

**master** [1] - 19:19

**material** [8] - 79:15, 79:19, 79:23, 80:2, 80:4, 80:6, 80:8, 169:21

**material's** [1] - 80:6

**matter** [1] - 22:9, 23:13, 24:10, 27:24, 33:12, 35:15, 41:21, 42:14, 65:12, 79:9, 85:7, 122:10, 125:17, 130:6, 137:9, 156:20, 157:9, 174:4, 174:9

**matters** [9] - 24:20, 24:24, 25:20, 25:21, 33:16, 33:18, 39:22, 40:23, 137:6

**MB** [3] - 7:9, 9:2, 10:16

**MB's** [1] - 7:7

**MB-40F** [2] - 8:23, 9:8

**MB-42** [1] - 6:14

**MB-43** [1] - 6:18

**MB-45** [1] - 6:20

**MB-46** [1] - 6:23

**McCaffity** [40] - 56:14, 56:21, 57:4, 57:13, 69:19, 69:24, 70:10, 71:1, 71:9, 72:9, 94:25, 95:22, 101:10, 101:24, 102:3, 105:7, 105:22, 106:8, 107:15, 108:12, 109:17, 110:8, 110:15, 112:17, 114:7, 117:18, 123:14, 141:19, 141:20, 141:21, 142:12, 147:19, 148:6, 149:25, 150:2, 150:14, 150:18, 150:20, 150:25, 151:11

**mean** [17] - 5:11, 11:6, 12:6, 16:22, 19:3, 39:11, 41:24, 65:1, 81:13, 119:15, 126:15, 131:3, 164:14, 164:23, 164:25, 165:2, 165:18

**meaning** [3] - 94:23, 99:17, 100:5

**meaningful** [2] - 32:13, 66:11

**meanings** [3] - 103:16, 108:5, 108:17

**means** [28] - 32:7, 53:1, 54:22, 64:5, 66:17, 70:18, 70:19, 70:20,

75:18, 75:21, 81:10, 83:8, 83:11, 101:3, 101:4, 101:6, 116:3, 116:7, 121:2, 122:5, 122:14, 126:14, 127:9, 127:11, 127:21, 130:3, 132:2

**meant** [4] - 19:5, 93:2, 104:3, 109:5

**measured** [1] - 85:18

**media** [2] - 25:19, 172:25

**Medical** [1] - 45:8

**meet** [1] - 66:18

**meeting** [1] - 7:12

**meetings** [1] - 6:15

**Melissa** [2] - 13:9, 17:4

**member** [30] - 47:5, 47:8, 47:13, 47:25, 48:2, 49:2, 49:7, 49:15, 50:16, 52:6, 61:21, 66:17, 81:5, 84:9, 84:21, 85:9, 85:10, 85:19, 86:2, 86:4, 86:16, 87:19, 88:13, 89:4, 89:10, 100:15, 106:19, 130:5, 134:14, 135:3

**Members** [6] - 22:6, 54:25, 55:7, 55:10, 55:13, 90:11

**members** [39] - 47:10, 47:17, 50:23, 51:14, 51:17, 52:13, 53:11, 53:14, 53:23, 54:3, 54:7, 54:17, 54:19, 62:22, 62:25, 63:8, 63:13, 63:16, 63:23, 63:25, 64:1, 64:2, 64:7, 64:13, 64:14, 64:16, 83:2, 84:4, 84:6, 86:3, 89:16, 89:18, 90:1, 95:7, 112:23, 134:23, 140:13, 144:2

**members'** [1] - 54:16

**membership** [4] - 50:12, 52:4, 103:23, 108:24

**memo** [1] - 15:16

**memorandum** [1] - 15:23

**mental** [1] - 130:5

**mention** [1] - 171:22

**mentioned** [13] - 15:11, 40:14, 40:25, 48:9, 50:18, 59:4, 72:4, 84:22, 94:20, 106:7, 111:18, 123:4, 137:25

**menu** [2] - 92:3, 92:5

**mere** [9] - 50:7, 85:25, 86:2, 86:12, 116:9, 131:24, 133:19, 133:21, 166:3

**Mere** [3] - 86:5, 131:17, 132:1
**merely** [5] - 40:9, 50:10, 52:17, 86:15, 138:7
**merits** [1] - 29:20
**met** [3] - 26:18, 41:4, 83:3
**Methods** [1] - 54:22
**methods** [2] - 54:23, 64:5
**Michael** [2] - 1:16, 1:18
**middle** [1] - 87:7
**might** [13] - 7:5, 25:25, 33:2, 33:21, 33:22, 113:22, 114:4, 135:6, 156:1, 156:2, 160:7, 171:6, 171:21
**mind** [3] - 23:18, 33:15, 39:17, 45:5, 45:6, 45:9, 45:10, 49:5, 52:14, 93:4, 121:12, 155:4, 172:24
**minds** [1] - 122:18
**mine** [1] - 24:18
**minimal** [1] - 65:13
**minimum** [2] - 14:10, 14:13
**minor** [2] - 85:21, 163:23
**minute** [3] - 5:5, 169:2, 169:20
**minutes** [8] - 2:6, 90:20, 90:24, 90:25, 91:25, 92:10, 116:16, 162:22
**mislead** [1] - 136:24
**misrecollection** [1] - 35:9
**miss** [1] - 21:12
**missing** [4] - 3:3, 3:4, 17:1, 17:11
**misspeak** [1] - 110:9
**mistake** [3] - 34:20, 127:11, 131:2
**misunderstand** [1] - 2:20
**MITCHELL** [1] - 1:7
**Mitchell** [91] - 1:17, 6:8, 14:1, 14:12, 14:16, 14:23, 18:21, 19:17, 21:2, 48:17, 48:18, 48:19, 53:8, 53:20, 55:18, 56:18, 56:25, 57:9, 57:19, 60:14, 62:20, 63:6, 69:18, 69:22, 71:5, 72:2, 72:5, 73:3, 78:8, 94:24, 95:18, 96:1, 96:13, 97:2, 105:6, 105:19, 107:14, 108:11, 109:14, 110:2, 110:21, 112:15, 113:8, 114:6,

114:14, 117:9, 117:19, 139:17, 139:18, 139:20, 139:24, 140:3, 140:22, 140:23, 140:25, 141:12, 141:22, 141:24, 142:18, 142:23, 144:8, 144:11, 144:13, 144:15, 144:25, 145:3, 145:8, 145:14, 145:21, 146:4, 147:3, 147:9, 147:11, 147:16, 147:19, 147:21, 147:23, 148:4, 148:6, 148:9, 148:20, 148:22, 148:25, 149:5, 149:7, 149:24, 150:8, 150:12, 150:17, 150:20, 174:5
**Mitchell's** [1] - 148:11
**mixture** [6] - 60:19, 60:21, 60:22, 60:24, 78:12, 78:14, 78:16, 78:17
**mobile** [1] - 41:15
**Model** [4] - 112:5, 112:6, 124:3, 124:5
**moment** [12] - 3:22, 25:17, 36:3, 46:16, 49:13, 52:10, 78:25, 84:22, 93:10, 117:1, 130:20, 166:15
**moments** [1] - 107:22
**Monday** [13] - 163:2, 166:9, 166:24, 169:14, 169:23, 170:3, 170:15, 170:19, 171:4, 171:7, 171:11, 172:16, 173:8
**money** [2] - 55:12, 65:8
**Moreover** [4] - 68:16, 80:22, 85:11, 86:14
**morning** [7] - 3:8, 5:8, 21:17, 27:4, 163:2, 172:16, 173:8
**most** [5] - 42:1, 50:21, 81:25, 158:5, 158:7
**Most** [1] - 69:6
**motions** [3] - 11:23, 32:2, 32:5
**motivated** [1] - 38:2
**motivation** [2] - 38:3, 38:5
**motive** [8] - 33:14, 46:3, 46:4, 46:5, 46:7, 46:8, 46:9, 103:12
**move** [7] - 77:14, 94:6, 105:5, 109:7, 116:17, 123:19, 145:13
**movement** [1] - 65:8
**Moving** [1] - 142:19
**MR** [127] - 2:4, 2:8, 2:15, 3:11, 3:17, 3:18, 3:20, 3:23, 4:2, 4:6, 4:10,

4:13, 4:15, 4:20, 4:24, 5:2, 5:5, 5:11, 5:16, 5:21, 5:24, 6:6, 6:8, 6:10, 6:12, 6:14, 6:18, 6:20, 6:23, 6:25, 7:3, 7:5, 7:8, 7:11, 7:14, 7:17, 7:19, 7:22, 8:1, 8:4, 8:6, 8:9, 8:22, 8:23, 9:1, 9:4, 9:6, 9:9, 9:14, 9:18, 9:22, 10:1, 10:4, 10:7, 10:9, 10:13, 10:14, 10:16, 10:20, 11:1, 11:4, 11:20, 11:21, 12:1, 12:5, 12:8, 12:20, 13:17, 13:20, 13:22, 13:23, 13:24, 14:4, 14:10, 15:2, 15:8, 15:17, 16:1, 16:5, 16:10, 16:12, 16:16, 16:19, 16:21, 17:9, 17:16, 17:18, 17:23, 18:1, 18:23, 19:10, 19:15, 20:2, 20:5, 20:8, 20:10, 20:14, 20:18, 20:21, 20:23, 21:8, 21:10, 21:12, 77:25, 92:7, 92:12, 92:20, 92:25, 93:6, 93:9, 93:14, 107:3, 110:10, 158:18, 163:14, 163:20, 164:10, 164:20, 165:6, 165:20, 166:5, 167:10, 168:10, 168:13, 168:15, 168:19, 168:22
**MS** [11] - 2:23, 3:2, 3:6, 8:15, 8:17, 8:21, 9:8, 12:14, 12:18, 18:15, 19:5
**multiple** [1] - 49:10
**murder** [253] - 53:16, 54:8, 54:14, 54:15, 55:2, 55:3, 56:13, 56:21, 57:4, 57:7, 57:11, 57:13, 57:16, 57:22, 58:6, 58:10, 58:11, 58:15, 58:16, 58:24, 58:25, 59:11, 59:15, 60:2, 60:8, 63:2, 63:17, 63:22, 64:9, 69:11, 69:18, 69:19, 69:24, 70:2, 70:5, 70:7, 70:16, 71:1, 71:9, 71:14, 71:17, 71:18, 71:20, 71:25, 72:3, 72:7, 72:9, 72:11, 72:16, 72:18, 72:20, 72:21, 72:22, 73:5, 73:6, 73:12, 73:13, 73:17, 73:19, 73:21, 73:23, 73:25, 74:2, 74:12, 74:19, 74:20, 74:23, 74:24, 76:3, 76:7, 76:12, 76:24, 77:1, 77:8, 94:25, 95:11, 95:21, 96:2, 96:15, 96:18, 97:5,

97:6, 97:19, 97:23, 98:9, 98:10, 99:14, 100:1, 100:5, 100:6, 100:17, 100:18, 100:20, 100:23, 101:9, 101:16, 101:17, 101:18, 101:19, 101:21, 102:3, 102:6, 102:9, 102:19, 102:23, 102:25, 103:6, 103:14, 104:7, 104:9, 104:11, 104:14, 104:16, 104:21, 104:23, 104:25, 105:4, 105:7, 105:9, 105:22, 106:3, 106:5, 106:7, 106:20, 107:7, 107:15, 107:22, 108:3, 108:12, 108:14, 109:16, 110:7, 110:14, 110:17, 111:13, 112:17, 113:14, 114:7, 114:9, 114:13, 114:21, 115:6, 117:4, 117:14, 117:17, 117:18, 117:25, 118:15, 118:19, 119:2, 119:5, 119:6, 119:9, 119:12, 119:15, 119:16, 119:17, 119:18, 119:21, 119:22, 120:12, 120:13, 120:21, 122:1, 122:24, 123:1, 123:13, 123:17, 128:25, 140:21, 140:24, 141:4, 141:5, 141:7, 141:8, 141:12, 141:14, 141:16, 141:17, 141:20, 141:21, 141:23, 141:25, 142:4, 142:6, 142:9, 142:11, 142:13, 142:14, 142:16, 142:19, 143:2, 143:3, 143:6, 143:9, 143:11, 143:14, 143:16, 143:20, 143:21, 147:19, 148:6, 148:23, 149:2, 149:6, 149:20, 150:20, 150:21, 150:23, 150:25, 151:23, 152:3, 152:4, 153:24, 153:25, 154:4, 154:6, 154:8, 163:24, 164:5, 164:8, 164:22, 164:24, 165:2, 165:3, 165:13, 166:4
**Murder** [3] - 56:13, 57:15, 119:5
**murdered** [8] - 71:24, 101:24, 117:15, 118:2, 118:17, 142:7, 143:18, 150:17
**murdering** [1] - 150:17
**murders** [12] - 94:14, 102:8, 110:24, 115:1, 119:13, 119:14, 142:22, 151:17, 154:3, 154:4, 165:16

**music** [8] - 15:12, 15:13, 53:20, 54:17, 63:6, 63:24, 92:15, 93:6
**must** [130] - 22:24, 23:12, 23:15, 23:20, 25:10, 25:18, 25:21, 26:2, 26:6, 26:12, 28:11, 29:7, 29:9, 30:19, 33:2, 33:4, 37:8, 37:16, 38:15, 43:2, 46:18, 47:22, 49:15, 49:16, 49:19, 52:7, 52:9, 52:12, 61:16, 61:22, 62:5, 62:6, 64:23, 65:5, 65:11, 65:23, 66:10, 66:15, 66:18, 67:1, 67:11, 68:4, 69:13, 70:9, 71:15, 75:11, 79:14, 80:8, 81:1, 82:23, 84:1, 84:6, 84:15, 84:23, 85:4, 86:19, 86:24, 87:24, 88:8, 88:13, 90:4, 98:14, 99:3, 99:8, 100:2, 100:8, 100:11, 100:14, 100:16, 100:24, 101:22, 102:10, 103:4, 104:12, 104:21, 104:23, 105:3, 106:15, 112:23, 113:18, 114:2, 115:18, 115:25, 116:11, 119:22, 120:20, 120:23, 121:3, 121:10, 121:14, 121:21, 121:25, 122:8, 123:1, 124:22, 125:5, 126:8, 127:8, 127:18, 127:21, 128:2, 129:15, 129:24, 130:21, 131:3, 131:11, 131:19, 133:8, 133:24, 134:9, 135:16, 135:22, 136:8, 136:21, 138:16, 139:13, 140:12, 144:14, 149:6, 151:4, 153:9, 153:13, 153:18, 154:5, 154:13, 154:16, 154:20, 154:21, 164:7, 170:10
**mutual** [3] - 55:14, 64:16, 83:10

## N

**N-29** [5] - 6:25, 7:1, 7:5, 8:23, 9:9
**name** [5] - 24:13, 46:12, 123:21, 139:11, 171:23
**named** [35] - 23:15, 42:12, 56:14, 57:16, 58:11, 58:14, 70:9, 70:17, 72:25, 74:6, 74:16, 97:17, 102:14, 109:9, 112:14, 113:10, 114:14, 116:18, 120:5,

120:12, 120:22, 120:24, 121:2, 123:8, 124:16, 132:12, 139:19, 139:20, 139:22, 139:23, 139:24, 139:25, 141:1, 152:8
**Namely** [1] - 118:10
**namely** [7] - 62:15, 95:8, 107:17, 117:21, 123:13, 124:13, 128:25
**names** [7] - 20:25, 21:3, 80:5, 118:4, 140:22, 149:12, 151:14
**naming** [1] - 118:9
**Nancy** [2] - 7:3, 7:4
**narcotic** [2] - 81:10, 81:12
**narcotics** [28] - 46:14, 50:21, 64:15, 78:3, 79:11, 81:15, 84:2, 84:5, 87:6, 87:23, 87:25, 88:4, 99:14, 99:24, 110:17, 129:1, 144:5, 144:12, 144:25, 146:6, 146:15, 147:21, 148:10, 148:11, 149:2, 149:17, 149:19, 159:10
**narrow** [1] - 23:23
**nation** [1] - 65:10
**national** [1] - 25:14
**nature** [7] - 25:25, 46:25, 52:12, 66:9, 66:13, 79:21, 83:15
**near** [4] - 82:15, 107:6, 169:7, 169:8
**necessarily** [5] - 39:11, 41:25, 51:18, 86:7, 126:15
**necessary** [22] - 19:22, 22:10, 46:3, 65:17, 86:19, 102:4, 102:17, 104:1, 109:2, 121:5, 125:18, 125:20, 128:1, 128:4, 130:7, 130:11, 131:7, 131:24, 132:18, 133:11, 144:18, 167:16
**necessity** [1] - 20:11
**need** [48] - 4:23, 5:1, 13:1, 13:4, 13:9, 15:6, 16:8, 17:6, 18:19, 19:2, 19:3, 21:22, 30:18, 67:14, 70:22, 82:4, 83:2, 83:5, 85:9, 85:10, 85:12, 85:14, 87:12, 87:18, 90:7, 93:7, 101:7, 104:13, 112:20, 121:16, 121:23, 130:17, 135:25, 136:25, 147:12, 154:14, 157:12, 160:7, 160:25, 161:1, 161:12, 163:10, 167:8, 172:4

**needed** [2] - 86:18, 158:22
**Needless** [1] - 172:17
**needs** [1] - 4:1
**negotiating** [1] - 81:18
**neighborhoods** [1] - 55:8
**Nephew** [1] - 30:24
**never** [13] - 9:23, 43:3, 43:4, 43:12, 88:25, 89:15, 163:25, 164:23, 164:24, 171:13, 171:16, 171:18
**Never** [2] - 13:15, 155:13
**Nevertheless** [1] - 67:19
**New** [1] - 55:17
**new** [1] - 51:14
**news** [6] - 14:13, 14:14, 14:20, 14:22, 14:25, 25:19
**Next** [3] - 96:17, 149:22, 152:9
**next** [5] - 14:17, 84:6, 88:8, 121:10, 152:9
**night** [2] - 168:16, 171:4
**Nina** [1] - 15:9
**nine** [7] - 60:12, 67:12, 90:5, 140:8, 140:15, 153:14, 153:21
**Nine** [31] - 77:14, 77:16, 77:21, 78:4, 78:20, 81:1, 81:6, 87:5, 87:10, 88:5, 107:13, 109:12, 110:5, 110:13, 112:14, 113:4, 114:6, 114:15, 140:16, 144:10, 146:20, 147:2, 147:5, 147:10, 147:12, 147:13, 147:17, 148:4, 148:8, 148:13
**Ninth** [1] - 93:9
**NO** [1] - 1:6
**non** [3] - 27:1, 27:13, 41:9
**non-existence** [2] - 27:1, 27:13
**non-use** [1] - 41:9
**none** [3] - 22:24, 40:16, 144:21
**normal** [2] - 156:7, 167:3
**normally** [1] - 167:4
**NORTHERN** [1] - 1:2
**note** [13] - 15:13, 21:18, 85:3, 91:8, 156:16, 161:21, 161:23, 163:1, 166:10, 166:20, 169:19, 173:9, 173:11
**Note** [2] - 42:25, 71:20

**noted** [1] - 20:16
**notes** [3] - 21:23, 160:16, 169:4
**nothing** [6] - 21:11, 31:9, 31:21, 37:3, 38:13, 126:2
**notice** [7] - 21:20, 108:8, 108:9, 118:23, 139:17, 142:5, 147:2
**noticed** [2] - 15:14, 94:2
**noticing** [1] - 90:16
**notified** [1] - 166:21
**November** [2] - 1:11, 174:5
**number** [15] - 4:6, 7:5, 7:9, 7:18, 21:3, 21:4, 29:11, 36:19, 112:7, 124:3, 124:5, 124:15, 139:12, 144:7
**Number** [2] - 112:5, 166:7
**Number[s** [1] - 174:5
**numbered** [2] - 9:2, 11:24, 138:22
**numbering** [1] - 29:16
**numbers** [4] - 17:19, 21:1, 29:13, 172:11
**numerical** [1] - 153:5
**nuts** [1] - 156:8

## O

**oath** [1] - 137:21
**object** [10] - 5:12, 75:19, 80:21, 82:2, 82:5, 82:7, 83:7, 83:8, 106:13, 154:13
**objection** [6] - 29:6, 32:25, 33:3, 33:5, 166:1, 166:23
**objections** [5] - 20:11, 28:20, 163:9, 165:7, 168:2
**objective** [5] - 84:13, 88:25, 89:17, 90:10, 145:22
**objectives** [9] - 54:4, 63:14, 66:23, 67:3, 67:17, 85:15, 86:16, 86:21, 86:22
**objects** [3] - 50:2, 154:15, 154:18
**obligation** [1] - 43:8
**obscured** [1] - 3:10
**observe** [1] - 33:16
**observed** [1] - 38:11
**obsess** [1] - 15:13
**obsessing** [2] - 15:12, 16:3

**obstruct** [3] - 31:18, 55:5, 64:12
**obstructing** [2] - 54:19, 64:2
**Obstruction** [1] - 10:4
**obtain** [1] - 55:12
**obtained** [2] - 88:25, 89:16
**obtaining** [1] - 132:2
**obvious** [1] - 139:6
**Obvious** [1] - 152:20
**obviously** [3] - 19:19, 150:3, 168:1
**Obviously** [3] - 52:20, 133:4, 155:2
**occasion** [2] - 24:22, 155:25
**occasionally** [1] - 171:9
**occasions** [2] - 34:6, 167:22
**occurred** [17] - 45:25, 87:20, 102:2, 102:8, 102:15, 124:8, 125:13, 135:23, 136:3, 136:6, 136:17, 136:20, 137:10, 150:24, 152:4, 163:12
**occurrence** [2] - 45:12, 45:23
**occurs** [1] - 36:4
**OF** [3] - 1:2, 1:5, 1:11
**offense** [50] - 46:19, 68:6, 69:12, 69:14, 71:2, 78:22, 79:4, 80:16, 80:20, 82:24, 84:2, 87:17, 100:4, 101:17, 102:23, 106:9, 106:11, 107:7, 109:11, 110:4, 116:20, 117:21, 120:18, 120:22, 123:22, 124:8, 126:7, 129:9, 129:22, 130:24, 131:6, 132:1, 132:14, 132:16, 132:21, 132:23, 132:25, 133:2, 134:7, 136:15, 136:16, 151:9, 151:15, 151:20, 152:12, 152:15, 153:13
**offenses** [14] - 32:1, 51:23, 52:21, 69:9, 69:15, 99:14, 99:25, 100:1, 105:3, 105:10, 119:11, 128:25, 134:11, 135:21
**offer** [1] - 39:19
**offered** [2] - 32:20, 32:22
**offering** [1] - 41:25
**office** [1] - 93:16
**officer** [6] - 129:2, 129:23, 130:25, 131:6, 160:24, 170:6

**officers** [1] - 43:24
**official** [3] - 39:11, 128:15, 174:8
**Official** [1] - 174:16
**officials** [2] - 39:9, 49:24
**often** [8] - 27:3, 45:5, 45:20, 47:2, 68:20, 68:23, 83:20, 94:17
**old** [1] - 159:2
**Oliver** [34] - 56:14, 56:21, 57:4, 57:13, 69:19, 69:24, 70:10, 71:1, 71:9, 72:9, 94:25, 95:21, 101:19, 101:24, 102:3, 105:7, 105:22, 106:7, 107:15, 109:17, 110:8, 110:14, 112:17, 114:7, 117:18, 123:14, 141:18, 147:19, 148:6, 149:25, 150:13, 150:20, 150:25, 151:11
**omissions** [2] - 47:7, 47:11
**once** [6] - 5:7, 26:12, 91:17, 138:24, 152:25, 156:10
**Once** [4] - 49:14, 90:15, 161:19, 169:18
**one** [122] - 2:18, 2:25, 3:6, 6:14, 7:14, 11:1, 13:6, 13:25, 16:5, 16:6, 16:21, 17:5, 18:23, 18:25, 19:2, 19:3, 19:11, 19:19, 19:22, 19:23, 20:1, 20:10, 21:1, 24:6, 27:19, 29:24, 31:7, 35:21, 38:3, 38:4, 39:1, 41:23, 43:23, 44:2, 44:14, 44:15, 48:6, 48:24, 49:8, 50:20, 51:3, 51:9, 52:1, 56:13, 56:15, 56:16, 57:17, 58:12, 69:16, 70:16, 71:15, 71:16, 72:19, 72:20, 72:21, 72:25, 73:24, 73:25, 74:1, 74:7, 76:25, 78:25, 86:3, 91:1, 92:2, 98:14, 100:25, 104:11, 104:16, 104:19, 104:21, 105:2, 105:4, 105:20, 115:20, 123:24, 123:25, 124:10, 124:11, 124:20, 125:1, 125:9, 125:12, 125:20, 125:22, 126:25, 127:1, 131:24, 132:15, 133:5, 139:23, 140:18, 141:8, 142:22, 144:21, 145:21, 147:14, 149:23, 154:5, 154:8, 154:14,

154:16, 155:9, 156:14,
157:7, 157:19, 158:11,
159:2, 159:5, 164:23,
165:11, 165:16, 166:3,
166:15, 168:15, 168:16,
169:12, 173:5, 173:17
  **One** [51] - 19:25, 26:23,
31:16, 46:12, 46:14,
49:5, 49:12, 51:9, 51:21,
52:11, 52:24, 53:5, 61:3,
65:1, 67:11, 67:13, 69:6,
69:17, 70:17, 70:24,
72:15, 73:18, 73:20,
75:12, 77:16, 90:5, 95:3,
95:4, 96:4, 96:5, 97:10,
97:25, 99:7, 99:11,
100:20, 101:23, 102:10,
105:8, 105:9, 134:14,
139:5, 139:14, 140:2,
140:4, 140:7, 140:16,
143:23, 153:11
  **one's** [3] - 45:6, 45:9,
45:10
  **ones** [4] - 16:17,
148:20, 154:8, 154:16
  **ongoing** [4] - 54:3,
62:5, 63:12, 64:19
  **open** [2] - 138:24,
153:2, 155:4
  **operable** [1] - 127:16
  **operated** [2] - 53:13,
62:24
  **operations** [2] - 55:4,
64:11
  **opinion** [6] - 11:5,
24:19, 24:24, 25:2,
39:22, 155:11
  **opinions** [4] - 11:8,
11:15, 40:3, 155:10
  **opportunity** [1] -
157:13
  **opposed** [2] - 122:7,
143:23
  **opposition** [2] - 15:15,
15:23
  **option** [1] - 142:5
  **options** [1] - 142:20
  **order** [56] - 18:10,
18:11, 32:13, 61:14,
66:9, 66:17, 69:12,
71:13, 75:10, 80:25,
81:9, 82:5, 83:1, 84:14,
85:13, 98:12, 100:1,
100:22, 101:21, 102:5,
102:9, 102:18, 103:20,
104:17, 104:19, 104:22,
106:14, 108:21, 116:12,
119:21, 121:21, 122:8,
122:13, 122:25, 124:23,
127:16, 129:13, 130:16,

131:6, 131:10, 131:18,
132:19, 133:10, 136:24,
139:7, 139:8, 139:20,
140:11, 153:3, 153:5,
153:12, 154:4, 154:15,
160:13, 167:12
  **ordered** [1] - 29:7
  **ordering** [1] - 91:20
  **orderly** [1] - 159:18
  **ordinarily** [1] - 40:5
  **Ordinarily** [1] - 31:9
  **ordinary** [5] - 39:13,
99:17, 103:16, 108:5,
108:17
  **organ** [1] - 130:5
  **organization** [27] -
53:12, 53:13, 53:22,
54:3, 55:22, 61:25,
62:13, 62:16, 62:23,
62:24, 63:8, 63:13,
64:20, 95:6, 95:15,
95:17, 96:10, 96:12,
96:24, 97:1, 97:14,
97:16, 98:4, 98:6,
105:15, 105:18, 107:18
  **organizational** [1] -
62:5
  **organizations** [4] -
54:13, 55:5, 63:21, 64:12
  **Organizations** [1] -
53:1
  **organized** [2] - 62:10,
62:11
  **origin** [1] - 25:15
  **original** [2] - 7:6, 18:8
  **originally** [2] - 14:15,
15:2
  **originated** [1] - 41:18
  **outcome** [7] - 67:23,
67:24, 68:2, 68:3, 84:16,
84:18, 146:23
  **outcomes** [1] - 67:22
  **outset** [1] - 22:6
  **outside** [5] - 27:7, 29:9,
87:15, 90:21, 91:24
  **overall** [4] - 51:8, 67:2,
67:17, 90:9
  **overarching** [4] - 49:11,
50:20, 51:12
  **overlap** [3] - 52:3,
68:23, 150:3
  **own** [12] - 19:13, 30:7,
30:9, 30:15, 30:19, 31:8,
35:1, 40:10, 85:5, 155:9,
155:11, 162:18
  **owner** [1] - 76:1
  **ownership** [1] - 127:6

**P**

  **p.m** [4] - 92:11, 163:7,
173:15, 173:24
  **packet** [1] - 19:13
  **pads** [7] - 91:8, 156:16,
160:6, 166:10, 166:20,
173:11, 173:12
  **page** [7] - 4:23, 13:4,
13:13, 13:14, 19:17,
22:3, 87:6
  **Page** [21] - 66:14, 74:4,
86:11, 87:8, 93:22,
93:24, 96:21, 97:10,
98:1, 107:6, 108:13,
110:19, 118:10, 136:9,
138:19, 139:14, 146:7,
147:3, 150:7, 152:9,
163:24
  **pages** [3] - 3:25, 4:10,
4:25, 10:25, 93:24, 174:7
  **pain** [1] - 130:4
  **paper** [2] - 4:15, 160:7
  **papers** [5] - 31:5, 31:20,
32:7, 40:24, 159:16
  **Paragraph** [5] - 56:5,
56:8, 63:19, 97:25,
105:11
  **Paragraphs** [4] - 95:3,
96:3, 96:4, 105:8
  **paragraphs** [3] - 96:20,
97:10, 97:25
  **paraphrasing** [1] -
150:10
  **park** [1] - 171:7
  **parole** [1] - 129:10
  **part** [33] - 4:2, 7:20,
13:25, 14:18, 15:22,
24:25, 35:4, 37:9, 40:16,
56:6, 67:13, 68:24,
78:21, 79:6, 83:24,
85:14, 86:10, 88:1, 89:5,
90:6, 96:3, 96:19, 97:9,
112:11, 116:11, 121:16,
121:18, 145:4, 145:8,
145:14, 153:15, 153:19,
157:24
  **partially** [1] - 30:16
  **participant** [2] - 84:15,
87:2
  **participants** [1] - 83:23
  **participate** [9] - 53:3,
56:1, 66:19, 66:23, 67:8,
84:11, 89:21, 134:2,
135:11
  **participated** [7] - 54:24,
64:6, 67:2, 67:16, 86:20,
90:9, 130:9
  **participating** [6] -

101:23, 101:25, 102:11,
102:13, 103:2
  **Participation** [1] -
133:14
  **participation** [6] -
49:18, 50:6, 85:4, 85:16,
85:19, 86:13
  **particular** [32] - 7:23,
14:11, 22:25, 24:7,
29:14, 40:15, 40:16,
40:17, 41:10, 41:17,
41:18, 46:17, 47:14,
49:7, 52:5, 65:18, 67:23,
67:24, 68:19, 87:13,
88:15, 88:17, 92:5,
120:15, 120:19, 122:12,
123:22, 131:8, 136:12,
139:7, 171:19
  **particularly** [3] - 18:7,
18:8, 168:2
  **parties** [5] - 29:4, 79:21,
83:17, 92:4, 125:9
  **partnership** [3] - 47:2,
62:9, 80:13
  **partnerships** [1] - 47:3
  **parts** [1] - 85:21
  **party** [3] - 31:7, 41:23,
41:24
  **pass** [3] - 32:20, 81:13,
81:15
  **passed** [1] - 81:14
  **password** [1] - 5:24
  **past** [1] - 45:9
  **paste** [1] - 13:4
  **patience** [4] - 21:18,
22:7, 22:9, 161:13
  **pattern** [6] - 53:3, 56:2,
56:10, 66:20, 66:24
  **Paul** [1] - 1:19
  **pay** [10] - 94:11, 95:16,
96:11, 96:25, 97:15,
98:5, 105:16, 105:17,
160:11, 172:15
  **payment** [1] - 75:23
  **peace** [21] - 56:21, 57:5,
57:11, 57:23, 58:7,
58:17, 59:1, 59:8, 59:16,
59:24, 60:9, 69:25,
71:10, 73:14, 75:6, 76:8,
76:19, 77:9, 95:22,
97:20, 105:23
  **peculiar** [1] - 31:9
  **pecuniary** [7] - 94:11,
95:17, 96:12, 97:1,
97:15, 98:6, 105:17
  **pending** [3] - 43:19,
43:21, 129:10
  **Pennsylvania** [3] -
53:14, 55:17, 62:25
  **people** [7] - 14:1, 14:8,

37:9, 42:9, 47:3, 51:3,
169:18
  **perceive** [1] - 38:21
  **perfectly** [3] - 18:1,
164:25, 169:15
  **perform** [2] - 85:19,
85:20
  **performances** [2] -
53:21, 63:7
  **perhaps** [4] - 12:23,
13:3, 159:6, 160:3
  **period** [10] - 62:2,
64:25, 66:4, 75:22,
87:13, 87:15, 99:20,
122:12, 122:15, 122:16
  **permanently** [1] - 75:22
  **permission** [1] - 170:3
  **permit** [2] - 25:21,
172:25
  **permitted** [6] - 28:1,
28:6, 37:5, 37:7, 91:17,
128:9
  **permitting** [1] - 166:23
  **perpetrate** [3] - 119:9,
119:15, 123:12
  **perpetrated** [1] - 119:7
  **perpetration** [24] -
57:23, 58:7, 58:17,
58:25, 59:16, 60:9, 73:6,
73:13, 74:13, 74:20,
76:8, 77:9, 97:7, 97:20,
98:10, 102:8, 117:17,
118:3, 118:18, 119:8,
119:14, 123:12, 151:23,
152:5
  **person** [70] - 5:25, 8:11,
12:7, 41:17, 41:19, 42:6,
42:13, 49:14, 49:16,
61:5, 66:7, 70:4, 70:5,
71:16, 72:21, 74:1,
76:25, 78:22, 79:6, 82:3,
82:4, 82:11, 82:18,
83:24, 86:4, 100:21,
102:24, 112:11, 112:12,
116:4, 116:19, 117:13,
117:24, 118:14, 118:24,
119:1, 120:5, 121:13,
121:15, 123:8, 124:19,
126:25, 127:1, 128:21,
128:23, 128:24, 129:1,
129:5, 129:6, 129:7,
129:11, 129:18, 129:19,
129:21, 130:10, 130:11,
130:13, 130:23, 131:5,
132:4, 132:20, 132:24,
133:1, 133:4, 133:6,
134:22, 142:12, 151:2,
151:8
  **person's** [5] - 31:21,
45:5, 50:8, 82:10, 126:14

**personal** [8] - 23:19, 25:13, 38:3, 38:14, 156:2, 156:18, 157:4, 162:18

**personally** [3] - 88:20, 89:21, 135:11

**personnel** [3] - 51:13, 62:6, 64:20

**persons** [20] - 25:15, 35:8, 38:10, 40:21, 42:12, 46:22, 47:16, 55:20, 58:4, 71:13, 80:14, 81:3, 82:25, 105:20, 106:17, 107:1, 107:9, 132:15, 134:22

**persuade** [3] - 44:15, 44:18, 44:25

**persuasive** [1] - 28:18

**pertain** [1] - 35:14

**pertinent** [6] - 78:21, 79:6, 96:3, 96:19, 106:2, 112:10

**phone** [4] - 6:20, 20:20, 41:19, 41:20

**phones** [1] - 21:1

**photo** [2] - 3:4, 3:6

**photocopied** [3] - 4:17, 4:23, 5:1

**photocopy** [2] - 13:10, 13:12

**photocopying** [1] - 4:16

**photograph** [1] - 16:6

**photographs** [1] - 16:17

**photos** [5] - 3:2, 12:14, 16:4, 17:8, 17:10

**physical** [7] - 82:1, 82:4, 82:7, 82:11, 116:3, 126:22, 130:4

**physically** [3] - 126:16, 128:22, 132:18

**piece** [2] - 4:15, 8:11

**Pinkerton** [2] - 164:14, 164:19

**pistol** [3] - 112:7, 124:5, 124:14

**placards** [2] - 5:14, 159:13

**place** [10] - 38:11, 40:22, 46:1, 87:13, 87:17, 116:5, 133:7, 136:12, 136:16, 136:20

**placed** [5] - 18:10, 19:12, 34:12, 115:11, 122:19

**plain** [2] - 146:24, 147:1

**plan** [4] - 83:11, 84:24, 86:13, 135:1

**planned** [2] - 88:22, 89:11, 132:7

**planning** [2] - 99:20, 132:1

**plans** [4] - 89:21, 89:23, 90:3

**play** [8] - 8:6, 10:14, 85:21, 93:12, 93:17, 158:22, 172:5

**playable** [2] - 12:1, 12:21

**played** [4] - 8:1, 12:2, 93:10, 116:11

**player** [4] - 93:17, 158:19, 158:21, 159:3

**plea** [2] - 37:5, 125:22

**pleading** [3] - 31:7, 31:10, 31:14

**pleadings** [4] - 31:12, 31:23, 31:24, 32:3

**pleased** [2] - 90:18, 169:1

**pleasure** [1] - 91:15

**pled** [1] - 36:21

**plural** [1] - 24:3

**point** [8] - 3:14, 14:22, 15:20, 23:1, 91:6, 157:10, 163:10, 164:23

**pointing** [3] - 2:21, 27:1, 139:3

**police** [4] - 36:6, 36:12, 36:14, 159:1

**Police** [1] - 48:7

**poll** [1] - 162:16

**portion** [1] - 75:22

**portions** [2] - 30:17

**position** [21] - 13:11, 94:13, 98:3, 98:20, 98:25, 100:10, 103:7, 103:10, 103:15, 103:21, 103:25, 104:2, 106:22, 107:17, 107:25, 108:4, 108:22, 109:1, 109:3, 155:8, 155:13

**positions** [5] - 95:14, 96:9, 96:23, 97:13, 105:14

**positive** [1] - 49:20

**possess** [20] - 79:7, 80:11, 82:21, 88:23, 89:1, 89:11, 89:18, 109:22, 109:25, 111:4, 111:6, 112:1, 112:4, 116:7, 124:1, 124:12, 124:21, 126:14, 144:19, 145:24

**possessed** [16] - 88:1, 88:20, 89:5, 112:21, 113:24, 115:19, 115:24, 125:2, 125:14, 126:10, 127:5, 127:6, 127:9, 127:10, 147:24, 149:1

**possesses** [3] - 112:13, 126:18, 126:25

**possessing** [14] - 109:10, 112:15, 112:18, 113:10, 114:6, 114:15, 115:10, 125:7, 127:20, 128:9, 145:22, 147:4, 150:8

**possession** [47] - 81:7, 81:9, 81:22, 81:25, 82:1, 82:3, 82:5, 82:8, 82:10, 82:13, 110:3, 110:15, 112:24, 116:1, 116:4, 116:9, 116:23, 117:3, 117:7, 117:22, 125:3, 126:6, 126:16, 126:20, 126:22, 126:23, 126:24, 127:1, 127:3, 127:22, 147:13, 148:4, 148:13, 148:14, 149:14, 150:1, 151:10, 151:16, 152:10, 152:11, 152:16, 152:19, 152:20, 154:2, 154:10

**Possession** [2] - 82:14, 116:3

**possibilities** [3] - 144:20, 144:21, 145:10

**possible** [7] - 22:11, 43:1, 105:1, 127:1, 128:24, 129:8, 137:15

**poster** [1] - 5:15

**powder** [10] - 88:7, 88:8, 145:1, 145:4, 145:5, 145:7, 145:10, 145:12, 145:17, 146:17

**power** [6] - 54:12, 63:19, 116:6, 126:20, 127:2, 127:4

**practice** [2] - 167:3, 170:19, 170:20

**precise** [1] - 83:7

**predicate** [2] - 105:3, 147:23

**preference** [1] - 161:7

**prejudice** [2] - 26:13, 33:24

**preliminary** [1] - 52:14

**premarked** [2] - 29:14, 29:15

**Premeditated** [2] - 70:20, 101:6

**premeditated** [43] - 56:20, 57:4, 57:10, 57:21, 58:5, 58:15, 58:24, 59:14, 60:7, 69:24, 71:9, 72:7, 73:5, 73:12, 74:11, 74:19, 76:6, 77:7, 95:21, 96:15, 97:5, 97:18, 98:8, 101:2, 105:21, 119:8, 119:12,

119:17, 119:18, 119:22, 122:1, 122:14, 122:23, 141:5, 141:7, 142:4, 143:2, 143:20, 150:21, 151:22, 152:3, 153:24, 154:3

**premeditation** [11] - 70:4, 70:8, 100:22, 117:17, 120:10, 122:3, 122:4, 122:5, 122:13, 142:8, 142:10

**preparation** [2] - 131:24, 132:1

**prepared** [2] - 20:25, 168:19

**presence** [7] - 22:11, 46:9, 75:9, 75:13, 86:1, 133:19, 161:16

**present** [17] - 2:2, 40:21, 43:8, 82:16, 103:1, 136:2, 136:12, 136:16, 136:20, 136:25, 162:1, 162:2, 164:18, 169:18, 169:25, 170:14

**presented** [2] - 28:5, 39:24

**preserve** [1] - 163:11

**preserved** [1] - 20:16

**preserving** [2] - 54:11, 63:19

**preside** [1] - 160:12

**prestige** [2] - 103:25, 109:1

**presumably** [1] - 162:4

**presumed** [3] - 39:20, 50:10, 50:12

**presumption** [3] - 25:15, 42:21, 43:22

**pretty** [4] - 4:19, 13:2, 172:6

**prevent** [2] - 50:1, 156:2

**preventing** [2] - 54:18, 64:1

**previously** [19] - 39:1, 41:22, 67:18, 68:15, 69:2, 71:19, 72:4, 72:10, 72:12, 73:16, 74:22, 76:11, 76:21, 77:12, 123:17, 123:24, 124:10, 126:11, 128:5

**price** [1] - 81:18

**prime** [1] - 24:10

**principal** [2] - 103:12, 108:1

**print** [3] - 18:24, 19:1, 19:22

**printed** [1] - 164:3

**printouts** [1] - 16:24

**pro** [11] - 11:23, 31:5,

31:6, 31:10, 31:12, 31:14, 31:20, 31:23, 32:3, 32:5, 32:6

**probation** [1] - 129:10

**probative** [1] - 29:21

**problem** [5] - 6:3, 13:18, 13:21, 17:15, 158:10

**proceed** [5] - 2:3, 3:23, 113:3, 120:16, 166:22

**proceeding** [2] - 68:1, 128:15

**proceedings** [6] - 54:21, 64:4, 68:4, 129:11, 174:4, 174:8

**Proceedings** [2] - 2:1, 173:24

**process** [2] - 26:1, 27:23

**produce** [2] - 40:24, 125:16

**produced** [3] - 41:24, 53:20, 63:6

**producing** [1] - 43:6

**profit** [4] - 54:15, 55:3, 63:22, 64:9

**profits** [2] - 54:12, 63:20

**progress** [1] - 156:23

**prohibited** [2] - 152:19, 152:20

**projectile** [2] - 115:22, 126:13

**promise** [1] - 94:10, 95:16, 96:11, 96:25, 97:15, 98:5, 105:16

**promote** [2] - 49:18, 116:8

**promoted** [4] - 53:20, 55:7, 63:6, 64:14

**promoting** [5] - 54:15, 54:16, 63:23, 63:24, 100:12

**promptly** [1] - 161:24

**promptness** [1] - 22:11

**proof** [29] - 23:22, 25:13, 25:16, 26:25, 39:17, 41:4, 41:17, 44:17, 45:10, 46:5, 46:19, 49:9, 50:9, 50:19, 51:8, 65:14, 66:18, 67:9, 68:24, 71:23, 80:25, 83:15, 83:23, 84:17, 86:8, 106:14, 125:16, 138:8

**Proof** [4] - 46:3, 46:4, 51:7, 127:6

**proper** [3] - 2:23, 24:1, 49:23

**properly** [3] - 23:5,

26:22, 84:20
  **property** [17] - 59:6,
59:22, 75:3, 75:8, 75:10,
75:13, 75:14, 75:16,
75:21, 75:24, 75:25,
76:16, 82:19, 128:20,
129:6, 129:19, 156:18
  **Property** [1] - 75:18
  **prosecuted** [17] -
68:15, 69:2, 109:16,
109:21, 110:23, 111:3,
111:12, 111:25, 112:12,
113:23, 114:5, 114:10,
114:18, 114:23, 115:3,
115:8, 115:13
  **prosecution** [14] -
24:13, 40:20, 40:24,
42:18, 43:11, 54:19,
64:2, 67:19, 68:10,
68:17, 68:19, 68:21,
68:25, 69:5
  **prosecution's** [1] - 43:9
  **prosecutions** [2] -
67:22, 68:20
  **prosecutors** [1] - 68:15
  **protect** [2] - 55:3, 64:10
  **protecting** [2] - 54:11,
63:19
  **protects** [1] - 43:22
  **prove** [98] - 41:9, 42:19,
42:25, 43:10, 43:13,
50:15, 61:14, 61:22,
65:5, 65:11, 65:13,
65:17, 65:20, 65:23,
66:3, 66:9, 66:10, 66:15,
67:1, 67:5, 67:12, 67:14,
69:13, 70:9, 71:15,
75:11, 79:23, 80:8,
82:23, 84:1, 87:12,
87:18, 90:4, 90:7, 98:12,
99:3, 100:2, 100:11,
100:13, 100:14, 100:24,
101:21, 101:22, 102:4,
102:10, 102:17, 103:9,
103:11, 104:10, 104:13,
107:23, 108:1, 113:2,
113:18, 114:2, 115:18,
115:24, 115:25, 119:23,
120:15, 120:23, 120:25,
121:3, 121:10, 121:16,
121:22, 121:23, 121:25,
122:9, 122:11, 122:25,
123:1, 124:22, 125:5,
125:18, 126:8, 127:13,
127:16, 127:18, 127:21,
128:1, 128:2, 128:4,
129:13, 129:15, 129:24,
130:11, 130:21, 131:8,
131:10, 131:12, 135:25,
136:5, 136:14, 153:16

  **proved** [9] - 27:18,
41:13, 51:10, 85:8,
103:20, 108:21, 113:5,
121:18, 132:24
  **proven** [21] - 26:7, 26:9,
28:7, 32:10, 42:4, 42:6,
42:9, 61:12, 68:6, 87:22,
88:10, 114:12, 115:16,
126:22, 140:9, 140:17,
140:19, 142:17, 147:18,
147:20, 155:21
  **proves** [3] - 67:16, 90:8,
121:7
  **provide** [2] - 88:2,
171:5
  **provided** [14] - 21:24,
22:22, 30:6, 36:10, 59:7,
59:24, 75:5, 76:18,
92:13, 111:21, 134:18,
138:15, 169:21, 173:5
  **provides** [2] - 78:21,
79:5, 112:10, 118:24,
124:18, 129:4
  **providing** [1] - 124:8
  **proving** [5] - 26:18,
113:20, 119:24, 124:24,
127:24
  **provisionally** [1] -
30:23
  **provisions** [3] - 61:6,
94:20, 106:2
  **published** [2] - 11:8,
11:15
  **publishing** [1] - 11:4
  **pull** [1] - 158:11
  **punishable** [8] - 39:1,
123:24, 124:11, 124:20,
125:1, 125:8, 125:11,
125:19
  **punishment** [2] -
137:15, 137:22
  **Pure** [4] - 7:15, 9:13,
171:24, 172:1
  **purely** [1] - 32:23
  **purpose** [46] - 29:18,
31:4, 34:12, 47:8, 48:12,
49:21, 51:4, 54:4, 62:2,
62:4, 62:11, 62:12,
63:14, 64:19, 68:3,
75:23, 80:15, 83:7, 83:8,
83:25, 84:12, 86:25,
92:24, 94:12, 95:13,
96:8, 96:22, 97:12, 98:2,
98:24, 103:5, 103:10,
103:13, 105:13, 106:20,
107:15, 107:24, 108:1,
108:2, 108:14, 113:15,
121:23, 122:15, 126:3,
133:17, 155:18
  **purposefully** [1] - 34:19

  **purposely** [2] - 127:10,
131:2
  **purposes** [11] - 20:17,
36:8, 51:6, 51:16, 52:2,
54:6, 63:15, 67:11, 85:2,
86:15, 86:20
  **Purposes** [1] - 54:6
  **pursuant** [2] - 135:1,
135:14
  **pursuit** [1] - 144:3
  **Put** [1] - 172:24
  **put** [15] - 2:8, 2:18, 6:5,
8:14, 8:19, 14:25, 16:20,
18:2, 19:24, 39:3,
159:17, 160:3, 165:4,
172:3
  **puts** [1] - 93:5
  **putting** [1] - 9:3
  **Pyne** [1] - 1:21

## Q

  **qualifications** [1] - 40:3
  **quality** [2] - 42:1, 81:18
  **quantities** [4] - 87:25,
88:4, 145:6, 145:7
  **quantity** [16] - 42:2,
60:22, 60:24, 78:15,
78:17, 88:14, 88:16,
88:19, 88:22, 89:2, 89:4,
89:7, 89:10, 89:13,
89:19, 146:5
  **questions** [25] - 24:22,
24:23, 28:22, 48:13,
88:3, 134:2, 134:8,
138:12, 138:17, 139:12,
146:4, 146:5, 146:9,
146:11, 146:12, 152:5,
152:25, 160:18, 160:20,
161:10, 161:17, 161:20,
162:12, 162:14, 169:3
  **quick** [2] - 16:13,
167:10
  **quickly** [5] - 4:19,
139:1, 160:15, 161:8,
162:25
  **quite** [4] - 22:15, 23:5,
39:14, 159:17

## R

  **race** [1] - 25:14
  **Racketeer** [1] - 52:25
  **Racketeering** [54] -
56:13, 57:7, 57:15,
58:10, 59:3, 59:11,
59:19, 60:2, 60:12,
69:16, 70:1, 70:14,
70:17, 70:24, 71:2, 71:3,

71:4, 72:1, 72:14, 72:15,
72:17, 72:22, 72:24,
73:1, 73:18, 73:19,
73:20, 73:22, 74:2, 74:4,
74:7, 74:14, 74:25, 75:1,
76:2, 76:13, 76:23, 77:1,
77:14, 77:16, 77:21,
78:4, 78:20, 81:1, 81:6,
87:5, 87:9, 88:5, 94:18,
106:1, 107:13, 144:10
  **racketeering** [99] -
31:16, 46:13, 46:15,
50:20, 53:4, 55:15, 56:3,
56:7, 56:10, 56:11,
56:16, 57:18, 58:13,
61:8, 65:13, 65:14,
66:20, 66:24, 67:4, 67:6,
67:7, 67:9, 67:12, 69:6,
69:10, 69:12, 69:19,
72:3, 77:2, 78:2, 90:5,
94:8, 94:12, 94:14,
94:22, 95:1, 95:7, 95:18,
96:2, 96:13, 96:19, 97:2,
97:17, 97:23, 98:7,
98:18, 99:10, 99:11,
99:13, 99:18, 99:20,
99:23, 99:24, 100:2,
100:19, 102:23, 104:7,
104:23, 105:7, 105:18,
106:21, 106:23, 107:16,
107:19, 108:12, 109:17,
110:25, 111:14, 114:9,
114:21, 128:25, 139:14,
140:2, 140:3, 140:8,
140:9, 140:12, 140:15,
140:17, 140:19, 140:21,
140:24, 141:12, 141:16,
141:17, 141:24, 141:25,
142:20, 143:16, 151:18,
153:11, 153:14, 153:18,
153:21, 165:14, 165:20,
167:15, 167:19, 167:23
  **rain** [1] - 27:6
  **raining** [2] - 27:9, 27:10
  **raised** [5] - 31:23, 32:3,
49:6, 49:9, 136:10
  **Randallstown/Park** [21]
- 53:12, 53:22, 55:21,
61:25, 62:15, 62:23,
63:7, 95:6, 95:15, 95:17,
96:10, 96:12, 96:24,
97:1, 97:13, 97:16, 98:4,
98:6, 105:15, 105:17,
107:18
  **rap** [11] - 7:14, 7:17,
15:12, 15:13, 15:21,
53:20, 54:17, 63:6,
63:24, 163:16, 171:23
  **Rarely** [1] - 45:9
  **Rather** [4] - 23:2, 30:5,

41:11, 50:21
  **rather** [5] - 18:8, 49:10,
118:6, 159:16, 170:23
  **re** [3] - 4:23, 5:1, 155:11
  **re-examine** [1] - 155:11
  **re-photocopied** [2] -
4:23, 5:1
  **reach** [3] - 68:4, 139:13,
155:6
  **reached** [7] - 138:25,
156:25, 161:19, 161:21,
161:23, 171:17, 171:18
  **reaching** [5] - 23:18,
25:12, 40:1, 42:16,
113:13
  **read** [18] - 22:1, 22:2,
22:3, 22:4, 25:19, 74:4,
77:2, 77:21, 77:24,
79:13, 105:10, 106:25,
107:9, 108:13, 118:20,
138:9, 162:12, 167:19
  **readily** [2] - 115:22,
126:12
  **reads** [23] - 53:5, 61:4,
69:20, 71:4, 72:3, 72:14,
72:24, 74:14, 75:2, 76:3,
76:15, 94:9, 95:2, 96:3,
96:19, 97:9, 97:25,
105:8, 109:12, 110:20,
117:8, 118:10, 128:16
  **ready** [9] - 2:3, 20:19,
90:24, 93:19, 157:19,
157:20, 169:9, 169:17,
169:19
  **real** [1] - 83:19
  **Really** [1] - 173:21
  **really** [3] - 12:3, 15:21,
16:3
  **reason** [16] - 26:16,
26:20, 27:12, 33:4, 33:5,
40:10, 43:4, 43:5, 46:24,
89:24, 92:2, 103:23,
108:24, 135:13, 147:13,
161:10
  **reasonable** [93] - 26:8,
26:15, 26:19, 27:9, 28:7,
28:10, 28:12, 32:11,
37:14, 41:13, 41:22,
42:4, 42:19, 42:24, 43:1,
43:10, 46:1, 46:7, 47:12,
50:3, 50:15, 61:16,
61:23, 65:6, 65:24, 66:3,
66:10, 66:16, 68:7,
69:13, 70:15, 72:19,
73:24, 75:12, 80:9, 81:2,
82:24, 84:2, 85:6, 87:23,
87:24, 98:14, 99:4, 99:9,
100:3, 100:9, 100:17,
100:25, 103:5, 104:15,
106:16, 113:3, 113:19,

114:3, 114:12, 115:16, 115:19, 119:23, 120:15, 121:11, 121:19, 122:1, 122:25, 124:23, 125:6, 126:9, 127:19, 129:14, 129:15, 129:25, 130:22, 131:12, 131:19, 132:23, 134:13, 134:19, 135:9, 136:7, 136:14, 136:19, 137:20, 140:10, 140:18, 140:19, 141:7, 142:17, 143:6, 145:8, 145:14, 146:19, 147:18, 147:21, 155:5

**reasonably** [6] - 47:6, 87:14, 89:6, 89:12, 89:23, 135:5

**reasoned** [1] - 27:15

**reasons** [2] - 32:22, 40:3

**reassemble** [2] - 161:13, 161:24

**reassembling** [1] - 166:25

**receipt** [11] - 94:10, 95:16, 96:11, 96:25, 97:14, 98:5, 99:1, 103:8, 105:16, 106:23, 107:19

**receive** [1] - 37:24

**received** [5] - 29:2, 30:4, 41:18, 41:19, 46:25

**receiving** [1] - 81:18

**recently** [1] - 38:12

**recess** [6] - 90:12, 92:10, 92:11, 172:20, 173:23

**recesses** [2] - 22:9, 22:12

**reckless** [1] - 121:18

**recognized** [1] - 62:9

**recognizes** [2] - 102:23, 126:24

**recollection** [2] - 33:18, 35:9

**reconvene** [2] - 166:9, 170:3

**record** [12] - 2:8, 5:6, 15:10, 20:13, 20:16, 28:24, 45:9, 161:15, 162:2, 162:14, 163:10, 163:11

**recorded** [1] - 174:3

**recorder** [3] - 8:18, 8:22, 9:12

**recording** [2] - 30:1, 30:5

**recordings** [3] - 53:21, 63:7, 157:23

**recover** [1] - 76:1

**recovered** [2] - 21:1,

163:21

**recreate** [1] - 17:12

**redacted** [1] - 3:14, 4:11, 4:16, 8:17, 13:25, 14:6, 15:2, 15:3, 15:7, 18:3

**redaction** [2] - 13:20, 13:24

**redactions** [3] - 3:21, 3:24, 4:12

**redwell** [7] - 11:23, 12:5, 18:4, 19:17, 19:18, 20:1, 21:7

**redwells** [1] - 19:16

**refer** [8] - 10:2, 10:5, 21:22, 23:11, 25:5, 67:20, 80:5, 111:19

**Refer** [1] - 10:3

**reference** [6] - 14:7, 14:11, 14:14, 24:3, 95:4, 96:5

**referenced** [1] - 17:18

**references** [1] - 67:25

**referred** [9] - 23:5, 24:6, 24:8, 25:6, 25:8, 47:2, 53:11, 62:22, 94:17

**referring** [1] - 111:20

**refers** [2] - 80:18, 110:14

**reflect** [1] - 5:6

**refuse** [1] - 155:13

**regard** [12] - 22:19, 23:3, 29:4, 42:8, 50:14, 83:21, 84:14, 120:25, 121:13, 128:6, 130:7, 135:25

**regarded** [1] - 61:10

**regarding** [2] - 41:14, 79:21

**Regarding** [1] - 29:23

**regardless** [1] - 155:7

**regards** [1] - 31:20

**regret** [1] - 157:12

**regular** [2] - 156:1, 156:14

**reject** [1] - 30:17

**rejoining** [1] - 90:15

**relate** [3] - 38:21, 106:3, 141:18

**related** [6] - 30:25, 87:14, 143:9, 152:5, 158:23, 163:21

**relates** [6] - 110:16, 141:25, 142:22, 143:14, 148:23, 152:8

**Relates** [1] - 151:6

**relating** [10] - 17:8, 24:19, 87:5, 128:24, 129:8, 129:22, 130:24, 131:5, 143:10, 151:12

**relation** [7] - 33:19, 109:15, 109:20, 110:22, 111:2, 111:11, 111:24

**relationship** [1] - 94:19

**release** [2] - 129:10

**released** [1] - 170:4

**relevant** [7] - 53:7, 62:19, 97:9, 106:2, 112:9, 118:22, 129:3

**relies** [2] - 80:7, 134:11

**religion** [1] - 25:14

**remain** [1] - 92:3

**remains** [5] - 43:11, 49:14, 50:15, 91:7, 171:22

**Remember** [1] - 7:23

**remember** [11] - 4:2, 5:18, 16:11, 140:10, 141:3, 141:15, 143:13, 146:21, 151:24, 168:17, 171:23

**remembered** [1] - 67:23

**Remind** [1] - 8:16

**remind** [3] - 18:6, 28:9, 52:16

**reminded** [2] - 50:14, 138:7

**reminding** [1] - 20:12

**remote** [1] - 5:8

**render** [4] - 24:25, 25:3, 26:20, 155:24

**renew** [2] - 20:11, 168:1

**renumbered** [2] - 7:1, 7:6

**repeat** [4] - 26:1, 37:18, 94:4, 107:23

**repeated** [1] - 94:5

**repeatedly** [2] - 165:11, 165:12

**repetition** [1] - 94:2

**Reported** [1] - 1:23

**Reporter** [1] - 174:16

**REPORTER'S** [1] - 174:1

**reports** [2] - 25:18, 172:25

**represent** [2] - 31:21, 154:21

**represented** [1] - 31:17

**reproduce** [3] - 16:6, 16:23, 17:2

**reproduced** [4] - 138:19, 150:7, 157:24, 158:17

**reproduction** [1] - 146:8

**request** [2] - 166:9, 167:11

**requests** [3] - 20:16, 163:9, 163:11

**require** [9] - 40:20, 40:24, 68:24, 70:8, 71:23, 81:16, 90:23, 125:16, 142:15

**required** [24] - 8:10, 28:1, 37:10, 39:18, 41:21, 43:12, 44:21, 65:20, 65:25, 66:2, 67:5, 83:5, 86:17, 103:9, 103:11, 107:23, 107:25, 127:7, 127:13, 127:16, 128:11, 132:13, 134:17, 139:6

**requirement** [3] - 41:8, 122:11, 133:3

**requirements** [1] - 99:6

**requires** [9] - 28:16, 81:20, 85:22, 133:16, 137:12, 140:7, 153:20, 154:17, 155:2

**residence** [1] - 30:22

**resident** [2] - 53:19, 63:5

**respect** [18] - 3:12, 11:2, 11:5, 11:11, 29:1, 37:20, 41:3, 87:16, 122:1, 134:11, 136:10, 142:6, 144:7, 145:25, 149:11, 151:9, 152:11, 153:4

**respective** [1] - 123:21

**respectively** [2] - 115:2, 116:24

**respects** [1] - 110:5

**respond** [1] - 161:1

**response** [3] - 161:9, 161:17, 167:1

**responsibility** [2] - 90:2, 135:17

**responsible** [3] - 47:10, 102:24, 107:5

**rest** [1] - 157:9

**restoring** [1] - 75:23

**rests** [2] - 40:11, 137:18

**result** [5] - 42:20, 68:19, 70:7, 70:13, 101:14

**resulted** [2] - 68:21, 123:12

**resulting** [5] - 102:1, 102:14, 121:7, 150:9, 154:3

**results** [1] - 35:16

**resume** [4] - 22:12, 93:22, 169:14, 169:23

**Resuming** [1] - 107:11

**retaliate** [7] - 55:4, 64:11, 128:23, 129:7, 129:21, 130:23, 131:4

**retaliating** [3] - 54:13, 63:20, 128:14

**retaliation** [4] - 95:10, 131:11, 131:14, 152:24

**retrieve** [2] - 156:18, 157:3

**return** [6] - 15:9, 23:15, 36:18, 52:22, 138:11, 155:20

**Return** [1] - 72:1

**returning** [1] - 155:18

**review** [3] - 29:12, 100:6, 138:18

**reviewed** [1] - 99:10

**reviewing** [3] - 3:18, 5:3, 92:24

**revisiting** [1] - 13:20

**revolver** [2] - 112:5, 124:3

**reward** [1] - 75:24

**Reynolds** [5] - 35:20, 35:22, 35:25

**RHODES** [11] - 2:23, 3:2, 3:6, 8:15, 8:17, 8:21, 9:8, 12:14, 12:18, 18:15, 19:5

**Rhodes** [3] - 1:17, 8:14, 15:12

**RICO** [6] - 61:15, 90:6, 94:20, 94:23, 99:7, 167:12

**risk** [2] - 26:14, 121:20

**rob** [6] - 59:5, 59:21, 59:22, 75:3, 76:16

**robbed** [1] - 151:25

**Robbery** [1] - 75:8

**robbery** [54] - 53:17, 54:9, 55:2, 57:23, 58:7, 58:17, 59:1, 59:3, 59:16, 59:19, 60:9, 63:3, 63:17, 64:9, 69:11, 73:6, 73:13, 74:13, 74:20, 75:1, 75:11, 75:17, 76:8, 76:14, 76:21, 77:9, 95:10, 97:7, 97:20, 98:10, 99:14, 100:1, 100:6, 102:9, 102:12, 102:16, 118:3, 118:18, 119:9, 119:15, 123:14, 123:15, 123:18, 143:5, 143:7, 143:19, 151:23, 152:1, 152:5

**Robert** [1] - 1:16

**Rock** [9] - 53:8, 53:9, 56:19, 95:19

**Rod's** [1] - 17:5

**Rodney** [6] - 3:21, 3:25, 8:10, 14:11, 18:3, 35:19

**role** [2] - 85:22, 162:1

**roles** [1] - 85:21

**room** [5] - 21:21, 27:4, 27:7, 43:18, 90:13,

90:17, 90:24, 91:1, 91:17, 91:24, 92:6, 111:21, 138:2, 154:23, 156:18, 157:3, 157:11, 160:17, 162:24, 166:11, 169:7, 169:24, 170:7, 170:9, 170:14
**Room** [1] - 1:24
**Rosenstein** [1] - 13:12
**rough** [1] - 18:10
**roughly** [1] - 164:4
**RPR** [1] - 1:24
**rule** [3] - 22:23, 28:15, 135:13
**rules** [3] - 22:18, 23:6, 89:20
**ruling** [1] - 32:24
**rulings** [1] - 32:21

### S

**sad** [1] - 21:13
**safe** [1] - 82:10
**sale** [2] - 81:16, 81:17
**salute** [2] - 173:19, 173:20
**satellite** [3] - 16:24, 17:8, 17:10
**satisfied** [7] - 3:9, 3:14, 28:11, 84:5, 113:17, 116:12, 135:18
**satisfy** [11] - 65:15, 80:25, 83:2, 106:14, 121:14, 121:17, 122:8, 127:8, 127:23, 131:7, 136:2
**savvy** [1] - 158:9
**saw** [1] - 154:7
**scene** [6] - 82:16, 86:1, 102:2, 102:16, 116:10, 136:25
**Schedule** [10] - 60:20, 60:22, 60:23, 60:25, 78:13, 78:15, 78:16, 78:18, 79:11
**scheme** [4] - 83:7, 83:8, 84:18, 85:22
**School** [3] - 4:4, 14:2, 14:21
**science** [1] - 45:8
**scissors** [1] - 4:18
**scope** [1] - 85:13
**scrutinize** [1] - 33:10
**scrutiny** [1] - 38:16
**SD-1** [2] - 7:20, 7:21
**se** [11] - 11:23, 31:5, 31:6, 31:10, 31:12, 31:14, 31:20, 31:23, 32:3, 32:5, 32:6

**search** [1] - 30:22
**second** [35] - 46:14, 61:18, 65:5, 70:16, 71:20, 72:11, 73:17, 74:23, 76:12, 81:4, 84:1, 99:8, 100:5, 101:9, 101:15, 103:1, 104:7, 104:25, 106:18, 113:23, 115:18, 120:23, 126:8, 130:21, 131:14, 141:5, 141:8, 142:4, 142:9, 143:2, 143:20, 147:10, 153:24, 157:7, 164:4
**Second** [9] - 70:5, 70:7, 88:21, 98:18, 120:4, 123:7, 125:2, 129:20, 134:22
**second's** [1] - 166:3
**secrecy** [1] - 83:16
**Section** [29] - 55:25, 61:1, 61:2, 78:19, 78:21, 79:4, 79:5, 94:8, 94:17, 94:20, 95:24, 98:13, 107:8, 109:18, 111:15, 112:3, 112:10, 116:21, 117:11, 117:15, 117:22, 118:1, 118:12, 118:16, 118:23, 119:2, 119:4, 124:17, 129:3
**section** [6] - 4:16, 14:16, 61:4, 61:7, 118:24, 124:18
**Sections** [3] - 53:24, 56:3, 56:11
**sections** [2] - 4:20, 56:23
**secure** [1] - 169:7
**secured** [1] - 156:17
**security** [2] - 160:24, 170:6
**see** [32] - 2:10, 3:8, 13:11, 15:1, 18:19, 35:8, 45:17, 74:3, 91:4, 92:15, 111:22, 118:5, 124:5, 124:15, 133:3, 138:19, 139:15, 139:25, 142:2, 144:7, 145:9, 146:3, 146:7, 147:13, 151:21, 157:13, 159:16, 163:25, 164:10, 167:6, 168:8, 172:16
**seeing** [2] - 14:19, 168:17
**seek** [2] - 133:13, 134:4
**seeking** [2] - 98:20, 100:9
**seem** [1] - 24:19
**seized** [1] - 30:22
**select** [2] - 30:18, 160:11

**selection** [1] - 92:3
**semiautomatic** [4] - 111:7, 112:7, 124:5, 124:14
**send** [17] - 2:13, 5:14, 5:18, 5:19, 157:22, 157:25, 158:8, 159:12, 161:7, 161:8, 161:21, 161:22, 162:25, 171:14, 172:13, 173:11
**sending** [8] - 137:25, 158:24, 158:25, 159:9, 159:10, 160:6, 161:17
**sense** [7] - 28:4, 34:24, 40:10, 83:19, 137:16, 137:24, 153:9
**sent** [4] - 9:12, 138:5, 166:21, 172:11
**sentence** [2] - 23:1, 137:17
**sentenced** [1] - 125:21
**separate** [29] - 8:24, 19:4, 19:13, 19:15, 19:18, 23:16, 29:24, 50:22, 51:5, 51:7, 51:19, 69:7, 69:9, 80:16, 85:19, 106:9, 111:20, 115:11, 138:4, 138:22, 140:1, 141:4, 144:6, 149:1, 158:14, 159:19, 172:7
**separately** [7] - 9:11, 18:21, 23:15, 108:11, 138:22, 145:2, 159:18
**Sergeant** [1] - 48:7
**Serial** [1] - 112:5
**serial** [4] - 112:7, 124:3, 124:5, 124:14
**series** [8] - 45:21, 134:8, 139:12, 146:3, 146:5, 146:9, 146:10, 146:12
**serious** [7] - 24:12, 31:22, 70:6, 70:12, 75:20, 101:13, 121:20
**seriousness** [1] - 11:6
**serve** [1] - 156:14
**served** [3] - 38:1, 103:21, 108:22
**service** [7] - 156:20, 157:2, 162:19, 173:4, 173:5, 173:20
**services** [1] - 65:8
**session** [1] - 22:12
**sessions** [1] - 22:12
**set** [14] - 27:20, 56:5, 95:3, 109:18, 109:24, 110:25, 111:5, 111:15, 112:3, 115:6, 117:12, 117:23, 118:13, 126:9
**Seven** [17] - 56:5, 56:8,

76:13, 97:22, 97:24, 98:13, 100:24, 101:17, 102:7, 102:22, 104:6, 104:8, 104:17, 104:20, 111:15, 115:6, 143:13
**seven** [1] - 59:19
**Several** [1] - 69:10
**several** [11] - 10:22, 21:3, 39:21, 49:4, 50:22, 51:7, 68:24, 157:23, 168:22, 171:22, 171:24
**sex** [1] - 25:15
**shade** [1] - 33:23
**Shakedown** [8] - 7:23, 53:18, 54:18, 62:12, 62:14, 63:4, 64:1, 168:7
**shall** [9] - 49:12, 52:9, 61:5, 79:6, 92:3, 94:16, 112:13, 124:18, 162:5
**shame** [1] - 11:7
**shape** [2] - 12:13, 16:16
**SHAWN** [1] - 1:8
**Shawn** [18] - 48:8, 53:10, 55:19, 57:20, 59:13, 60:4, 60:15, 62:21, 76:2, 76:5, 76:13, 76:24, 77:4, 78:8, 97:3, 97:22, 98:7, 111:10, 118:11
**sheet** [18] - 88:3, 119:19, 138:23, 140:20, 146:8, 147:2, 150:6, 153:1, 153:2, 153:5, 153:20, 154:7, 154:17, 161:20, 161:22, 162:8, 162:12, 162:14
**shelf** [1] - 2:11
**Shelly** [7] - 53:9, 55:18, 57:19, 60:15, 62:21, 78:8, 97:3
**SHELLY** [1] - 1:8
**Shelton** [22] - 4:3, 14:1, 14:24, 53:8, 55:18, 56:18, 56:25, 57:9, 57:20, 60:14, 62:20, 69:18, 69:22, 72:2, 78:8, 95:19, 97:3, 105:19, 109:14, 128:13, 128:18, 152:20
**SHELTON** [1] - 1:7
**shifts** [2] - 43:3, 43:12
**shining** [1] - 27:4
**Shit** [4] - 7:15, 9:13, 171:24, 172:1
**short** [5] - 9:13, 15:6, 21:20, 81:20, 99:21
**shortly** [3] - 113:6, 119:19, 170:25
**shot** [1] - 165:2
**shoulders** [1] - 157:18

**show** [8] - 8:25, 37:10, 50:19, 66:18, 83:10, 99:19, 122:13, 132:18
**shown** [4] - 32:12, 45:21, 46:6, 46:8
**shows** [3] - 44:25, 49:9, 137:5
**side** [3] - 33:20, 41:25, 173:20
**sift** [1] - 26:6
**sign** [2] - 86:9, 86:10
**signal** [1] - 79:2
**signature** [3] - 17:5, 17:6, 174:11
**signatures** [3] - 12:25, 13:5, 13:11
**significance** [5] - 29:14, 43:14, 45:2, 137:6, 154:25
**significant** [1] - 68:23
**silence** [1] - 5:11
**similar** [3] - 31:13, 41:16, 68:22
**similarity** [2] - 86:5, 137:12
**Similarly** [7] - 48:16, 52:5, 83:5, 86:2, 102:7, 124:7, 153:23
**similarly** [1] - 117:19
**simple** [2] - 27:2, 43:4
**simply** [13] - 2:21, 22:2, 23:11, 28:16, 32:7, 82:16, 89:25, 94:3, 130:14, 139:8, 161:21, 161:23, 169:18
**Simply** [2] - 81:12, 146:1
**single** [13] - 19:14, 19:17, 22:25, 50:24, 51:4, 51:8, 51:10, 51:12, 51:22, 85:23, 157:24, 159:21
**singular** [1] - 24:3
**sitting** [1] - 27:5
**situation** [1] - 5:19
**six** [2] - 59:11, 170:12
**Six** [14] - 76:2, 97:8, 98:13, 100:24, 101:17, 102:7, 102:22, 104:6, 104:8, 104:17, 104:20, 111:1, 115:2, 143:9
**slate** [1] - 42:21
**small** [1] - 34:21
**Smith** [1] - 112:6
**Snitching** [2] - 6:12, 158:12
**so-called** [3] - 31:24, 32:2, 46:15
**society** [1] - 61:9
**software** [4] - 5:25,

8:11, 92:21, 93:4

**sole** [9] - 30:20, 33:6, 42:14, 103:12, 108:1, 126:24, 126:25, 155:17, 155:19

**solely** [9] - 23:20, 25:10, 26:5, 26:10, 40:11, 42:7, 82:14, 82:17, 137:20

**solitude** [1] - 5:10

**solution** [1] - 6:3

**someone** [6] - 27:5, 39:24, 44:20, 47:24, 75:9, 161:1

**Someone** [1] - 27:6

**something's** [1] - 36:4

**Sometimes** [1] - 12:23

**sometimes** [1] - 12:25

**son** [1] - 149:21

**songs** [5] - 7:15, 7:17, 7:24, 163:16, 171:23

**soon** [2] - 16:23, 157:21

**sorry** [11] - 3:20, 4:24, 11:22, 17:4, 17:7, 19:16, 78:1, 92:12, 110:12, 150:13, 157:5

**Sorry** [2] - 3:22, 92:8

**sort** [2] - 22:15, 146:25

**sound** [1] - 68:22

**sovereignty** [2] - 11:5, 68:13

**space** [1] - 138:14

**speaking** [1] - 26:21

**special** [9] - 8:11, 13:1, 13:7, 39:23, 48:15, 153:9, 159:14, 167:11, 168:3

**specific** [13] - 41:2, 41:8, 80:17, 84:12, 104:21, 129:21, 130:23, 131:3, 133:16, 137:10, 154:5, 154:13, 154:19

**Specifically** [3] - 36:20, 88:23, 101:18

**specifically** [2] - 62:18, 79:11

**speculate** [3] - 33:4, 68:3, 126:3

**speculation** [1] - 27:24

**Spence** [30] - 3:7, 59:11, 59:15, 59:16, 59:20, 59:22, 60:3, 60:8, 60:9, 76:3, 76:7, 76:16, 76:24, 77:8, 77:9, 97:24, 98:9, 98:10, 111:13, 115:6, 118:10, 118:18, 118:19, 123:16, 143:15, 143:17, 143:18, 151:13, 152:14

**Spence's** [1] - 16:7

**spite** [1] - 121:24

**spokesperson** [1] - 160:14

**SSW** [1] - 19:20

**stack** [1] - 10:17

**stake** [1] - 84:16

**stand** [4] - 4:8, 7:23, 20:24, 33:15, 43:16, 90:23, 162:7, 171:2

**standard** [3] - 11:15, 93:4, 121:19

**standing** [3] - 18:2, 94:18, 162:11

**stands** [2] - 16:25, 23:21

**stapled** [2] - 18:21, 159:22

**staples** [1] - 160:7

**start** [3] - 22:11, 139:3, 157:21

**started** [1] - 21:14

**starts** [2] - 14:17, 139:14

**State** [53] - 48:7, 55:16, 55:17, 56:17, 56:22, 56:24, 57:5, 57:8, 57:12, 57:19, 57:24, 58:1, 58:8, 58:18, 59:8, 59:12, 59:17, 59:20, 59:25, 60:4, 60:10, 60:13, 67:21, 69:1, 69:4, 69:21, 72:5, 73:2, 73:8, 73:14, 74:9, 74:15, 76:4, 76:22, 77:4, 77:23, 78:7, 78:23, 87:17, 95:12, 95:22, 96:21, 97:11, 98:1, 105:12, 105:23, 109:13, 110:21, 111:10, 117:9, 124:9, 128:18, 135:24

**state** [45] - 3:9, 22:18, 22:23, 33:14, 36:22, 37:1, 39:10, 45:4, 45:5, 45:6, 45:10, 48:18, 65:10, 67:22, 68:9, 68:11, 68:14, 68:16, 68:20, 68:25, 69:5, 69:11, 69:12, 69:14, 69:15, 69:25, 71:10, 71:11, 75:1, 75:6, 76:9, 76:14, 76:19, 77:10, 94:15, 95:23, 96:8, 100:1, 101:17, 121:12, 125:10, 127:25, 128:2, 128:7, 128:8

**statement** [25] - 6:8, 6:10, 8:17, 9:11, 34:9, 34:11, 34:15, 34:19, 35:2, 35:3, 39:2, 44:7, 44:11, 48:8, 48:10, 48:17, 48:18, 48:24,

48:25, 49:2, 49:3, 136:23, 159:1, 164:25, 168:7

**statements** [23] - 10:5, 25:19, 28:20, 34:6, 43:24, 44:3, 44:6, 44:9, 46:21, 46:22, 47:7, 47:11, 47:15, 47:18, 47:20, 47:22, 47:24, 48:4, 48:21, 48:23, 83:22, 85:5, 158:4

**STATES** [2] - 1:1, 1:5

**states** [1] - 65:9

**States** [41] - 24:14, 42:15, 53:25, 55:25, 56:4, 56:12, 61:1, 61:4, 65:9, 78:19, 80:20, 94:15, 106:12, 109:16, 109:22, 110:24, 111:3, 111:13, 111:14, 112:1, 112:3, 112:10, 112:13, 113:23, 114:5, 114:11, 114:18, 114:24, 115:4, 115:8, 115:14, 116:21, 117:11, 117:14, 117:22, 117:25, 118:13, 118:16, 118:23, 119:4, 124:18

**status** [2] - 166:10, 171:14

**statute** [15] - 53:1, 61:9, 61:13, 61:15, 61:24, 94:8, 94:18, 105:25, 106:4, 112:9, 118:20, 118:22, 118:25, 129:3, 151:4

**statutes** [1] - 79:13

**statutory** [15] - 57:14, 57:25, 58:9, 58:19, 59:2, 59:9, 59:18, 60:1, 60:11, 73:15, 75:7, 76:10, 76:20, 77:11, 105:24

**stay** [4] - 162:21, 162:22, 163:3

**stenographically** [1] - 174:4

**step** [8] - 71:25, 90:21, 91:23, 117:1, 131:15, 131:20, 131:23, 132:7

**steps** [1] - 49:17

**stick** [1] - 155:8

**still** [4] - 5:3, 5:12, 144:24, 156:13

**stipulated** [3] - 29:3, 125:10, 125:12

**stipulation** [2] - 29:3, 79:21

**Stop** [2] - 6:12, 158:12

**stop** [1] - 16:3

**stopped** [1] - 48:9

**store** [1] - 166:13

**stored** [1] - 166:11

**straight** [1] - 169:24

**strange** [2] - 151:1, 151:2

**street** [2] - 92:8

**Street** [1] - 1:25

**stricken** [1] - 29:7

**strong** [1] - 91:11

**struck** [2] - 28:24, 128:22

**structure** [1] - 62:5

**structures** [1] - 139:4

**stubbornness** [1] - 155:14

**stuff** [5] - 14:5, 92:14, 164:15, 164:16, 170:1

**style** [1] - 159:2

**subchapter** [2] - 78:23, 79:5

**Subject** [1] - 12:14

**subject** [4] - 26:10, 30:24, 129:3, 137:8

**subjective** [1] - 121:16

**submitted** [2] - 138:13, 168:3

**subscribed** [1] - 41:17

**subscriber** [1] - 41:20

**Subsection** [1] - 118:25

**Subsections** [1] - 61:6

**subsidiary** [1] - 146:5

**substance** [19] - 60:19, 60:20, 60:21, 60:22, 60:23, 60:24, 60:25, 78:12, 78:13, 78:14, 78:15, 78:16, 78:17, 78:18, 79:8, 88:6, 88:17

**substances** [13] - 53:15, 54:10, 63:1, 63:18, 79:10, 79:12, 79:22, 88:14, 95:9, 109:23, 111:5, 112:2, 112:19

**substantial** [8] - 71:24, 82:6, 82:12, 131:15, 131:20, 131:23, 132:6, 137:12

**substantially** [2] - 64:25, 143:10

**substantive** [15] - 80:18, 80:21, 80:24, 106:10, 106:12, 134:17, 134:20, 134:25, 135:4, 135:6, 135:10, 135:14, 135:17, 135:20, 143:23

**substitute** [2] - 40:10, 44:17

**succeed** [3] - 103:3, 133:13, 134:5

**sufficient** [18] - 42:21, 65:15, 83:9, 85:23,

86:14, 104:15, 116:10, 121:6, 121:17, 122:21, 122:23, 127:23, 130:8, 130:12, 133:23, 136:2, 148:7, 166:4

**sufficiently** [3] - 3:9, 3:14, 164:2

**suggest** [1] - 24:24

**sum** [2] - 38:6, 86:23

**summaries** [4] - 17:11, 32:12, 32:14, 32:17

**summarized** [1] - 94:3

**summary** [2] - 20:24, 104:5

**sun** [1] - 27:4

**superseding** [15] - 23:11, 53:7, 62:20, 109:19, 109:25, 111:1, 111:6, 111:17, 111:20, 111:22, 111:23, 117:12, 117:23, 118:13, 138:1

**supervised** [1] - 129:10

**Supp** [1] - 11:15

**supplying** [1] - 81:19

**support** [3] - 44:1, 79:19, 122:23

**supported** [1] - 34:3

**suppose** [1] - 171:8

**supposed** [1] - 7:22

**surprise** [1] - 166:8

**surrender** [1] - 155:15

**surrounding** [1] - 45:24

**suspicion** [1] - 27:14

**sustain** [3] - 43:2, 113:19, 119:24, 124:23

**sustained** [3] - 25:13, 29:6, 33:3

**swayed** [1] - 26:4

**sworn** [1] - 29:1

**sympathy** [3] - 26:4, 26:13, 26:20

**Symphony** [1] - 93:10

**system** [2] - 18:24, 68:8

**T**

**table** [1] - 21:20

**tablets** [1] - 21:18

**tacitly** [1] - 83:10

**tags** [1] - 3:9

**talks** [1] - 151:7

**tangible** [1] - 128:20

**tape** [14] - 4:18, 5:20, 8:18, 9:12, 29:23, 29:25, 30:5, 30:8, 30:20, 36:11, 36:13, 158:22, 172:8

**tapes** [2] - 30:4, 30:10

**task** [1] - 30:12

**technique** [1] - 41:10

**techniques** [2] - 41:2, 41:9
**telephone** [2] - 17:10, 41:16
**telephones** [1] - 41:15
**temperaments** [1] - 122:18
**temporary** [1] - 130:6
**temptation's** [1] - 91:11
**Ten** [4] - 110:15, 114:20, 149:7, 149:9
**tends** [1] - 33:12
**term** [14] - 24:3, 46:16, 56:3, 61:9, 61:12, 81:23, 93:1, 123:25, 124:11, 124:20, 125:1, 125:9, 125:12
**terminate** [2] - 49:18, 50:7
**termination** [1] - 51:13
**terms** [1] - 79:12
**territory** [2] - 54:12, 63:19
**testified** [6] - 33:11, 33:17, 36:25, 39:5, 48:8, 48:16
**testify** [8] - 36:22, 38:14, 43:7, 43:8, 43:15, 44:16, 48:7, 79:18
**testifying** [4] - 37:24, 38:1, 38:18, 40:4
**testimonial** [1] - 22:8
**testimony** [62] - 25:7, 26:23, 29:1, 31:2, 32:15, 33:7, 33:8, 33:10, 34:2, 34:8, 34:13, 34:16, 34:17, 35:4, 35:5, 35:6, 35:7, 35:11, 35:12, 35:19, 35:21, 35:22, 35:23, 35:24, 36:16, 36:20, 36:23, 37:2, 37:12, 37:13, 37:15, 37:23, 38:5, 38:15, 38:16, 38:17, 38:19, 38:22, 38:25, 39:6, 39:8, 39:11, 39:16, 39:21, 39:24, 40:2, 40:6, 40:9, 40:15, 40:16, 40:17, 40:18, 41:14, 44:14, 67:25, 79:18, 80:1, 80:4, 80:6, 137:14
**text** [2] - 36:3, 36:18
**THE** [138] - 1:1, 1:2, 2:3, 2:7, 2:13, 2:16, 2:17, 2:20, 3:1, 3:4, 3:8, 3:16, 3:19, 4:1, 4:5, 4:8, 4:12, 4:14, 4:17, 4:22, 4:25, 5:3, 5:6, 5:13, 5:17, 5:23, 6:4, 6:7, 6:9, 6:11, 6:13, 6:17, 6:19, 6:22,

6:24, 7:2, 7:4, 7:10, 7:13, 7:16, 7:18, 7:21, 7:25, 8:3, 8:5, 8:7, 8:13, 8:16, 8:20, 8:24, 9:3, 9:5, 9:7, 9:10, 9:17, 9:20, 9:25, 10:2, 10:5, 10:8, 10:18, 10:21, 11:3, 11:18, 11:25, 12:3, 12:6, 12:9, 12:16, 12:19, 12:22, 13:18, 13:21, 14:3, 14:9, 15:1, 15:5, 15:9, 15:18, 16:2, 16:8, 16:11, 16:15, 16:17, 16:20, 17:4, 17:15, 17:17, 17:22, 17:24, 18:2, 18:19, 19:2, 19:7, 19:14, 19:21, 20:4, 20:7, 20:9, 20:12, 20:15, 20:19, 20:22, 21:6, 21:9, 21:11, 21:13, 21:17, 78:1, 92:2, 92:8, 92:18, 92:21, 93:1, 93:7, 93:11, 93:18, 93:21, 93:7, 107:4, 110:11, 157:17, 158:20, 163:8, 163:18, 164:9, 164:11, 164:21, 165:18, 166:2, 166:7, 167:2, 168:5, 168:12, 168:14, 168:17, 168:21, 168:25, 173:16
**themselves** [6] - 32:16, 37:9, 46:17, 132:5, 136:2, 143:25
**then(b** [1] - 73:7
**theories** [1] - 143:24
**theory** [8] - 39:24, 132:14, 134:10, 135:20, 164:14, 164:15, 164:19, 164:25
**thereby** [20] - 56:22, 57:6, 57:13, 57:24, 58:8, 58:18, 59:2, 59:9, 59:17, 59:25, 60:10, 73:15, 75:6, 76:9, 76:19, 77:10, 87:1, 128:20, 129:5, 130:1
**Therefore** [5] - 32:16, 42:15, 52:9, 90:1, 135:16
**therefore** [4] - 77:19, 84:25, 134:6, 154:21
**therein** [1] - 25:20
**thermostat** [1] - 45:17
**They've** [1] - 158:7
**they've** [1] - 14:23
**thinking** [4] - 26:13, 122:6, 122:9, 151:1
**third** [13] - 61:19, 65:23, 100:8, 106:19, 107:10, 107:13, 109:19, 111:15, 111:22, 123:9, 125:3,

127:18, 142:5
**Third** [4] - 89:3, 98:20, 120:7, 134:25
**Thomas** [1] - 1:20
**threat** [4] - 75:15, 130:14, 130:15, 130:18
**threatened** [7] - 44:20, 55:1, 64:8, 128:22, 130:2, 130:12, 130:16
**threatening** [1] - 129:19
**threatens** [1] - 129:7
**threats** [3] - 54:14, 55:9, 63:22
**three** [20] - 57:15, 57:18, 75:15, 90:25, 101:22, 102:1, 102:10, 102:14, 106:15, 140:5, 142:16, 142:20, 143:8, 143:11, 144:20, 144:21, 145:9, 152:17, 167:22, 172:23
**Three** [21] - 72:14, 72:22, 72:24, 73:1, 74:2, 105:5, 105:6, 105:8, 105:25, 106:3, 106:15, 107:2, 107:8, 107:13, 108:10, 141:11, 141:13, 141:17, 141:18, 141:21, 165:17
**threw** [1] - 168:8
**throughout** [4] - 22:7, 32:19, 43:11, 65:4
**timely** [1] - 49:23
**tired** [1] - 155:14
**Title** [24] - 53:24, 55:25, 56:4, 56:12, 60:25, 61:3, 78:19, 78:21, 79:4, 94:9, 111:14, 112:2, 112:9, 116:20, 117:10, 117:14, 117:21, 117:25, 118:12, 118:15, 118:23, 119:4, 124:17, 129:4
**today** [4] - 91:3, 160:10, 163:1, 167:22
**together** [10] - 36:2, 51:3, 55:19, 62:1, 80:14, 83:3, 83:24, 86:6, 159:22, 172:22
**toll** [2] - 17:10
**tomorrow** [1] - 172:23
**Tonya** [20] - 59:11, 59:15, 59:19, 59:22, 76:3, 76:7, 76:16, 97:23, 98:9, 98:10, 111:13, 115:6, 118:10, 118:18, 123:15, 143:14, 143:16, 152:14
**took** [9] - 15:14, 38:11, 46:1, 71:24, 75:13, 75:14, 87:13, 87:17,

131:19
**top** [4] - 19:24, 20:1, 107:6, 158:10
**topic** [2] - 14:17, 14:18
**total** [2] - 23:12, 93:24
**touch** [3] - 156:23, 157:1, 164:2
**toward** [2] - 131:20, 131:23
**towards** [2] - 42:11, 121:24
**tower** [1] - 17:8
**towers** [1] - 17:9
**Track** [3] - 9:20, 163:16, 172:1
**track** [6] - 7:14, 7:19, 9:14, 9:18, 29:13
**tracks** [1] - 9:13
**trafficked** [2] - 55:11, 64:15
**trafficking** [14] - 60:12, 109:11, 109:20, 110:4, 111:2, 111:24, 112:12, 113:22, 114:4, 114:17, 115:12, 115:17, 129:1, 151:17
**training** [1] - 39:23
**transcribed** [1] - 174:8
**transcript** [13] - 4:3, 4:9, 5:4, 10:24, 13:16, 13:25, 15:1, 18:3, 30:4, 36:8, 36:15, 174:8
**transcripts** [8] - 3:25, 30:2, 30:6, 30:12, 30:15, 35:24, 36:11
**transfer** [2] - 81:12, 81:21
**transmission** [1] - 5:8
**transported** [1] - 128:3
**traveled** [3] - 127:22, 128:5, 128:10
**treat** [1] - 18:6
**treatment** [1] - 37:24
**trial** [26] - 2:10, 25:11, 29:15, 30:21, 32:19, 34:7, 34:13, 34:16, 34:17, 35:24, 38:9, 40:23, 42:11, 42:17, 42:20, 43:11, 43:20, 43:21, 44:4, 44:12, 46:24, 68:1, 125:23, 158:3, 159:13, 171:25
**true** [5] - 25:22, 26:14, 29:4, 29:5, 148:22
**truly** [2] - 172:19, 173:4
**trust** [1] - 2:3
**truth** [4] - 26:22, 33:23, 37:22, 38:5
**truthfully** [1] - 38:1
**try** [4] - 39:14, 81:14,

161:7, 161:8
**trying** [4] - 8:11, 14:5, 15:21, 154:13
**turn** [5] - 37:11, 52:15, 119:5, 132:9, 138:23
**turned** [1] - 20:25
**twelve** [1] - 104:20, 162:2, 170:14
**Two** [44] - 7:17, 30:22, 35:7, 46:11, 72:1, 72:2, 94:24, 95:2, 97:25, 98:13, 100:23, 102:22, 104:5, 104:8, 104:17, 104:20, 105:11, 106:6, 109:18, 110:12, 110:14, 112:16, 112:22, 112:24, 113:2, 113:5, 114:8, 114:9, 114:13, 140:20, 140:21, 140:23, 140:24, 141:3, 141:16, 141:18, 141:20, 144:13, 144:16, 147:11, 147:16, 148:6, 148:10, 165:17
**two** [60] - 4:10, 13:24, 15:3, 18:20, 19:24, 19:25, 24:7, 26:21, 29:24, 30:18, 49:11, 51:3, 56:7, 57:7, 67:4, 67:6, 67:7, 67:12, 70:24, 71:13, 71:17, 75:14, 80:14, 81:2, 81:3, 82:25, 89:20, 90:4, 101:1, 101:9, 101:11, 101:24, 102:12, 106:6, 106:16, 107:1, 107:9, 107:12, 112:14, 114:14, 114:20, 131:12, 140:12, 141:1, 141:4, 141:22, 142:3, 144:21, 147:14, 149:1, 153:13, 153:18, 154:14, 159:6, 167:15, 167:18, 167:23, 169:2, 170:11, 172:23
**type** [19] - 11:13, 26:24, 37:5, 37:15, 49:20, 88:14, 88:16, 88:19, 88:21, 89:2, 89:3, 89:7, 89:9, 89:13, 89:19, 105:2, 142:6, 146:6, 146:16
**types** [14] - 26:21, 36:19, 37:4, 47:3, 87:25, 88:4, 104:11, 104:13, 104:16, 104:21, 143:8, 143:11, 154:5, 154:8
**typically** [1] - 167:5
**typo** [6] - 74:4, 77:24, 78:1, 106:25, 107:5, 109:19

# U

**U.S** [2] - 1:24, 13:6
**ultimate** [2] - 81:17,
155:1
**ultimately** [1] - 155:6
**umbrella** [1] - 27:5
**unanimous** [7] -
112:23, 140:17, 153:9,
154:16, 154:20, 155:18,
171:19
**unanimously** [5] -
42:23, 145:18, 153:21,
154:8, 154:18
**unchanged** [1] - 64:25
**uncommon** [1] - 35:10
**uncontradicted** [1] -
33:9
**Under** [8] - 43:7, 61:24,
68:8, 68:13, 70:2, 71:12,
112:14, 137:21
**under** [45] - 33:11,
36:25, 47:9, 68:11,
68:16, 71:20, 72:11,
73:17, 76:12, 78:20,
79:5, 86:17, 95:8, 99:21,
100:20, 100:23, 112:23,
113:5, 116:10, 116:20,
118:8, 118:22, 120:19,
122:1, 127:5, 135:20,
140:7, 140:10, 140:15,
140:23, 141:3, 141:4,
146:4, 146:9, 146:11,
146:12, 148:18, 148:23,
149:9, 151:4, 151:7,
157:6, 166:18
**undercover** [2] - 6:15,
7:12
**underlying** [12] - 68:10,
68:11, 68:16, 120:1,
120:2, 120:21, 123:3,
123:4, 123:13, 147:9,
149:16, 149:19
**understandingly** [1] -
44:8
**undertake** [1] - 68:9
**undertaken** [1] - 90:3
**undertaking** [1] - 87:1
**unfavorable** [1] - 42:11
**unfortunately** [1] -
164:13
**unidentified** [1] - 92:3
**unimportant** [1] - 35:15
**unison** [1] - 162:4
**unit** [4] - 54:4, 62:7,
63:13, 64:21
**United** [41] - 24:14,
42:15, 53:24, 55:25,
56:4, 56:12, 60:25, 61:4,

65:9, 78:19, 80:20,
94:15, 106:12, 109:16,
109:22, 110:23, 111:3,
111:12, 111:14, 111:25,
112:3, 112:10, 112:13,
113:23, 114:5, 114:11,
114:18, 114:24, 115:4,
115:8, 115:14, 116:21,
117:10, 117:14, 117:21,
117:25, 118:12, 118:16,
118:23, 119:4, 124:18
**UNITED** [2] - 1:1, 1:5
**unknown** [14] - 53:11,
55:20, 57:3, 58:4, 58:23,
60:6, 60:17, 62:22, 71:8,
73:11, 74:18, 77:6,
78:10, 105:20
**unlawful** [26] - 47:4,
50:24, 51:4, 51:6, 61:5,
62:11, 79:6, 80:15, 81:3,
82:25, 83:11, 83:25,
84:12, 84:24, 85:2,
85:15, 86:13, 86:22,
86:24, 87:2, 106:17,
107:1, 107:9, 119:5,
124:18, 131:4
**unlawfully** [18] - 55:24,
57:1, 58:3, 58:21, 60:5,
60:16, 60:18, 71:6, 73:9,
74:16, 77:5, 78:9, 78:11,
118:1, 118:17, 123:9,
124:1, 124:12
**unless** [6] - 42:22, 51:9,
155:11, 156:12, 170:13,
171:15
**unlikely** [1] - 75:25
**unnamed** [1] - 48:17
**unredacted** [1] - 93:3
**untutored** [1] - 31:21
**unusual** [1] - 155:1
**up** [24] - 3:19, 4:4, 8:2,
8:18, 8:25, 11:10, 13:3,
13:8, 14:1, 14:8, 15:14,
17:1, 22:5, 30:19, 37:23,
92:8, 107:6, 110:12,
158:6, 158:11, 162:23,
169:6, 170:7, 172:18
**upstairs** [2] - 17:21,
93:15
**urge** [1] - 160:1
**USA** [1] - 174:4
**usage** [1] - 81:23
**useful** [2] - 11:18, 21:21
**uses** [1] - 78:4
**utilize** [1] - 41:2
**uttered** [1] - 45:22

# V

**Valdavia** [1] - 21:1
**value** [16] - 28:14,
29:22, 75:18, 75:23,
94:11, 95:17, 96:12,
97:1, 97:15, 98:6, 99:2,
103:8, 105:17, 106:24,
107:20
**varies** [1] - 122:17
**variety** [1] - 68:18
**various** [6] - 9:12,
31:13, 50:23, 53:7,
62:19, 92:15
**varying** [1] - 22:24
**venture** [4] - 84:16,
133:24, 134:4, 134:5
**verdict** [69] - 23:16,
23:18, 23:19, 23:23,
24:25, 25:3, 25:10,
25:22, 26:2, 26:14,
26:16, 26:20, 33:21,
42:6, 42:16, 48:15,
52:22, 69:3, 88:3,
113:13, 119:19, 136:8,
137:23, 138:11, 138:14,
138:18, 138:21, 138:23,
138:24, 138:25, 139:2,
139:3, 139:16, 140:20,
146:8, 147:2, 150:6,
153:1, 153:2, 153:5,
153:20, 154:7, 154:17,
154:20, 155:1, 155:6,
155:18, 155:20, 155:24,
156:25, 160:14, 160:16,
161:19, 161:20, 161:22,
161:23, 162:3, 162:8,
162:12, 162:14, 162:17,
162:18, 165:9, 165:23,
169:6, 171:19
**verdicts** [2] - 153:9,
168:3
**version** [7] - 13:25,
14:6, 15:2, 15:3, 30:11,
30:14, 164:1
**versions** [5] - 13:24,
15:4, 30:2, 30:11, 30:18
**VICAR** [3] - 94:17,
94:21, 105:9
**victim** [18] - 70:19,
71:24, 71:25, 75:10,
75:16, 101:1, 101:4,
101:11, 102:14, 102:15,
102:18, 118:6, 120:24,
121:2, 121:4, 121:24,
122:9
**victim's** [2] - 75:13,
121:9
**video** [3] - 6:12, 158:12,

158:15
**videos** [1] - 157:23
**videotape** [1] - 8:10
**view** [1] - 155:11
**views** [1] - 155:9
**vigorously** [1] - 31:19
**violate** [4] - 52:25,
55:25, 61:6, 80:16
**violated** [3] - 61:15,
78:23, 98:12
**violating** [17] - 56:22,
57:6, 57:14, 57:25, 58:9,
58:18, 59:2, 59:18, 60:1,
61:2, 73:15, 75:1, 75:6,
76:9, 76:14, 76:19, 77:10
**violation** [27] - 55:15,
59:9, 60:11, 60:25,
71:11, 78:18, 79:4,
80:17, 94:14, 95:9,
95:10, 95:23, 105:22,
105:24, 105:25, 107:8,
109:17, 109:23, 110:25,
111:14, 112:2, 117:10,
117:21, 118:12, 118:25,
124:17, 129:9
**violations** [4] - 67:20,
69:7, 69:10, 149:23
**violence** [38] - 53:16,
54:14, 55:2, 55:9, 63:2,
63:22, 64:9, 98:23,
98:25, 109:10, 109:15,
110:4, 110:16, 111:11,
112:11, 112:16, 113:11,
113:22, 113:25, 114:4,
114:10, 114:23, 115:2,
115:7, 115:17, 117:4,
147:5, 147:8, 147:15,
147:17, 148:2, 149:17,
149:20, 151:10, 154:11
**Violent** [2] - 94:18,
105:25
**violent** [6] - 94:8,
103:14, 105:9, 108:3,
108:15, 110:22
**voice** [2] - 6:6, 29:23
**VOLUME** [1] - 1:11
**volumes** [1] - 2:11
**voluntarily** [5] - 44:7,
84:4, 127:10, 131:1,
133:15
**vote** [1] - 171:21
**voted** [2] - 171:16,
171:18
**vouching** [1] - 81:17

# W

**W-33** [1] - 6:6
**W-38** [1] - 6:8

**W-65** [1] - 6:10
**wait** [1] - 157:7
**waited** [1] - 15:19
**waiting** [3] - 86:10,
90:13, 173:10
**walked** [2] - 27:5, 27:6
**wanton** [1] - 121:18
**wants** [2] - 19:1, 171:5
**warned** [1] - 92:9
**warning** [1] - 49:23
**WAYNE** [1] - 1:8
**Wayne** [8] - 53:9, 55:19,
57:19, 60:15, 62:21,
78:8, 97:3
**ways** [1] - 22:24
**weapon** [10] - 59:6,
59:23, 75:4, 75:17,
75:19, 76:17, 115:21,
125:14, 126:11, 127:11
**weapons** [1] - 159:9
**Weaze** [2] - 21:4, 53:9
**Weaze's** [1] - 21:4
**Weazy** [1] - 53:10
**weekend** [5] - 157:15,
172:17, 172:20, 173:3,
173:14
**weigh** [1] - 137:18
**weighed** [1] - 37:16
**weighing** [2] - 35:13,
40:2
**weight** [17] - 29:20,
29:21, 32:9, 33:1, 33:7,
35:3, 38:7, 38:24, 39:6,
39:13, 39:16, 40:7,
40:19, 44:5, 44:9,
154:25, 155:15
**Welcome** [1] - 21:9
**Wesson** [3] - 112:5,
112:6, 124:3
**West** [1] - 1:25
**Westlaw** [1] - 2:16
**wet** [2] - 27:6, 27:7
**whatsoever** [2] - 91:9,
156:5
**whereby** [1] - 37:2
**wherein** [1] - 124:10
**Whereof** [1] - 174:10
**White** [1] - 4:14
**whole** [7] - 9:15, 9:18,
10:17, 23:3, 146:3,
166:13
**wholly** [1] - 49:24
**widely** [1] - 11:9
**wilfully** [2] - 61:21, 73:9
**willful** [7] - 35:17,
101:1, 101:3, 119:7,
133:14, 151:22, 152:2
**Willful** [2] - 70:18,
122:14
**willfully** [43] - 56:20,

57:1, 57:3, 57:10, 57:21,
58:3, 58:5, 58:14, 58:21,
58:23, 59:14, 60:5, 60:7,
60:16, 66:16, 69:23,
71:6, 71:8, 72:6, 73:4,
73:11, 74:11, 74:16,
74:18, 76:5, 77:5, 77:7,
78:9, 84:3, 84:10, 95:20,
96:14, 97:4, 97:18, 98:8,
103:2, 105:21, 117:16,
121:22, 122:2, 133:11,
133:12, 134:4
    **willfulness** [4] - 45:4,
45:23, 70:4, 100:22
    **Willie** [26] - 14:12,
14:16, 14:23, 53:8,
53:20, 55:18, 56:18,
56:25, 57:9, 57:19,
60:14, 62:20, 63:6,
69:18, 69:22, 72:2, 78:7,
95:18, 97:2, 105:19,
109:14, 140:3, 140:23,
147:3, 150:8, 174:4
    **WILLIE** [1] - 1:7
    **willing** [2] - 87:2, 93:16
    **willingness** [1] - 173:6
    **wireless** [1] - 92:19
    **wise** [1] - 169:12
    **wish** [6] - 90:20, 160:1,
160:5, 169:11, 170:22,
172:17
    **wished** [1] - 134:3
    **wit** [2] - 111:7, 112:4
    **withdraw** [2] - 49:17,
49:22
    **withdrawal** [4] - 49:15,
50:8, 50:9, 51:14
    **withdrawn** [1] - 31:1
    **withdraws** [2] - 49:15,
50:13
    **withdrew** [1] - 49:8
    **withhold** [1] - 75:21
    **witness** [45] - 25:1,
33:8, 33:10, 33:11,
33:12, 33:17, 33:19,
33:20, 33:22, 33:23,
33:24, 34:3, 34:13,
34:15, 34:19, 34:22,
35:6, 35:12, 38:2, 38:13,
38:16, 38:17, 39:9,
39:13, 39:15, 40:14,
40:16, 40:17, 40:18,
43:5, 43:16, 44:19,
44:20, 44:25, 54:20,
55:3, 64:3, 64:10, 67:23,
95:9, 128:15, 131:11,
131:13, 152:24
    **Witness** [1] - 174:10
    **witness'** [9] - 33:14,
33:16, 34:7, 34:16, 35:4,

37:13, 39:4, 40:6, 40:8
    **witnesses** [28] - 24:22,
25:1, 29:2, 33:7, 34:5,
35:6, 35:12, 35:19,
36:19, 36:20, 36:23,
36:25, 37:4, 37:8, 37:12,
37:15, 37:20, 37:21,
38:8, 38:10, 38:25, 39:5,
39:19, 40:21, 41:23,
42:1, 44:15, 79:18
    **witnessing** [1] - 35:8
    **woman** [1] - 5:21
    **wonderful** [1] - 157:15
    **Wooden** [1] - 48:7
    **word** [5] - 61:8, 61:12,
81:10, 108:9, 127:12
    **words** [22] - 18:17,
40:17, 42:1, 45:11,
45:22, 49:19, 62:17,
81:12, 83:6, 83:20,
99:16, 103:16, 108:5,
108:16, 116:22, 117:1,
122:5, 130:15, 132:17,
141:15, 148:14
    **worker** [1] - 84:13
    **worse** [1] - 32:14
    **worthy** [1] - 33:13
    **wrestled** [1] - 128:23
    **write** [2] - 161:3, 170:16
    **writing** [3] - 83:6,
160:22, 173:11
    **written** [9] - 94:5,
138:12, 138:14, 161:8,
161:17, 164:7, 171:13,
171:20
    **Wyche** [48] - 57:16,
57:22, 57:23, 58:6, 58:7,
58:11, 58:16, 58:25,
59:4, 59:5, 59:6, 72:16,
72:18, 72:22, 73:5, 73:6,
73:12, 73:13, 73:20,
73:21, 73:23, 74:12,
74:19, 74:20, 75:3,
96:18, 97:6, 97:19,
110:24, 115:1, 118:2,
118:6, 118:7, 123:15,
142:22, 143:9, 143:10,
149:11, 151:18, 151:20,
151:25, 152:8
    **Wyche's** [1] - 151:14
    **Wyches** [2] - 143:4,
151:12

**X**

    **XXX** [1] - 1:11
    **XXXVII** [1] - 1:11

**Y**

    **year** [9] - 39:1, 123:25,
124:12, 124:20, 125:1,
125:9, 125:12, 125:20,
125:22
    **years** [1] - 45:15
    **Yesterday** [1] - 167:17
    **yesterday** [3] - 5:8,
166:6, 168:4
    **York** [1] - 55:18
    **yourself** [1] - 33:21
    **yourselves** [5] - 26:6,
37:21, 84:6, 134:1,
162:25

**Z**

    **Zajac** [3] - 1:24, 174:3,
174:15